IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

WILLIAM POLSON, JR.,

        Plaintiff,

v.                                                      Civil Action No.
                                                        9:08-CV-030 (TJM/DEP)

BRIAN FISCHER, Commissioner,
New York State Department
of Correctional Services, *et al.*,

        Defendants.

_____

APPEARANCES:                                    OF COUNSEL:

FOR PLAINTIFF:

WILLIAM POLSON, JR., *Pro Se*
93-A-9724
Washington Correctional Facility
Box 180
72 Lock 11 Lane
Comstock, NY 12821

FOR DEFENDANTS:

HON. ANDREW M. CUOMO                  DOUGLAS J. GOGLIA, ESQ.
Attorney General of the State        Assistant Attorney General
of New York
The Capitol
Albany, NY 12224-0341


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

Plaintiff William Polson, Jr., a prison inmate who is proceeding *pro se* and *in forma pauperis*, has commenced this action under 42 U.S.C. § 1983 against the Commissioner of the New York State Department of Correctional Services ("DOCS") and several DOCS employees, alleging deprivation of his civil rights.  In his complaint, which has twice been amended, Polson seeks to recover damages for injuries sustained as a result of an assault by his cell mate, alleging that the defendants failed to protect him from harm despite their awareness of the fellow prisoner's threats against him and denied him proper treatment for his medical conditions which, while pre-existing, were aggravated as a result of the attack.

Defendants have moved for dismissal of the operative pleading now before the court.  In their motion defendants argue that plaintiff's claims are facially lacking in merit, and additionally assert lack of personal involvement of any of the defendants as a further basis for dismissal.  For the reasons set forth below, I recommend that defendants' motion be granted, but that plaintiff afforded one final opportunity to amend his complaint in order to state a legally cognizable claim.

2

I.      BACKGROUND[1]

Plaintiff is a prison inmate entrusted to the custody of the DOCS; at the times relevant to his claims Polson was housed in the Upstate Correctional Facility ("Upstate"), located in Malone, New York.[2]  *See generally* Second Amended Complaint (Dkt. No. 22).   On April 27, 2007, not long after plaintiff's transfer into Upstate, another inmate was moved into his cell, which for approximately thirty days had been occupied only by Polson.  First Amended Complaint (Dkt. No. 13) ¶¶ 9,12.[3]   Within a

---

[1]        In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's amended complaint, the contents of which have been accepted as true for purposes of the pending motion. *See Erickson v. Pardus,* 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546, 84 S. Ct. 1733, 1734 (1964). Portions of the background description which follow have been derived from the exhibits attached to plaintiff's complaint, which may also properly be considered in connection with a dismissal motion.  *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991), *cert. denied*, 503 U.S. 960, 112 S. Ct. 1561 (1992); *see also Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993).

[2]        Upstate is a maximum security prison comprised exclusively of special housing unit ("SHU") cells in which inmates are confined, generally though not always for disciplinary reasons, for twenty-three hours each day. *See Samuels v. Selsky*, No. 01 CIV. 8235, 2002 WL 31040370, at *4 n.11 (S.D.N.Y. Sept. 12, 2002).

[3]        While plaintiff's second amended complaint is the operative pleading and the object of defendants' motion, superceding all earlier filed complaints, *see Harris v. City of New York*, 186 F.3d 243,249 (2d Cir. 1999), plaintiff's initial and first amended complaints are properly considered by the court when evaluating the plausibility of his claims.  *Hale v. Rao*, No. 9:08-CV-1612, 2009 WL 3698420, at *3 n.8 (N.D.N.Y. Nov. 3, 2009) (Hurd, D.J. and Lowe, M.J.) ("[I]n cases where a *pro se* plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they are consistent with the allegations in the complaint.)

short period of time plaintiff's new cell mate began to threaten him with physical harm, saying that he would beat him to the point where he "would not be able to walk." *Id.* ¶ 12.  Plaintiff alleges that he informed an unidentified DOCS corrections officer of the threats, but no action was taken to protect him from his fellow inmate.  *Id.* ¶¶ 13-14.

Plaintiff was attacked by his cell mate on April 28, 2007, the following day.  Second Amended Complaint (Dkt. No. 22) § 6.   Plaintiff alleges that immediately prior to the incident his cell mate was under the influence of a hallucinogenic drug and "acting weird" and told Polson to "keep [his] Hand [sic] off his locker, [and] not to touch his bed." *Id.*  During the course of the ensuing altercation plaintiff was punched in the face and chest, and kicked in the back and legs once he was on the floor, causing him to sustain injuries requiring medical attention.  *Id.*  Plaintiff alleges that it took corrections officers several minutes to arrive at his cell to assist him.  *Id.*  Plaintiff maintains that after the incident he complained to the proper authorities about his injuries, without realizing any relief.[4]  *Id.*

_____

(citation and internal quotation omitted).
     [4]       It appears that as a result of the incident plaintiff was issued a misbehavior report accusing him of fighting and engaging in violent conduct, in violation of applicable prison rules.  *See* Second Amended Complaint (Dkt. No. 22) at pp.19-21(attachment).  Those charges were subsequently dismissed "in the interest of justice" following a disciplinary hearing to address the misbehavior report.  *Id.*

Following the incident, plaintiff filed a grievance dated May 13, 2007 complaining of his injuries and the failure of prison officials to treat them. Second Amended Complaint (Dkt. No. 22) § 6 and Attachment.  In that grievance plaintiff also complained that back and leg injuries made it difficult and painful for him to wash in a regular cell with a stand-only shower, and he requested as relief that he be assigned to a medical cell. *Id.*

II.    <u>PROCEDURAL HISTORY</u>

Plaintiff commenced this action on January 9, 2008.  Dkt. No. 1. Plaintiff's original complaint named DOCS Commissioner Brian Fischer, Upstate Superintendent Robert K. Woods, and fellow inmate A. Thomas as the defendants.  *Id.*  Upon initial review of plaintiff's complaint, by order dated January 24, 2008, Senior District Judge Thomas J. McAvoy granted plaintiff's request for *in forma pauperis* status but directed him to file an amended complaint, noting several deficiencies in the original pleading including, *inter alia*, Polson's failure to allege any wrongdoing on the part of Commissioner Fischer and Superintendent Woods.[5]  Dkt. No. 3.

---

[5]    The other deficiencies cited included that the plaintiff had not submitted a complete complaint to the court, and he had not signed the complaint as required by Rule 11 of the Federal Rules of Civil Procedure.  *See also* Local Rule 10.1(b)(2).  Also noted was the fact that in the original complaint plaintiff began reciting the facts in

Plaintiff filed a first amended complaint on September 2, 2008, in response to the court's directive.[6]  Dkt. No. 13.  That second pleading named Superintendent Woods and an unidentified "John Doe" corrections officer as the sole defendants, asserting claims based upon their failure to protect him from a known danger.  Dkt. No. 13.  On October 20, 2008, Senior District Judge McAvoy issued an order accepting the new pleading for filing and ordering dismissal of Commissioner Fischer from the action in view of plaintiff's failure to name him as defendant in his amended complaint.  Dkt. No. 14.

In lieu of answering plaintiff's first amended complaint, on December 30, 2008 defendant Woods, the superintendent at Upstate at the time of the attack upon Polson, moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss plaintiff's claims against him.  Dkt. No. 18.  In his motion, Woods argued simply that plaintiff's complaint, as

<hr />

support of his claims, but abruptly ended the factual recitation mid-sentence.  *See* Complaint (Dkt. No. 1) p. 4.  In a motion seeking reconsideration of Judge McAvoy's initial order, Dkt. No. 5, plaintiff attached what he claims to be the original complaint. That version included not only the missing facts section, but also a section that listed three different causes of actions on the same page.  *See* Dkt. No. 5 (motion for reconsideration) at p. 8.  The additional facts, however, do not cure the deficiency perceived by the court based upon the lack of facts revealing involvement of defendants Fischer and Woods in the violations alleged.  *See* Dkt. Nos. 3 (Jan. 24, 2008 order) and 6 (Mar. 20, 2008 order) .

[6]     The first amended complaint was filed after the plaintiff was granted three extensions of the established deadline of April 19, 2008.  *See* Dkt. Nos. 7, 8, 9.

amended, failed to establish a basis for finding that he was personally involved in the conduct giving rise to the constitutional violation alleged. *Id.*

Prior to the court's issuance of a decision in connection with defendant Wood's motion, plaintiff filed a second amended complaint on his own accord. Dkt. No. 22. In view of the fact that this latest complaint still listed Superintendent Woods as a defendant, I issued a report on June 23, 2009 recommending dismissal of plaintiff's claims against defendant Woods as set forth in the second amended complaint. Dkt. No. 23. That recommendation was adopted by Judge McAvoy by an order dated July 17, 2009; in that order, it was noted that plaintiff's second amended complaint would be deemed by the court to supersede and replace the prior complaints filed, and that defendant "John Doe, Correction Officer, Upstate Correctional Facility", named in plaintiff's first amended complaint, would be dismissed as a defendant without prejudice since plaintiff's second amended complaint did not include him. Dkt. No. 25.

Plaintiff's second amended complaint, now the operative pleading before the court, names as defendants Superintendent Woods, who has already been dismissed from the action, as well as Commissioner of the

7

DOCS, Brian Fischer; Corrections Officers Grant, Winston, and Gonyea; and Corrections Sergeant Mulaam.[7]  Dkt. No. 22.  In that pleading Polson asserts three claims, arguing that 1) defendants failed to protect him from danger of being attacked by his cell mate; 2) defendants failed to provide medical treatment for his injuries resulting from the attack; and 3) defendants failed to properly investigate and answer grievances that he filed regarding the incident.  As relief, plaintiff's second amended complaint seeks compensatory damages in the sum of $100,000.

Presently pending before the court is a motion filed on November 18, 2009 by the remaining defendants in the action, seeking dismissal of plaintiff's second amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted.  Dkt. No. 35.  In their motion, defendants argue that 1) subjectively, there is no allegation that defendants were aware of facts from which they could infer that plaintiff was exposed to a risk of serious harm; 2) plaintiff does not allege facts demonstrating the requisite degree

---

[7]        As was noted above, plaintiff's claims against Commissioner Fischer were dismissed on October 20, 2008 in light of Polson's failure to name him in his first amended complaint.  Dkt. No. 14.   Defendant Fischer, however, is named as a defendant in plaintiff's second amended complaint and, accordingly, has signed and returned an acknowledgment of service form.  Dkt. No. 27; *see also* Dkt. No. 25 (court order dated 7/17/2009 directing that the United States Marshal effectuate service upon the defendants, including Commissioner Fischer).

of personal involvement by the defendants in the acts complained of; and 3) plaintiff's claim based upon the alleged failure of defendants to properly process grievances is not cognizable under 42 U.S.C. § 1983.  Plaintiff has since provided an affidavit in response to defendants' motion.  Dkt. No. 37.

Defendants' motion, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See also* Fed. R. Civ. P. 72(b).

III.   <u>DISCUSSION</u>

A.   <u>Dismissal Motion Standard</u>

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading, utilizing as a backdrop a pleading standard which, though unexacting in its requirements, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. *Ashcroft v. Iqbal*, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555, 127 S. Ct. 1955, (2007)). Rule 8(a)(2) of the Federal Rules of Civil

Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). *Id.* While modest in its requirement, that rule commands that a complaint contain more than mere legal conclusions; "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft,* 129 S. Ct. at 1950.

To withstand a motion to dismiss, a complaint must plead sufficient facts which, when accepted as true, state a claim which is plausible on its face. *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (citing *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570 127 S. Ct. at 1974).

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Cooper v. Pate*, 378 U.S. 546, 546, 84 S. Ct. 1723, 1734 (1964); *Miller v. Wolpoff & Abramson, LLP*, 321 F.3d

292, 300 (2d Cir. 2003), *cert. denied*, 540 U.S. 823, 124 S. Ct. 153 (2003);

*Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.).

The burden undertaken by a party requesting dismissal of a complaint

under Rule 12(b)(6) is substantial; the question presented by such a

motion is not whether the plaintiff is likely ultimately to prevail, "'but

whether the claimant is entitled to offer evidence to support the claims.'"

*Log On America, Inc. v. Promethean Asset Mgmt. L.L.C.*, 223 F. Supp.2d

435, 441 (S.D.N.Y. 2001) (quoting *Gant v. Wallingford Bd. of Educ.*, 69

F.3d 669, 673 (2d Cir. 1995)) (citations and quotations omitted).

When assessing the sufficiency of a complaint against this

backdrop, particular deference should be afforded to a *pro se* litigant

whose complaint merits a generous construction by the court when

determining whether it states a cognizable cause of action. *Erickson v.

Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 ("'[A] *pro se* complaint,

however inartfully pleaded, must be held to less stringent standards than

formal pleadings drafted by lawyers'") (quoting *Estelle v. Gamble*, 429

U.S. 97, 106, 97 S. Ct. 285, 292 (1976) (internal quotations omitted));

*Davis v. Goord*, 320 F.3d 346, 350 (2d Cir. 2003) (citation omitted);

*Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (Hurd, J.).

11

B.    Personal Involvement

In their motion, defendants challenge the sufficiency of plaintiff's allegations regarding defendants' roles in the constitutional deprivations alleged.  Personal involvement of a defendant in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282 (1978)). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).  The allegations of plaintiff's second amended complaint must be examined against this backdrop in order to determine whether he has stated a plausible claim of personal involvement of the named defendants.

1.    Defendant Fischer

Plaintiff's claim against defendant Fischer is apparently premised exclusively upon his role as the DOCS Commissioner; nowhere in plaintiff's complaint is there an allegation that defendant Fischer was an

12

active participant in the conduct giving rise to Polson's claims, or that he was even aware of the relevant events.

A supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor; there is no *respondeat superior* liability under section 1983. *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright,* 21 F.3d at 501. Vague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability. *Pettus v. Morgenthau,* 554 F.3d 293, 300 (2d Cir.2009) ("To the extent that [a] complaint attempts to assert a failure-to-supervise claim ... [that claim is insufficient where] it lacks any hint that [the supervisor] acted with deliberate indifference to the possibility that his subordinates would violate [plaintiff's] constitutional rights.") (citations omitted).

That is not to say that a supervisory official may never be held liable for a civil rights violation. Culpability on the part of a supervisory official can be established in one of several ways, including when that individual 1) has directly participated in the challenged conduct; 2) after learning of the violation through a report or appeal, has failed to remedy the wrong; 3)

13

created or allowed to continue a policy or custom under which

unconstitutional practices occurred; 4) was grossly negligent in managing

the subordinates who caused the unlawful event; or 5) failed to act on

information indicating that unconstitutional acts were occurring.  *Iqbal v.*

*Hasty,* 490 F.3d 143, 152-53 (2d Cir.2007), *overruled on other grounds*

*sub nom., Ashcroft v. Iqbal,* __ U.S. __, 129 S.Ct. 1937; *see also*

*Richardson,* 347 F.3d at 435; *Wright,* 21 F.3d at 501; *Williams v. Smith,*

781 F.2d 319, 323-24 (2d Cir.1986).

A thorough review of plaintiff's complaint and the attached

documents fails to disclose any allegations of personal involvement on the

part of defendant Fischer in the conduct giving rise to Polson's claims.

The only reference in plaintiff's complaint to defendant Fischer is in that

portion wherein the defendants are named; there, defendant Fischer's

position is listed as "Commissioner, NYSDOCS". *See* Second Amended

Complaint (Dkt. No. 22) § 3(a).  Plaintiff's complaint is devoid of any

allegations that defendant Fischer, as the DOCS Commissioner, was

involved in the alleged constitutional violations, that he allowed an

unconstitutional policy to occur, that he was negligent in the management

of a subordinate, or that he failed to act on information indicating that

14

unconstitutional acts were occurring.  *See generally id.*

In sum, plaintiff's complaint does not disclose any basis on which to conclude that defendant Fischer was personally involved in any of the constitutional deprivations alleged to a sufficient degree to support a finding of liability on his part.  Accordingly, I recommend dismissal of plaintiff's claims as against defendant Fischer, and, for the reasons set forth below, that he be afforded one final opportunity to replead.  *See Anderson v. Duke,* No. 9:04-CV-0030, 2006 WL 2792735, at *5 (N.D.N.Y. Sept.27, 2006) (Mordue, C.J. and Peebles, M.J.) (dismissing plaintiff's claim against a prison superintendent defendant with leave to replead where plaintiff alleged the defendant merely overheard a conversation relating to the claims in his complaint); *see also Orraca v. McCreery,* No. 9:04-CV-1183, 2006 WL 1133254, at *6 (N.D.N.Y. Apr.25, 2006) (Hurd, D.J. and Peebles, M.J.)[8] (dismissing plaintiff's claim against a defendant with leave to replead where defendant was named in caption but not described in body of complaint); *Hucks v. Artuz,* No. 99 Civ. 10420, 2001 WL 210238, at *5-*6 (S.D.N.Y. Feb.27, 2001) (granting a defendant who was named in the caption but not described in the body of an amended

---

[8]   Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

complaint motion to dismiss).

> 2.   <u>Defendants Mullam, Grant, Winston and Gonyea</u>

The allegations against the remaining defendants listed in plaintiff's second amended complaint are only marginally more informative than those against Commissioner Fischer.  Aside from being identified as defendants in the portion of the second amended complaint listing the parties, none of the corrections officials now sued are named in the body of plaintiff's complaint setting forth the factual basis for his claims, nor is there any indication of their roles in the alleged failure to protect him from harm, provide him medical treatment, and process his grievances.  From the attachments to plaintiff's complaint it appears that the sole basis for his claim of their involvement in the case is that each of them appears to have been on duty at the time of the assault on April 28, 2007, and that the misbehavior report issued to the plaintiff as a result of the incident was

authored by defendant Gonyea.[9, 10]  *See* Second Amended Complaint (Dkt. No. 22) Attachments.

Significantly, none of the defendants appear to have been on duty at 10:00 p.m. on April 27, 2007, when Polson allegedly  alerted an unidentified corrections officer to the threats made by his cell mate.  *See* First Amended Complaint (Dkt. No. 13) ¶ 13; Second Amended Complaint (Dkt. No. 22) p. 14 (attachment).   Rather than identifying specific conduct on the part of each of the named defendants, plaintiff's complaint speaks in general terms, stating, for example, that "it took *them* several minutes, to get to [his] cell, . . .", that he has "complained to the proper authorities about [his] injuries", and that he was endangered "when the Upstate corrections placed another inmate in the cell with [him]."  Second Amended Complaint (Dkt. No. 22) §§ 6, 7 (emphasis added).  These allegations are insufficient to establish the requisite personal involvement

---

[9]    There are several attachments to the plaintiff's second amended complaint, the pages of which are not separately numbered, nor are these attachments each separately identified as an exhibit.  The court will refer to these attachments by page number as filed with the court, even though they are unnumbered.

[10]    While the prison log appended to the plaintiff's complaint reads "4/29/07" in the portion encompassing the alleged attack, the times leading up to this shift change suggest that the date was written in error, and that the actual date should have been marked as April 28, 2007.  *See* Second Amended Complaint (Dkt. No. 22) pp. 13-14 (attachment).

on the part of the named defendants in the deprivations alleged in plaintiff's complaint.

As the foregoing suggests, I recommend a finding that plaintiff's claims against the remaining defendants in this action are subject to dismissal for lack of the showing of their personal involvement in the deprivations alleged.

### C.    Merits Of Plaintiff's Claims

While finding that plaintiff's claims against the main defendants in this action are subject to dismissal based upon their lack of personal involvement, I will nonetheless address the additional basis for defendants' motion, in which they also argue that none of the claims set forth in plaintiff's complaint contains merit.

#### 1.    Failure To Protect

The centerpiece of plaintiff's complaint is his claim that defendants failed to protect him from being assaulted by his cell mate, and thereby subjected him to cruel and unusual punishment, in violation of the Eighth Amendment.[11]

---

[11]    The amendment provides that "[e]xcessive bail shall not be required nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. Amend. VIII

18

Unquestionably, under the Eighth Amendment prison officials are required to take reasonable measures to guarantee the safety of inmates; this duty includes within it an obligation to protect prisoners from harm caused by fellow inmates. *Farmer v. Brennan*, 511 U.S. 825, 833-34, 114 S. Ct. 1970, 1976-77 (1994) (citations omitted); *see also Matthews v. Armitage*, 36 F. Supp. 2d 121, 124 (N.D.N.Y. 1999) (Homer, M.J.) (citing, *inter alia*, *Farmer*). When examining a failure to protect claim under the Eighth Amendment, a court must determine whether the inmate has demonstrated that 1) he or she was incarcerated under conditions posing a substantial risk of serious harm, and that 2) prison officials exhibited deliberate indifference to the inmate's plight. *Farmer*, 511 U.S. at 834, 837, 114 S. Ct. at 1977, 1979; *Matthews*, 36 F. Supp.2d at 124-25; *Coronado v. Lefevre*, 886 F.Supp. 220, 224 (N.D.N.Y. 1995) (Scullin, J.). As can be seen, this analysis entails both an objective and subjective inquiry.

In objective terms, a plaintiff must prove that an alleged deprivation is "sufficiently serious" such that it denied him or her the "minimal civilized measure of life's necessities." *Dawes v. Walker*, 239 F.3d 489, 493-94 (2nd Cir. 2001) (internal quotations and citations omitted), *overruled on*

19

*other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S. Ct. 992 (2002).  Specifically, as noted above, in situations where an inmate's safety is at issue, that person must demonstrate that he or she was incarcerated under conditions posing a substantial risk of serious harm. *Farmer*, 511 U.S. at 834, 837, 114 S. Ct. at 1977, 1979; *Dawes*, 239 F.3d at 493; *Matthews*, 36 F. Supp.2d at 124-25.

To demonstrate that defendants were deliberately indifferent to his or her plight, a plaintiff must show that prison officials actually knew of, but disregarded, an excessive risk to his or her health and safety – "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979; *Matthews*, 36 F. Supp.2d at 124-25.  Significantly, "a prisoner cannot base a federal civil rights action brought under 42 U.S.C. § 1983 on claims of a negligent failure of state prison officials to protect him from injury at the hands of another inmate."  *Morales v. New York State Dep't of Corr.*, 842 F.2d 27, 28 (2d Cir. 1988).

It should be noted that claims involving the alleged failure of prison officials to protect an inmate from harm are also subject to review under

the Fourteenth Amendment's substantive due process provision.  Though

the requisite mental state for establishing a Fourteenth Amendment failure

to protect claim is somewhat unclear, it is at least apparent that to be

legally cognizable under that provision, the actions alleged on the part of a

defendant must transcend mere negligence.  *Davidson v. Cannon*, 474

U.S. 344, 347-48, 106 S. Ct. 668, 670 (1986) (lack of due care simply

does not approach the sort of abusive government conduct that the Due

Process Clause was designed to prevent); *Daniels v. Williams*, 474 U.S.

327, 328, 106 S. Ct. 662, 663 (1986) (same); *Morales*, 842 F.2d at 30

(2nd Cir. 1988) (section 1983 does not provide cause of action for

negligent failure of prison officials to protect an inmate from injury); *Abdul-

Matiyn v. New York State Dep't of Corr. Servs.*, 871 F. Supp. 1542, 1546-

47 (N.D.N.Y. 1994) (Chin, J.) (citing *Morales*).

Defendants interpret plaintiff's complaint as suggesting that the

practice of double celling in a facility such as Upstate is inherently

dangerous and runs afoul of the Eighth Amendment.  Were this the sole

basis for plaintiff's failure to protect claim it would be facially meritless,

since the constitution does not contain a "one man, one cell" guarantee,

nor does double bunking in and of itself violate the Eighth or Fourteenth

Amendments.  *Robinson v. New York State Dep't of Corr. Services,* No.

08-CV-911 (TJM/GJD), 2009 WL 3246818, at 13  (N.D.N.Y. Sept. 30,

2009 (McAvoy, C.J. and DiBianco M.J.) (citing *Bell v. Wolfish*, 441 U.S.

520, 542, 99 S. Ct. 1861, 1875 (1979)).

In an earlier iteration of his complaint, plaintiff went beyond the mere

assertion that double bunking inherently violates the Eighth Amendment,

alleging that he was subjected to threats of physical harm from at least

two inmates and that he was moved out of two different cells as a result of

those threats.  *See* First Amendment Complaint (Dkt. No. 13) ¶ 9.  Plaintiff

further alleges that on April 27, 2007 he notified an unidentified officer that

the cell mate who ended up attacking him on the following day had been

threatening him, and requested to be moved out of that cell in order to

protect his safety.[12]  *Id.* ¶ 13.  Plaintiff also alleges that he suffers from

medical conditions that severely limit his mobility, making him more

vulnerable to attack.  First Amended Complaint (Dkt. No. 13) ¶ 17.  These

facts, taken together, could arguably establish that prison officials were

more than merely negligent in failing to protect him from a known risk of

_____

[12]      In his affidavit in opposition to defendants' motion, plaintiff asserts that
the inmate who attacked him was inherently dangerous as a result of having taken
"psych" drugs, a fact known to prison officials.  *See* Polson Aff. (Dkt. No. 37) at p. 1.

22

harm.  *See Simmons v. Lantz*, No. 3:04-CV-2180, 2007 WL 842008, at *3

(D. Conn.  Mar. 12, 2007) (holding that plaintiff's allegations that he

informed a defendant captain that he felt threatened by his cell mate, but

the defendant refused to move him to another cell, were sufficient to

withstand a motion to dismiss); *see also Colman v. Vasquez*, 142 F.

Supp.2d 226, 237 (D.Conn. 2001) (holding that because plaintiff prisoner

advanced factual allegations that a prison official knew the inmate faced a

substantial risk of serious harm, and failed to take reasonable measures to

abate that harm, his complaint should survive a motion to dismiss); *Sims

v. Bowen*, No. 96-cv-655, 1998 WL 146409, *3 (N.D.N.Y. March 23, 1998)

(Pooler, J.) (noting that, as plaintiff has alleged here, "an inmate must

inform a correctional officer of the basis for his belief that another inmate

represents a substantial threat to his safety before the correctional official

can be charged with deliberate indifference").

　　　　As was previously noted, the principal shortcoming of plaintiff's

complaint is his failure to establish a nexus between his complaint

regarding threats of violence on the part of his cell mate, the named

defendants' awareness of those complaints and their corresponding failure

to act.  In the event that plaintiff chooses to avail himself of the opportunity

to replead he must not only establish plausible claim that prison officials failed to protect him from a known danger, in violation of his Eighth Amendment rights, but additionally must set forth facts demonstrating the role of each of the named defendants in that failure. *Barbera v. Smith*, 836 F.2d 96, 99 (2d Cir. 1987).

### 2.   Medical Indifference

In his second amended complaint Polson also complains of deliberate medical indifference, although the essence of that claim remains somewhat unclear.  It appears from the second amended complaint and attached documents, including a grievance dated May 13, 2007, that Polson was denied medical treatment for his injuries following the assault, and requested but was denied a "medical cell" which would permit him to shower without having to stand up.  Second Amended Complaint (Dkt. No. 22) § 9 and p. 17 (attachment).

Claims that prison officials have intentionally disregarded an inmate's medical needs also fall under the umbrella of the protection afforded by the Eighth Amendment. *Estelle,* 429 U.S. at 102, 104, 97 S.Ct. at 290, 291.   As with claims alleging failure to protect, those claims alleging medical indifference must satisfy both an objective and subjective

24

requirement - that is, the conditions alleged must be "sufficiently serious"
from an objective point of view, and the plaintiff must demonstrate that
prison officials acted subjectively with "deliberate indifference."  *See Leach
v. Dufrain,* 103 F. Supp.2d 542, 546 (N.D.N.Y. 2000) (Kahn, J.) (citing
*Wilson v. Seiter,* 501 U.S. 294, 297 & 298, 111 S.Ct. 2321, 2323-2324
(1991)); *Waldo v. Goord,* No. 97-CV-1385, 1998 WL 713809, at *2
(N.D.N.Y. Oct. 1, 1998) (Kahn, J. & Homer, M.J.); *see also, generally,
Wilson,* 501 U.S. 294, 111 S.Ct. 2321.  Deliberate indifference exists if an
official "knows of and disregards an excessive risk to inmate health or
safety; the official must both be aware of facts from which the inference
could be drawn that a substantial risk of serious harm exists, and he must
also draw the inference."  *Farmer,* 511 U.S. at 837, 114 S.Ct. at 1978;
*Leach,* 103 F.Supp.2d at 546 (*citing Farmer,* 511 U.S. at 837, 114 S.Ct. at
1970); *Waldo,* 1998 WL 713809, at *2 (citing *Farmer*, 511 U.S. at 837, 114
S.Ct. at 1970).

a)      <u>Serious Medical Need</u>

In order to meet the objective prong of the governing Eighth
Amendment test in a medical indifference case, a plaintiff must first allege
a deprivation involving a medical need which is, in objective terms,

25

"'sufficiently serious.'"  *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994)

(quoting *Wilson,* 501 U.S. at 298, 111 S.Ct. at 2324), *cert. denied sub*

*nom., Foote v. Hathaway,* 513 U.S. 1154, 115 S.Ct. 1108 (1995).  A

medical need is serious for constitutional purposes if it presents "'a

condition of urgency' that may result in 'degeneration' or 'extreme pain'."

*Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir. 1998) (citations omitted).

A serious medical need can also arise where "'failure to treat a prisoner's

condition could result in further significant injury or the unnecessary and

wanton infliction of pain'"; since medical conditions vary in severity, a

decision to leave a condition untreated may or may not raise constitutional

concerns, depending on the facts.  *Harrison v. Barkley,* 219 F.3d 132,

136-37 (2d Cir. 2000) (quoting, *inter alia, Chance,* 143 F.3d at 702).

Relevant factors informing this determination include whether the plaintiff

suffers from an injury that a "'reasonable doctor or patient would find

important and worthy of comment or treatment'", a condition that "

'significantly affects'" a prisoner's daily activities, or "'the existence of

chronic and substantial pain.'"  *Chance,* 143 F.3d at 702 (citation omitted);

*Lafave v. Clinton County,* No. CIV. 9:00CV774, 2002 WL 31309244, at *3

(N.D.N.Y. Apr. 3, 2002) (Sharpe, M.J.) (citation omitted).

26

In this instance plaintiff asserts that he suffers from both a previous medical condition leaving him in a weakened physical state and the injuries he sustained from the assault.  First Amended Complaint (Dkt. No. 13) ¶ 19.  He further states that he has two other serious medical conditions, one in his right leg for which he wears a brace, and one in his back for which he also wears a brace. [13]  *Id.*  In the inmate grievance complaint attached to his second amended complaint plaintiff alleges that in his regular cell he must stand up in order to take a shower and as a result he is always in critical pain.  Second Amendment Complaint (Dkt. No. 22) p. 17 (attachment).  Standing up allegedly makes his pain worse and increases his risk of hurting himself while falling.  *Id.*  Based on these allegations, I find that plaintiff has plausibly alleged that he suffers from a serious medical need.  *Guarneri v. Hazzard,* No. 06-CV-0985, 2008 WL 552872, at *6 (N.D.N.Y. Feb. 27, 2008) (Mordue, C.J. and Homer, M.J.) (holding that severe back pain, especially if long-lasting, can amount to a serious medical need); *Faraday v. Lantz,* No. 03-CV-1520, 2005 WL 3465846, at *5 (D.Conn. Dec. 12, 2005) (holding that persistent

---

[13]        Plaintiff has attached to his most recent complaint the results of magnetic resonance imaging ("MRI") testing, revealing that he has sought and received medical treatment for these injuries in the past, prior to the time of the alleged assault.  Second Amended Complaint (Dkt. No. 22) pp. 15-16 (attachment).

27

complaints of "lower back pain caused by herniated, migrated discs [and]

sciatica ..." leading to severe pain constitute a serious medical need);

*Nelson v. Rodas*, No. 01-CV-7887 (RCC/AJP), 2002 WL 31075804, at *14

(S.D.N.Y. Sept.17, 2002) (holding that "[s]evere back pain, especially if

lasting an extended period of time, can amount to a serious medical

need).

### b)    Deliberate Indifference

In addition to establishing the existence of a serious medical need,

to prevail on an Eighth Amendment medical indifference cause of an

action a plaintiff must also establish indifference to that condition on the

part of one or more of the defendants.  *Leach,* 103 F. Supp.2d at 546.

Deliberate indifference, in a constitutional sense, exists if an official

"knows of and disregards an excessive risk to inmate health or safety; the

official must both be aware of facts from which the inference could be

drawn that a substantial risk of serious harm exists, and he [or she] must

also draw the inference."  *Farmer,* 511 U.S. at 837, 114 S.Ct. at 1979;

*Leach,* 103 F. Supp.2d at 546 (citing *Farmer,* 511 U.S. at 837, 114 S.Ct. at

1979); *Waldo,* 1998 WL 713809, at *2 (same).

Turning to the specific allegations of plaintiff's complaint it appears

28

that they are significantly deficient in terms of establishing that any of the named defendants were deliberately indifferent to his serious medical needs.  Plaintiff notes in his first amended complaint that following the attack he was "seen by the facility nurse and pictures were taken of [his] injuries" immediately after the assault occurred.  *See* First Amended Complaint (Dkt. No. 13) ¶ 16.  Looking more broadly at the overall medical attention received, it appears from the attachment to plaintiff's second amended complaint that he did receive medical attention for his conditions, including of September and August of 2006.  *See* Second Amended Complaint (Dkt. No. 22) pp. 14-15 (attachment).

Plaintiff also alleges that prison officials wrongfully denied him a medical cell after the alleged attack, and that as a result his pre-existing medical conditions were aggravated.  Second Amended Complaint (Dkt. No. 22) § 7, ¶ 2.  Plaintiff's complaint, however, does not cite any doctor's orders directing that he be provided a medical cell.  Accordingly, plaintiff has not sufficiently pleaded that any defendant named in his second amended complaint possessed the subjective reckless state of mind needed to permit a successful Eighth Amendment deliberate indifference claim.  *See Fransua v. Vadlamudi*, No-08-1715-PR, 2008 WL 4810066,

29

(2d Cir. 2008) (summary order) (dismissing prisoner plaintiff's claims of medical indifference where he did not allege that any defendants were aware of serious risks to which they allegedly subjected him) (cited in accordance with Fed. R. App. P. 32.1); *see also Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (holding that "mere allegation that treatment at [prison facility] was insufficient  [is not sufficient for a medical indifference claim] and that such a claim is, at best, a medical malpractice claim").

### 3.   Failure to Respond to Grievance

Plaintiff's third and final cause of action asserts that defendants improperly processed his inmate grievances.  In their motion, defendants assert that his claim is similarly legally deficient and not cognizable under section 1983.

It is well established that "[i]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim."  *Shell v. Brzesniak*, 365 F. Supp. 2d 362, 370 (W.D.N.Y. 2005).  Accordingly, the refusal to process an inmate's grievance or failure to ensure that grievances are properly processed does

not give rise to a claim cognizable under § 1983. *Cancel v. Goord*, No. 00 Civ. 2043, 2001 WL 303713, *3 (S.D.N.Y. Mar. 29, 2001). I therefore recommend that plaintiff's third cause of action be dismissed, without leave to replead.

D.    Leave to Amend the Complaint

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend *at least* once if there is any indication that a valid claim might be stated. *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991) (emphasis added); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires"); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F.Supp. 986, 1003 (E.D.N.Y.1995) (leave to replead granted where court could not say that under no circumstances would proposed claims provide a basis for relief). The court must next determine whether plaintiff is entitled to the benefit of this general rule, given the procedural history of the case.

Plaintiff commenced this lawsuit by filing the original complaint on January 1, 2008, accompanied by an application to proceed *in forma pauperis*. Dkt. Nos.1 and 2. After a routine, initial review of the that complaint, the court dismissed the complaint for, among other reasons,

31

failure to include any allegations against defendants Fischer and Woods.

Decision and Order dated January 24, 2008 (Dkt. No. 3).  At the time,

plaintiff was advised that personal involvement of a named defendant is

an essential element to be proven in any section 1983 action.  *See id.* at

p. 4.  In deference to his *pro se* status,  however, plaintiff was afforded an

opportunity to filed an amended complaint;  he was also instructed that the

amended complaint must be a complete pleading and that it would

supersede his original complaint in its entirety.  *See id.* at p. 5.

Instead of filing an amended pleading, plaintiff filed a motion for

reconsideration with a proposed amended complaint attached.  Dkt. No. 5.

Plaintiff's motion for reconsideration was denied, the proposed amended

complaint was rejected, and he was once again admonished that his

complaint against Fisher and Wood, as well as other individually named

defendants, must allege facts showing their personal involvement in the

alleged constitutional violation.  Decision and Order dated Mar. 20, 2008

(Dkt. No. 6) pp. 4-5.  The court permitted plaintiff "one final opportunity to

file an amended complaint [within thirty days] if he wish[ed] to avoid

dismissal", again warning that the amended complaint must be a complete

pleading and that it would supersede the original complaint in its entirety.

*Id.* at p. 5.  Plaintiff did not file an amended complaint as directed, despite having been granted several extensions of time.  *See* Dkt. Nos. 7, 8, and 9.  Instead, on July 3, 2008, he moved for appointment of counsel, or in the alternative, for voluntary dismissal of his action without prejudice and to be released from payment of all fees.  Dkt. No. 10.  Plaintiff's motion for appointment of counsel was denied, and plaintiff was advised that voluntary dismissal does not require a court order, but that he may not be released from payment of his filing fee.  Dkt. No. 11.  Before closing the action, the court granted plaintiff one further thirty-day extension of time to submit an amended complaint.

Plaintiff subsequently filed an amended complaint on September 2, 2008.[14]  Dkt. No. 13.  The only defendants named in that complaint were Robert K. Woods and John Doe Corrections Officer.  Upon defendant Woods' motion to dismiss, the court dismissed the claims against him without leave to replead because plaintiff's complaint failed, once again, to allege any facts tending to show Woods' personal involvement in the constitutional violation alleged.   Dkt. Nos. 23, 24.  Before the court issued

_____

[14]   Because plaintiff did not timely file the amended complaint, on September 2, 2008, the court issued a judgment dismissing the action.  Dkt. No. 12.  Plaintiff's amended complaint was filed that same day, and the judgement therefore was vacated.  Dkt. no. 14.

its report and recommendation that plaintiff's claim be dismissed, plaintiff filed the second amended complaint, the pleading to which the present motion is directed.

As demonstrated by the foregoing, plaintiff not only has been instructed on at least three separate occasions that he must allege facts demonstrating personal involvement of the named defendants in the constitutional violations that he claims, but he was already previously extended a "final" opportunity to amend his complaint to state a viable section 1983 claim. Dkt. No. 6. Under the circumstances presented, it would appear to be well within the court's discretion to finally dismiss plaintiff's complaint. *See, e.g., Smith v. Fischer*, No. 9:07-CV-1264, 2010 WL 145292 (N.D.N.Y. Jan. 11, 2010) (Hurd, D.J. and Lowe, M.J.); *Jones v. McMahon*, No. 5:98-CV-034, 2007 WL 2027910 (N.D.N.Y. Jul. 11, 2007) (Lowe, M.J.).

Notably, however, all of plaintiff's amended complaints were filed before any discovery, and, indeed, prior to any answer being filed. Additionally, defendants do not claim any prejudice resulting from plaintiff's repeated amendments. While plaintiff has been forewarned that dismissal would eventuate and already has twice amended his complaint,

34

it is obvious to the court that he is experiencing difficulty in formulating a proper pleading.  In recognition of this fact, without in any way detracting from the gravity of the court's previous directives to plaintiff, and affording plaintiff the deference to which he is entitled as a *pro se* litigant, *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594 (1972) (per curiam), I recommend that he be provided one last opportunity to submit an amended complaint alleging the personal involvement of the defendants named in this lawsuit. *See Martin v. Gold*, No. 1:05-CV-28, 2005 WL 1862116, at *3 (D.Vt. Aug. 4, 2005); *Schoolfield v. Dep't of Corr.*, No. 91 Civ. 1691, 1993 WL 190272, at *1 (S.D.N.Y. May 28, 1993); *see also Denny v. Barber*, 576 F.2d 465, 470-471 (2d Cir. 1978) (holding denial of leave to serve second amended complaint appropriate where plaintiff was on "the plainest notice of what was required" and failed to plead accordingly).  As plaintiff previously has been advised, such an amended complaint, must replace the existing second amended complaint, must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court, and should specifically allege facts indicating the involvement of each of the named defendants in the constitutional deprivations alleged in sufficient detail to establish the they

35

were tangibly connected to those deprivations.  *See Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir. 1986).

I note that although the primary focus of plaintiff's complaints in this action has been upon defendants' failure to protect him from harm, he has also attempted to assert claims of deliberate medical indifference.  While I have found that plaintiff's medical indifference claim set forth in his second amended complaint is subject to dismissal, I also recommend that plaintiff be granted one final opportunity to amend his complaint to both establish a plausible medical indifference claim and to identify any defendant who may have directly participated in the indifference to his serious medical needs.  *See Hale v. Rao*, No 9:08-CV-612, 2009 WL 3698420, *5 (N.D.N.Y. Nov. 3, 2009) (Hurd, D.J. and Lowe, M.J.) (denying motion to dismiss where plaintiff alleged that a defendant  doctor knew of a serious medical need and consciously disregarded that need by failing to acknowledge plaintiff's medical complaints);  *Beeks v. Reilly,* No. 07-CV-3865, 2008 WL 3930657, at *7 (E.D.N.Y. Aug. 21, 2008) (citation omitted) (reversing district court's dismissal of medical indifference claim at 12(b)(6) stage because "[w]hether a course of treatment was the product of sound medical judgment, negligence, or deliberate indifference

36

depends on the facts of the case. . ."); *Lloyd v. Lee,* 570 F. Supp.2d 556, 559 (S.D.N.Y.2008) (finding that amended complaint plausibly alleged that doctors knew that plaintiff was experiencing extreme pain and loss of mobility, knew that the course of prescribed course of treatment was ineffective, and declined to do anything to attempt to improve plaintiff's situation besides re-submitting MRI request forms).

IV.    SUMMARY AND RECOMMENDATION

Having carefully considered defendants' motion in view of the formative stage of the proceedings at which it is made, I find that defendants are entitled to dismissal of plaintiff's claims both on the merits and based upon lack of personal involvement.  I recommend, however, that plaintiff be given one final opportunity to amend his complaint to set forth plausible claims of defendants' failure to protect him from known danger and medical indifference to his serious medical needs.  Any such amended complaint should specifically identify the defendants involved in each of the claimed deprivations and set forth facts sufficient for the court to determine that a plausible claim of personal involvement on the part of each of the named defendants has been stated.

Based upon the foregoing, it is hereby respectfully

RECOMMENDED, that defendants' motion to dismiss plaintiff's second amended complaint (Dkt. No. 35) be GRANTED, with leave to replead as it relates to plaintiff's claims of failure to protect and deliberate medical indifference but without leave to replead with regard to plaintiff's cause of action for failure to properly process his grievances.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:        June 16,  2010
              Syracuse, New York

G:\prisoner\2008\08-030\Polsonrep-rec2.wpd



Not Reported in F.Supp.2d, 2006 WL 2792735 (N.D.N.Y.)
(Cite as: 2006 WL 2792735 (N.D.N.Y.))

H  Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Lessie ANDERSON, Plaintiff,
v.
Loyce DUKE, Dept. Superintendent of Programs;
Herbert McLaughlin, Superintendent, Hudson
Correctional Facility; Oscar McLaughlin; Rev.,
Coordinating Chaplain; D. Thomas Testo, Grievance
Supervisor; and Watch Commander, Defendants.
**Civil Action No. 9:04-CV-0030 (NAM/DEP).**

Sept. 27, 2006.

Lessie Anderson, pro se.

Hon. Eliot Spitzer, Office of the Attorney General, Janice
A. Dean, Esq., Assistant Attorney General, Albany, NY,
for Defendants.

**MEMORANDUM-DECISION AND ORDER**

NORMAN A. MORDUE, Chief District Judge.

**\*1** Plaintiff, formerly an inmate in the custody of the New
York State Department of Correctional Services
("DOCS"), brought this action under 42 U.S.C. § 1983,
alleging that while he was incarcerated, defendants
deprived him of his First Amendment right to free exercise
of his religious beliefs. He also claims that, after he filed
that an inmate grievance regarding the matter, prison
officials improperly disclosed information regarding his
grievance and conducted a hearing regarding the grievance
in his absence.

Presently before the Court is a motion (Dkt. No. 31) by
defendant Herbert McLaughlin to dismiss the amended

complaint against him based on the lack of his personal
involvement in the constitutional violations alleged. The
motion was referred to United States Magistrate Judge
David E. Peebles for a Report and Recommendation
pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule
72.3(c).

In his Report and Recommendation (Dkt. No. 42),
Magistrate Judge Peebles finds that, "even when
generously construed in his favor," plaintiff's amended
complaint (Dkt. No. 20) "fails to allege the moving
defendant's personal involvement in a cognizable,
constitutional violation[.]" Accordingly, Magistrate Judge
Peebles recommends that the motion be granted with leave
to replead.

Plaintiff has interposed an objection (Dkt. No. 43).
Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court conducts
a *de novo* review of those parts of a magistrate judge's
Report and Recommendation to which a party specifically
objects. Essentially, plaintiff's objection addresses the
merits of his claim against McLaughlin. These allegations
may be asserted in a second amended complaint filed in
accordance herewith.

It is therefore

ORDERED that the Report and Recommendation of
United States Magistrate Judge David E. Peebles (Dkt.
No. 42) is accepted and adopted; and it is further

ORDERED that the motion (Dkt. No. 31) by defendant
Herbert McLaughlin to dismiss the amended complaint is
granted with leave to replead; and it is further

ORDERED that if plaintiff chooses to replead his claims
against defendant Herbert McLaughlin, he is directed to
serve and file a second amended complaint on or before
October 30, 2006.

IT IS SO ORDERED.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2792735 (N.D.N.Y.)
(Cite as: 2006 WL 2792735 (N.D.N.Y.))

DAVID E. PEEBLES, Magistrate Judge.

*REPORT AND RECOMMENDATION*

Plaintiff Lessie Anderson, a former New York State prison inmate who is apparently also known as Jeffrey Benjamin, has commenced this civil rights action pursuant to 42 U.S.C. § 1983 alleging that while incarcerated he experienced a deprivation of his constitutional rights. In his complaint, plaintiff asserts that his First Amendment right to freely exercise his religious beliefs was infringed by prison officials, and that after filing an inmate grievance regarding the matter prison officials improperly disclosed information regarding his grievance, in violation of governing regulations, and additionally conducted a hearing regarding the grievance in his absence.

**\*2** Currently pending before the court is a motion by Herbert McLaughlin, one of the defendants named in plaintiff's complaint, seeking dismissal of plaintiff's claims against him based upon the lack of his personal involvement in the constitutional violations alleged. Because plaintiff's complaint, even when generously construed in his favor, fails to allege the moving defendant's personal involvement in a cognizable, constitutional violation, I recommend that his motion be granted, with leave to replead.

I. *BACKGROUND* [FN1]

> FN1. In light of the procedural posture of the case, the following recitation is drawn from plaintiff's complaint, the contents of which are deemed to be true for purposes of the pending motion. *Cooper v. Pate,* 378 U.S. 546, 546, 84 S.Ct. 1733, 1734 (1964).

Plaintiff is a former New York State prison inmate who, at the relevant times, was entrusted to the custody of the New York State Department of Correctional Services ("DOCS"), and incarcerated within the Hudson Correctional Facility ("Hudson"), located in Hudson, New York. Amended Complaint (Dkt. No. 20) at 2. From his complaint, it appears that during the time of his incarceration at Hudson plaintiff was a practicing Muslim. *Id.* at 3-4.

Plaintiff's allegations center around an Islamic prayer service known as Eid al-Fitr, conducted in November of 2003 in conjunction with the month of Ramadan. Amended Complaint (Dkt. No. 20) at 3-B. According to Anderson, while the Eid al-Fitr prayer service was to have taken place on November 25, 2003, it was deferred by prison officials, and not held until November 26, 2003. *Id.* Plaintiff's complaint attributes the delay in permitting participation in the Islamic prayer event to defendant Loyce Duke, the Deputy Superintendent of Programs at Hudson. *Id.* at 3, 3-B.

In or about late November, 2003, plaintiff filed an inmate grievance regarding the delay in scheduling the Eid al-Fitr prayer service. Amended Complaint (Dkt. No. 20) at 3-C. Plaintiff asserts that information regarding his grievance was improperly disclosed to others by defendant Oscar L. McLaughlin, a chaplain stationed at Hudson, in violation of governing regulations. *Id.* Plaintiff further alleges that defendant D. Thomas Testo, the Grievance Supervisor at the facility, scheduled and presided over a hearing before the Inmate Grievance Review Committee ("IGRC") to address his grievance, but that he was not permitted to attend that hearing. *Id.* at 3-C-3-D.

On December 19, 2003 plaintiff confronted Testo in the prison library, questioning the basis for the refusal to allow him to be present during the IGRC hearing. Amended Complaint (Dkt. No. 20) at 3-C-3-D. According to Anderson, Hudson Superintendent Herbert McLaughlin, who was also in the library at the time, overheard the conversation but took no action to address the issue. *Id.* at 3-D-3-E.

II. *PROCEDURAL HISTORY*

Plaintiff commenced this action on January 9, 2004 and, at the court's direction, filed an amended complaint on June 20, 2005. Dkt. Nos. 1, 6, 15, 20. Named as defendants in plaintiff's complaint, as amended, are Loyce Duke, Deputy Superintendent of Programs at the facility; Herbert McLaughlin, the Superintendent at Hudson; D.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2792735 (N.D.N.Y.)
(Cite as: 2006 WL 2792735 (N.D.N.Y.))

Thomas Testo, the Grievance Supervisor; Oscar L. McLaughlin, a prison chaplain; and a watch commander who is not identified by name in plaintiff's complaint. As relief, plaintiff's complaint seeks recovery of $100 million against each of the defendants.

**\*3** Three of the four defendants sued by Anderson, including Loyce Duke, Oscar L. McLaughlin, and Thomas Testo, have jointly interposed an answer to plaintiff's complaint, dated January 26, 2006, generally denying its allegations and asserting various defenses. Dkt. No. 30. The fourth named defendant, Herbert McLaughlin, has chosen instead to move seeking dismissal of plaintiff's claims against him, based upon the lack of any allegation showing his personal involvement in the constitutional violations alleged. Dkt. No. 31. The court has received no papers from or on behalf of the plaintiff in opposition to Superintendent McLaughlin's motion, which is now ripe for determination and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See also* Fed.R.Civ.P. 72(b).

III. *DISCUSSION*

A. *Legal Significance of Plaintiff's Failure To Oppose Defendants' Motion*

Confronted with a motion by defendant H. McLaughlin seeking dismissal of plaintiff's complaint as against him, Anderson has failed to provide the court with the benefit of any argument as to why that motion should not be granted. Before turning to the merits of the pending motion, I must first consider the legal consequences, if any, associated with that failure.

Although the plaintiff has filed no opposition to defendants' motion to dismiss, I am not precluded from recommending disposition of the motion without the benefit of his submission. *See, e.g., White v. Mitchell,* No. 99-CV-8519, 2001 WL 64756, at \*1 (E.D.N.Y. Jan. 18, 2001). Motions to dismiss test only the legal sufficiency of the complaint; accordingly, while a party should be given reasonable opportunity to respond to such a motion the court can determine the complaint's sufficiency as a matter

of law based on its own reading of the complaint and knowledge of the relevant case law. *McCall v. Pataki,* 232 F.3d 321, 322-23 (2d Cir.2000).

While under this court's local rules a party's failure to respond to a properly filed motion can be considered as signaling the lack of any opposition, before granting the motion the court must first make a threshold finding that the moving party has met its burden demonstrating entitlement to the relief requested. N.D.N.Y.L.R. 7.1(b)(3); *see also McCall,* 232 F.3d at 322-23 (holding that plaintiff's failure to respond to motion to dismiss in and of itself could not constitute basis for dismissal if plaintiff's complaint stated a claim for relief); *White,* 2001 WL 64756, at n. 2 (citing *McCall*). Accordingly, the court must review the pending motion for facial sufficiency before the relief sought can be awarded, notwithstanding plaintiff's failure to properly oppose the motion.

B. *Rule 12(b)(6) Standard*

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading, applying a standard which is neither controversial nor rigorous in its requirements. Under that provision, a court may not dismiss a complaint unless " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him [or her] to relief.' " *Davis v. Goord,* 320 F.3d 346, 350 (2d Cir.2003) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 102 (1957)). In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true, and draw all inferences in favor of the non-moving party. *Cooper,* 378 U.S. at 546, 84 S.Ct. at 1734; *Miller v. Wolpoff & Abramson, L.L.P.,* 321 F.3d 292, 300 (2d Cir.) (citation omitted), *cert. denied,* 540 U.S. 823, 124 S.Ct. 153 (2003); *Burke v. Gregory,* 356 F.Supp.2d 179, 182 (N.D.N.Y.2005) (Kahn, J.). The court's determination as to the sufficiency of a complaint must take into consideration the fact that the governing rules require only that the defendant be afforded "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley,* 355 U.S. at 47, 78 S.Ct. at 103; *see Phillips v. Girdich,* 408 F.3d 124, 127-29 (2d Cir.2005).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2792735 (N.D.N.Y.)
(Cite as: 2006 WL 2792735 (N.D.N.Y.))

**\*4** When assessing the sufficiency of a complaint against this backdrop, particular deference must be afforded to a *pro se* litigant; a court must generously construe a *pro se* plaintiff's complaint when determining whether it states a cognizable cause of action. *Davis,* 320 F.3d at 350 (citations omitted). A complaint drafted by an uncounselled plaintiff should not be dismissed unless "it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations." *Boddie v. Schnieder,* 105 F.3d 857, 860 (2d Cir.1997) (citation omitted). In the event of a perceived deficiency in a *pro se* plaintiff's complaint, court should not dismiss without granting leave to amend at least once if there is any indication that a valid claim could potentially be stated. *Branum v. Clark,* 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

C. *Lack of Personal Involvement*

The sole basis for Superintendent McLaughlin's dismissal motion is the contention that plaintiff's complaint fails to disclose any basis for finding personal involvement on his part in any constitutional deprivation. Personal involvement of a defendant in an alleged constitutional deprivation is a prerequisite to an award of damages under section 1983 against that party. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282 (1978)). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).

The fact that defendant H. McLaughlin is the superintendent of a prison facility at which constitutional violations are alleged to have occurred does not in and of itself expose him to liability for damages. A supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor-there is no *respondeat superior* liability under section 1983. *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright,* 21 F.3d at 501. A supervisory official can, however, be liable in one of several ways: 1) the supervisor may have directly participated in the challenged conduct; 2) the supervisor, after learning of the violation through a report or appeal, may have failed to remedy the wrong; 3) the supervisor may have created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) the supervisor may have been grossly negligent in managing the subordinates who caused the unlawful event; or 5) the supervisor may have failed to act on information indicating that unconstitutional acts were occurring. *Richardson,* 347 F.3d at 435; *Wright,* 21 F.3d at 501; *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986).

**\*5** The solitary allegation in plaintiff's complaint regarding Superintendent McLaughlin's participation in the events giving rise to plaintiff's claim surrounds a conversation between Anderson and defendant Testo, the inmate grievance supervisor at Hudson, concerning the fact that a grievance hearing had been conducted in plaintiff's absence. Amended Complaint (Dkt. No. 20) at 3-C-3-E. Plaintiff alleges that Superintendent McLaughlin witnessed that conversation and, surmising that he was able to overhear its contents, accuses him of failing to intervene on his behalf, noting that the Superintendent "never said a word[.]" *Id.* at 3-E.

In their motion defendants liken this situation to those circumstances under which courts have absolved facility superintendents or other similarly positioned supervisory employees of liability where allegations regarding their involvement are limited to the receipt of unanswered letters complaining of constitutional deprivations. *See, e.g.; Pettus v. Horn,* No. 04 Civ. 459, 2005 WL 2296561, at \*4 (S.D.N.Y. Sept. 21, 2005); *Greenwaldt v. Coughlin,* No. 93 Civ. 6551, 1995 WL 232736, at \*4 (S.D.N.Y.Apr.19, 1995) ("[I]t is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations .") (citing, *inter alia, Garrido v. Coughlin,* 716 F.Supp. 98, 100 (S.D.N.Y.1989) (dismissing claim against superintendent of prison where only allegation was that he ignored inmate's request for an investigation)). Those and other similar cases absolving supervisory DOCS employees of personal liability, however, are premised upon the inability to say with certainty that an ignored letter complaining of a constitutional deprivation provides a basis to conclude that

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2792735 (N.D.N.Y.)
(Cite as: 2006 WL 2792735 (N.D.N.Y.))

the recipient knew or reasonably should have been aware of the violation, but failed to act on information reflecting its existence. In this instance, however, it cannot be said based upon the allegations of plaintiff's complaint, construed in a light most favorable to him, that at trial he could not prove a set of circumstances which would lead a reasonable factfinder to conclude Superintendent McLaughlin was aware of, but failed to act with regard to, the contents of plaintiff's communication with defendant Testo. *See* Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir.1995).

This finding, however, does not end the inquiry. Under the relevant test for establishing supervisory liability, a plaintiff seeking to hold a defendant accountable under circumstances such as those now presented must establish that the defendant knew of and acquiesced in a constitutional deprivation. *See* Blyden v. Mancusi, 186 F.3d 252, 265 (2d Cir.1999) ("Of course, for a supervisor to be liable under Section 1983, there must have been an underlying constitutional deprivation."). In this instance, plaintiff's allegations regarding Superintendent McLaughlin's involvement focus solely upon the claim that a grievance hearing was improperly conducted in his absence. Plaintiff has not cited, nor am I aware of, any authority establishing that a failure to permit an inmate to be present at an IGRC hearing addressing a grievance filed by the prisoner represents a deprivation of constitutional proportions. *Cf.,* Dawes v. Leonard, 885 F.Supp. 375, 377-78 (N.D.N.Y.) (exclusion of inmate from attendance at disciplinary hearing does not represent a constitutional deprivation) (Baer, J.), *aff'd,* 71 F.3d 406 (2d Cir.1995); *see also* Odom v. Poirier, No. 99 Civ. 4933, 2004 WL 2884409, at *9-* 10 (S.D.N.Y. Dec. 10, 2004) (while the filing of inmate grievances is constitutionally protected, the manner in which such grievances are addressed is not subject to due process scrutiny). As such, plaintiff's allegations do not suffice to establish that through overhearing plaintiff's conversation with defendant Testo, Superintendent McLaughlin became aware of, but refused to act in connection with, a constitutional deprivation. *See* Colon, 58 F.3d at 873. Accordingly, plaintiff has not sufficiently alleged Superintendent McLaughlin's personal involvement in connection with an actionable constitutional deprivation to establish a potential basis for finding liability on his part.

IV. *SUMMARY AND RECOMMENDATION*

*6 The only allegations set forth in plaintiff's complaint against defendant Herbert McLaughlin, the Superintendent of the Hudson Correctional Facility, grow out of his allegedly having witnessed a conversation in which plaintiff complained to the inmate grievance coordinator of the fact that a grievance hearing was conducted in his absence. Since the holding by the IGRC of an inmate grievance hearing in the absence of the grieving inmate does not implicate a constitutional violation, plaintiff's allegations do not suffice to adequately plead Superintendent McLaughlin's personal involvement in a constitutional deprivation. It is therefore hereby

RECOMMENDED, that defendant Herbert McLaughlin's motion seeking dismissal of plaintiff's complaint as against him (Dkt. No. 31) be GRANTED, and that plaintiff's claims against that defendant be DISMISSED in all respects, with leave to replead.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72; Roldan v. Racette, 984 F.2d 85 (2d Cir.1993).

N.D.N.Y.,2006.
Anderson v. Duke
Not Reported in F.Supp.2d, 2006 WL 2792735 (N.D.N.Y.)

END OF DOCUMENT



Not Reported in F.Supp.2d, 2008 WL 3930657 (E.D.N.Y.)
(Cite as: 2008 WL 3930657 (E.D.N.Y.))

**H** Only the Westlaw citation is currently available.

United States District Court,
E.D. New York.
Rhashaun BEEKS, Plaintiff,
v.
Sheriff Edward REILLY, Nassau County Jail Medical,
and Kim Edwards, R.N., Defendants.
**No. 07-CV-3865 (JFB)(ARL).**

Aug. 21, 2008.

Rhashaun Beeks of the Nassau County Correctional Facility, East Meadow, NY, for Plaintiff.

Esther D. Miller, Esq. of the Nassau County Attorney's Office, Mineola, NY, pro se.

Edward J. Troy, Esq. of the Law Office of Edward J. Troy, Greenlawn, NY, pro se.

MEMORANDUM AND ORDER

JOSEPH F. BIANCO, District Judge.

**\*1** Plaintiff *pro se* Rhashaun Beeks ("plaintiff" or "Beeks") brought this action pursuant to 42 U.S.C. § 1983 and New York State tort law against defendants Sheriff Edward Reilly ("Reilly"), Nassau Health Care Corporation ("NHCC") FN1, and Kim Edwards, R.N. ("Edwards") (collectively, "defendants"), arising out of an injury plaintiff allegedly sustained on August 30, 2007, when he was incarcerated at the Nassau County Correctional Center. Defendants now move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the reasons set forth below, defendants' motions are denied with respect to Beeks's federal claims. However, the motions are granted with respect to

plaintiff's claims under New York State law.

FN1. The caption of plaintiff's complaint refers to NHCC as "Nassau County Jail Medical."

I. FACTS

The following facts are taken from the complaint and are not findings of fact by the Court. The Court assumes these facts to be true for the purpose of deciding this motion and construes them in the light most favorable to plaintiff, the non-moving party.

Beeks's complaint alleges the following:

On or about August 30th of 2007 I was walking on the 2nd Tier of K2F Block the floor was slippery and I slipped and fell against the wall, back first It was object sticking out from the wall (metal) The object on the wall stuck in my back and caused immediate pain. It left a gash and a scar about 12 inches on my back that made discoloration. Nassau Medical Center hasn't given me a xray or anything. Kim Edward RN didn't order for me to see about my back Sheriff Rielly [sic] has allowed these metal objects to remain sticking out the wall and hasn't made any effort to correct the hazard problem.

(Compl. at 4.) FN2

FN2. Moreover, Beeks stated in his opposition to the instant motion: "Both verbal and sick call reports were repeatedly put forth and no action was ever taken denying medical treatment to Mr. Beeks.... a gash and now serious scar of 12 inches identifies both the injury and it [sic] *significant seriousness.*" (Pl.'s Opp. at 1.)

II. PROCEDURAL HISTORY

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3930657 (E.D.N.Y.)
(Cite as: 2008 WL 3930657 (E.D.N.Y.))

Beeks filed the complaint in this action on September 14, 2007. On December 18, 2007, Reilly submitted his answer, as did NHCC and Edwards, jointly. Reilly filed an amended answer on December 19, 2007, and his motion for judgment on the pleadings on January 24, 2007. NHCC and Edwards submitted their joint motion for judgment on the pleadings on February 25, 2008. Plaintiff responded to both motions on March 24, 2008. By letters dated April 4, 2008 and May 5, 2008, respectively, Reilly and NHCC/Edwards notified the Court that they did not wish to submit reply briefs.[FN3]

> FN3. Reilly also asked the Court to disregard Beeks's opposition on the grounds that plaintiff "relies upon bald and conclusory allegations which lack any support." (Letter dated April 4, 2008, at 1.) As a threshold matter, Reilly has failed to set forth any such support for his assertion that the Court should disregard plaintiff's submission. In any event, in the exercise of its discretion, the Court has fully considered all of the submissions made by the parties.

### III. STANDARD OF REVIEW

Courts evaluate a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) under the same standard as a motion pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim. *Nicholas v. Goord,* 430 F.3d 652, 658 n. 8 (2d Cir.2005).

In reviewing a motion to dismiss under Rule 12(b)(6), a court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enter.,* 448 F.3d 518, 521 (2d Cir.2006); *Nechis v. Oxford Health Plans, Inc.,* 421 F.3d 96, 100 (2d Cir.2005). The plaintiff must satisfy "a flexible 'plausibility' standard, which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible.*" *Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) (emphasis in original). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic,* 127 S.Ct. at

1974. The Court does not, therefore, require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face." *Id.*

**\*2** Moreover, as the Second Circuit recently emphasized in *Sealed Plaintiff v. Sealed Defendant,* "[o]n occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds *pro se,* ... a court is obliged to construe his pleadings liberally.... This obligation entails, at the very least, a permissive application of the rules governing the form of pleadings.... This is particularly so when the *pro se* plaintiff alleges that her civil rights have been violated. Accordingly, the dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." *Sealed Plaintiff v. Sealed Defendant,* No. 06-1590-cv, 2008 U.S.App. LEXIS 17113, at \* 15-\* 16, 2008 WL 3294864 (2d Cir. Aug. 12, 2008) (citations and quotation marks omitted); *see also Weixel v. Bd. of Educ. of the City of N.Y.,* 287 F.3d 138, 145-46 (2d Cir.2002) (holding that when plaintiff is appearing *pro se,* the Court shall " 'construe [his complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests.' ") (quoting *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000)); *accord Sharpe v. Conole,* 386 F.3d 483, 484 (2d Cir.2004).

Finally, in connection with a motion to dismiss under Rule 12(b)(6), the Court may only consider "the facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference." *Nechis,* 421 F.3d at 100; *accord Kramer v. Time Warner Inc.,* 937 F.2d 767, 773 (2d Cir.1991). Here, plaintiff did not append any documents to his complaint or incorporate any such documents by reference therein and, thus, the Court confines its review to the face of the complaint.

### IV. DISCUSSION

#### A. Section 1983 Claims

To prevail on a claim under Section 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law. 42 U.S.C. §

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3930657 (E.D.N.Y.)
(Cite as: 2008 WL 3930657 (E.D.N.Y.))

1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993). Here, pursuant to Section 1983, plaintiff claims that his Eighth Amendment rights [FN4] were violated when (1) Reilly allegedly "allowed these metal objects to remain sticking out the wall and hasn't made any effort to correct the hazard problem," leading to Beeks's injury; and (2) NHCC and Edwards allegedly did not adequately address Beeks's medical needs arising out of this injury. As set forth below, the Court denies defendants' motions to dismiss these claims.

> FN4. The Court is aware that "Eighth Amendment claims are only available to plaintiffs who have been convicted of a crime," *Hill v. Nieves,* No. 06 Civ. 8213, 2008 U.S. Dist. LEXIS 25911, at *15, 2008 WL 858455 (Mar. 31, 2008), and the complaint does not state whether Beeks was convicted of a crime at the time of the incident in question. However, as courts routinely recognize, "[t]he rubric for evaluating deliberate indifference claims is the same under the Eighth and Fourteenth Amendments." *Id.* Thus, as defendants suggest, the Court applies the standard for Eighth Amendment deliberate indifference claims to evaluate Beeks's complaint.

(1) Deliberate Indifference Claim Against Reilly

As stated *supra,* Beeks claims that Reilly personally violated plaintiff's Eighth Amendment rights as follows: "Sheriff Rielly [sic] has allowed these metal objects to remain sticking out the wall and hasn't made any effort to correct the hazard problem." As the Court further stated *supra,* plaintiff alleges that, as a result of Reilly's conduct, a metal object lodged in plaintiff's back, causing a "gash" and scar of approximately twelve inches in length.

**\*3** Reilly now moves to dismiss Beeks's claim on the grounds that plaintiff fails to state a claim for "deliberate indifference" as a matter of law. For the reasons set forth below-after accepting all of the allegations in the complaint as true and construing the complaint liberally and in the light most favorable to plaintiff-the Court

rejects Reilly's argument.

a. Legal Standard

As the Second Circuit has explained,

> [t]he Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody. Moreover, under 42 U.S.C. § 1983, prison officials are liable for harm incurred by an inmate if the officials acted with 'deliberate indifference' to the safety of the inmate. However, to state a cognizable section 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice."

*Hayes v. N.Y. City Dep't of Corrections,* 84 F.3d 614, 620 (2d Cir.1996) (citations and quotation marks omitted); *see also Graham v. Poole,* 476 F.Supp.2d 257, 259-60 (W.D.N.Y.2007) ("For purposes of Eighth Amendment claims, the Supreme Court has drawn a 'distinction between mere negligence and wanton conduct ....' ") (quoting *Whitley v. Albers,* 475 U.S. 312, 322, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)). Thus, according to the Second Circuit,

> Defendants may be held liable under § 1983 if they ... exhibited deliberate indifference to a known injury, a known risk, or a specific duty, and their failure to perform the duty or act to ameliorate the risk or injury was a proximate cause of plaintiff's deprivation of rights under the Constitution. Deliberate indifference is found in the Eighth Amendment context when a prison supervisor knows of and disregards an excessive risk to inmate health or safety.... Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause.

*Ortiz v. Goord,* No. 06-4622-pr, 2008 U.S.App. LEXIS 9655, at *2, 2008 WL 1945912 (2d Cir. May 5, 2008) (citations and quotation marks omitted); *see also Harrison v. Barkley,* 219 F.3d 132, 137 (2d Cir.2000) ("Deliberate indifference will exist when an official 'knows that inmates face a substantial risk of serious harm and

Not Reported in F.Supp.2d, 2008 WL 3930657 (E.D.N.Y.)
(Cite as: 2008 WL 3930657 (E.D.N.Y.))

disregards that risk by failing to take reasonable measures to abate it.' ") (quoting *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Curry v. Kerik,* 163 F.Supp.2d 232, 237 (S.D.N.Y.2001)) (" '[A]n official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' ") (quoting *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998)) (internal quotation marks omitted).

In particular, the Second Circuit has set forth a two-part test for determining whether a prison officials actions or omissions rise to the level of deliberate indifference:

> **\*4** The test for deliberate indifference is twofold. First, the plaintiff must demonstrate that he is incarcerated under conditions posing a substantial risk of serious harm. Second, the plaintiff must demonstrate that the defendant prison officials possessed sufficient culpable intent. The second prong of the deliberate indifference test, culpable intent, in turn, involves a two-tier inquiry. Specifically, a prison official has sufficient culpable intent if he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm.

*Hayes,* 84 F.3d at 620; *see also Phelps v. Kapnolas,* 308 F.3d 180, 185-86 (2d Cir.2002) (setting forth two-part test articulated in *Hayes* ).

### b. Application

Here, after liberally reviewing the complaint, accepting all its allegations as true, and construing them in the light most favorable to plaintiff, the Court declines to conclude as a matter of law that Beeks has failed to state a claim for deliberate indifference against Reilly. In essence, Beeks alleges that Reilly knew of a metal object protruding from the wall that was capable of causing-and, indeed, allegedly did cause-a painful, foot-long gash in plaintiff's back. Under these circumstances, the Court declines to conclude

as a matter of law at this juncture that Reilly did not know of the protruding metal object or that he would have acted reasonably in knowingly failing to fix a condition that allegedly posed a substantial risk of serious harm. *See Phelps,* 308 F.3d at 186-87 (reversing district court's dismissal of deliberate indifference claim at motion to dismiss stage because "[h]owever unlikely it may appear to a court from a plaintiff's complaint that he will ultimately be able to prove an alleged fact such as mental state, the Court may not go beyond FRCP 8(a)(2) to require the plaintiff to supplement his pleadings with additional facts that support his allegation of knowledge either directly or by inference"); *Curry,* 163 F.Supp.2d at 237 ("Although plaintiff asserted in his opposition to defendants' motion to dismiss that defendants acted negligently, the substance of his claim is that defendants failed to repair the shower in Unit 2-B for over nine months, despite the fact that they were alerted to the conditions in the shower area several times, and their failure to make these requested repairs led to his injury. These assertions, if true, would support a finding of deliberate indifference.").[FN5]

> **FN5.** Further, to the extent plaintiff was a pretrial detainee (as NHCC and Edwards suggest in their moving papers (*see* Motion of NHCC and Edwards at 2)), the Second Circuit may mandate an even more lenient standard to analyze plaintiff's claim than the Court employed on the instant motion. In particular, the Second Circuit has explained that, "in a challenge by pretrial detainees asserting a *protracted* failure to provide safe prison conditions, the deliberate indifference standard does not require the detainees to show anything more than actual or imminent substantial harm." *Benjamin v. Fraser,* 343 F.3d 35, 51 (2d Cir.2003) (emphasis in original). For the same reasons discussed *supra* pursuant to the stricter standard, the Court cannot determine as a matter of law at this juncture whether Reilly neglected the hazard in question for a lengthy time period despite the alleged risk of substantial, imminent harm and demonstrated reckless indifference to that condition. Thus, to the extent that plaintiff is a pre-trial detainee, his claim against Reilly also survives a motion to dismiss.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3930657 (E.D.N.Y.)
(Cite as: 2008 WL 3930657 (E.D.N.Y.))

(2) Deliberate Medical Indifference Claim Against
NHCC and Edwards

As described *supra,* Beeks alleges that NHCC and Edwards violated his Eighth Amendment rights when-after a metal object lodged in plaintiff's back, causing pain and a twelve-inch gash and scar-NHCC failed to provide Beeks with an x-ray "or anything" and Edwards failed to "order for [Beeks] to see about [his] back." NHCC and Edwards now move to dismiss the claims against them on the grounds that plaintiff has failed to state a claim for "deliberate medical indifference" as a matter of law. For the reasons set forth below, after liberally reviewing the complaint, accepting all of its allegations as true, and construing them in the light most favorable to plaintiff, the Court rejects the argument of NHCC and Edwards.

a. Legal Standard

**\*5** As the Second Circuit has explained, "[d]eliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment, in violation of the Eighth Amendment, as made applicable to the states through the Fourteenth Amendment." *Bellotto v. County of Orange,* No. 06-1185-pr, 2007 U.S.App. LEXIS 19848, at \*7, 2007 WL 2398780 (2d Cir. Aug. 21, 2007). In particular, the Second Circuit has held that, similar to the deliberate indifference claim lodged against Reilly,

> To establish an Eighth Amendment claim for medical indifference, [a plaintiff] must prove that defendants were deliberately indifferent to a serious medical need. To satisfy this standard, [a plaintiff] must prove both objective and subjective elements. Objectively, the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists. Subjectively, the charged official must act with a sufficiently culpable state of mind.

*Fox v. Fischer,* No. 05-4440-pr, 2007 U.S.App. LEXIS 17316, at \* 1-\*2, 2007 WL 2089967 (2d Cir. July 20, 2007) (citations and quotation marks omitted).

Specifically, in *Salahuddin v. Goord,* the Second Circuit clarified the requirements of these two elements of a medical indifference claim. 467 F.3d 263 (2d Cir.2006); *see also, e.g., Jones v. Westchester County Dep't of Corrections Medical Dep't,* No. 07 Civ. 3019, 2008 U.S. Dist. LEXIS 38128, at \*8-\*9, 2008 WL 2009674 (S.D.N.Y. May 6, 2008) (applying *Salahuddin* test to medical indifference claim). In particular, with respect to the first, objective element, the Second Circuit explained:

> The first requirement is objective: the alleged deprivation of adequate medical care must be sufficiently serious. Only deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Determining whether a deprivation is an objectively serious deprivation entails two inquiries. The first inquiry is whether the prisoner was actually deprived of adequate medical care. As the Supreme Court has noted, the prison official's duty is only to provide reasonable care. Thus, prison officials who act reasonably [in response to an inmate-health risk] cannot be found liable under the Cruel and Unusual Punishments Clause, and, conversely, failing to take reasonable measures in response to a medical condition can lead to liability.

> Second, the objective test asks whether the inadequacy in medical care is sufficiently serious. This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner. For example, if the unreasonable medical care is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious. Factors relevant to the seriousness of a medical condition include whether a reasonable doctor or patient would find [it] important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain. In cases where the inadequacy is in the medical treatment given, the seriousness inquiry is narrower. For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3930657 (E.D.N.Y.)
(Cite as: 2008 WL 3930657 (E.D.N.Y.))

condition alone. Thus, although we sometimes speak of a serious medical condition as the basis for an Eighth Amendment claim, such a condition is only one factor in determining whether a deprivation of adequate medical care is sufficiently grave to establish constitutional liability.

**\*6** 467 F.3d at 279-80 (citations and quotation marks omitted); *see also* Jones, 2008 U.S. Dist. LEXIS 38128, at *8, 2008 WL 2009674 ("Initially, the Court must determine whether the inmate was actually denied adequate care. Prison officials are not obligated to provide inmates with whatever care the inmates desire. Rather, prison officials fulfill their obligations under the Eighth Amendment when the care provided is reasonable. Second, if the care provided was unreasonable, courts must inquire as to whether that inadequacy was sufficiently serious.... This analysis requires an examination both of the harm already caused to the prisoner and the likelihood that harm will continue or increase without additional treatment. Thus, the seriousness inquiry will vary based on the nature of the treatment provided and the claim asserted by the inmate.") (citations and quotation marks omitted).

With respect to the second, subjective component, the Second Circuit further explained:

The second requirement for an Eighth Amendment violation is subjective: the charged official must act with a sufficiently culpable state of mind. In medical-treatment cases not arising from emergency situations, the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health. Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law. This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result. Although less blameworthy than harmful action taken intentionally and knowingly, action taken with reckless indifference is no less actionable. The reckless official need not desire to cause such harm or be aware that such harm will surely or almost certainly result. Rather, proof of awareness of a substantial risk of the harm suffices. But recklessness

entails more than mere negligence; the risk of harm must be substantial and the official's actions more than merely negligent.

Salahuddin, 467 F.3d at 280 (citations and quotation marks omitted); *see also* Jones, 2008 U.S. Dist. LEXIS 38128, at *9-*10, 2008 WL 2009674 ("The second component is subjective, and requires that the prison official involved act with s sufficiently culpable state of mind. This is satisfied by a showing that the official acted with deliberate indifference toward Plaintiff's health, a state of mind akin to criminal recklessness. This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result.") (citations and quotation marks omitted).

b. Application

Here, the Court has liberally construed Beeks's complaint-taking all of its allegations as true and construing them in the light most favorable to plaintiff-and, for the reasons set forth below, declines to conclude at this juncture as a matter of law that he has failed to state a claim for deliberate medical indifference against Edwards and NHCC.

**\*7** In particular, the Court declines to conclude at the motion to dismiss stage, as a matter of law, that Beeks's injury was not serious enough to warrant a greater degree of medical care than he received or that Edwards and NHCC did not act recklessly by allegedly failing to provide this greater degree of care. Specifically, as stated *supra,* Beeks has alleged that a metal object "stuck in [his] back" and caused "immediate pain." Plaintiff further alleges that the metal object "left a gash" and a scar of approximately twelve inches on his back, as a well as "discoloration." With respect to the alleged medical treatment he received (or did not receive), Beeks states that NHCC "hasn't given [him] an xray or anything" and that Edwards "didn't order for me to see about my back." In essence, the complaint alleges that NHCC and Edwards provided Beeks with little or no medical care after a metal object lodged in plaintiff's back, causing a gash and a foot-long scar. As the Second Circuit has explicitly observed, a "prisoner who nicks himself shaving obviously

Not Reported in F.Supp.2d, 2008 WL 3930657 (E.D.N.Y.)
(Cite as: 2008 WL 3930657 (E.D.N.Y.))

does not have a constitutional right to cosmetic surgery. But if prison officials deliberately ignore the fact that a prisoner has a five-inch gash on his cheek that is becoming infected, the failure to provide appropriate treatment might well violate the Eighth Amendment." *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998). Under the circumstances of this case, therefore, the Court declines to conclude as a matter of law at the motion to dismiss stage that plaintiff's alleged foot-long gash did not warrant a greater degree of medical care than he allegedly received or that Edwards and NHCC did not act recklessly by failing to provide Beeks with such a higher degree of care. *See Chance,* 143 F.3d at 703-04 (reversing district court's dismissal of medical indifference claim at 12(b)(6) stage because "[w]hether a course of treatment was the product of sound medical judgment, negligence, or deliberate indifference depends on the facts of the case.... It may be that Chance has no proof whatsoever of this improper motive, and that lack of proof may become apparent at summary judgment. But even if we think it highly unlikely that Chance will be able to prove his allegations, that fact does not justify dismissal for failure to state a claim, for Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations ....") (citations and quotation marks omitted); *Jones,* 2008 U.S. Dist. LEXIS 38128, at *15-*16, 2008 WL 2009674 ("Whatever the ultimate merits of Plaintiff's claim, Defendants have jumped the gun by filing a pre-answer motion to dismiss. Many of the material questions in this case, such as, 'What care is reasonable in these circumstances,' and 'What was the Defendants' mental state when the surgery was refused,' are not ripe for adjudication on the basis of the complaint and its appended materials. It may become clear, at summary judgment or at some later stage in the litigation, that these claims are not adequately supported. But at the 12(b)(6) stage, we must accept the plaintiff's allegations as true.") (citation and quotation marks omitted); *Ahart v. Willingham,* No. 3:05CV1016, 2007 U.S. Dist. LEXIS 19040, at *11-*12, 2007 WL 842006 (D.Conn. Mar. 15, 2007) (denying motion to dismiss medical indifference claim where plaintiff allegedly complained to prison officials of blurry vision and headaches and defendants allegedly failed to diagnose and treat plaintiff's glaucoma); *see generally Odom v. Kerns,* No. 99-CV-10668, 2008 U.S. Dist. LEXIS 47336, at *23, 2008 WL 2463890 (S.D.N.Y. June 18, 2008) (denying summary judgment to defendants on medical indifference claims where plaintiff alleged "scrapes and cuts" that "could have (and did) become infected," even though "there is no evidence that

the cuts would inhibit Plaintiff's daily activities or that he would be in chronic pain").

(3) Qualified Immunity

**\*8** Defendants also argue that they are entitled to dismissal on the grounds of qualified immunity. As set forth below, the Court concludes that the complaint does not provide a sufficient basis at this juncture for the Court to determine whether defendants are entitled to qualified immunity. The motions to dismiss on such grounds, therefore, are denied without prejudice to renewal at the summary judgment stage.

a. Legal Standard

According to the Second Circuit, government actors may be shielded from liability for civil damages if their "conduct did not violate plaintiff's clearly established rights, or if it would have been objectively reasonable for the official to believe that his conduct did not violate plaintiff's rights." *Mandell v. County of Suffolk,* 316 F.3d 368, 385 (2d Cir.2003); *see also Fielding,* 2007 U.S.App. LEXIS 28939, at *4, 257 Fed. Appx. 400 ("The police officers, in turn, are protected by qualified immunity if their actions do not violate clearly established law, or it was objectively reasonable for them to believe that their actions did not violate the law."). As the Second Circuit has also noted, "[t]his doctrine is said to be justified in part by the risk that the 'fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.' " *McClellan v. Smith,* 439 F.3d 137, 147 (2d Cir.2006) (quoting *Thomas v. Roach,* 165 F.3d 137, 142 (2d Cir.1999) (quotation marks omitted)). Thus, as with absolute immunity, qualified immunity is not merely a defense, but rather is also "an entitlement not to stand trial or face the other burdens of litigation." *Forsyth,* 472 U.S. at 526. Accordingly, as with absolute immunity, courts should determine the availability of qualified immunity "at the earliest possible stage in litigation." *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991).

Further, the Second Circuit has emphasized that "a defendant presenting an immunity defense on a Rule

Not Reported in F.Supp.2d, 2008 WL 3930657 (E.D.N.Y.)
(Cite as: 2008 WL 3930657 (E.D.N.Y.))

12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route." *McKenna v. Wright,* 386 F.3d 432, 436 (2d Cir.2004); *see also McCray,* 2007 U.S. Dist. LEXIS 90875, at *66, 2007 WL 4352748 ("A defendant asserting a qualified immunity defense at the 12(b)(6) stage ... faces a formidable hurdle.... Because the evidence supporting a finding of qualified immunity is normally adduced during the discovery process and at trial, the defense of qualified immunity [usually] cannot support the grant of a Fed.R.Civ.P. 12(b)(6) motion for failure to state a claim upon which relief can be granted.") (citations and quotation marks omitted). In particular, the facts supporting the defense must be clear from the face of the complaint. In addition, in such situations, "plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Id.*

b. Application

**\*9** Here, after liberally reviewing the complaint, accepting all of its allegations as true, and construing them in Beeks's favor, the Court declines to conclude as a matter of law that defendants are entitled to qualified immunity at the motion to dismiss stage. In essence, Beeks alleges that Reilly knew of hazard capable of create a foot long gash in an inmate's back and did not rectify the situation. Further, plaintiff alleges that, after he received such an injury, NHCC and Edwards knowingly failed to provide Reilly with adequate, if any, medical care. Under these circumstances, the Court cannot determine as a matter of law at this juncture that defendants were objectively reasonable in believing that they were not violating plaintiff's clearly established rights. Defendants' motions to dismiss the complaint on qualified immunity grounds, therefore, are denied without prejudice to defendants' raising this defense at the summary judgment stage. *See McKenna,* 386 F.3d at 437-38 (affirming district court's denial of qualified immunity at motion to dismiss stage on deliberate indifference claim, "[h]owever the matter may stand at the summary judgment stage, or perhaps at trial...."); *Jones,* 2008 U.S. Dist. LEXIS 38128, at *17, 2008 WL 2009674 (denying motion to dismiss deliberate medical indifference claim because plaintiff "adequately alleges facts that, if believed, state a section 1983 violation"); *Estate of Ryan Rodriguez v. Simon,* No. 2:06-CV-125, 2007 U.S. Dist. LEXIS 55982, at *26-\*27,

2007 WL 2154238 (D.Vt. Mar. 30, 2007), *adopted in full,* 2007 U.S. Dist. LEXIS 52411, 2007 WL 2107542 (D.Vt. July 19, 2007) (denying motion to dismiss deliberate medical indifference claim on qualified immunity grounds because "the facts in support of that defense do not appear on the face of the Amended Complaint for any of the three defendants here. The qualified immunity defenses of these officials would benefit from discovery to flesh out more thoroughly the circumstances and motivations of their conduct.").

B. State Law Claims

To the extent that Beeks brings unspecified claims under New York State tort law (presumably, for negligence), the Court agrees with defendants that these claims fail because plaintiff failed to file a notice of claim in compliance with New York State General Municipal Law § 50-e.

Under New York General Municipal Law § 50(e)(1)(a), a plaintiff must file a notice of claim against a county or its employees within ninety days after such claim arises. New York County Law § 52 (citing N.Y. Gen. Mun. Law § 50(e)). Moreover, pursuant to Section 50-i, a plaintiff must plead in the complaint that: (1) the notice of claim was served; (2) at least thirty days has elapsed since the notice of claim was filed and before the complaint was filed; and (3) in that time, the defendant has neglected to or refused to adjust or to satisfy the claim. *See Henneberger v. County of Nassau,* 465 F.Supp.2d 176, 198 (E.D.N.Y.2006) (citing *Horvath v. Daniel,* 423 F.Supp.2d 421, 423 (S.D.N.Y.2006)). The plaintiff bears the burden of demonstrating compliance with the notice of claim requirement. *Id.* (citing *Horvath,* 423 F.Supp.2d at 423,* and *Rattner v. Planning Comm'n of Vill. of Pleasantville,* 156 A.D.2d 521, 548 N.Y.S.2d 943 (N.Y.App.Div.1989)). Here, plaintiff failed to mention any Notice of Claim in the complaint and does not appear to respond in his opposition papers to defendants' motions to dismiss his state law claims on this ground.

**\*10** "Notice of claim requirements are construed strictly by New York state courts. Failure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action." *Hardy v. New York City Health & Hosps. Corp.,* 164 F.3d 789, 793-94 (2d Cir.1999)

Not Reported in F.Supp.2d, 2008 WL 3930657 (E.D.N.Y.)
(Cite as: 2008 WL 3930657 (E.D.N.Y.))

(internal quotations and citations omitted); see *Horvath,* 423 F.Supp.2d at 423 ("Absent a showing of such a Notice of Claim, the complaint may be dismissed for failure to state a cause of action.") (internal quotation omitted). Accordingly, for the state law claims asserted in this case, "[t]he failure to file a notice of claim is fatal unless the action has been brought in the public interest, such as a class action brought to protect civil rights, or a court has granted leave to serve late notice." *Pustilnik v. Hynes,* No. 99 Civ. 4087(JG), 2000 U.S. Dist. LEXIS 8718, at *6, 2000 WL 914629 (E.D.N.Y. June 27, 2000) (citing *Mills v. Monroe County,* 59 N.Y.2d 307, 308, 464 N.Y.S.2d 709, 451 N.E.2d 456 (N.Y.1983), *overruled on other grounds* by *Felder v. Casey,* 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988) (holding that a state notice of claim provision may not be applied to bar a federal civil rights claim).

The Court finds that the instant action, a private civil rights lawsuit, has not been brought in the public interest. *See, e.g., Feldman v. Nassau County,* 349 F.Supp.2d 528, 539 (E.D.N.Y.2004) (finding employment discrimination claim that "seeks enforcement of [plaintiff's] private interests" is not in public interest); *Atkins v. County of Orange,* 251 F.Supp.2d 1225, 1235 (S.D.N.Y.2003) ("[T]he public interest exception [to the notice of claim requirement] does not apply when plaintiffs are seeking money damages for the sole purpose of redressing plaintiffs' individual injuries."); *id.* (finding that, while plaintiffs' recovery might have an effect on others' interests, "we do not think such an effect would be of any greater value to the public than any other award to civil rights plaintiffs"); *Turner v. County of Suffolk,* 955 F.Supp. 175, 177 (E.D.N.Y.1997). Moreover, as discussed below, this Court cannot grant plaintiff leave to serve late notice.

Accordingly, because plaintiff failed to serve a timely notice of claim, all of his state law claims are dismissed without prejudice. *See Gaffney,* 182 F.Supp.2d 278 (dismissing NYHRL claims for failure to serve timely notice of claim). Plaintiff may return to federal court with his pendent state law claims only after he has satisfied the condition precedent required by Sections 52 and 50-e-that is, after he has filed an application to the appropriate state court for leave to file a late notice of claim, that request has been granted, and such a notice has been filed. *See Brown v. Metro. Transp. Auth.,* 717 F.Supp. 257, 261

(S.D.N.Y.1989); *Horvath,* 423 F.Supp.2d at 425. [FN6]

FN6. The Court is aware of the provision in Section 50-e that a court "[u]pon application" of a plaintiff may, in its discretion, extend the time to serve a notice of claim. As a threshold matter, Beeks has not applied for any such extension. In any event, although the Court of Appeals has not ruled on the issue, district courts in the Second Circuit have routinely found that they lack jurisdiction to even consider such an application and the Court agrees with that analysis. *See, e.g., Henneberger,* 465 F.Supp.2d at 200 (quoting N.Y. Gen. Mun. Law § 50-e(7), and collecting cases); *Brown,* 717 F.Supp. at 258-61 ("[U]ntil the state legislature amends [Section 50-e(7)] to include federal trial courts, [the court has] no choice but to dismiss for lack of jurisdiction plaintiff's application to file a late notice of claim or to have his notice of claim deemed timely filed.") (collecting cases). Therefore, in this case, the Court lacks jurisdiction, pursuant to Section 50-e(7), to deem plaintiff's state law claims timely filed.

## V. CONCLUSION

For the foregoing reasons, defendants' motions to dismiss Beeks's federal claims are denied pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. However, defendants' motions to dismiss plaintiff's New York State claims are granted. The parties shall proceed with discovery under the direction of Magistrate Judge Lindsay.

**\*11** SO ORDERED.

E.D.N.Y.,2008.
Beeks v. Reilly
Not Reported in F.Supp.2d, 2008 WL 3930657 (E.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2001 WL 303713 (S.D.N.Y.)
(Cite as: 2001 WL 303713 (S.D.N.Y.))

▷  Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
Frankie CANCEL and Melvin Owens, Plaintiffs,
v.
Glenn S. GOORD, Commissioner of New York State
Department of Correctional Services, et al. Defendants.
**No. 00 CIV 2042 LMM.**

March 29, 2001.

*MEMORANDUM AND ORDER*

MCKENNA, J.

**\*1** Frankie Cancel and Melvin Owens (collectively
"Plaintiffs"), inmates at Fishkill Correctional Facility
("Fishkill"), bring this pro se civil rights action pursuant
to 42 U.S.C. § 1983 against Defendants Glenn S. Goord,
Commissioner of the New York State Department of
Correctional Services ("DOCS"); Anthony Annucci,
Deputy Commissioner of DOCS; Jennifer Jones, Staff
Attorney at DOCS; William Mazzuca, Fishkill
Superintendent; Robert Ercole, Fishkill Deputy
Superintendent; Robert Erbert, Fishkill Deputy
Superintendent, Administration; Ada Perez, Fishkill
Deputy Superintendent, Programs; Stephan Lowry,
Fishkill Captain; Lewis Goidel, Fishkill Inmate Grievance
Program ("I.G.P.") Supervisor; Christine O'Dell, Fishkill
Senior Mail Clerk; Sandie Breen, Fishkill Mail Clerk; and
John/Jane Doe[s], unknown Members of the Fishkill Mail
Room Staff (collectively "Defendants") for
unconstitutionally implementing the inmate grievance
program and for deliberately tampering and interfering
with their regular and legal mail. The Plaintiffs seek
injunctive relief as well as compensatory and punitive
damages from each Defendant individually and in their
official capacities. The Defendants filed a motion to
dismiss for failure to state a claim upon which relief can
be granted pursuant to Fed.R.Civ.P. 12(b)(6). For the
reasons set forth below the Defendants' motion is granted

in part and denied in part.[FN1]

> **FN1.** Plaintiffs' independently move pursuant to
> Fed.R.Civ.P. 37(d) for an order compelling
> defendants to comply with Plaintiffs'
> interrogatories. As Defendants do not oppose this
> motion, and because the court has partially
> denied Defendants' motion to dismiss, Plaintiffs'
> motion is granted. Defendants are hereby
> required to respond to Plaintiffs' interrogatories,
> except those regarding the Inmate Grievance
> Program, within sixty days of the date hereof.

Statement of Facts [FN2]

> **FN2.** The facts set forth herein are adduced from
> a liberal reading of Plaintiffs' complaint. *See
> Graham v. Lewinski, 848 F.2d 342, 344 (2d
> Cir.1998).*

On Friday August 28, 1998 Plaintiff Cancel received a
piece of legal mail marked as such from the Criminal
Term Clerk's Office of the Supreme Court in the State of
New York which had been opened outside his presence.
(Am.Compl.¶ 22.) The letter had been opened by
Defendants O'Dell, Breen, and unknown members of
Fishkill mail room staff even though it was clearly marked
as privileged legal mail. (*Id.* ¶¶ 22-24.)

On August 31, 1998 Cancel filed a grievance with the
Fishkill I.G .P. Supervisor, Defendant Goidel, regarding
the August 28 legal mail incident. (*Id.* ¶¶ 25-26.) Goidel
failed to process Cancel's grievance. (*Id.*) Subsequently,
on October 5, 1998 Cancel filed a second grievance, this
time against Goidel for refusing to process Cancel's
original grievance. (*Id.* ¶¶ 27-28.) This second grievance
was not processed. (*Id.*) On October 19, 1998 Cancel
wrote a letter to the I.G.P. Director informing him of
Goidel's refusal to process the two grievances. (*Id.*)
Subsequently, on November 2, 1998 both grievances were
processed (*Id.* ¶ 29) and on November 19, 1998 Cancel
received a grievance decision by Defendant O'Dell who
wrote that "such mistakes should not occur in the future."

Not Reported in F.Supp.2d, 2001 WL 303713 (S.D.N.Y.)
(Cite as: 2001 WL 303713 (S.D.N.Y.))

(*Id.* ¶ 36.) Despite this statement both Cancel's legal mail and regular mail were continually interfered with. (*Id.* ¶ 37.)

On December 4, 1998 Cancel put together a complaint pursuant to New York State Civil Service Law § 75 seeking a hearing, disciplinary action and the removal of Goidel for his improper actions and unlawful manner of running the I.G.P.[FN3] (*Id.* ¶ 33.) On December 9, 1998 the complaint was mailed to Defendants Goord and Goidel. (*Id.* ¶¶ 33-35.) The complaint was ignored by both of these Defendants. (*Id.*) On December 14, 1998 Cancel sent a letter with a copy of the complaint to Defendant Annucci who also did not respond. (*Id.* at 35.)

> FN3. New York Civil Service Law § 75 provides a cause of action for civil service employees unlawfully removed. Although neither party addressed this claim in their motion papers, the Court notes that § 75 specifically delineates five categories of persons who may maintain a cause of action for removal. Because Cancel does not fall into one of these five categories he has no standing to bring suit under this provision.

**\*2** On June 28, 1999 Cancel filed another grievance stating that both his regular and legal mail were being withheld. (*Id.* ¶ 38.) Subsequent to the filing of this grievance, but on the same day, Cancel received sixteen pieces of regular mail that had been withheld for several weeks by Defendants Mazzuca, O'Dell, Breen and unknown members of the Fishkill mail room staff. (*Id.*) Cancel filed a grievance about this interference with his regular mail recommending there be an investigation; however, his recommendation was denied. (*Id.* ¶ 39.)

On December 21, 1999 Cancel received another piece of legal mail which had not been processed or handled as legal mail because it was opened outside his presence. (*Id.* ¶ 40.) Cancel filed a complaint regarding this incident and attached photocopies of the legal mail that had been opened outside his presence. (*Id.* ¶ 41.)

On April 17, 2000 Cancel notarized two documents for a personal Family Court matter concerning his son, placed

the legal documents in an envelope, sealed it, placed stamps on it and placed it in the outgoing mail addressed to "the other party in the matter." (*Id.* ¶ 49.) The envelope was intercepted, opened and photocopied by Mazzuca, O'Dell, Breen and unknown members of the Fishkill mail room staff and the photocopies were placed in Cancel's file. (*Id.* ¶¶ 49-51.) On July 12, 2000 Cancel met with a member of the Parole board who had Cancel's file which contained a memo from Mazzuca with the Family Court documents attached. (*Id.* ¶ 51.) Defendants continue to withhold Cancel's legal and regular mail. (*Id.*)

On November 5, 1999 Plaintiff Owens picked up a piece of legal mail that had been opened and photocopied outside his presence and had been withheld for about a week. (*Id.* ¶ 45.) As a result, Owens was unable to "research and file a timely Criminal motion for which he received an adverse decision." (*Id.*) The Defendants responsible for withholding this piece of legal mail were Mazzuca, Ercole, Erbert, Perez, O'Dell, Breen and unknown members of the Fishkill mail room staff. (*Id.*) Owens filed a grievance for the opening and photocopying of his legal mail denying him access to the courts, but it was denied. (*Id.* ¶ 47.)

Legal Standard

On a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), the court must accept as true all well pleaded factual allegations set forth in the complaint and must draw all positive inferences in favor of the pleader. *Hudson v. Greiner,* No. 99 Civ. 12339, 2000 U.S. Dist. LEXIS 17913, at *4 (S.D.N.Y. Dec. 12, 2000). A case should only be dismissed when "it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir.1994) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)). A plaintiff must do more than plead mere "conclusory allegations or legal conclusions masquerading as factual conclusions" to survive a motion to dismiss. *Gebhardt v. Allspect, Inc.,* 96 F.Supp.2d 331, 333 (S.D.N.Y.2000).

**\*3** Furthermore, since the Plaintiffs are proceeding pro se their submissions should be judged on a more lenient

Not Reported in F.Supp.2d, 2001 WL 303713 (S.D.N.Y.)
(Cite as: 2001 WL 303713 (S.D.N.Y.))

standard than that accorded to formal pleadings drafted by lawyers. *McNeil v. United States,* 508 U.S. 106, 113 (1993). The court must make some reasonable allowances so that a pro se plaintiff does not forfeit his rights by virtue of a lack of legal training. *Hudson,* 2000 U .S. Dist. LEXIS 17913, at *3. However, proceeding pro se does not altogether relieve a plaintiff from the usual pleading requirements. *Id.* at *4.

Plaintiffs' Civil Rights Claims

A plaintiff has a civil cause of action under § 1983 against:

Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State or Territory of the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress.

42 U.S.C. § 1983.

Plaintiffs bring this action under § 1983 alleging that Defendants violated their rights under the First, Fourth, Sixth and Fourteenth Amendments by unconstitutionally implementing the inmate grievance programs and by deliberately tampering and interfering with their regular and legal mail thereby denying them access to the courts and impinging on their rights to free speech.

Discussion

1. Denial of Access to Grievances and the Unlawful Operation of the Inmate Grievance Program

The amended complaint alleges that Defendant Goidel failed to process Cancel's grievance complaints and that the improper and unlawful running of the I.G.P. violated

Cancel's First Amendment right to petition the government for redress and right of access to the courts. (Am.Compl.¶ 52.) Cancel also claims that Defendants Goord, Annucci, Mazzuca, Ercole, Perez, Erbert and Lowry failed to take action to "curb the unlawful practices of Defendant Goidel" even though they were aware that his unlawful conduct proximately caused the above constitutional violation. (*Id.* ¶ 53.)

While there is a First Amendment right of meaningful access to the courts and a right to petition the government for redress, *e.g* ., *Bill Johnson's Rest., Inc. v. NLRB,* 461 U.S. 731, 741 (1983) (finding that "the right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances"), inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983. *Justice v. Coughlin, III,* No. 94-CV-1287, 1996 U.S. Dist. LEXIS 15341, at *11 (N.D.N.Y. July 1, 1996). When an inmate sets forth a constitutional claim in a grievance to prison officials and the grievance is ignored, the inmate has the right to directly petition the government for redress of that claim. *Flick v. Alba,* 932 F.2d 728, 729 (8th Cir.1991). Therefore, the refusal to process an inmate's grievance or failure to see to it that grievances are properly processed does not create a claim under § 1983. *Id.*

*4 Thus, Cancel's claim that the Defendants violated his First Amendment right of access to the courts and right to petition the government for redress by failing to process his grievances lacks merit and is dismissed with prejudice.

Cancel also claims that Goidel's failure to process his grievances and his unlawful and unfair running of the inmate grievance program violates New York State Correction Law § 139 which sets forth prison grievance procedures. (Am.Compl.¶ 52.) First, the failure to process a grievance in a timely manner only entitles an inmate to review at the next appeal level in the grievance process. *See Cliff v. Goodman,* 710 N.Y.S.2d 718 (App.Div.2000) (citing 7 NYCRR § 701.8 (2001)). Second, under New York law a claim generally challenging the constitutionality of the inmate grievance program does not constitute an actual controversy reviewable in an Article 78 proceeding or otherwise. *Matter of Hall v. State of N.Y. Dept. of Corr.,* 453 N.Y.S.2d 58 (App.Div.1992).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 303713 (S.D.N.Y.)
(Cite as: 2001 WL 303713 (S.D.N.Y.))

When Cancel's grievances were ignored by Goidel, Cancel sought review at the next level and his grievances were subsequently processed. Further, Cancel's general dissatisfaction with the inmate grievance program does not constitute an actual controversy reviewable by the Court. *Id.* Therefore, Cancel's claim that Goidel's actions violated New York State Corrections Law § 139 is dismissed with prejudice.

2. Denial of Access to the Courts as a Result of Legal Mail Tampering

Prisoners have a First Amendment right of access to the courts, and where there is a deliberate and malicious interference with that right they may seek redress from the court. *Washington v. James,* 782 F.2d 1134, 1138 (2d Cir.1986). To state a valid § 1983 claim for denial of access to the courts due to interference with an inmate's legal mail, an inmate must allege that a defendant's deliberate and malicious interference actually impeded his access to the court or prejudiced an existing action. *Lewis v. Casey,* 518 U.S. 343, 349 (1996). Therefore, in order to survive a motion to dismiss a plaintiff must allege not only that the defendant's alleged conduct was deliberate and malicious, but also that the defendant's actions resulted in actual injury to the plaintiff such as the dismissal of an otherwise meritorious legal claim. *Id.* at 351. In other words "the plaintiff must show that a 'non-frivolous legal claim had been frustrated or was being impeded' due to the actions of prison officials." *Warburton v. Underwood,* 2 F. Supp .2d 306, 312 (W.D.N.Y.1998) (quoting *Lewis,* 518 U.S. at 353); *see also Monsky v. Moraghan,* 127 F.3d 243, 247 (2d Cir.1997).

Plaintiff Cancel does not state a cognizable § 1983 claim for denial of access to the courts because he has not alleged any actual injury resulting from Defendants' actions. Cancel alleges three instances where his legal mail was handled inappropriately.[FN4] Cancel must show that because Defendants opened his outgoing and incoming legal mail he was prejudiced in a legal action he sought to pursue. Because Cancel has not alleged such an injury, his claim under the First Amendment for denial of access to the courts is dismissed with leave to amend the complaint with allegations, if true, that (1) Defendants' interference with Cancel's legal mail injured him by prejudicing him in a legal action; and (2) that the outgoing envelope

containing the Family Court documents mailed on April 17, 2000 was clearly identifiable as legal mail.[FN5]

FN4. Liberally construing Plaintiffs' complaint, the Court assumes that the Family Court documents Cancel mailed on April 17, 2000 were in an envelope addressed to a person or entity that would clearly identify the letter as legal mail or that the envelope was marked as "legal mail." Plaintiff only alleges that he sent these Family Court documents to "the other party in the matter" (Am.Compl.¶ 49) and the Court assumes for the purpose of this motion only that the envelope in question was clearly identified as legal mail.

FN5. "[T]he court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2d Cir.1999) (quoting *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991)).

*5 As to Plaintiff Owens' claim with respect to legal mail, the amended complaint alleges that because Owens' mail was opened and withheld for about a week he was "unable to research and file a timely response to a Criminal motion for which he received an adverse decision." (Am.Compl.¶ 45.) A delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation. *Jermosen v. Coughlin,* 877 F.Supp. 864, 871 (S.D.N.Y.1995) (citing *Jones v. Smith,* 784 F.2d 149, 151-52 (2d Cir.1986)). However, if Owens' adverse judgment to his otherwise meritorious Criminal motion was the result of the named Defendants' opening and withholding of his legal mail then he has stated a claim under § 1983 for denial of access to the courts. For purposes of this motion, the Court accepts all allegations as true and draws all positive inferences in favor of Plaintiff. *See Hudson,* 2000 U.S. Dist LEXIS 17913, at *3. Therefore, Defendants' motion is denied as to Plaintiff Owens' claim under the First Amendment for denial of access to the courts.

3. Violation of the First Amendment Right to Free Speech

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 303713 (S.D.N.Y.)
(Cite as: 2001 WL 303713 (S.D.N.Y.))

for Interference with Cancel's Mail

Cancel alleges that Defendants' continuous actions of opening and reading his incoming legal mail, the temporary withholding of his regular mail and the opening and photocopying of his outgoing legal mail impinges on his constitutional right to free speech. (Am.Compl.¶¶ 54, 60, 63.) Inmates unquestionably have a First Amendment right of free speech to send and receive mail, *Wolfish v. Levi,* 573 F.2d 118, 130 (2d Cir.1978), *rev'd in part on other grounds sub nom., Bell v. Wolfish,* 441 U.S. 520 (1979), and a prison official's interference with an inmate's mail may violate his First Amendment right to free speech, which includes the "right to be free from unjustified governmental interference with communication." *Brewer v. Wilkinson,* 3 F.3d 816, 820 (5th Cir.1993).

The boundary between an inmate's First Amendment right to free speech and the ability of prison officials to open or otherwise interfere with an inmate's mail is not precise. However, when analyzing such claims courts have consistently made distinctions between outgoing and incoming mail and legal and non-legal mail based on the various rights and interests at stake. *See Taylor v. Sterrett,* 532 F.2d 462, 475 (5th Cir.1976) (holding that the governmental interest in monitoring incoming mail is more substantial than its interest regarding outgoing mail); *see also Lewis,* 518 U.S. at 353 (holding that prison regulations or practices that affect a prisoner's legal mail are of particular concern because of the potential for interference with a prisoner's right of access to the courts).

With respect to the first distinction, the Supreme Court has recognized that "the implications of outgoing correspondence for prison security are of a categorically lesser magnitude than the implications of incoming materials." *Thornburgh v. Abbott,* 490 U.S. 401, 413 (1989). Therefore, the penological interests for interference with outgoing mail must be more than just the general security interest which justifies most interference with incoming mail. *Davidson v. Scully,* 694 F.2d 50, 53 (2d Cir.1982).

**\*6** As to the second distinction, many courts have held that a prisoner's legal mail is entitled to a higher degree of protection than his regular mail. *See Morgan v. Montanye,*

516 F.2d 1367, 1368 (2d Cir.1975) (holding that although prison officials can inspect an inmate's general correspondence, different procedures apply to an inmate's legal mail which should be treated as confidential material); *see also Taylor,* 532 F.2d at 475. Therefore, prison polices or practices which interfere with legal mail on a regular basis whether incoming or outgoing must be supported by a legitimate penological interest other than mere general security concerns which permit interference with regular mail. *Washington,* 782 F.2d at 1139 (citing New York State Department of Corrections Directive 4421).

A. Incoming Mail

1. Withholding of Incoming Non-Legal Mail

Cancel alleges that Defendants withheld his incoming non-legal mail and relies on a single instance when he received sixteen pieces of regular mail on the same day he filed a grievance about the opening of his legal mail. (Am.Compl.¶ 38.) These sixteen pieces of regular mail had been withheld for several weeks. (*Id.*) Prison regulations or practices affecting a prisoner's receipt of non-legal mail must be "reasonably related to legitimate penological interests," *Abbott,* 490 U.S. at 409 (quoting *Turner v. Safley,* 482 U.S. 78, 89 (1987)), and "prison security is a sufficiently important governmental interest to justify limitations on a prisoner's [F]irst [A]mendment rights." *Gaines v.. Lane,* 790 F.2d 1299, 1304 (7th Cir.1986). However, this general security interest will not justify a regular pattern and practice of such interference absent other prison concerns with regards to a particular inmate. *Rowe v. Shake,* 196 F.3d 778, 782 (7th Cir.1999).

This Court agrees with the reasoning of the Seventh Circuit in *Rowe* that in order for an inmate to state a claim for interference with incoming non-legal mail he must show a pattern and practice of interference that is not justified by any legitimate penological concern. *Id.* Because Cancel only alleges that prison officials withheld his regular mail on one occasion, rather than showing a pattern and practice of such behavior, his First Amendment free speech claim for the withholding of his regular incoming mail is dismissed with leave to amend the complaint to include specific allegations, if true,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 303713 (S.D.N.Y.)
(Cite as: 2001 WL 303713 (S.D.N.Y.))

establishing such a pattern and practice.

2. Opening and Withholding of Incoming Legal Mail

Cancel alleges two occasions upon which the Defendants opened his incoming legal mail outside his presence. (Am.Compl.¶¶ 22, 40.) Although legal mail is "privileged" and is afforded a higher degree of protection, there still must be a showing that prison officials regularly and unjustifiably interfered with the incoming legal mail rather than merely showing an isolated incident. *Washington v. James,* 782 F.2d 1134, 1139 (2d Cir.1986).

*7 In *Washington,* the Second Circuit held that more than one incident of interference with legal mail could give rise to a constitutional claim if it indicated ongoing activity. 782 F.2d at 1139; *see also Bieregu v. Berman,* 59 F.3d 1445, 1452 (3d Cir.1995) (finding that an allegation that prison officials had opened an inmate's incoming legal mail on fifteen occasions was sufficient to show a pattern and practice of deliberate interference). However, in the present case Plaintiff proffers only two instances of opening incoming legal mail with no indication that such practices are ongoing. Without alleging additional facts to establish a pattern and practice that rises to the level of constitutionally impermissible censorship, Plaintiff's complaint is deficient. Therefore, Cancel's claim that Defendants violated his First Amendment right to free speech for interference with his incoming legal mail is dismissed with leave to amend the complaint to include specific allegations, if true, that establish the requisite pattern and practice of interference.[FN6]

FN6. Plaintiffs' also allege that in October 1999 Defendant Lowery ordered mail sent to any inmate by the Legal Aid Society regarding contemplated litigation against the New York State Parole Board to be confiscated if seen. (Am.Compl.¶ 42.) In addition, Defendant Ercole also instructed the Fishkill mail room staff to confiscate all mail envelopes larger than regular size, to transfer the contents to a facility envelope and then forward it to the inmate to whom it is addressed. (*Id.* ¶ 43.) Plaintiffs make these allegations in their complaint without stating that they personally were to receive this letter from the Legal Aid Society or that Ercole's policy affected their mail in any way. Because there is no allegation that Plaintiffs' mail was affected by either policy they have no standing to bring a suit for these allegations and they are not addressed by the Court. Plaintiffs' are given leave to amend the complaint to allege, if that be the case, that these polices affected their personal legal mail. If such allegations are made they will be considered in establishing a pattern and practice of interference with legal mail.

B. Outgoing Legal Mail

Cancel's claim that prison officials interfered with his outgoing legal mail poses a different question. As previously stated, the Supreme Court has explicitly recognized that there are "differing penological concerns with respect to outgoing and incoming mail." *Brewer v. Wilkinson,* 3 F.3d 816, 825 (5th Cir.1993) (citing *Thornburgh v. Abbott,* 490 U.S. 401, 413 (1989)). The Second Circuit has held that prison officials can only open an inmate's outgoing legal mail if there is a "rational justification" for doing so. *Davidson,* 694 F.2d at 54 (citing *Wolfish,* 573 F.2d at 130.). The Fifth Circuit has applied the same standard to an instance where an inmate's outgoing legal mail was opened and censored without a "legitimate penological interest" and found the practice to violate the inmate's First Amendment right to free speech. *Brewer,* 3 F.3d at 825.

In the present case, Defendants have failed to state any rational justification for opening and photocopying Cancel's outgoing legal mail. Because interference with outgoing legal mail cannot be based on a general prison security interest, Defendants must provide additional justification for their actions. Therefore, because Defendants have interfered with Cancel's outgoing legal mail without providing any legitimate penological interest, Cancel has stated a valid claim under the First Amendment right to free speech.[FN7] Defendants' motion to dismiss Cancel's claim for violation of his First Amendment right to free speech is denied with respect to his outgoing legal mail.

FN7. As originally stated in footnote 4, the Court

Not Reported in F.Supp.2d, 2001 WL 303713 (S.D.N.Y.)
(Cite as: 2001 WL 303713 (S.D.N.Y.))

again presumes that the Family Court documents were placed in an envelope marked or addressed in such a way that it could be identified as legal mail. If in fact this document was not privileged legal mail, this First Amendment free speech claim may require a different analysis.

**4. Money Damages Barred by 42 U.S.C. § 1997e(e) of the Prison Litigation Reform Act**

Defendants argue that the money damages Plaintiffs seek are barred by 42 U.S.C. § 1997e(e) of the Prison Litigation Reform Act because the complaint does not allege any physical injury. (Defs.' Mem. at 8-9.) Section 1997e(e) states, "[n]o federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in the custody without a prior showing of physical injury." *Id.*

**\*8** The plain language of the statute does not prohibit a plaintiff's First Amendment claim. Section 1997e(e) specifically prohibits federal civil action[s] for mental or emotional injury without a showing of physical injury. In this case Plaintiffs do not allege any claim of mental or emotional distress for which they are seeking redress. Furthermore, the few courts that have addressed this issue have held that:

the deprivation of First Amendment rights entitles a plaintiff to judicial relief wholly aside from any physical injury he can show, or any mental or emotional injury he may have incurred. Therefore, § 1997e(e) does not apply to First Amendment claims regardless of the form of relief sought.

*Reynolds v. Goord,* No. 98 Civ. 6722, 2000 U.S. Dist LEXIS 2140, at *23 (S.D.N.Y. Mar. 1, 2000) (quoting *Canell v. Lightner,* 143 F.3d 1210, 1213 (9th Cir.1998)). Therefore, § 1997e(e) is not applicable to the present case and does not bar Plaintiffs from seeking recovery for First Amendment claims of denial of access to the courts and violation of free speech.

**5. Lack of Personal Involvement of Defendants**

The personal involvement of defendants in an alleged constitutional violation is a prerequisite under § 1983. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995). A plaintiff must allege that each defendant was directly and personally responsible for the purported conduct and establish fault and causation on the part of each defendant. *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883 (2d Cir.1987).

Defendants move to dismiss all claims against Defendants Goord, Annucci, Jones, Mazzuca, Ercole, Perez and Erbert for lack of personal involvement. Plaintiffs' amended complaint as to Owens' legal mail claim alleges that Defendants Mazzuca, Ercole, Perez, and Erbert were personally involved in the opening and withholding of his legal mail. Additionally, Mazzuca is implicated in Cancel's claim for violating his First Amendment right to free speech. Accepting these allegations as true, the Defendants' motion to dismiss for lack of personal involvement against Mazzuca, Ercole, Perez, and Erbert is denied.

As to Defendants Goord, Annucci and Jones, in a § 1983 action supervisors cannot be held liable under the theory of respondeat superior for the acts of their subordinates. *Id.* at *7. A supervisor can only be found to be personally involved if there is evidence that there was: (1) direct participation in the alleged constitutional violation, (2) failure to remedy a wrong after learning of it, (3) creation or maintenance of a policy under which unconstitutional violations occurred, (4) gross negligence in managing subordinates who committed the unconstitutional acts, or (5) deliberate indifference by failing to act on information indicating that constitutional violations were occurring. *Id.; see also Colon,* 58 F.3d at 873. Allegations that a supervisor ignored an inmate's grievance letter of protest and request for an investigation is insufficient to find that a supervisor is personally involved in the alleged constitutional violations. *Kinch v. Artuz,* No. 97 Civ. 2419, 1997 U.S. Dist. LEXIS 13998, at *8 (S.D.N.Y. Sept. 15, 1997).

**\*9** Plaintiffs' amended complaint contains no allegations relating to the personal involvement of Defendants Goord, Annucci and Jones either through direct participation,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 303713 (S.D.N.Y.)
(Cite as: 2001 WL 303713 (S.D.N.Y.))

maintenance of a policy or deliberate disregard for Plaintiffs' rights. Plaintiffs' sole claim against these three Defendants is that they were sent grievances and complaints by Cancel which were ignored. Plaintiffs' claims as to these three Defendants are dismissed with prejudice.

Conclusion

For the above stated reasons the Defendants' motion is granted in part and denied in part as follows:

(1) Cancel's claims against Goidel under the First Amendment right to petition the government for redress and right of access to the courts for failure to process grievances and for the unlawful running of the I.G.P. are dismissed with prejudice.

(2) Cancel's claims against Defendants Goord, Annucci, Mazzuza, Ercole, Perez, Erbert and Lowry for failure to curb the unlawful practices of Goidel in his unlawful running of the I.G.P. are dismissed with prejudice.

(3) Cancel's claim that Goidel's actions violated New York State Corrections Law § 139 is dismissed with prejudice.

(4) Cancel's claim under the First Amendment for denial of access to the courts is dismissed with leave to amend the complaint with allegations that (a) Defendants' interference with Cancel's legal mail injured him by prejudicing him in a legal action; and (b) that the outgoing envelope containing the Family Court documents mailed on April 17, 2000 was clearly identifiable as legal mail.

(5) Defendants' motion is denied as to Owens' claim under the First Amendment for denial of access to the courts against Mazzuca, Ercole, Perez, Erbert, O'Dell, Breen and unknown members of the Fishkill mail room staff.

(6) Cancel's claim under the First Amendment right to free speech for the withholding of his regular incoming mail is dismissed with leave to amend the complaint with specific allegations that establish a pattern and practice of interference.

(7) Cancel's claim that Defendants violated his First Amendment right to free speech for interference with his incoming legal mail is dismissed with leave to amend the complaint with specific allegations that establish a pattern and practice of interference with Cancel's incoming legal mail.

(8) Defendants' motion is denied as to Cancel's claim under the First Amendment for a violation of free speech for interference with his outgoing legal mail against Mazzuca, O'Dell, Breen and unknown members of the Fishkill mail room staff.

(9) Defendants' motion to dismiss the claims against Mazzuca, Ercole, Perez, and Erbert for lack of personal involvement is denied.

(10) Defendants' motion to dismiss the claims against Goord, Annucci and Jones for lack of personal involvement is granted with prejudice.

(11) The Court also considered Plaintiffs' claim that Defendants' actions violated Article 14 and 17 of the International Covenant on Civil and Political Rights ("ICCPR"). (Am.Compl.¶ 54, 55, 58, 60.) However, courts have uniformly held that the ICCPR is not self-executing and does not give rise to a private right of action. *See Beazley v. Johnson,* No. 99-41383, 2001 WL 118393, at *18- *19 (5th Cir.2001) (citing additional cases). Therefore, the Court sua sponte dismisses Plaintiffs' claims under the ICCPR.

S.D.N.Y.,2001.
Cancel v. Goord
Not Reported in F.Supp.2d, 2001 WL 303713 (S.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2005 WL 3465846 (D.Conn.)
(Cite as: 2005 WL 3465846 (D.Conn.))

**H** Only the Westlaw citation is currently available.

United States District Court,
D. Connecticut.
William FARADAY, Plaintiff,
v.
Theresa C. LANTZ, Michael E. Carter, and Edward
Blanchette, Defendants.
**No. 3:03CV1520(SRU).**

Dec. 12, 2005.

Norman A. Pattis, Williams & Pattis, New Haven, CT, for
Plaintiff.

Neil D. Parille, Attorney General's Office, Hartford, CT,
for Defendants.

*RULING ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT*

UNDERHILL, J.

**\*1** William Faraday, an inmate in the state prison system,
has brought this civil rights action, pursuant to 42 U.S.C.
§ 1983. Faraday alleges that his Eighth Amendment right
to be free from cruel and unusual punishment was violated
by defendants' deliberate indifference to his known
medical needs, namely "herniated, migrated discs" in his
lower back. In his complaint, he seeks compensatory and
punitive damages and injunctive relief against defendant
Edward Blanchette, M.D., the clinical director for the
Department of Correction ("DOC"), who has been sued in
his individual and official capacities. He also seeks
injunctive relief against defendant Theresa C. Lantz, the
DOC Commissioner, and defendant Michael E. Carter, the
former warden of MacDougall-Walker Correctional
Institution ("MacDougall"), both of whom are sued only
in their official capacities.

The defendants have moved for summary judgment
seeking judgment on the grounds that: (1) the undisputed
facts show that Dr. Blanchette was not deliberately
indifferent to Faraday's medical needs; (2) defendants
Lantz and Carter had no personal involvement in the
treatment decisions concerning Faraday and, therefore, are
not proper defendants; and (3) injunctive relief is not
warranted because the DOC is providing Faraday with
constitutionally appropriate care.

*Summary Judgment Standard*

The standard for granting a motion for summary judgment
is well-established. A moving party is entitled to summary
judgment "if the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue as to
any material fact and that the moving party is entitled to a
judgment as a matter of law." Fed.R.Civ.P. 56(c). The
burden of establishing that there is no genuine factual
dispute rests with the moving party. *See Gallo v.
Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219,
1223 (2d Cir.1994). In ruling on a summary judgment
motion, the court cannot resolve issues of fact. Rather, it
is empowered to determine only whether there are material
issues in dispute to be decided by the trier of fact. The
substantive law governing the case determines which facts
are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S.
242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In assessing the record to determine whether a genuine
dispute about a material fact exists, the court is required to
resolve all ambiguities and draw all reasonable inferences
in favor of the non-moving party. *Id.* at 255; *Matsushita
Electric Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574,
587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Summary
judgment is improper if there is any evidence in the record
that could reasonably support a jury's verdict for the
non-moving party." *Marvel Characters, Inc. v. Simon,* 310
F.3d 280, 285-86 (2d Cir.2002).

*Factual Backgroud*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 3465846 (D.Conn.)
(Cite as: 2005 WL 3465846 (D.Conn.))

Faraday began his incarceration at Walker Prison on October 13, 1999. The medical intake forms from Walker indicate that Faraday gave a history of severe lower back pain and three ruptured discs in his lower back. He was referred to a medical doctor for evaluation. (Pl.'s Ex. 2.) The medical records indicate that he was seen in the medical clinic on October 25, 1999, October 29, 1999, December 2, 1999, and December 3, 1999, for continuing complaints of persistent back pain. (*Id.*) He was prescribed Motrin and Advil and given a medical pass for a bottom bunk and extra pillow. (*Id.*)

**\*2** On February 9, 2000, Faraday was transferred to MacDougall. A health history form dated February 16, 2000, indicates that Faraday provided a history of two ruptured discs. (Pl.'s Ex. 3.) The medical records show that Faraday was seen on February 20, 2000, for complaints of lower back pain due to a "known" diagnosis of three ruptured discs, specifically "(?L4, 5, + ?)," secondary to an old injury. The clinical notes indicate that Faraday described having pressure and pain, and limited range of motion. Ibuprofen was prescribed. Again, on February 28, 2000, Faraday was seen at the clinic with complaints of constant lower back pain with sciatica. X-rays were performed on March 22, 2000, at the request of Dr. Timothy Silvis, the staff doctor at MacDougall. The diagnostic radiologic report concluded:

There is no fracture or dislocation seen. Further workup with bone scan is recommended to rule out underlying destructive process involving the left pedicle of the L5 vertebral body. A CT scan of the lumbosacral spine may be necessary if bone scan findings are positive.

(Pl.'s Ex. 4.)

The record contains no medical records for 2001 relating to Faraday's back problems.

On January 17, 2002, Faraday filed an inmate request form asking to speak to the "M.D. (not sick call)" regarding his back, which was bothering him more than usual. He stated that it "comes and goes." He described his problem once again as "herniated migrated disks which ruptured into the vertibre [sic], pressing against my spinal column. Please see me ASAP." (Pl.'s Ex. 1.)

On May 2, 2002, Dr. Silvis sent a request to UCONN Correctional Managed Health Care's Utilization Review Committee, requesting an MRI of Faraday's spine to rule out disc disease.[FN1] The summary of his request set forth in the Utilization Review Report states that Faraday had been having increasing, intermittent low back pain this past year. No old medical records were available despite multiple requests. On the day of the request, Dr. Silvis stated that Faraday was having severe pain in his right leg when walking down stairs. On physical examination, he observed no loss of reflex, wide gait, no point tenderness. The Utilization Review Determination/ Recommendations were that Faraday should start a back exercise program and that Dr. Silvis should resubmit the request if there was no improvement in eight weeks or if there was a significant clinical change. (Pl.'s Ex. 5.)

FN1. In an affidavit filed with defendants's reply brief, Dr. Silvis now states that he submitted this form at the request of Faraday and that he personally did not believe an MRI was medically necessary. (Silvis Aff. ¶ 6.) At this stage of the proceeding, the court gives little credence to this statement, made during the course of litigation. Defendants have not produced a copy of Dr. Silvis' request, which presumably would bear some indication to confirm that the request was at the behest of Faraday, with which Dr. Silvis disagreed. Additionally, two years earlier, Dr. Silvis had stated that he recommended a further workup with bone scan and that a CT scan of the lumbosacral spine might be necessary. The Utilization Review Committee's response indicates that Dr. Silvis had reported that Faraday had been experiencing increasing, intermittent low back pain and severe pain in his right leg on the day of the request. Given these complaints and Dr. Silvis' earlier concerns that further workup, including a CT Scan, might be necessary, his statement that he did not believe an MRI was medically necessary cannot be credited at the summary judgment stage.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 3465846 (D.Conn.)
(Cite as: 2005 WL 3465846 (D.Conn.))

On May 18, 2002, Faraday filed another inmate request form, seeking an egg crate foam mattress to alleviate his "continuing back problems, numbness of the arms and legs, and lack of sleep because of discomfort." (Pl.'s Ex. 1.) The response was that the doctor had ordered an x-ray of his cervical spine. (*Id.*) An x-ray performed on May 16, 2002, showed "degenerative disc changes at L4-5 and L5-S1." (Pl.'s Ex. 9.)

At some point, Faraday was admitted to Medical for three and one-half days because he could not walk and on two other occasions had to be taken to Medical in a wheel chair because he was unable to walk.[FN2]

FN2. Faraday testified to these incidents during his state court habeas hearing (Tr. 28), but neither side has provided medical records relating to these incidents.

*3 During 2002, Faraday filed a number of inmate request forms for a pillow pass (to allow him to keep the second pillow he received at Walker), prescription refills, and an MRI, all related to his back problems. (Pl.'s Ex. 1.) Having failed to receive a positive response to these requests, Faraday filed a medical grievance. (*Id.*) Eventually, after his level-three grievance was not answered, Faraday filed a petition for writ of habeas corpus in state court, complaining that the conditions of his confinement were inhumane and dangerous because he had been denied the medical attention necessary to remedy, *inter alia,* his back condition consisting of herniated migrated disks.[FN3] In his petition, Faraday described constant discomfort and difficulty walking, sitting, and sleeping. He stated that, before his incarceration, he had planned to have surgery to remove the discs. He was requesting an MRI to confirm the condition of his back and the need for an operation. He also complained that the officers at MacDougall had refused to issue a double pillow pass. Thus, he requested an MRI to confirm his herniated, migrated disc, an operation to remedy the condition, a foam pad for his bed, and a pass allowing him to keep his second pillow. (Pl.'s Ex. 1.)

FN3. Faraday also sought medication to lower his cholesterol, but that aspect of his habeas petition is not relevant to the issues presented here.

A hearing on Faraday's habeas petition was held before the Hon. Richard M. Rittenband on April 16, 2003, at which Faraday and Dr. Blanchette, an internist and infectious disease specialist and the DOC clinical director, testified. Dr. Blanchette testified based on his review of Faraday's medical records, and discussions with Drs. Silvis and Lange, a doctor who he understood had treated Faraday prior to his incarceration.[FN4] Dr. Blanchette testified that a number of representations by Faraday "had been proven to be untrue," including "[f]or example, that he had an MRI of his back. There's no indication this ever occurred." (Tr. at 8.) He also questioned whether Faraday had actually been treated by some of the doctors or at certain hospitals. (Tr. 8-9.) He further testified that Faraday had

FN4. Faraday explained in the hearing that he had treated with a Dr. Geiter (phonetic) who had since retired, and who had formerly worked in the same office as Dr. Lange. Faraday stated that he had never been treated by Dr. Lange and denied ever having told Dr. Silvis that he had been treated by Dr. Lange. (Tr. 10-11.)

no findings that would indicate ... that an MRI is necessary, and I certainly agree with all his physicians ... that Mr. Faraday is not someone that requires an MRI of his back or surgery.... I would be very much against doing this because it's not clinically indicated. (Tr. at 10.)

[T]he basic issue it comes down to medically ... is: Is this man a candidate for surgery-for neurosurgery-for discectomy and the way to determine that is our clinical findings, and clearly, regardless of what an MRI would show if-if we did it-the only reason to do it is to see, you know, to proceed with surgery otherwise there's no reason to do an MRI, and in this case there is no indication that this man would be a surgical candidate. He doesn't have the neurologic findings. His back pain comes and goes.... If he has exacerbations I would treat him as I would anyone on the street and that is with muscle relaxants and pain medication and bed rest until it-it relieved itself. (Tr. 14.)

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 3465846 (D.Conn.)
(Cite as: 2005 WL 3465846 (D.Conn.))

**\*4** Following the hearing, Judge Rittenband denied Faraday's claim that defendants had been deliberately indifferent to his medical needs, subject to new information being provided to the court. (Tr. 19, 36.)

At the time of the hearing, Faraday only possessed part of his prior medical records. (Tr. 16.) He subsequently obtained his complete medical records from Manchester Memorial Hospital, which indicated that Faraday had been in a motor vehicle accident in 1990 and presented at the hospital the following day complaining of low back pain, pain upon lifting, stiffness and spasms in the lumbar paraspinal muscle. (Pl.'s Ex. 8.) Faraday was treated at the hospital again in 1992 for complaints of severe back pain, difficulty walking, and tingling in his right foot. (*Id.*) A CT Scan was performed on November 12, 1992, which showed "herniated migrated central right sided disc herniation at the L5-S1 level." (*Id.*)

Faraday filed a motion for reconsideration based on this new evidence, which was granted by Judge Rittenband. Faraday also filed another grievance, complaining that he was still being denied necessary medical treatment even after he supplied Dr. Silvis with proof that he had a herniated migrated disk. (Pl.'s Ex. 9.) His grievance was denied. (*Id.*) Finally, on October 15, 2003, an MRI was ordered for Faraday at the University of Connecticut Health Center. The conclusion on the MRI report was:

1. Degenerative disc disease with mild diffuse disc bulge at L4-5.

2. Small central disc protrusion with degenerative disc disease at L5-S1.

3. No evidence of any disc extrusion, central spinal canal and/or foraminal stenosis.

(Pl.'s Ex. 10.)

Subsequently, at a later state court hearing on February 14, 2005, Judge Rittenband held that the Warden's refusal to provide for a neurological evaluation constituted

"deliberate indifference" to Faraday's medical needs. (Def.'s Reply Mem. at 6.) He then ordered the Warden to take Faraday for a neurological evaluation. (*Id.*) The Warden has moved for certification to appeal that decision. The outcome of that request is not known.

*Discussion*

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments, which includes punishments that "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). In order to establish an Eighth Amendment claim arising out of the denial of medical care, an inmate must prove deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998). This standard incorporates both objective and subjective components. *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995). "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Smith v. Carpenter,* 316 F.3d 178, 183-84 (2d Cir.2003). Thus, a prisoner must first make a showing of a serious illness or injury. *Hudson v. McMillan,* 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). A prisoner must then demonstrate that the prison official knew of and disregarded an "excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) (quoting *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)) (internal quotation marks omitted). "Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation." *Smith,* 316 F.3d at 184.

*A. The Objective Test*

**\*5** Based on the facts of record, the court concludes that

Not Reported in F.Supp.2d, 2005 WL 3465846 (D.Conn.)
(Cite as: 2005 WL 3465846 (D.Conn.))

defendants are not entitled to summary judgment on the ground that Faraday's medical needs were not sufficiently serious to meet the objective test set forth in *Estelle v. Gamble, supra.* As the Second Circuit held in *Brock v. Wright,* 315 F.3d 158, 162 (2d Cir.2003), there is no precise, settled metric to guide the court in its estimation of the seriousness of a prisoner's medical condition. Any inquiry into the objective component of an Eighth Amendment claim must be tailored to the specific facts of each case. *Smith v. Carpenter,* 316 F.3d at 185. In *Chance v. Armstrong,* the Court set forth a non-exhaustive list of factors that are relevant to the inquiry whether a given medical condition is a serious one: (1) whether a reasonable doctor or patient would perceive the medical need in question as "important and worthy of treatment;" (2) whether the medical condition significantly affects daily activities; and (3) "the existence of chronic and substantial pain." 143 F.3d at 702.

There are numerous cases from this circuit and others finding various back conditions to be sufficiently serious to support an Eighth Amendment claim. *E.g., Veloz v. State of New York,* 339 F.Supp.2d 505, 522-24 (S.D.N.Y.2004) (various spinal and lower back conditions); *see also Hathaway,* 37 F.3d at 67 (2d Cir.1994) (finding as "serious" a hip condition that caused a prisoner a great deal of pain over an extended period of time and difficulty walking). That is not to say that all back problems and/or conditions meet this standard. Back conditions, like other medical conditions, vary significantly in severity. *See Chance,* 143 F.3d at 702. In this case, however, Faraday has produced medical records indicating that since his arrival at Walker in 1999, he has persistently complained of lower back pain caused by herniated, migrated discs, sciatica, severe pain walking downstairs, of pain and stiffness when he gets out of bed. He has also produced objective evidence in the form of a CT Scan report supporting his subjective complaints. Indeed, even Dr. Blanchette testified that Faraday had back pain and degenerative joint disease of his spine. (Tr. 21.) Defendants have produced no medical evidence that would lead this court to conclude that Faraday's evidence of his serious medical condition is too insubstantial to raise a genuine issue of material fact.

*B. The Subjective Test*

In addition, Faraday must show that a particular defendant knew and disregarded an excessive risk to inmate health and safety. *Farmer v. Brennan,* 511 U.S. at 837. Mere disagreement over the proper course of treatment is not sufficient. So long as the treatment that the prisoner received was adequate, the fact that he might have preferred a different treatment does not give rise to a constitutional claim. *See Chance,* 143 F.3d at 703. Additionally, negligence, without more, does not establish a violation of a prisoner's Eighth Amendment rights. *Id.*

**\*6** At the same time, "[i]n certain instances, a physician may be deliberately indifferent if he or she consciously chooses 'an easier and less efficacious' treatment plan." *Id.* (quoting *Williams v. Vincent,* 508 F.2d 541, 544 (2d Cir.1974)). "Whether a course of treatment was the product of sound medical judgment, negligence, or deliberate indifference depends on the facts of the case." *Id.* at 703-04 (finding that plaintiff's allegations, if true, that the doctors' recommendation of a certain course of treatment was based not on their medical views, but monetary incentives, was sufficient to show a culpable state of mind).

*1. Defendant Blanchette*

Dr. Blanchette is the Clinical Director of the Connecticut Department of Corrections, in which capacity he supervises the provision of medical care to inmates confined by the DOC. (Blanchette Aff. ¶ 5.) In addition to supervising the medical care provided to Faraday, Dr. Blanchette reviewed all of Faraday's medical records, spoke with Dr. Silvis, who treated Faraday at MacDougall, and attempted to obtain some of Faraday's pre-incarceration medical records from Dr. Lange. He testified on behalf of the Warden in Faraday's state habeas case, questioning Faraday's credibility about a prior diagnosis by MRI of herniated, migrated discs, and agreeing with "all his physicians" that an MRI was not necessary. Dr. Blanchette would not allow Faraday to have an egg crate foam mattress or second pillow, since these were not indicated for Faraday's condition. (Tr. 14, 21-22.) Contrary to Dr. Blanchette's testimony, Faraday has produced his clinical records from MacDougall, which include a report that a CT Scan of the lumbosacral spine may be necessary and a Utilization Review Report in which Dr. Silvis, as the "requestor," [FN5] had requested an

Not Reported in F.Supp.2d, 2005 WL 3465846 (D.Conn.)
(Cite as: 2005 WL 3465846 (D.Conn.))

MRI, but which request was denied. There is also a question presented by the evidence of record about how diligent the medical staff was in requesting Faraday's previous medical records.

FN5. *See* Note 1, *supra.*

Viewing the evidence in the light most favorable to Faraday, and drawing all reasonable inferences in his favor, the court finds sufficient evidence in the record from which a jury could find that defendant Blanchette intentionally disregarded certain of Faraday's medical records and his complaints of the severity of his condition and, thus, acted with deliberate indifference in denying Faraday's requests for a diagnostic MRI or other neurological consultation. A reasonable jury could find that, without trying to determine the source or cause of Faraday's complaints of severe pain, Dr. Blanchette simply dismissed his complaints. As the Second Circuit held in *Hart v. Blanchette,* No. 04-6399, 2005 WL 2300225, at \*2 (2d Cir. Sept.21, 2005) (slip op.), in vacating in part the grant of summary judgment, "[w]hile the evidence at trial may establish only negligence, the determination of the difference between negligence and deliberate indifference is, in the circumstances of this case, one for the trier of fact to make." Therefore, the court will deny the defendants' motion for summary judgment insofar as it pertains to Faraday's claims for money damages and injunctive relief against defendant Blanchette.

*2. Defendants Lantz and Carter*

**\*7** It is unnecessary to reach the issue whether defendants Lantz and Carter acted with deliberate indifference because they were not sufficiently involved with the alleged deprivation of medical care to be liable under section 1983.

In support of their motion for summary judgment, defendants provided the affidavit of Dr. Blanchette in which he testified that defendant Lantz, the DOC Commissioner, and defendant Carter, the former warden of MacDougall, were not medical professionals and had no involvement in the day-to-day medical treatment of inmates.

For liability to exist under 42 U.S.C. § 1983, a defendant must be personally involved in the underlying conduct or events, such that he subjects or causes the plaintiff to be subjected to a violation of constitutional rights. *See Provost v. City of Newburgh,* 262 F.3d 146, 154 (2d Cir.2001). Personal liability cannot be imposed on a state official based on a theory of respondeat superior. *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In the Second Circuit, personal involvement of a supervisory official may be established when:

(1) the official participated directly in the alleged constitutional violation;

(2) the official, after being informed of the violation through a report or appeal, failed to remedy the wrong;

(3) the official created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;

(4) the official was grossly negligent in supervising subordinates who committed the wrongful acts; or

(5) the official exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*See Hernandez v. Keane,* 341 F.3d 137, 145 (2d Cir.2003), *cert. denied,* --- U.S. , 543 U.S. 1093, 125 S.Ct. 971, 160 L.Ed.2d 905 (2005); *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995); *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). "Some personal responsibility on the part of the officer must be established and proof of linkage in the prison chain of command is sufficient to establish liability." *Veloz,* 339 F.Supp.2d at 519 (quoting *Hernandez v. Keane,* 341 F.3d at 145) (internal quotation marks omitted).

Faraday relies on the fact that he filed several grievances

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 3465846 (D.Conn.)
(Cite as: 2005 WL 3465846 (D.Conn.))

concerning his inadequate medical care as evidence that defendants Lantz and Carter were aware of the constitutional violations but failed to intervene. There is nothing in the record, however, indicating that any of those requests or grievances were sent to defendants Lantz or Carter. In fact, it appears that by 2002, when these requests and grievances were filed, the warden at MacDougall was Brian Murphy. (Pl.'s Ex. 1.)

Neither a "receipt of letters or grievances," *Woods v. Goord,* No. 01 Civ. 3255(SAS), 2002 WL 731691, at *7 (S.D.N.Y. Apr.23, 2002) (collecting cases), nor allegations that an official ignored a prisoner's letter or grievance, is sufficient to establish personal liability for purposes of section 1983. *See Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997); *Atkins v. County of Orange,* 251 F.Supp.2d 1225, 1233 (S.D.N.Y.2003). Faraday has failed to set forth any facts that either of these defendants violated Faraday's constitutional rights either directly or as a supervisor, or that they were aware of the alleged violations and failed to take action to prevent these violations. Accordingly, summary judgment is granted in favor of Lantz and Carter on Faraday's claims against them.

*Faraday's Claims for Injunctive Relief*

**\*8** Defendants urge this court to grant summary judgment on Faraday's claims for injunctive relief on the ground that the DOC is affording adequate medical care to Faraday. In particular, they note that Faraday has had an MRI, which was part of the relief he was requesting. Obviously the court would not order medical tests that have been performed and are no longer necessary. Still, Faraday may still have an Eighth Amendment claim for the delay in treatment. *See Smith v. Carpenter,* 316 F.3d at 186. Whether Faraday is now being afforded proper medical care is an issue that goes to the issue of damages and appropriate injunctive relief, assuming liability is found. That issue cannot be resolved on the basis of the summary judgment papers now before the court.

*Conclusion*

For the reasons set forth above, the court GRANTS

defendants' motion for summary judgment with respect to the claims against defendants Lantz and Carter. Because there are genuine issues of material fact whether defendant Blanchette was deliberately indifferent to Faraday's serious medical needs, the court DENIES the motion for summary judgment with respect to Faraday's claims against defendant Blanchette.

SO ORDERED.

D.Conn.,2005.
Faraday v. Lantz
Not Reported in F.Supp.2d, 2005 WL 3465846 (D.Conn.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2008 WL 4810066 (C.A.2 (N.Y.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 2008 WL 4810066 (C.A.2 (N.Y.)))

**C** Only the Westlaw citation is currently available.This case was not selected for publication in the Federal Reporter.

United States Court of Appeals,
Second Circuit.
Pierre FRANSUA, Plaintiff-Appellant,
v.
Dr. VADLAMUDI, T.G. Eagen, Dr. Sturtz, Defendants-Appellees.
No. 05-1715-pr.

Nov. 3, 2008.

Appeal from a judgment of the United States District Court for the Northern District of New York (Lawrence E. Kahn, *Judge* ).
Brian Hail, Goodwin Proctor LLP (Warren D. Dodson, Haynes and Boone LLP, of counsel), New York, NY, for Appellant.

Andrew M. Cuomo, Attorney General of the State of New York (Barbara D. Underwood, Solicitor General, Nancy A. Spiegel, Senior Assistant Solicitor General, Julie S. Mereson, Assistant Solicitor General, of counsel) Albany, NY, for Appellee.

Present ROBERT D. SACK and ROBERT A. KATZMANN, Circuit Judges, PAUL J. KELLY,[FN*] Circuit Judge.

FN* The Honorable Paul J. Kelly, of the United States Court of Appeals for the Tenth Circuit, sitting by designation.

**SUMMARY ORDER**

**\*1** UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of dismissal be, and it hereby is, VACATED and the case REMANDED to the district court for further proceedings.

Pierre Fransua appeals the judgment of the district court granting a motion brought pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss his complaint. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

By order of this court, Fransua, who had been proceeding *pro se,* was appointed counsel to represent him on appeal as to his claim that Dr. Sturtz, Dr. Vadlamudi, and T.G. Eagen violated his Eighth Amendment right to be free from deliberate indifference to his serious medical needs. The remainder of his appeal was dismissed.

We review a district court's dismissal of a complaint for failure to state a claim de novo. *Phelps v. Kapnolas,* 308 F.3d 180, 184 (2d Cir.2002) (per curiam). When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus,* 127 S.Ct. 2197, 2200 (2007). To survive a motion to dismiss, a complaint must contain "only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1974 (2007).

To prevail on an Eighth Amendment claim for medical mistreatment in prison, the prisoner must show that the defendant acted with deliberate indifference to a serious medical need. *See Farmer v. Brennan,* 511 U.S. 825 (1994). The prisoner must satisfy two requirements: "First, the prisoner must prove that the alleged deprivation of medical treatment is, in objective terms, sufficiently serious-that is, the prisoner must prove that his medical need was a condition of urgency, one that may produce death, degeneration or extreme pain. Second, the prisoner must prove that the charged official acted with a sufficiently culpable state of mind." *Johnson v. Wright,* 412 F.3d 398, 403 (2d Cir.2005) (internal quotation marks

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2008 WL 4810066 (C.A.2 (N.Y.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 2008 WL 4810066 (C.A.2 (N.Y.)))

and citations omitted). This state of mind "need not reach the level of knowing and purposeful infliction of harm.... Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law. This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Salahuddin v. Goord,* 467 F.3d 263, 280 (2d Cir.2006) (citations omitted).

While Fransua makes several allegations regarding the seriousness of his medical needs and the lack of adequate care given to him by state prison officials and doctors, his complaint does not allege facts upon which a reasonable juror could infer that defendant doctors possessed the subjective reckless state of mind needed to permit a successful Eighth Amendment deliberate indifference claim. He does not allege that defendant doctors were aware of the serious risks to which they allegedly subjected him. Fransua's claim against defendant Eagen was, therefore, also properly dismissed, because Fransua failed to plead an underlying constitutional violation needed to ground a claim based on supervisory liability. *See id.* at 283.

**\*2** Because Fransua failed adequately to plead a cause of action, the grant of a motion to dismiss without leave to replead would ordinarily be appropriate. But under the unusual circumstances of this case, where he was proceeding *pro se* when he filed the complaint, but is now represented by counsel, we conclude that he should be permitted leave to amend his complaint to attempt to state a claim upon which relief can be granted. *See Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2d Cir.1999) ("[D]ismissal of [this] case would normally be proper. However, 'a *pro se* complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " (quoting *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991))).

We therefore vacate the district court's dismissal of Fransua's complaint with prejudice, and direct the court to enter a similar order of dismissal without prejudice.

For the foregoing reasons, the judgment of the District Court is hereby VACATED and the case is REMANDED to the district court.

C.A.2 (N.Y.),2008.
Fransua v. Vadlamudi
Slip Copy, 2008 WL 4810066 (C.A.2 (N.Y.))

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.2d, 2008 WL 552872 (N.D.N.Y.)
(Cite as: 2008 WL 552872 (N.D.N.Y.))

**H**  Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Joseph P Paul GUARNERI, Plaintiff,
v.
Lt. James HAZZARD; Cpl J. Cronk; Deputy Paul
Marsh, Jr.; Deputy Grippin; Deputy Howland; Frederick
C. Lamy, Commissioner; Francis T. Sullivan,
Commissioner; Deputy Mace; John Doe, Deputy; and
Dr. Weitz, Defendants.
**No. 9:06-CV-0985.**

Feb. 27, 2008.

Joseph P Paul Guarneri, Elmira, NY, pro se.

Girvin & Ferlazzo, P.C., Gregg T. Johnson, Esq., Jacinda
Hall Conboy, Esq., Scott P. Quesnel, Esq., of Counsel,
Albany, NY, for Defendants Hazzard, Cronk, Marsh,
Grippin, Howland, and Mace.

O'Connor, O'Connor, Bresee & First, P.C., Justin O.
Corcoran, Esq ., of Counsel, Albany, NY, for Defendant
Weitz.

Hon. Andrew M. Cuomo, Attorney General for the State
of New York, Bruce J. Boivin, Esq., Assistant Attorney
General, of Counsel, Albany, NY, for Defendant Sullivan.

*ORDER*

NORMAN A. MORDUE, Chief Judge.

**\*1**  The above matter comes to me following a
Report-Recommendation by Magistrate Judge David R.
Homer, duly filed on the 6th day of February 2008.

Following ten days from the service thereof, the Clerk has
sent me the file, including any and all objections filed by
the parties herein.

After careful review of all of the papers herein, including
the Magistrate Judge's Report-Recommendation, and no
objections submitted thereto, it is

ORDERED, that:

1. The Report-Recommendation is hereby approved.

2. Sullivan's motion to dismiss (Docket No. 43) is granted
and that the amended complaint is dismissed in its entirety
as to her.

3. Dr. Weitz's motion to dismiss (Docket No. 19) is:

   a. Granted as to his lack of personal involvement with
the confiscation of the knee brace;

   b. Denied as to his lack of personal involvement in
Guarneri's neck, back, and mental health treatments;

   c. Denied as to Guarneri's back and neck injuries
sustained in 2003; and

   d. Granted as to Guarneri's back and neck injuries
sustained in 2000.

4. The amend complaint is dismissed without prejudice as
to defendants Lamy and John Doe.

5. The Clerk of the Court shall serve a copy of this Order
upon all parties and the Magistrate Judge assigned to this
case.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 552872 (N.D.N.Y.)
(Cite as: 2008 WL 552872 (N.D.N.Y.))

IT IS SO ORDERED.

**REPORT-RECOMMENDATION AND ORDER**[FN1]

> **FN1.** This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

DAVID R. HOMER, United States Magistrate Judge.

Plaintiff pro se Joseph Paul Guarneri ("Guarneri"), presently an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants,[FN2] six Schoharie County employees ("County defendants"), two New York State Commissioners ("State defendants"), and one physician, violated his First and Eighth Amendment rights while Guarneri was incarcerated at the Schoharie County Correctional Facility ("Schoharie"). Am. Compl. (Docket No. 13). Presently pending are the motions for summary judgment of the physician (Docket No. 19) and the State defendants[FN3] (Docket No. 43) pursuant to Fed.R.Civ.P. 12(b)(6). Guarneri opposes both motions. Docket No. 46. For the following reasons, it is recommended that the physician's motion to dismiss be granted in part and denied in part and that the State defendant's motion be granted.

> **FN2.** Guarneri initially named twelve defendants, two of whom were dismissed by an order dated March 6, 2007 (Docket No. 15) and one who remains unidentified. State Defs. Memorandum of Law (Docket No. 43, Pt. 4) at 3 n. 2.

> **FN3.** Defendant Lamay has not been served or otherwise appeared in this action. *See* State Defs. Memorandum of Law at 4. Likewise, defendant John Doe has neither been served nor further identified. More than 120 days have elapsed since the amended complaint was filed. Accordingly, it is recommended that the amended complaint be dismissed without prejudice as to both defendant pursuant to Fed.R.Civ.P. 4(m) and N.D.N.Y.L.R. 4.1(b).

**I. Background**

The facts are related herein in the light most favorable to Guarneri as the nonmoving party. *See* subsection II(A) *infra*.

Guarneri was incarcerated at Schoharie from June 6 to August 2006 for a parole violation. Am. Compl. at ¶ 2. On June 16, 2006, Guarneri represented himself at his preliminary hearing. *Id.* at ¶ 2. Guarneri claims that the Schoharie law library was inadequate because it lacked appropriate resources and utilized a crude and unreliable library loan system which delivered requested material, if at all, after the date of the preliminary hearing. *Id.* These deficiencies "infringed and undermined [Guarneri's] constitutional rights." *Id.* Additionally, Guarneri claims that his time in the library was "intentionally and unreasonably limited ...." *Id.* at ¶ 42. Guarneri also contends that defendant Hazzard failed to copy the appropriate Penal Law sections regarding the period of punishment and failed to provide him with the correct case law pertaining to his litigation. *Id.* at ¶ 45.

**\*2** Besides his legal difficulty, Guarneri also arrived at Schoharie in grave pain due to pre-existing injuries including herniated discs in his neck and lower back, torn ligaments in his knee, Post-Traumatic Stress Disorder (PTSD), bipolar disorder, and depression. *Id.* Guarneri claims that on July 21, 2006, he was "denied ... emergency medical care by [defendants] Weitz and [ ] Hazzard for a [knee] give-way episode...." *Id.* at ¶ 22. Furthermore, Guarneri contended that upon receiving medical attention in the emergency room, hours later and after suffering severe pain, the treatment was wholly inadequate. *Id.* at ¶ 32. Guarneri also makes reference to incidents occurring in 2000 and 2003 which resulted in his herniated discs, alleging that at the time of the incident defendants Marsh and Hazzard delivered inadequate medical care that was further perpetuated by defendants Weitz and Hazzard with their decision to prohibit Guarneri from receiving a back brace. *Id.* at ¶ 30. Additionally, Guarneri contends that defendants Hazzard, Crook, Marsh, Grippin, Howland, Mace, John Doe, and Weitz all colluded against him "by not letting [Guarneri] speak to mental health counselors when [he was suffering from] mental health episodes ...." *Id.* at ¶ 35. Lastly, Guarneri contends that after arriving at Elmira Correctional Facility in August 2006, defendants

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 552872 (N.D.N.Y.)
(Cite as: 2008 WL 552872 (N.D.N.Y.))

Hazzard, Mace, and John Doe deliberately interfered with his medical treatment by precluding him from wearing the hinged knee brace which had subsequently been provided to him at Schoharie. *Id.* at ¶ 2.

In response to defendants repossessing his knee brace, Guarneri timely filed a grievance. *Id.* at ¶¶ 22, 25. Guarneri contends that the State defendants failed to respond to this grievance because they were acting in concert with the County defendants, "deliberately and intentionally tak[ing] advantage of ... [Guarneri]." *Id.* at ¶ 25. The State defendants lack of communication led Guarneri to the conclusion that "resort to an administrative remed[y] would be clearly futile ...." *Id.*

Additionally, Guarneri alleges that defendant Hazzard "deliberately and intentionally [attempted to] stop" Guarneri from practicing Catholicism while he was incarcerated. *Id.* at ¶ 36. Guarneri contends that "defendant ... has known for years that [he] has been Catholic and has known the Rev. Ferenezy is not of the Catholic faith;" therefore, Hazzard's actions of arranging meetings between the two when Guarneri requested religious counsel amounted to defendants "tr[ying] to force a different religion on [Guarneri] ... den[ying him] the opportunity to see clergy and Catholic Religious Advisors when requested." *Id.* at ¶ 39.

### II. Discussion

Guarneri asserts two causes of action under the First Amendment that he has been denied (1) meaningful access to the courts and (2) his religious freedom. Additionally Guarneri claims deliberate indifference to a serious medical need in violation of the Eighth Amendment because defendants (1) did not allow him to keep his hinged knee brace upon arrival at Elmira Correctional Facility, (2) provided delayed and inadequate emergency treatment on July 26, 2006, (3) received inadequate care at the time of his disc herniations in 2000 and 2003, and (4) was denied proper medical care when defendants refused to order him a back brace. The physician, Dr. Weitz, moves for summary judgment on the grounds that (1) there was no personal involvement, (2) the amended complaint fails to state a claim for deliberate indifference to serious medical needs, (3) the amended complaint is

barred by res judicata and collateral estoppel, and (4) the medical claims relating to Guarneri's back are barred by the statute of limitations [FN4] [FN5] Defendant Sullivan contends dismissal is appropriate because there was no personal involvement.

FN4. Dr. Weitz advances this valid claim expressly, however briefly, in a footnote in his memorandum of law. Weitz Mem. of Law (Docket No. 19, Pt. 3) at 15 n. 2.

FN5. Der. Weitz also advances the claim that Guarneri failed to state a valid pendent state law claim. However, the amended complaint fails to allege any pendent state law claims. Thus this argument need not be addressed.

### A. Legal Standard

**\*3** Fed.R.Civ.P. 12(b)(6) authorizes dismissal of a complaint that states no actionable claim. When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994). However, "a 'complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." *Gilfus v. Adessa,* No. 5:04-CV-1368 (HGM/DEP), 2006 WL 2827132, at *3 (N.D.N.Y.2006) (citing *De Jesus v. Sears, Roebuck & Co.* 87 F.3d 65, 70 (2d Cir.1996) (internal quotations omitted)). Thus, dismissal is only warranted if it appears, beyond a reasonable doubt, that the non-moving party cannot prove a set of facts which would support his or her claim or entitle him or her to relief. *See Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984); *Harris v. City of New York,* 186 F.3d 243, 247 (2d Cir.1999).

When, as here, a party seeks dismissal against a pro se litigant, a court must afford the non-movant special solicitude. *See Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006). As the Second Circuit has stated,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 552872 (N.D.N.Y.)
(Cite as: 2008 WL 552872 (N.D.N.Y.))

[t]here are many cases in which we have said that a *pro se* litigant is entitled to "special solicitude," ... that a *pro se* litigant's submissions must be construed "liberally,"... and that such submissions must be read to raise the strongest arguments that they 'suggest At the same time, our cases have also indicated that we cannot read into *pro se* submissions claims that are not "consistent" with the *pro se* litigant's allegations, .. or arguments that the submissions themselves do not "suggest, ..." that we should not "excuse frivolous or vexatious filings by *pro se* litigants" ... and that *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law ...."

*Id.* (citations and footnote omitted).

### B. Personal Involvement

Both defendants contend that Guarneri has failed sufficiently to allege their personal involvement.

" '[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991)). Thus, supervisory officials may not be held liable merely because they held a position of authority. *Id.; Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996). However, supervisory personnel may be considered "personally involved" if:

(1) [T]he defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

**\*4** *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (citing *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986)).

Despite Guarneri's submission of an amended complaint, he has failed to allege how Dr. Weitz was involved in the deprivation of his knee brace upon his arrival at Elmira Correctional Facility. Guarneri only references defendants Hazzard, Mace, and John Doe when discussing the events surrounding the confiscation of his knee brace. Am. Compl. at ¶ 19. Thus Guarneri fails to allege any facts indicating that Dr. Weitz was personally involved in those events.

However, Guarneri has contended that Dr. Weitz "denied [Guarneri] appropriate mental health care by not letting [him] speak to mental health counselors ..." and "refused [to] prescribe treatment for (herniated disk) in [sic] the lower back and neck [FN6] ... based on non-medical concerns like cost." Am. Compl. at ¶¶ 35, 30. These allegations specifically identify Dr. Weitz as a participant in the alleged medical indifference he suffered. Thus, Guarneri has succeeded in alleging facts, indicating that Dr. Weitz was personally involved in his medical care.

> FN6. This allegation pertains solely to the neck and back injuries sustained in 2003. Those injuries occurring in 2000 have been dismissed as barred by the statute of limitations. *See infra* at subsection II(E).

Additionally, Sullivan has contended that Guarneri fails to allege her personal involvement. Guarneri alleges that the "State acted in concert with [County] defendants by not answering appeals of grievances submitted by [Guarneri] in a timely manner ...." Am. Compl. at ¶ 25. However, failing to "receive a response to a complaint ... is insufficient to establish personal involvement [especially when] there is no other showing that [defendant] knew of or directly participated in any alleged violation." *Abbas v. Senkowski,* No. 03-CV-476 (GLS/DRH), 2005 WL 2179426, at *2 (N.D.N.Y. Sept. 9, 2005). Additionally, Sullivan may not be held personally liable because of his supervisory position. Moreover, Guarneri does not allege the creation or execution of an unconstitutional policy or negligent supervision. Thus, Guarneri's

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 552872 (N.D.N.Y.)
(Cite as: 2008 WL 552872 (N.D.N.Y.))

conclusory assertions are insufficient to provide a factual basis to support the personal involvement of Sullivan.

Therefore, it is recommended that Dr. Weitz's motion to dismiss be granted as to his involvement in the confiscation of the knee brace but denied with respect to his involvement in Guarneri's neck, back, and mental health treatments. Additionally, it is recommended that Sullivan's motion to dismiss be granted.

### C. Eighth Amendment

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. CONST. amend. VIII. This includes the provision of medical care. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir.1994). A prisoner advancing an Eighth Amendment claim for denial of medical care must allege and prove deliberate indifference to a serious medical need. Wilson v. Seiter, 501 U.S. 294, 297 (1991); Hathaway, 37 F.3d at 66. More than negligence is required "but less than conduct undertaken for the very purpose of causing harm." Hathaway, 37 F.3d at 66. The test for a § 1983 claim is twofold. First, the prisoner must show that there was a sufficiently serious medical need. Chance v.. Armstrong, 143 F.3d 698, 702 (2d Cir.1998). Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm. Id. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Farmer v. Brennan, 511 U.S. 825, 844 (1994).

*5 " 'Because society does not expect that prisoners will have unqualified access to healthcare', a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim. Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir.2003) (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)). Because there is no distinct litmus test, a serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and

substantial pain." Brock v. Wright, 315 F.3d 158, 162-63 (2d Cir.2003) (citing Chance, 143 F.3d at 702). The severity of the denial of care should also be judged within the context of the surrounding facts and circumstances of the case. Smith, 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs." Chance, 143 F.3d at 702. Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104, (1976). "Mere disagreement over proper treatment does not create a constitutional claim," as long as the treatment was adequate. Id . at 703. Thus, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists ... are not adequate grounds for a § 1983 claim." Magee v. Childs, No. 04-CV-1089 (GLS/RFT), 2006 WL 681223 at *4 (N.D.N.Y. Feb. 27, 2006). Furthermore, allegations of negligence or malpractice do not constitute deliberate indifference unless the malpractice involved culpable recklessness. Hathaway v.. Coughlin, 99 F.3d 550, 553 (2d Cir.1996).

### 1. Knee

Guarneri may have offered evidence sufficient to conclude that the knee injury he sustained was serious. Generally, knee injuries have been "insufficient to trigger Eighth Amendment protection and support a deliberate indifference claim." Johnson v. Wright, 477 F.Supp.2d 572, 575 (W.D.N.Y.2007) (holding that a prisoner's torn meniscus suffered as a result of a basketball injury was not a serious medical need) (quoting Moody v. Pickles, No. 03-CV-850 (DEP), 2006 WL 2645124, at *6 (N.D.N.Y. Sept. 13, 2006) (holding that a "medial meniscal tear, with joint effusion" which did not render plaintiff immobile was not a serious medical need); see also Williamson v. Goord, No. 02-CV-521(GLS/GHL), 2006 WL 1977438, at *9, 14, 16 (N.D.N.Y. July 11, 2006) (holding that a prisoner's knee injuries including arthrosis, degenerative joint disease, and partially torn anterior cruciate ligament ("ACL"), did not constitute "death or degeneration, or [constitute the appropriate level of] extreme pain [contemplated by] the law").

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 552872 (N.D.N.Y.)
(Cite as: 2008 WL 552872 (N.D.N.Y.))

**\*6** In this case, it is unclear how significantly the deprivation of Guarneri's knee brace affected his mobility as he has subsequently indicated his ability to ambulate. Docket No. 46 at 3. However, construing the facts in the light most favorable to Guarneri, the excruciating pain that he alleges may be of sufficient severity. *Id.* Therefore, viewing the evidence in the light most favorable to Guarneri, it appears that his knee injury was a serious medical condition.

Additionally, construing Guarneri's allegations as true, it appears that there exists a question of fact whether defendant acted with deliberate indifference to that medical condition. Guarneri contends that after he was prescribed the hinged knee brace, defendants intentionally interfered with his treatment by denying him use of the brace. Am. Compl. at ¶ 19. Moreover, Guarneri contends that defendants intentionally delayed transporting him to an emergency room when his knee gave way, causing him excruciating pain for an unnecessarily long period of time. *Id.* at ¶ 32.

Therefore, it is recommended that Dr. Weitz's motion on this ground be denied.

### 2. Mental Health

Guarneri also alleges that he suffered from and received inadequate medical treatment for PTSD, bipolar disorder, and depression. "Treatment of mental disorders of mentally disturbed inmates is ... a serious medical need" as contemplated by *Estelle. Guglielmoni v. Alexander,* 583 F.Supp. 821, 826 (D.Conn.1984). Thus, considering all of Guarneri's various complaints concerning his mental health, it is clear that he has alleged facts sufficient to provide relief as to whether he suffered a serious medical need as a result of his mental illnesses.

Moreover, Guarneri also contends that defendants have deliberately precluded him "from speaking to mental health counselors when hav[ing] mental health episodes ...." Am. Compl. at ¶ at 34-35. If proven, this constitutes deliberate indifference to Guarneri's mental health needs. Therefore, it is recommended that Dr. Weitz's motion on this ground be denied.

### 3. Back

Guarneri alleges sufficient evidence to present a serious medical need. Other courts have held that "[s]evere back pain, especially if lasting an extended period of time, can amount to a 'serious medical need' under the Eighth Amendment." *Nelson v. Rodas,* No. 01-CV-7887 (RCC/AJP), 2002 WL 31075804, at \*14 (S.D.N.Y. Sept. 17, 2002) (citations omitted); *see also, Farraday v. Lantz,* No. 03-CV-1520 (SRU), 2005 WL 3465846, at \*5 (D. Conn. Dec 12, 2005) (holding that "persistent[ ] complain[ts] of lower back pain caused by herniated, migrated discs [and] sciatica ..." leading to severe pain constitutes a serious medical need). Therefore, with regard to the 2003 back injury, Guarneri has alleged a serious medical need.

Additionally, Guarneri alleges that defendant Hazzard "deliberately and with malice denied adequate medical care ...." Am. Compl. at ¶ 23. Thus, construing these allegations in the light most favorable to Guarneri, he has alleged deliberate indifference to this medical need. Thus, it is recommended that defendant's motion on this ground be denied.

### D. Res Judicata/Collateral Estoppel

**\*7** "A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry,* 449 U.S. 90, 94 (1980) (applying res judicata to a 42 U.S.C. § 1983 action). Thus, to sustain a claim of res judicata, the defense must show that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. New York City Dep't of Corr.,* 214 F.3d 275, 285 (2d Cir.2000) (citations omitted). In New York State, the analysis is governed by the transactional approach in which later claims are barred if they "aris[e] out of the same factual grouping as an earlier litigated claim even if the[y are] ... based on different legal theories or seek[ ] dissimilar or additional relief." *Id.*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 552872 (N.D.N.Y.)
(Cite as: 2008 WL 552872 (N.D.N.Y.))

Under the Full Faith and Credit Clause of the Constitution, federal courts must grant state court judgments the same preclusive effects as those given to other courts located within the state. *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994) (citing *Migra v. Warren City Sch. Dist.,* 465 U.S. 75, 81 (1984)). However, the bar of res judicata will not apply where the original forum is incapable of providing the relief requested by the plaintiff. *Id.; Davidson v. Capuano,* 792 F.2d 275, 278 (2d Cir.1986). The Second Circuit has held that a plaintiff in a § 1983 action who is seeking damages will not be vulnerable to dismissal based upon res judicata, although, a similar plaintiff seeking injunctive relief will be. *Davidson,* 792 F.2d at 277-78; *Fay v. South Colonie Cent. Sch. Dist.,* 802 F.2d 21, 30 (2d Cir.1986).

As a threshold matter, Dr. Weitz correctly notes that Guarneri's previous lawsuit, also filed in the Northern District of New York, is still pending. *See Guarneri v. Bates,* No. 05-CV-444 (GLS/DRH) (report-recommendation of magistrate judge pending final decision before district court). Because the previous action has not received an adjudication on the merits, Dr. Weitz cannot overcome the first prong of the analysis. Thus, it is recommended that Dr. Weitz's motion on this ground be denied without prejudice.

In the alternative, Dr. Weitz also raises the broader affirmative defense of collateral estoppel. "Once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen,* 449 U.S. at 94 (1980). Collateral estoppel is applicable:

> [I]f (1) there has been a final determination on the merits of the issue sought to be precluded; (2) the party against whom ... preclusion is sought has a full and fair opportunity to contest the decision ...; and (3) the issue sought to be precluded by the earlier suit is the same issue involved in the later action.

**\*8** *Davis v. Halpern,* 813 F.2d 37, 39 (2d Cir.1987) (citation omitted). The requirement of a full and fair opportunity to contest requires that the plaintiff "was fully able to raise the same factual or legal issues" in the prior litigation as asserted in the present case. *LaFleur v. Whitman,* 300 F.3d 256, 274 (2d Cir.2002).

However, it is clear that there has not been a final determination in the pending federal case and Dr. Weitz, again, cannot surmount the first prong of the test. Therefore, Dr. Weitz's motion should be denied without prejudice on this ground as well.

**E. Statute of Limitations**

Dr. Weitz moves to dismiss Guarneri's Eighth Amendment allegations concerning inadequate treatment for his neck and back on the ground that they are barred by the statute of limitations. While there is no provision in § 1983, § 1988 provides that state law may apply if not inconsistent with the Constitution or federal law. 42 U.S.C. § 1988(a) (2003); *Moor v. County of Alameda,* 411 U.S. 693, 702-03 (1973). In New York, the applicable statute of limitations for a § 1983 suit is the three-year period governing suits to recover upon a liability created or imposed by statute. *See Owens v. Okure,* 488 U.S. 235, 249-51 (1989); *Romer v. Leary,* 425 F.2d 186, 187 (2d Cir.1970); *N.Y. C.P.L.R. 214*(2) (McKinney 2003).

Federal law governs the determination of the accrual date for purposes of a § 1983 claim. *Pearl v. City of Long Beach,* 296 F.3d 76, 80 (2d Cir.2002). The claim accrues "when the plaintiff knows or has reason to know" of the harm. *Id.* (citations omitted). "The crucial time for accrual purposes is when the plaintiff becomes aware that he [or she] is suffering from a wrong for which damages may be recovered in a civil action." *Singleton v. City of New York,* 632 F.2d 185, 192 (2d Cir.1980). With regard to medical indifference claims, the statute of limitations in a § 1983 suit is derived from personal injury case law, not medical malpractice. *See e.g. Owens,* 488 U.S. at 251.

Here, Guarneri's initial complaint was filed on August 14, 2006. Compl. (Docket No. 1). Thus, claims relating to medical indifference occurring in 2000 are clearly outside the three-year period. However, claims regarding deliberate indifference resulting in herniated discs

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 552872 (N.D.N.Y.)
(Cite as: 2008 WL 552872 (N.D.N.Y.))

occurring in 2003 may fall within the three-year statutory period depending on when in 2003 the conduct occurred. Therefore, claims relating to the second back injury in 2003 may present facts upon which relief may be granted depending on when in 2003 the claim is shown to have accrued. At this stage, liberally construing Guarnera's amended complaint, the allegations therein are deemed to assert that claim accrued after August 14, 2003.

Thus, Dr. Weitz's motion on this ground should be granted with regard to the neck and back injuries occurring in 2000 and denied with regard to the back injuries occurring in 2003.

### III. Conclusion

**\*9** For the reasons stated above, it is hereby **RECOMMENDED** that:

1. Sullivan's motion to dismiss (Docket No. 43) be **GRANTED** and that the amended complaint be **DISMISSED** in its entirety as to her;

2. Dr. Weitz's motion to dismiss (Docket No. 19) be:

a. **GRANTED** as to his lack of personal involvement with the confiscation of the knee brace;

b. **DENIED** as to his lack of personal involvement in Guarnera's neck, back, and mental health treatments;

c. **DENIED** as to Guarnera's back and neck injuries sustained in 2003; and

d. **GRANTED** as to Guarnera's back and neck injuries sustained in 2000; and

3. The amended complaint be **DISMISSED** without prejudice as to defendants Lamy and John Doe.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Sec'y of HHS,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,2008.
Guarneri v. Hazzard
Not Reported in F.Supp.2d, 2008 WL 552872 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
John HALE, Plaintiff,
v.
Jadow RAO; J. Ireland; Mack/s/Revell; R. Furnia; J.
Silver; John Doe # 1; John Doe # 2; Jane Doe # 1; Jane
Doe # 2; Jane Doe # 3; and Jane Doe # 4, Defendants.
**No. 9:08-CV-612.**

Nov. 3, 2009.

John Hale, Alden, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General of the State of
New York, Richard Lombardo, Esq., Asst. Attorney
General, of Counsel, Albany, NY, for Defendants.

***DECISION and ORDER***

DAVID N. HURD, District Judge.

**\*1** Plaintiff, John Hale, brought this civil rights action in
March 2008, pursuant to 42 U.S.C. § 1983. By
Report-Recommendation dated September 29, 2009, the
Honorable George H. Lowe, United States Magistrate
Judge, recommended that defendants' motions to dismiss
(Docket No. 27) be granted in part and denied in part as
follows: (1) the motion to dismiss should be granted to the
extent that plaintiff asserts claims for money damages
against defendants in their official capacities; and (2) the
motion should be denied to the extent that defendants
moved to dismiss plaintiff's Eighth Amendment claim
against defendant Rao, and moved to dismiss the
complaint against defendant Rao on the ground of
qualified immunity. The Magistrate Judge further
recommended that the motion to dismiss for failure to
prosecute, or in the alternative for an order compelling

plaintiff's responses (Docket No. 36), be denied. No
objections to the Report-Recommendation have been filed.

Based upon a careful review of the entire file and the
recommendations of Magistrate Judge Lowe, the
Report-Recommendation is accepted and adopted in all
respects. *See* 28 U.S.C. 636(b) (1).

Accordingly, it is

ORDERED that

1. Defendants' motion to dismiss (Docket No. 27) is
GRANTED IN PART and DENIED IN PART;

   a. The motion to dismiss is GRANTED to the extent
that plaintiff asserts claims for money damages against
defendants in their official capacities; and

   b. The motion is DENIED to the extent that
defendants moved to against defendant Rao on the
ground of qualified immunity;

2. Defendants' motion to dismiss for failure to prosecute,
or in the alternative, for an order compelling plaintiff's
responses (Docket No. 36) is DENIED;

3. This matter is referred back to the Magistrate Judge for
any further proceedings.

IT IS SO ORDERED.

***REPORT-RECOMMENDATION AND ORDER***

GEORGE H. LOWE, United States Magistrate Judge.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

This *pro se* prisoner civil rights action, filed pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c) of the Local Rules of Practice for this Court.

Currently pending is a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(c), seeking dismissal of the complaint in its entirety against Defendant Dr. Jadow Rao and against Defendants J. Ireland, R. Furnia, Mack Reyell, J. Silver, and Rao in their official capacities. Dkt. No. 27. Plaintiff opposes the motion. Dkt. Nos. 39, 41.

Also pending is a Motion to Dismiss for Lack of Prosecution pursuant to Fed.R.Civ.P. 41(b) or, in the alternative, for an Order compelling Plaintiff to respond to paragraphs I(A)(1)(b) and (c) of the Court's Mandatory Pretrial Discovery and Scheduling Order. Dkt. No. 36. Plaintiff opposes the motion. Dkt. Nos. 39, 41.

For the reasons discussed below, I recommend that the Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and 12(c) be granted, in part, and denied, in part. I also recommend that the Motion to Dismiss for Lack of Prosecution pursuant to Fed.R.Civ.P. 41(b) or, in the alternative, for an Order compelling Plaintiff's responses be denied.

## I. MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) AND 12(c)

### A. BACKGROUND

**\*2** Plaintiff John Hale alleges that eleven employees ("Defendants") of the New York State Department of Correctional Services ("DOCS") violated his rights under the Eighth Amendment when (1) in or around May of 2006, Defendants Ireland, Revell, Furnia, and Silver physically assaulted and injured him without provocation at Clinton Correctional Facility ("C.F."), and (2) between May of 2006 and February of 2008, the remaining seven Defendants (Dr. Rao, John Does 1-2, and Jane Does 1-4)

were deliberately indifferent to his resulting serious medical needs at Clinton, Southport, Elmira and Attica C.F.s. Complaint at ¶¶ 16-27.

Plaintiff states that he has exhausted his administrative remedies. Complaint at ¶ 29. Plaintiff has submitted copies of decisions from the Central Office Review Committee of the Inmate Grievance Program. Dkt. No. 5, Exhibits. Plaintiff also included a copy of a decision from the Superintendent of Attica C.F. *Id.*

### B. LEGAL STANDARD GOVERNING MOTIONS TO DISMISS

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Federal Rule of Civil Procedure 8(a)(2); [FN1] or (2) a challenge to the legal cognizability of the claim.[FN2]

> FN1. *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") (citations omitted); *Princeton Indus., Inc. v. Rem,* 39 B.R. 140, 143 (Bankr .S.D.N.Y.1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello,* 55 F.R.D. 72, 74 (S.D.N.Y.1972) ("This motion under Fed.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.' ").

> FN2. *See Swierkiewicz v. Sorema N.A.,* 534 U.S.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

506, 514 (2002) ( "These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.... In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon,* 360 F.3d 73, 80 (2d Cir.2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas,* 308 F.3d 180, 187 (2d Cir.2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation ... fails as a matter of law.") (citation omitted); *Kittay v. Kornstein,* 230 F.3d 531, 541 (2d Cir.2000) (distinguishing between a failure to meet Rule 12(b)(6)'s requirement of stating a cognizable claim and Rule 8(a)'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 379 F.Supp.2d 348, 370 (S.D.N.Y.2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6) ].") (citation omitted); *accord, Straker v. Metro Trans. Auth.,* 331 F.Supp.2d 91, 101-102 (E.D.N.Y.2004).

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) (emphasis added). By requiring this "showing," Rule 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." [FN3] The main purpose of this rule is to "facilitate a proper decision on the merits." [FN4] A complaint that fails to comply with this rule "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims." [FN5]

FN3. *Dura Pharm., Inc. v. Broudo,* 125 S.Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) (citation omitted; emphasis added); *see also Swierkiewicz,* 534 U.S. at 512 [citation omitted]; *Leatherman v.*

*Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168 (1993) (citation omitted).

FN4. *Swierkiewicz,* 534 U.S. at 514 (quoting *Conley,* 355 U.S. at 48); *see also Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir.1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") (citation omitted); *Salahuddin v. Cuomo,* 861 F .2d 40, 42 (2d Cir.1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") (citations omitted).

FN5. *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy, J.), *aff'd,* 113 F.3d 1229 (2d Cir.1997) (unpublished table opinion). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.,* 335 F.3d 152, 156 (2d Cir.2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.,* 104 F.3d 355 (2d Cir.1996)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556-57, 570 (2007)). Accordingly, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

alleged-but has not *shown*-that the pleader is entitled to relief." *Iqbal,* 129 S.Ct. at 1950 (emphasis added).

**\*3** It should also be emphasized that, "[i]n reviewing a complaint for dismissal under Fed.R.Civ.P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." FN6 "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se.* "FN7 In other words, while all pleadings are to be construed liberally under Rule 8(e), *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality.

> FN6. *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (affirming grant of motion to dismiss) (citation omitted); *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994).

> FN7. *Hernandez,* 18 F.3d at 136 (citation omitted); *Deravin v. Kerik,* 335 F.3d 195, 200 (2d Cir.2003) (citations omitted); *Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 619 (2d Cir.1999) (citation omitted).

For example, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint. FN8 Moreover, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." FN9 Furthermore, when addressing a *pro se* complaint, *generally* a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." FN10 Of course, an opportunity to amend is not required where the plaintiff has already amended his complaint. FN11 In addition, an opportunity to amend is not required where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it." FN12

> FN8. "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum." *Gadson v. Goord,* 96-CV-7544, 1997 WL 714878, at \*1, n. 2 (S.D.N.Y. Nov. 17, 1997) (citing, *inter alia, Gil v. Mooney,* 824 F.2d 192, 195 (2d Cir.1987) (considering plaintiff's response affidavit on motion to dismiss)). Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.' " *Donhauser v. Goord,* 314 F.Supp.2d 119, 212 (N.D.N.Y.2004) (considering factual allegations contained in plaintiff's opposition papers) (citations omitted), *vacated in part on other grounds,* 317 F.Supp.2d 160 (N.D.N.Y.2004). This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading-which a motion to dismiss is not. *See Washington v. James,* 782 F.2d 1134, 1138-39 (2d Cir.1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) (citations omitted).

> FN9. *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) (internal quotation and citation omitted).

> FN10. *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (internal quotation and citation omitted); *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

> FN11. *Yang v. New York City Trans. Auth.,* 01-CV-3933, 2002 WL 31399119, at \*2 (E.D.N.Y. Oct. 24, 2002) (denying leave to amend where plaintiff had already amended

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

complaint once); *Advanced Marine Tech. v. Burnham Sec., Inc.,* 16 F.Supp.2d 375, 384 (S.D.N.Y.1998) (denying leave to amend where plaintiff had already amended complaint once).

FN12. *Cuoco,* 222 F.3d at 112 (finding that repleading would be futile) (citation omitted); *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) (citation omitted).

However, while this special leniency may somewhat loosen the procedural rules governing the form of pleadings (as the Second Circuit has observed),[FN13] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Rules 8, 10 and 12.[FN14] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Rules 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[FN15] Stated more plainly, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended." [FN16]

FN13. *Sealed Plaintiff v. Sealed Defendant # 1,* No. 06-1590, 2008 WL 3294864, at *5 (2d Cir. Aug. 12, 2008) ("[The obligation to construe the pleadings of *pro se* litigants liberally] entails, at the very least, a permissive application of the rules governing the form of pleadings.") (internal quotation marks and citation omitted); *see also Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) ("[R]easonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training ... should not be impaired by harsh application of technical rules.") (citation omitted).

FN14. *See Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner,* 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed.R.Civ.P. 8] ); *accord,*

*Shoemaker v. State of Cal.,* 101 F.3d 108 (2d Cir.1996) (citing *Prezzi v. Schelter,* 469 F.2d 691) (unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter,* 469 F.2d 691, within the Second Circuit); *accord, Praseuth v. Werbe,* 99 F.3d 402 (2d Cir.1995).

FN15. *See McNeil v. U.S.,* 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California,* 422 U.S. 806, 834, n. 46 (1975) ("The right of self-representation is not a license ... not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *cf. Phillips v. Girdich,* 408 F.3d 124, 128, 130 (2d Cir.2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading [ ]or prejudice the adverse party").

FN16. *Stinson v. Sheriff's Dep't of Sullivan Cty.,* 499 F.Supp. 259, 262 & n. 9 (S.D.N.Y.1980).

Defendants also move pursuant to Fed.R.Civ.P. 12(c). Rule 12(c) of the Federal Rules of Civil Procedure provides, in pertinent part: "After the pleadings are closed ... any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). "In deciding a Rule 12(c) motion, [courts] apply the same standard as that applicable to a motion under Rule 12(b)(6)." [FN17]

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

FN17. *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.), *cert. denied,* 513 U.S. 816 (1994) (citations omitted); *accord, Patel v. Contemporary Classics of Beverly Hills,* 259 F.3d 123, 126 (2d Cir.2001) (citations omitted) ("The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim.").

## C. ANALYSIS

### 1. Eighth Amendment

Reading the complaint generously, Plaintiff alleges that he complained to Defendant Rao, Health Services Director at Attica C.F., about his "medical problems," which included (1) the injuries he sustained during the alleged May 2006 incident, such as persistent vomiting of blood and urinating of blood, (2) surgical staples in his stomach, and (3) swollen ribs.[FN18] Complaint at ¶ ¶ 16-27. Plaintiff alleges that in response, Dr. Rao stated that he did not believe Plaintiff's complaints, consistently "denied" Plaintiff's complaints, and called Plaintiff " 'crazy.' " *Id.* at ¶¶ 26, 27. Plaintiff claims that as a result, he has endured pain, suffering, and injuries. *Id.*

FN18. Specifically, Plaintiff states, "It should be noted that *Plaintiff has been complaining about all of the above medical problems* [which include the injuries sustained during the alleged assault, the surgical staples, and swollen ribs] to medical staff here at Attica C.F. *including Defendant Dr. Rao* ... and ever since he was beaten by the Defendant Officers Ireland, Reyell, Furnia, and Silver *he has been throwing up blood and urinating blood yet the Defendants consisting* [sic] *denied his complaints;* resulting in Plaintiff's pain and suffering, and further injuries." Complaint at ¶ 27 (emphasis added).

**\*4** Defendants argue that Plaintiff has made an insufficient showing of an Eighth Amendment claim against Defendant Rao. Dkt. No. 27-2 at pp. 3-6.

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual" punishments. The word "punishment" refers not only to deprivations imposed as a sanction for criminal wrongdoing, but also to deprivations suffered during imprisonment. *Estelle v. Gamble,* 429 U.S. 97, 102-03 (1976). Punishment is "cruel and unusual" if it involves the unnecessary and wanton infliction of pain or if it is incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle,* 429 U.S. at 102. Thus, the Eighth Amendment imposes on jail officials the duty to "provide humane conditions of confinement" for prisoners. *Farmer v. Brennan,* 511 U.S. 825, 832 (1994). Thus, prison officials must "ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.' " *Farmer,* 511 U.S. at 832 (quoting *Hudson v. Palmer,* 468 U.S. 517, 526-27 (1984)).

A viable Eighth Amendment claim must contain both an objective and a subjective component. *Farmer,* 511 U.S. at 834. To satisfy the objective component, "the deprivation alleged must be, objectively, 'sufficiently serious.' " *Farmer,* 511 U.S. at 834 (quoting *Wilson v. Seiter,* 501 U.S. 294, 298 (1991)). Analyzing the objective element of an Eighth Amendment medical care claim requires two inquiries. "The first inquiry is whether the prisoner was actually deprived of adequate medical care." *Salahuddin v. Goord,* 467 F.3d 263, 279 (2d Cir.2006). The word "adequate" reflects the reality that "[p]rison officials are not obligated to provide inmates with whatever care the inmates desire. Rather, prison officials fulfill their obligations under the Eighth Amendment when the care provided is 'reasonable.' " *Jones v. Westchester County Dept. of Corrections,* 557 F.Supp.2d 408, 413 (S.D.N.Y.2008).

The second inquiry is "whether the inadequacy in medical care is sufficiently serious. This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin,* 467 F.3d at 280. The focus of the second inquiry depends on whether the prisoner claims to have been completely deprived of treatment or whether he claims to have received treatment that was inadequate. *Id.* If "the unreasonable medical care is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

medical condition is sufficiently serious." *Id.* A "serious medical condition" is "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J. dissenting) (citations omitted), *accord, Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1996), *cert. denied,* 513 U.S. 1154 (1995); *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998). Relevant factors to consider when determining whether an alleged medical condition is sufficiently serious include, but are not limited to: (1) the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly affects an individual's daily activities; and (3) the existence of chronic and substantial pain. *Chance,* 143 F.3d at 702-03.

**\*5** If the claim is that treatment was provided but was inadequate, the second inquiry is narrower. *Salahuddin,* 467 F.3d at 280. For example, "[w]hen the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation" is sufficiently serious. *Smith v. Carpenter,* 316 F.3d 178, 185 (2d Cir.2003).

To satisfy the subjective component of an Eighth Amendment claim, the defendant's behavior must be "wanton." Where a prisoner claims that a defendant provided inadequate medical care, he must show that the defendant acted with "deliberate indifference." *Estelle,* 429 U.S. at 105.

Medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act ... that evinces 'a conscious disregard of a substantial risk of serious harm.' " *Chance,* 143 F.3d 698, 703 (quoting *Farmer v. Brennan,* 511 U.S. 825, 835 (1994)). Thus, to establish deliberate indifference, an inmate must prove that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer,* 511 U.S. at 837; *Chance,*

143 F.3d at 702-703. The inmate then must establish that the provider consciously and intentionally disregarded or ignored that serious medical need. *Farmer,* 511 U.S. 825, 835; *Ross v. Giambruno,* 112 F.3d 505 (2d Cir.1997). An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle,* 429 U.S. at 105-06. Moreover, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim ... under the Eighth Amendment." *Id.* Stated another way, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.; Smith v. Carpenter,* 316 F.3d 178, 184 (2d Cir.2003) ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation."). However, malpractice that amounts to culpable recklessness constitutes deliberate indifference. Accordingly, "a physician may be deliberately indifferent if he or she consciously chooses an easier and less efficacious treatment plan." *Chance,* 143 F.3d at 703.

Regarding the objective component, the complaint alleges that Defendant Rao provided Plaintiff with inadequate or no medical care after learning of Plaintiff's physical complaints, including persistent vomiting of blood and urinating of blood. Vomiting of blood and urinating of blood are indications of serious medical needs. *See Morgan v. Maass,* No. 94-35834, 1995 WL 759203, at \*2 (9th Cir. Dec. 26, 1995) (finding that vomiting blood constituted a serious medical need); *Kimbrough v. City of Cocoa,* No. 6:05-cv-471, 2006 WL 2860926, at \*3 (M.D.Fla. Oct. 4, 2006) (finding that "[e]ven to a lay person, it is obvious that blood in the urine is an indication of a serious medical need."). Thus, the allegations in the complaint satisfy the objective component.

**\*6** Regarding the subjective component, the complaint alleges that Defendant Rao was aware that Plaintiff had serious medical needs, but consciously and intentionally disregarded or ignored those needs. Dkt. No. 1. Thus, the allegations in the complaint satisfy the subjective component.

Defendants argue that Plaintiff's complaint is conclusory and fails to contain specific allegations of fact indicating

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

a deprivation of rights as against Defendant Rao. Dkt. No. 27-2, at p. 5. The Court disagrees. Plaintiff specifically stated that he informed Defendant Rao about his "medical problems," which included vomiting of blood and urinating of blood, but that Dr. Rao expressed disbelief, consistently "denied" Plaintiff's complaints, and stated that Plaintiff was "crazy." Complaint at ¶ 27. Plaintiff has set forth more than a simple conclusory allegation.

In light of the foregoing, the Court declines to conclude at this stage that Plaintiff has failed to state a claim for deliberate medical indifference against Defendant Rao.[FN19] Accordingly, the motion to dismiss the Eighth Amendment claim against Defendant Rao should be denied.

> FN19. *See Beeks v. Reilly,* No. 07-CV-3865, 2008 WL 3930657, at *7 (E.D.N.Y. Aug. 21, 2008) (citing *Chance,* 143 F.3d at 703-04 (reversing district court's dismissal of medical indifference claim at 12(b)(6) stage because "[w]hether a course of treatment was the product of sound medical judgment, negligence, or deliberate indifference depends on the facts of the case.... It may be that Chance has no proof whatsoever of this improper motive, and that lack of proof may become apparent at summary judgment. But even if we think it highly unlikely that Chance will be able to prove his allegations, that fact does not justify dismissal for failure to state a claim, for Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations ....") (citations and quotation marks omitted) (other citations omitted); *see also Lloyd v. Lee,* 570 F.Supp.2d 556, 559 (S.D.N.Y.2008) (finding that amended complaint plausibly alleged that doctors knew that plaintiff was experiencing extreme pain and loss of mobility, knew that the course of prescribed course of treatment was ineffective, and declined to do anything to attempt to improve plaintiff's situation besides re-submitting MRI request forms) (citing *Harris v. Westchester County Dep't of Corrections,* No. 06 Civ.2011, 2008 WL 953616, at *23 (S.D.N.Y. Apr. 3, 2008) (despite plaintiff's sparse allegations as to defendant's conduct, at the 12(b)(6) stage plaintiff sufficiently alleged facts supporting a plausible claim that defendant

was deliberately indifferent to plaintiff's medical needs)).

**2. Qualified Immunity**

Defendant Rao asserts that he is entitled to dismissal on the ground of qualified immunity. Dkt. No. 27-2 at pp. 6-8.

"Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Williams v. Smith,* 781 F.2d 319, 322 (2d Cir.1986) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 815 [1982] ). As a result, a qualified immunity inquiry in a prisoner civil rights case generally involves two issues: (1) "whether the facts, viewed in the light most favorable to the plaintiff establish a constitutional violation"; and (2) "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Sira v. Morton,* 380 F.3d 57, 68-69 (2d Cir.2004) (citations omitted), *accord, Higazy v. Templeton,* 505 F.3d 161, 169, n. 8 (2d Cir.2007) (citations omitted).

In determining the second issue (i.e., whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted), courts in this circuit consider three factors:

> (1) whether the right in question was defined with 'reasonable specificity'; whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991) (citations omitted), *cert. denied,* 503 U.S. 962 (1992).[FN20] "As the third part of the test provides, even where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful." *Higazy v. Templeton,* 505 F.3d 161, 169-70 (2d Cir.2007) (citations omitted). [FN21] This "objective reasonableness" part of the test is met if "officers of reasonable competence could disagree on [the legality of defendant's actions]." *Malley v. Briggs,* 475 U.S. 335, 341 (1986).[FN22] As the Supreme Court has explained,

> FN20. *See also Pena v. DePrisco,* 432 F.3d 98, 115 (2d Cir.2005); *Clue v. Johnson,* 179 F.3d 57, 61 (2d Cir.1999); *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir.1997); *Shechter v. Comptroller of City of New York,* 79 F.3d 265, 271 (2d Cir.1996); *Rodriguez v. Phillips,* 66 F.3d 470, 476 (2d Cir.1995); *Prue v.. City of Syracuse,* 26 F.3d 14, 17-18 (2d Cir.1994); *Calhoun v. New York State Division of Parole,* 999 F.2d 647, 654 (2d Cir.1993).

> FN21. *See also Anderson v. Creighton,* 483 U.S. 635, 639 (1987) ( "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective reasonableness of the action.' ") (citation omitted); *Davis v. Scherer,* 468 U.S. 183, 190 (1984) ("Even defendants who violate [clearly established] constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard."); *Benitez v. Wolff,* 985 F.2d 662, 666 (2d Cir.1993) (qualified immunity protects defendants "even where the rights were clearly established, if it was objectively reasonable for defendants to believe that their acts did not violate those rights").

> FN22. *See also Malsh v. Correctional Officer Austin,* 901 F.Supp. 757, 764 (S.D.N.Y.1995) (citing cases); *Ramirez v. Holmes,* 921 F.Supp. 204, 211 (S.D.N.Y.1996).

*7 [T]he qualified immunity defense ... provides ample

protection to all but the plainly incompetent or those who knowingly violate the law.

... Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.

*Malley,* 475 U.S. at 341.[FN23]

> FN23. *See also Hunter v. Bryant,* 502 U.S. 224, 299 (1991) ("The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.") [internal quotation marks and citation omitted].

Here, after liberally reviewing the complaint, accepting all of its allegations as true, and construing them in Plaintiff's favor, the Court declines to conclude that Defendant Rao is entitled to qualified immunity at this stage. As noted, Plaintiff alleges that he informed Dr. Rao of his "medical problems," including persistent vomiting of blood and urinating of blood, but Dr. Rao stated that he did not believe Plaintiff's complaints, consistently denied Plaintiff's complaints, and called Plaintiff " 'crazy,' " which resulted in pain, suffering, and injuries. Complaint at ¶¶ 26-27. Therefore, the motion to dismiss the complaint on the ground of qualified immunity should be denied.[FN24]

> FN24. *See Beeks,* 2008 WL 3930657, at *9 (citing *See McKenna,* 386 F.3d at 437-38 (affirming district court's denial of qualified immunity at motion to dismiss stage on deliberate indifference claim, "[h]owever the matter may stand at the summary judgment stage, or perhaps at trial....") (other citations omitted)).

**3. Eleventh Amendment**

Defendants Ireland, Furnia, Reyell, Silver, and Rao argue

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

that to the extent the complaint seeks damages against them in their official capacities, the claim is barred by the Eleventh Amendment. Dkt. No. 27-2 at pp. 8-9.

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." *See* U.S. Const. amend XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Hans v. Louisiana,* 134 U.S. 1, 10-21, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). State immunity extends not only to the states, but to state agencies and to state officers who act on behalf of the state. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf,* 506 U .S. 139, 142-47, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101-06, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

The Eleventh Amendment bars suits against state officials acting in their official capacities.[FN25] Where it has been successfully demonstrated that a defendant is entitled to sovereign immunity under the Eleventh Amendment, the federal court lacks subject matter jurisdiction over the case, and "the case must be stricken from the docket." *McGinty v. State of New York,* 251 F.3d 84, 100 (2d Cir.2001) (citation omitted); *see also* Fed.R.Civ.P. 12(h)(3).

> FN25. *See Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir.1993) ("The immunity to which a state's official may be entitled in a § 1983 action depends initially on the capacity in which he is sued. To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Severino v.. Negron,* 996 F.2d 1439, 1441 (2d Cir.1993) ( "[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages

against state officials in their official capacities."); *Farid v. Smith,* 850 F.2d 917, 921 (2d Cir.1988) ("The eleventh amendment bars recovery against an employee who is sued in his official capacity, but does not protect him from personal liability if he is sued in his 'individual' or 'personal' capacity."); *see also Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.... As such, it is no different from a suit against the State itself.... We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Kentucky v. Graham,* 473 U.S. 159, 165-66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity.").

**\*8** Here, each of the represented Defendants has an official position with DOCS. Therefore, any claims for money damages against these Defendants in their officials capacities are barred by the Eleventh Amendment and should be dismissed.

## II. MOTION TO DISMISS FOR LACK OF PROSECUTION, OR IN THE ALTERNATIVE, FOR AN ORDER COMPELLING RESPONSES

Defendants argue that the complaint should be dismissed on the ground that Plaintiff has failed to prosecute this action. Dkt. No. 36. Defendants argue that in the alternative, Plaintiff should be compelled to respond to paragraphs I(A)(1)(b) and (c) of the Court's Mandatory Pretrial Discovery and Scheduling Order. *Id.*

### A. ANALYSIS

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

Rule 41 of the Federal Rules of Civil Procedure provides, "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed.R.Civ.P. 41(b). As a result, Fed.R.Civ.P. 41(b) may be fairly characterized as providing for two independent grounds for dismissal on motion or on the Court's own initiative: (1) a failure to prosecute the action, and (2) a failure to comply with the procedural rules, or any Order, of the Court. *Id.*

With regard to the first ground for dismissal (a failure to prosecute the action), it is within the trial judge's sound discretion to dismiss for want of prosecution.[FN26] The Second Circuit has identified five factors that it considers when reviewing a district court's order to dismiss an action for failure to prosecute under Rule 41(b):

> FN26. *See Merker v. Rice,* 649 F.2d 171, 173 (2d Cir.1981).

[1] the duration of the plaintiff's failures, [2] whether plaintiff had received notice that further delays would result in dismissal, [3] whether the defendant is likely to be prejudiced by further delay, [4] whether the district judge has taken care to strike the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard and [5] whether the judge has adequately assessed the efficacy of lesser sanctions.[FN27]

> FN27. *See Shannon v. GE Co.,* 186 F.3d 186, 193 (2d Cir.1999) (affirming Rule 41(b) dismissal of plaintiff's claims by U.S. District Court for Northern District of New York based on plaintiff's failure to prosecute the action) (citation and internal quotation marks omitted).

As a general rule, no single one of these five factors is dispositive.[FN28] However, I note that, with regard to the first factor, Rule 41.2 of the Local Rules of Practice for this Court provides that a "plaintiff's failure to take action for four (4) months shall be presumptive evidence of lack of prosecution." N.D.N.Y. L.R. 41.2(a). In addition, I note that a party's failure to keep the Clerk's Office apprised of his or her current address may also constitute grounds for

dismissal under Rule 41(b) of the Federal Rules of Civil Procedure.[FN29]

> FN28. *See Nita v. Conn. Dep't of Env. Protection,* 16 F.3d 482 (2d Cir.1994).

> FN29. *See, e.g., Robinson v. Middaugh,* 95-CV-0836, 1997 WL 567961, at *1 (N.D.N.Y. Sept. 11, 1997)* (Pooler, J.) (dismissing action under Fed.R.Civ.P. 41[b] where plaintiff failed to inform the Clerk of his change of address despite having been previously ordered by Court to keep the Clerk advised of such a change); *see also* N.D.N.Y. L.R. 41.2(b) ( "Failure to notify the Court of a change of address in accordance with [Local Rule] 10.1(b) may result in the dismissal of any pending action.").

**1. Address Changes**

As to the first factor (the duration of Plaintiff's "failures") Defendants argue that Plaintiff was transferred to several different facilities, but failed to update the Court and defense counsel of his changes of address. Dkt. No. 36-2, Lombardo Decl., at ¶¶ 4-5, 7-12 & Dkt. Nos. 49, 50. Defendants argue that the action should be dismissed for this reason alone. Dkt. No. 36-8.

*9 Plaintiff has failed at times to update the Court and defense counsel as to his address changes. His most recent failure occurred on July 6, 2009 when he was transferred from Green Haven C.F. to Auburn C.F., and subsequently to Wende C.F., where he now remains. Dkt. No. 50-2, Stachowski Decl., at ¶¶ 3-5. Plaintiff failed to update the Court and defense counsel as to these changes. Thus, Plaintiff's failure to provide an updated address has persisted since July 6, 2009 (less than three months). Generally, it appears that durations of this length (i.e., less than four months) are not long enough to warrant dismissal.[FN30]

> FN30. N.D.N.Y. L.R. 41.2(a) ("[P]laintiff's failure to take action for four (4) months shall be presumptive evidence of lack of prosecution.");

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

*Georgiadis v. First Boston Corp., 167 F.R.D. 24, 25 (S.D.N.Y.1996)* (plaintiff had failed to comply with order directing him to answer interrogatories for more than four months).

The Court notes that Plaintiff has been subject to frequent transfers. Since August 7, 2008, Plaintiff was transferred on seven occasions. Dkt. No. 36-3, Loiodice Decl., at ¶¶ 4-11; Dkt. No. 50-2, Stachowski Decl. at ¶¶ 4-5. Three of the transfers occurred within a span of six days. Dkt. No. 36-3, Loiodice Decl., at ¶¶ 7-11.

Moreover, whether Plaintiff was mentally and physically capable of providing written updates of all of his address changes is unclear. Plaintiff noted in his opposition papers that he was diagnosed as suffering from schizophrenia; has "borderline intellectual" functioning; [FN31] and is unable to read or write; therefore Plaintiff's submissions to the Court are written by others. Dkt. No. 39. Plaintiff also stated that at times he has been "prohibited from possessing any type of writing utensil." Dkt. No. 41. Plaintiff further stated that while at Central New York Psychiatric Center, "any legal work whatsoever" was discouraged and "not facilitate[d]." *Id.* In light of the foregoing, I find that the first factor weighs against dismissal of Plaintiff's complaint.

> FN31. Plaintiff submitted copies of medical records indicating that he was diagnosed as suffering from, *inter alia,* schizophrenia, paranoid type; has borderline intellectual functioning; and has an IQ of 71. Dkt. No. 5.

As to the second factor (whether plaintiff had received notice that further delays would result in dismissal), I find that Plaintiff has received notice that his failure to provide his current address may result in dismissal. *See* Dkt. No. 12 at 4 *(Order stating that "Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel of any change in Plaintiff's address; his failure to do so will result in the dismissal of this action")* (emphasis in original); N.D.N.Y. L.R. 41.2(b) (stating, "Failure to notify the Court of a change of address in accordance with L.R. 10.1(b) may result in the dismissal of any pending action.") [FN32] As a result, I find that the second factor weighs in favor of dismissal of Plaintiff's

complaint.

> FN32. I note that, to assist *pro se* litigants, the Clerk of the Court for the Northern District of New York has provided to all correctional facilities in New York State copies of the Northern District's Local Rules of Practice and *Pro Se* Manual.

Regarding the third factor (whether defendants are likely to be prejudiced by further delay), I am unable to find, based on the current record, that Defendants are likely to be prejudiced by a delay in the proceedings. While any delay that occurs theoretically impairs the Defendants' memories, the preservation of evidence, and the ability to locate witnesses, [FN33] Defendants have not argued that any delay has occurred due to Plaintiff's failure to update his address. As a result, I find that the third factor weighs against dismissal of Plaintiff's complaint. [FN34]

> FN33. *See, e.g., Georgiadis v. First Boston Corp., 167 F.R.D. 24, 25 (S.D.N.Y.1996)* ("The passage of time always threatens difficulty as memories fade. Given the age of this case, that problem probably is severe already. The additional delay that plaintiff has caused here can only make matters worse.").

> FN34. *See Cruz v. Jackson,* No. 94 Civ. 2600, 1997 WL 45348, at *2 (S.D.N.Y. Feb. 5, 1997) (declining to dismiss action for failure to prosecute or failure to comply with court orders where plaintiff had failed to meet discovery deadlines, and noting that the fact that plaintiff "has been in lock-down and transferred to another facility during the pendency of this action also counsels leniency toward [the plaintiff's] delays") (citing *Jones v. Smith,* 99 F.R.D. 4, 14-15 (M.D.Pa.1983) (granting *pro se* plaintiff final opportunity to comply with orders of court, despite repeated wilful, dilatory and contumacious tactics), *aff 'd* 734 F.2d 6 (3d Cir.1984)).

*10 Regarding the fourth factor (striking the balance

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard), I find that Plaintiff's right to receive a further chance to be heard in this matter, at this point, outweighs the need to alleviate congestion on the Court's docket. Moreover, Defendants point to no delay caused by Plaintiff's failure to update his address. As a result, I find that the fourth factor weighs against dismissal of Plaintiff's complaint.

With regard to the fifth factor (whether the judge has adequately assessed the efficacy of lesser sanctions), I find that a strong reminder to Plaintiff of his obligation to provide a current address might be effective and is warranted. Plaintiff, who alleges that he suffers from schizophrenia and is unable to read and write, Dkt. No. 39, has been responsive to prior Orders from the Court,[FN35] and has shown an interest in prosecuting this action. *See* Dkt. Nos. 39, 41 (Plaintiff's Opposition Papers). As a result, I find that the fifth factor weighs against dismissal of Plaintiff's complaint.

> FN35. *See* Dkt. Nos. 7-11 (Report-Recommendation and Order; Plaintiff's Inmate Authorization Forms; Application to Proceed *In Forma Pauperis;* and Signed Last Page of Complaint).

Weighing these five factors together, I conclude that they tip the scales against dismissing Plaintiff's complaint (one of the factors weighing in favor of such dismissal and four of the factors weighing against such dismissal).[FN36] Dismissal based on a lack of prosecution is a harsh remedy to be used only in extreme situations. The Court does not currently view the present case to be in such a situation. For these reasons, I recommend that Defendants' Motion to Dismiss based on Plaintiff's failure to provide a current address (Dkt. No. 36) be denied.

> FN36. *Minnette v. Time Warner,* 997 F.2d 1023, 1027 (2d Cir.1993); *see also Jacobs v. County of Westchester,* Dkt. No. 02-0272, 2005 WL 2172254, at * 3 (2d Cir. Sept. 7, 2005) (remanding case to district court to make further factual findings concerning the plaintiff's lack of responsiveness and concerning his confinement

in a prison psychiatric ward where district court dismissed for failure to prosecute).

**2. Responses to Scheduling Order**

Defendants argue that if the Court does not dismiss the complaint for a failure to prosecute, the Court should issue an order requiring Plaintiff to respond to paragraphs I(A)(1)(b) and (c) of the Court's mandatory pretrial discovery and scheduling order dated November 18, 2008 ("Scheduling Order"). Dkt. No. 36-8, Memo. of Law at pp. 3-4.

The Scheduling Order provided, in relevant part, as follows:

**I. Discovery**

**A. *Documents.*** Within sixty (60) days of the date of this order:

**1. *Plaintiff(s)*** shall provide to counsel for defendant(s) copies of all:

**a.** Documents and other materials which plaintiff(s) may use to support the claims in the complaint;

**b.** Correspondence, grievances, grievance appeals, and other documents relating to requests for administrative remedies or the inability or failure to exhaust such remedies; and

**c.** Complaints and petitions filed by plaintiff(s) in any other cases in any court relating to the same issues raised in the complaint in this action or, if such documents are not within the possession of plaintiff(s), plaintiff(s) shall provide to counsel for defendant(s) a list of any such legal proceedings stating the court in which the proceeding was filed, the caption of the case, and the court number.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

**\*11** Dkt. No. 26, at pp. 1-2.

Defendants admit that they received "what purported to be plaintiff's response to paragraph I(A)(1) of the [Scheduling Order]" in a letter to defense counsel from Plaintiff. Dkt. No. 36-2, Lombardo Decl., at ¶ 19 & Dkt. No. 36-6, Ex. C. In that letter, Plaintiff asserted the following:

> Pursuant to paragraph I(A) of the court's mandatory pretrial discovery and scheduling order dated Nov. 18, [20]08[:]

> a. Documents and materials which plaintiff will use to support the claims in this complaint is [sic] the complete Medical Records for the period of June 14, 2006 to present, and current Tier III documents and pictures surrounding the incident which you forwarded to me pursuant to mandatory pretrial discovery, in addition enclosed please find Lab work report of specimen done on plaintiff which will also be use[d].

> Plaintiff has complied with the court's mandatory pretrial discovery and scheduling order pursuant to paragraph I(A) so your office no longer has to seek dismissal of the complaint for failure to prosecute.

Dkt. No. 36-6, Ex. C.

Defendants view this letter as being nonresponsive to paragraphs I(A)(1)(b) and (c). However, regarding paragraph I(A)(1)(b), Plaintiff specifically stated in the above-quoted letter that he "will use the complete medical records for the period of June 14, 2006 to present, and *current Tier III documents and pictures surrounding the incident which you forwarded to me.*" Dkt. No. 36-6, Ex. C at p. 1 (emphasis added). Moreover, Plaintiff stated in his March 23, 2009 letter to defense counsel that he filed grievances while in Attica C.F., but that he was no longer "in possession of those grievances" because his property was lost while he was at Central New York Psychiatric Center. [FN37] Dkt. No. 39 at p. 2. Plaintiff also stated that he has "no money in his account," therefore he has been unable to obtain copies of his grievances, as well as medical records. *Id.* Accordingly, Plaintiff has responded

to paragraph I(A)(1)(b). He stated that he no longer possesses the grievances he filed at Attica C.F.; he is unable to afford copies; and he intends to use the documents that defense counsel sent to him. To the extent that defense counsel is arguing that Plaintiff must provide copies of the same documents defense counsel has already provided Plaintiff, Dkt. No. 36-7, Ex. D at p. 2, this argument is unavailing.

> FN37. Plaintiff also asserts that he no longer has a copy of the complaint in this action. Dkt. No. 41, at ¶ 8. Accordingly, the Clerk will be directed to provide a copy of the complaint to Plaintiff.

Regarding paragraph I(A)(1)(c), Plaintiff stated in his March 23, 2009 opposition letter that "[t]here is no other complaints or petitions filed by plaintiff in any other cases in any other court [sic]." Dkt. No. 39, at p. 2. Plaintiff reiterated this response in a supplemental opposition letter dated March 31, 2009 by stating that "there are no other known complaints, petitions, etc. filed by plaintiff in any other court with regards to the claims raised in [this case]." Dkt. No. 41, [FN38] at ¶ 6. Accordingly, Plaintiff has responded to paragraph I(A)(1)(c).

> FN38. To the extent that Plaintiff is seeking permission to amend his complaint via his supplemental opposition letter, (Dkt. No. 41), Plaintiff's request must be in the form of a motion. *See* N.D.N.Y. Local Rule 7.1.

**\*12** In light of the foregoing, Defendants' request for an order compelling responses to paragraphs I(A)(1)(b) and (c) of the Scheduling Order should be denied as moot.

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and 12(c) (Dkt. No. 27) be GRANTED in part and DENIED in part. The motion to dismiss should be granted to the extent that Plaintiff asserts claims for money damages against Defendants in their official capacities. The motion should be denied to

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

the extent that Defendants moved to dismiss Plaintiff's Eighth Amendment claim against Defendant Rao, and moved to dismiss the complaint against Defendant Rao on the ground of qualified immunity; and it is further

**RECOMMENDED** that the Motion to Dismiss for Failure to Prosecute or in the alternative for an Order compelling Plaintiff's responses (Dkt. No. 36) be DENIED; and it is further

**ORDERED,** *that Plaintiff is required to promptly notify the Clerk's Office and all parties or their counsel of any change in Plaintiff's address; his failure to do so may result in the dismissal of this action;*

**ORDERED,** that the Clerk update Plaintiff's address to reflect that he is currently incarcerated at Wende Correctional Facility; [FN39] and it is further

> [FN39.] Defendants' letter to the Court dated August 21, 2009 indicates that Plaintiff is now incarcerated at Wende C.F. Dkt. No. 50.

**ORDERED,** that the Clerk serve (1) copies of the electronically-available-only opinions cited herein; [FN40] (2) a copy of the Complaint (Dkt. No. 1); and (3) a copy of this Report-Recommendation and Order on Plaintiff.

> [FN40.] Those decisions include *Gadson v. Goord,* 96-CV-7544, 1997 WL 714878 (S.D.N.Y. Nov. 17, 1997); *Yang v. New York City Trans. Auth.,* 01-CV-3933, 2002 WL 31399119 (E.D.N.Y. Oct. 24, 2002); *Sealed Plaintiff v. Sealed Defendant # 1,* No. 06-1590, 2008 WL 3294864 (2d Cir. Aug. 12, 2008); *Morgan v. Maass,* No. 94-35834, 1995 WL 759203 (9th Cir. Dec. 26, 1995); *Kimbrough v. City of Cocoa,* No. 6:05-cv-471, 2006 WL 2860926 (M.D.Fla. Oct. 4, 2006); *Beeks v. Reilly,* No. 07-CV-3865, 2008 WL 3930657 (E.D.N.Y. Aug. 21, 2008); *Harris v. Westchester County Dep't of Corrections,* No. 06 Civ.2011, 2008 WL 953616 (S.D.N.Y. Apr. 3, 2008); *Robinson v. Middaugh,* 95-CV-0836, 1997 WL

567961 (N.D.N.Y. Sept. 11, 1997); *Cruz v. Jackson,* No. 94 Civ. 2600, 1997 WL 45348 (S.D.N.Y. Feb. 5, 1997); and *Jacobs v. County of Westchester,* Dkt. No. 02-0272, 2005 WL 2172254 (2d Cir. Sept. 7, 2005).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,2009.
Hale v. Rao
Slip Copy, 2009 WL 3698420 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2001 WL 210238 (S.D.N.Y.)
(Cite as: 2001 WL 210238 (S.D.N.Y.))

**H** Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
Arthur HUCKS, Plaintiff,
v.
Christopher ARTUZ, et al., Defendants.
**No. 99 Civ. 10420RMB RLE.**

Feb. 27, 2001.

REPORT AND RECOMMENDATION

ELLIS, Magistrate J.

I. INTRODUCTION

*1 This matter was referred to the undersigned for resolution of dispositive motions. Plaintiff filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, alleging: (1) deliberate indifference to his medical needs in violation of the Eighth Amendment to the Constitution; (2) violation of the Fourteenth Amendment to the Constitution; and (3) state law claims of assault, medical malpractice, and negligence. Plaintiff also alleges violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182.[FN1] Defendants moved to dismiss the claims pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure. For the following reasons, this Court recommends the motion be GRANTED.

> FN1. The Court assumes for the purposes of this Report and Recommendation that plaintiff meant to have alleged violation of Title II of the ADA, codified at 42 U.S.C. 12131 *et seq.* That section, prohibiting a "public entity" from discriminating against a "qualified individual with a disability" because of that individual's disability, has been held to apply to inmates in state prisons. *See Pennsylvania Dep't of Corrections v. Yeskey,*

524 U.S. 206 (1998).

II. BACKGROUND

Plaintiff Arthur Hucks was a paraplegic inmate confined to a wheelchair at Green Haven Correctional Facility. Proceeding *pro se,* he filed his first complaint in this action on October 12, 1999. He alleged he was harassed, threatened, and denied treatment by medical staff. *See* Hucks Aff. ¶ 1.[FN2] Plaintiff further alleged that on August 4, 1999, Sgt. Schwartzman struck him, then dumped him out of his wheelchair onto the floor, and that officers Sneddon, Osterhoudt, and Lennox stood by. *Id.,* ¶ 1-2. Plaintiff stated that nurses Dorothy [FN3] and Fila laughed at him and discussed with the officers "their strategy to cover up what they did to me." *Id.* ¶ 3. He further stated that once taken to the clinic, he was left alone on a stretcher without being examined, although Dr. Sohng was standing nearby. *Id.,* ¶ 4. Plaintiff also alleged that Superintendent Artuz allowed staff misconduct, that Dr. Silver and Ece, a physical therapist, were indifferent to his medical needs, and that Koenigisman "supports the lies and mistreatment of disabled inmates by medical and security staff." *See* Compl. 3-4 [FN4] Plaintiff attached a letter to his complaint stating that his cell lights did not work and "now I have to live in a state of fear for my life." Att. Let. at 2. [FN5] By way of relief, plaintiff sought punitive damages in the amount of $1,000,000 per defendant and compensatory damages in the amount of $25,000 per defendant. *See* Compl. at 5.

> FN2. "Hucks Aff." refers to plaintiff's affidavit, dated August 16, 1999, submitted with his first complaint.

> FN3. Nurse Dorothy is named as defendant Donagarra in defendants' memorandum of law in support of their motion to dismiss, dated April 7, 2000.

> FN4. "Compl." refers to plaintiff's first complaint, dated August 22, 1999.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 210238 (S.D.N.Y.)
(Cite as: 2001 WL 210238 (S.D.N.Y.))

FN5. "Att. Let." refers to a letter, dated August 12, 1999, attached to plaintiff's first complaint.

By letter dated February 2, 2000, defendants requested a conference before District Judge Berman and indicated the bases upon which they intended to file a motion to dismiss. The letter stated that plaintiff had failed to exhaust available administrative remedies, as is required under the Prisoner Litigation Reform Act of 1996, 42 U.S.C. § 1997e(a), and that plaintiff had failed to allege personal involvement by defendants Artuz and Silver. See Def. Let. 2/2/2000.FN6 Before assigning the case to the undersigned, Judge Berman ordered the plaintiff to respond to defendant's arguments. Accordingly, plaintiff submitted a letter, dated February 10, 2000, arguing that the case should not be dismissed because, to the best of his knowledge, he had exhausted available remedies. See Pl. Let. 2/10/2000.FN7

FN6. "Def. Let. 2/2/2000" refers to letter submitted by defendants, dated February 2, 2000.

FN7. "Pl. Let. 2/10/2000" refers to letter submitted by plaintiff, dated February 10, 2000.

*2 Meanwhile, plaintiff filed an amended complaint on January 14, 2000, but it was not actually served on defendants until March and April, 2000. On March 22, 2000, defendants requested and were granted an extension of time for filing their motion to dismiss the complaint. In his amended complaint, plaintiff alleged the same legal violations, but relied on different facts and added three more defendants. See Am. Compl.FN8 Plaintiff alleged staff would refuse to assist him, and that "on many occasions, I was left in my bed in my human waste." Id. at 3. Plaintiff alleged that on September 5, 1999, he fell attempting to transfer from the toilet to his wheelchair, and was threatened with a misbehavior report because he rang the emergency call bell. Id. at 4. Plaintiff also alleged that on October 18, 1999, the axle on his wheelchair broke, resulting in injury to his elbow, head and back. Id. Plaintiff contended that prison staff did not follow proper procedures and did not have photos taken of the broken chair or of his injuries. Stmt. of Facts. at 2. FN9 Plaintiff also contended Dr. Silver and other staff ignored his complaints. Id. Further, plaintiff contended that after "Dr.

Ms. Paulpauly" examined him and issued him a permit to be pushed short and long distances and increased his pain medication, defendants directed inmates to taunt and harass him. See id.; Am. Compl. at 5. Plaintiff also indicated he wrote a letter to Superintendent Artuz stating that an inmate threatened to set his cell on fire. Stmt. of Facts at 2. Finally, plaintiff alleged Dr. Silver stopped his AIDS medication "for quite some time ." Id. By way of remedy, plaintiff seeks spinal surgery and $1,025,000 per defendant. Am. Compl. at 5.

FN8. "Am. Compl." refers to plaintiff's Amended Complaint, dated January 9, 2000.

FN9. "Stmt. of Facts" refers to two handwritten pages, marked "Statement of Facts," attached to plaintiff's Amended Complaint.

On April 7, 2000, defendants moved for dismissal of the amended complaint pursuant to Rules 12(b)(1) and (6). Defendants argue that plaintiff failed to exhaust his administrative remedies and failed to allege personal involvement of twelve defendants; that defendants are not subject to suit under the ADA; and that plaintiff failed to plead a Fourteenth Amendment claim. See Def. Mem.FN10 Plaintiff did not respond to defendant's motion.FN11

FN10. "Def. Mem." refers to defendant's memorandum of law in support of motion to dismiss, dated April 7, 2000.

FN11. Court records indicate plaintiff is no longer in prison and wrote to inform the Court of a change of address on October 29, 2000. This correspondence occurred over six months after defendants moved for dismissal, but made no mention of the motion or plaintiff's failure to respond to it.

III. DISCUSSION

A. Standard for dismissal under 12(b)(1)

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 210238 (S.D.N.Y.)
(Cite as: 2001 WL 210238 (S.D.N.Y.))

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint when the federal court "lacks jurisdiction over the subject matter." *See* Fed.R.Civ.P. 12(b)(1). In most cases, the court will consider a 12(b)(1) motion before ruling on any other motions to dismiss, since dismissal of an action for lack of subject matter jurisdiction will render all other accompanying defenses and motions moot. *See United States ex rel Kreindler & Kreindler v. United Technologies Corp.,* 985 F.2d 1148, 1155-56 (2d Cir.1993), *cert. denied sub nom. Kreindler & Kreindler v. United Technologies Corp.,* 508 U.S. 973 (1993); *see also Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n,* 896 F.2d 674, 678 (2d Cir.1990). Thus, a court confronted with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) should decide the jurisdictional question first because "a disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction." *Magee v. Nassau County Medical Center,* 27 F.Supp.2d 154, 158 (E.D.N.Y.1998); *see also Rhulen,* 896 F.2d at 678.

**\*3** In considering a 12(b)(1) motion to dismiss for want of subject matter jurisdiction, a court must assume as true factual allegations in the complaint. *Shipping Financial Servs. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir.1998) (*citing Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)); *Serrano v. 900 5th Ave. Corp.,* 4 F.Supp.2d 315, 316 (S.D.N.Y.1998). Where jurisdictional issues are in dispute, the court may look to "evidence outside the pleadings, such as affidavits." *Filetech S.A. v. France Telecom, S.A.,* 157 F.3d 922, 932 (2d Cir.1998) (*quoting Antares Aircraft v. Federal Republic of Nigeria,* 948 F.2d 90, 96 (2d Cir.1991), *vacated on other grounds,* 505 U.S. 1215 (1992)).

B. Standard for dismissal under Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) should be granted only if it appears beyond doubt that "no relief could be granted under any set of facts that could be proved consistent with the allegations." *H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249-50 (1989); *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984); *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996). In reviewing a Rule 12(b)(6) motion, this Court must accept the factual allegations of the complaint as true and must

draw all reasonable inferences in favor of the plaintiff. *See id.; Hernandez v.. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994), *cert. denied,* 513 U.S. 836 (1994). However, a court does not have to accept as true "conclusions of law or unwarranted deductions of fact." *First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 771 (2d Cir.1994), *cert. denied,* 513 U.S. 1079 (1995) (*quoting* 2 Moore's Federal Practice ¶ 12.08, at 2266-69 (2d ed.1984)). The review is limited, and "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995)(*quoting Scheuer v. Rhodes,* 416 U.S. at 236).

Pleading requirements for *pro se* plaintiffs are relaxed. *See Boddie v. Schneider,* 105 F.3d 857, 860 (2d Cir.1997); *Williams v. Vincent,* 508 F.2d 541, 543 (2d Cir.1974). While generally courts do not look outside the pleadings when reviewing a motion to dismiss pursuant to Rule 12(b)(6), they may consider the allegations contained in a *pro se* plaintiff's memorandum of law, where those allegations are consistent with the allegations in the complaint. *See Donahue v. United States Dep't of Justice,* 751 F.Supp. 45, 49 (S.D.N.Y.1990). Accordingly, the Court will take into consideration both of plaintiff's complaints and his letter submission of February 10, 2000, in construing the factual background.

*Pro se* plaintiffs, however, are not relieved of pleading requirements. In order to avoid dismissal, plaintiff must do more than plead mere "[c]onclusory allegations or legal conclusions masquerading as factual conclusions." *Gebhardt v. Allspect, Inc.,* 96 F.Supp.2d 331, 333 (S.D.N.Y.2000) (*quoting* 2 James Wm. Moore, Moore's Federal Practice ¶ 12.34[1][b] (3d ed.1997)). *See also, Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 887 (2d Cir.1987) (stating that civil rights complaints "must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983").

C. Failure to Exhaust Administrative Remedies

**\*4** Defendants argue that the case should be dismissed for lack of subject matter jurisdiction because plaintiff has

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 210238 (S.D.N.Y.)
(Cite as: 2001 WL 210238 (S.D.N.Y.))

failed to exhaust administrative remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a). *See* Def. Mem. at 6-9. Plaintiff stated that he filed numerous grievances. *See* Am. Compl. at 2, 4; Compl. at 2. He also stated that, to the best of his knowledge, he did exhaust all administrative remedies before he filed the instant action. *See* Pl. Let. 2/10/2000.

The statute reads, in pertinent part, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (Supp.2000). Here, the plaintiff did not submit any documentation demonstrating that he exhausted his administrative remedies by obtaining a final administrative determination from the Central Office Review Committee ("CORC"). Such exhaustion is a mandatory requirement. *See, e.g., Laureano v. Pataki, 2000 WL 1458807,* at [*]1 (S.D.N.Y. Sept. 29, 2000); *Edney v. Karrigan, 69 F.Supp.2d 540, 543 (S.D.N.Y.1999).* Where an inmate fails to satisfy this requirement, the complaint must be dismissed. *See, e.g., Laureano v. Pataki, 2000 WL 1458807,* at [*]3. I therefore recommend that the complaint be dismissed for failure to exhaust.

D. Section 1983 Claims

Plaintiff brought his constitutional claims under 42 U.S.C. § 1983. In order to state a cause of action under § 1983, a plaintiff must show that the conduct in question was committed by a person acting under color of state law, and that the conduct deprived the plaintiff of his "rights, privileges or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir.1994). To survive a motion to dismiss, a plaintiff must make specific allegations of fact indicating a deprivation of his or her constitutional rights. *See Rivera v. Goord,* 119 F.Supp.2d 327 (S.D.N.Y.2000).

1. Eighth Amendment Claim

To establish a claim under the Eighth Amendment because of inadequate medical care, "a prisoner must prove

'deliberate indifference to [his] serious medical needs." ' *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) (quoting *Estelle v. Gamble,* 429 U.S. 97, 104 (1976)); *Graham v. Perez,* 121 F.Supp.2d 317, 325 (S.D.N.Y.2000). The deprivation of care must be "sufficiently serious." *Chance,* 143 F.3d at 702 (quoting *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994), *cert. denied,* 513 U.S. 1154 (1995). A medical condition is considered serious if it is "a condition of urgency" that may result in "degeneration" or "extreme pain." *Hernandez v. Keane,* 2000 WL 16951,[*]2 (S.D.N.Y. Jan. 7, 2000) (quoting *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996) ("Hathaway III")); *Liscio v. Warren,* 901 F.2d 274, 277 (2d Cir.1990). *See, e.g., Chance,* 143 F.3d at 702 (extreme dental pain and deterioration constitutes a serious medical condition).

**\*5** Additionally, the defendant must act with a sufficiently culpable state of mind. *Id.* An official acts with deliberate indifference when "he knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quoting *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)); *Hernandez,* 2000 WL 16951, at [*]2.

Plaintiff's allegations do not rise to the level of an Eighth Amendment violation, as he does not describe any instance in which his serious medical needs were disregarded. Only two of plaintiff's allegations describe incidents involving his medical care: (1) Dr. Sohng's indifference to plaintiff as he lay on a stretcher suffering the effects of mistreatment by Sgt. Schwartzman, *see* Hucks Aff. ¶ 4; and (2) Dr. Silver's decision to stop plaintiff's AIDS medication. *See* Stmt. of Facts at 2. Plaintiff fails to allege, however, that either Dr. Sohng's inaction or Dr. Silver's action created an excessive risk to plaintiff's health or that either doctor acted with a culpable state of mind.

The PRLA allows a court to dismiss a claim without first requiring the exhaustion of administrative remedies if the plaintiff fails to state a claim for which relief can be granted. 42 U.S.C. § 1997e(c)(2). Nevertheless, if the plaintiff were to establish administrative exhaustion, the Court recommends that he be allowed to replead on this

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 210238 (S.D.N.Y.)
(Cite as: 2001 WL 210238 (S.D.N.Y.))

issue.

2. Personal Involvement

Under § 1983, a plaintiff must allege the personal involvement of defendants in the alleged deprivation. *See Dove v. Fordham University,* 56 F.Supp.2d 330, 336 (S.D.N.Y. June 14, 1999) (*citing Williams v. Smith,* 781 F.2d 319, 323 (2d Cir.1986)); *Zamakshiri v. Dvoskin,* 899 F.Supp. 1097, 1109 (S.D.N.Y.1995). If a complaint names a defendant in the caption but fails to indicate how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint with regard to that defendant should be granted. *See Dove,* 56 F.Supp.2d at 335. A plaintiff must "allege a tangible connection between the acts of the defendant and the injuries suffered." *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986). Liability may not be predicated on a theory of *respondeat superior* or vicarious liability. *See Dove,* 56 F.Supp.2d at 335. Rather, a supervisory official is liable for constitutional violations if he or she (1) directly participated in the violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering the violation or allowed the custom or policy to continue after learning of it; or (4) was grossly negligent in supervising subordinates who caused the violation. *See Williams v. Smith,* 781 F.2d at 323-24.

In his original complaint, plaintiff alleged Sgt. Schwartzman and officers Sneddon, Osterhoudt, and Lennox assaulted him. *See* Hucks Aff. at ¶ 1-2. He did not state how nurses Donagarra and Fila violated his rights, *see Id.* at ¶ 3, or how Dr. Sohng violated his rights. *Id.* at ¶ 4. Although plaintiff mentioned defendants Artuz, Eee, Silver and Koenigisman in the complaint, he did not allege facts explaining how they violated his rights. *See* Compl. at 3-4. He did not mention defendant Westley. Consequently, the original complaint alleges violations only by Schwartzman, Sneddon, Osterhoudt, and Lennox.

**\*6** In his amended complaint, plaintiff alleged that Dr. Silver had stopped his AIDS medication "for quite some time." Stmt. of Facts at 2. He also alleged that he wrote to Artuz to inform him that an inmate threatened to set fire to his cell. *Id.* However, plaintiff does not allege involvement

by Artuz sufficient to establish liability under § 1983. Even assuming the letter could be construed as one alleging a constitutional violation, it would not be sufficient to establish liability. The fact that an inmate informs a supervisor of an alleged constitutional deprivation by letter is insufficient to support a finding that the supervisor was on notice of the deprivation. *See Zamakshiri v. Dvoskin,* 899 F.Supp. 1097, 1110 (S.D.N.Y.1995). Thus, in his amended complaint, plaintiff stated claims only against Dr. Silver.

Taken together and construed liberally, plaintiff's two complaints state claims against defendants Schwartzman, Sneddon, Osterhoudt, Lennox, and Silver. Claims against any other defendants must be dismissed.

3. Fourteenth Amendment Claim

Defendants also argue that plaintiff fails to state a Fourteenth Amendment claim. *See* Def. Mem. at 14. The Court agrees. Plaintiff does not specify which Fourteenth Amendment rights were violated, or by which acts, in any of his submissions. The claim therefore constitutes a conclusory allegation unsupported by factual allegations. Accordingly, I recommend that it should be dismissed.

E. Americans With Disabilities Act Claim

Defendants also argue that plaintiff's claim under the ADA must be dismissed because ADA claims may not be brought against individuals. *See* Def. Mem. at 13. Although the Second Circuit has yet to decide the issue of whether Title II of the ADA lies against individuals, district courts in this circuit have held that individual defendants may not be held liable under the statute. *See, e.g., Shariff v. Artuz,* 2000 WL 1219381 at *5 (S.D.N.Y. Aug. 28, 2000); *Hallett v. New York State Department of Correctional Services, et al.,* 109 F.Supp.2d 190, 199 (S.D.N.Y. Aug. 14, 2000). In so holding, the courts have analogized to Title VII of the Civil Rights Act, which does not impose liability on individuals. *See Shariff,* 2000 WL 1219381, at *4; *Hallett,* 109 F.Supp.2d at 199; *Candelaria v. Cunningham,* 2000 WL 798636, at *3 (S.D.N.Y. June 20, 2000). *See also Smith v. University of State of New York,* 1997 WL 800882, at *8 (W.D.N.Y. Dec. 31, 1997).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 210238 (S.D.N.Y.)
(Cite as: 2001 WL 210238 (S.D.N.Y.))

While this Court accepts the proposition that individual liability does not attach under the ADA, it acknowledges that analogizing to Title VII has led some courts to conclude that plaintiffs could nevertheless sue individual defendants in their *official* capacities. *See Candelaria,* 2000 WL 798636, at *2 (*citing Jones v. Inter-County Imaging Centers,* 889 F.Supp. 741 (S.D.N.Y.1995); *Romand v. Zimmerman,* 881 F.Supp. 806 (N.D.N.Y.1995)). However, the distinction between official and individual capacity liability under the ADA has since been rejected on the theory that official capacity suits are not necessary where plaintiffs may sue a government entity directly. *See Shariff,* 2000 WL 1219381 at *5; *Hallett,* 109 F.Supp.2d at 199; *Candaleria,* 2000 WL 798636, at *3 (relying on District Judge Martin's reasoning with respect to Title VII in *Bakal v. Ambassador Constr.,* 1995 WL 447784 (S.D.N.Y. July 28, 1995)). Here, plaintiff could have sued the Department of Corrections directly, obviating the need to sue defendants in their official capacities. The Court sees no justification for permitting a claim against individuals, and accordingly recommends that plaintiff's ADA claims be dismissed.

F. State Law Claims

**\*7** Finally, defendants argue that plaintiff's state law claims should be dismissed for lack of subject matter jurisdiction. Defendants correctly point out that state law tort claims against prison officials may only be brought in state court. Def. Mem. at 14, *citing Parker v. Miller,* 1999 WL 1024108, at *2 (2d Cir.1999) (*citing Baker v. Coughlin,* 77 F.3d 12, 15-16 (2d Cir.1996)). I therefore recommend these claims be dismissed.

IV. CONCLUSION

For the foregoing reasons, this Court respectfully recommends that defendants' motion to dismiss be GRANTED. If plaintiff establishes that he has exhausted his administrative remedies, the dismissal should be without prejudice and plaintiff should be afforded an opportunity to file an amended complaint alleging sufficient facts to make out a claim under the Eighth Amendment. The amended complaint should be dismissed in all other respects.

Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have ten (10) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Richard M. Berman, 40 Centre Street, Room 201, and to the chambers of the undersigned, 500 Pearl Street, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn,* 474 U.S. 140, 150 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15, 16 (2d Cir.1989) (*per curiam* ); 28 U.S.C. § 636(b)(1) (West Supp.1995); Fed.R.Civ.P. 72, 6(a), 6(e).

S.D.N.Y.,2001.
Hucks v. Christopher Artuz
Not Reported in F.Supp.2d, 2001 WL 210238 (S.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2007 WL 2027910 (N.D.N.Y.)
(Cite as: 2007 WL 2027910 (N.D.N.Y.))

**H** Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Andrew JONES, et al., Plaintiffs,
v.
James W. McMAHON, et al., Defendants.
No. 5:98-CV-0374 (FJS/GHL).

July 11, 2007.

Jodi Misher Peikin, Esq., of Counsel, Morvillo,
Abramowitz, Grand, Iason, Anello & Bohrer, P.C., New
York, NY, for Plaintiffs.

Terrance J. Hoffmann, Esq., of Counsel, Hoffmann,
Hubert & Hoffmann, Syracuse, NY, for Plaintiffs.

Senta B. Siuda, Esq., Assistant Attorney General, of
Counsel, Hon. Andrew M. Cuomo, Attorney General for
the State of New York, Syracuse, NY, for Defendants.

***MEMORANDUM-DECISION and ORDER and
REPORT-RECOMMENDATION***

GEORGE H. LOWE, United States Magistrate Judge.

**\*1** A summary of the legal claims asserted in this action,
and a description of the incident giving rise to this action,
are set forth in District Judge Scullin's
Memorandum-Decision and Order of March 28, 2005
(Dkt. No. 387, as modified by Dkt. No. 395), and
reference is made to that Memorandum-Decision and
Order for a summary of those legal claims and a
description of that incident. Currently pending before the
Court are four requests by Plaintiffs (Dkt. No. 429), and
a motion to dismiss Plaintiffs' claims against Defendant
Williams (Dkt.Nos.427, 416).

**I. Request for Order Either Permitting Plaintiffs to
Re-Depose Retired Senior Investigator Dennis J.
Blythe or Precluding Defendants from Relying on the
Information Provided by Investigator Blythe's
Confidential Sources for the Remainder of this
Lawsuit**

Plaintiffs request an order either (1) permitting them to
re-depose retired Senior Investigator Dennis J. Blythe for
the limited purpose of discovering information regarding
the identity and reliability of five confidential sources
about whom he testified at his initial deposition, which
was conducted on October 18, 2001, and November 27,
2001, or (2) precluding Defendants from relying on the
information provided by Investigator Blythe's confidential
sources for the remainder of this lawsuit. (Dkt. No. 428,
Part 1, at 3-8, 11.) Plaintiffs request this information, for
the most part, to determine whether Investigator Blythe
manufactured those sources well after the incident in
question. (*Id.* at 3-5.)

In essence, Defendants oppose Plaintiffs' request on two
grounds: (1) the particular information that Plaintiffs seek
(regarding the identity and reliability of the five
confidential sources in question) has previously been
adjudged by then-Magistrate Judge Sharpe and Chief
Judge Scullin to be protected from disclosure by the
informer's privilege and/or law enforcement privilege; and
(2) Plaintiffs have already had ample opportunity to
question Investigator Blythe regarding everything about
these five confidential sources other than about the
subjects in question, i.e., regarding their identity and
reliability.

In reply, Plaintiffs acknowledge that a defendant may
ordinarily rely on the informer's privilege and/or law
enforcement privilege as a "shield," to prevent disclosure
of this information. However, Plaintiffs argue that, in this
instance, Defendants may not rely on such a privilege
since they are using it, or certainly will use it at trial, as a
"sword," specifically, as a means to support their
affirmative defense of qualified immunity. Furthermore,
Plaintiffs argue that, although Judges Scullin and Sharpe

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027910 (N.D.N.Y.)
(Cite as: 2007 WL 2027910 (N.D.N.Y.))

did in fact rule, on November 17, 2003, and September 21, 2004, that the information in question was protected by the informer's privilege and/or the law enforcement privilege, their rulings then concluded that, as a result of the privilege, there was no need-*at that time*-for Defendants to disclose the identity of the sources. In effect, Plaintiffs argue that the facts and issues of the case have changed, and they now need the withheld information.

**\*2** Plaintiffs are correct that Defendants' Answers to Plaintiffs' Amended Complaint have, either implicitly or expressly, asserted qualified immunity as an affirmative defense in this action.[FN1] For the sake of argument, I will assume that Plaintiffs are also correct that Defendants have previously relied, or attempted to rely, on the confidential information received by Investigator Blythe in support of their affirmative defense of qualified immunity, i.e., during their motion for partial summary judgment.[FN2] I will also assume, for the sake of argument, that Defendants will, at trial, attempt to adduce evidence in support of this affirmative defense, and possibly move for dismissal under Rule 50 of the Federal Rules of Civil Procedure based on that evidence. Finally, I will set aside-for the moment-the issue of whether the previous rulings of Judges Scullin and Shapre merely held that Plaintiffs were not entitled to the information in question "at that time."

FN1. (Dkt. No. 154, ¶¶ 39, 44; Dkt. No. 157, ¶¶ 39, 44; Dkt. No. 160, Defense, ¶ 2.)

FN2. (Dkt. No. 293, Part 18, ¶ 18[Blythe Decl., stating that, on May 18, 1997, "I was very concerned about the possibility of gunplay" on the reservation, which concern he apparently communicated to Defendant George Beach and Major Paul Zemens at that time, but not identifying any specific facts giving rise to this concern for gunplay].) However, I note that Plaintiffs argue that Defendants relied on this confidential information also in a portion of their memorandum of law in support of their motion for partial summary judgment, wherein Defendants argue that "[e]vidence collected by the State Police in the hours and days preceding the protest gave defendants good cause for

concern" about the possibility of tumultuous and violent conduct. (Dkt. No. 293, Part 3, at 14 [Defs.' Mem. of Law].) From my reading of the seven sentences following the referenced sentence, Defendants cite to evidence other than the confidential information in question. (*Id*. at 14-15.) As a result, it would not appear that Defendants were relying on the referenced confidential information in that portion of their memorandum of law in support of their partial motion for summary judgment.

The main problem with Plaintiffs' request, as I see it, is that, because Defendants have not yet attempted to adduce any evidence in support of either a pending dispositive motion or the assertion of an affirmative defense at trial, it is far from clear that such evidence will include the privileged information in question, or that the privileged information will play a *sufficiently prominent* role in that defense to *necessitate* its disclosure to Plaintiffs. Among the factors often considered by federal courts in evaluating whether or not a party has implicitly waived an applicable privilege are (1) whether the party claiming the privilege is attempting to use it through an "affirmative act," and (2) whether the opposing party would, through the application of the privilege, be denied access to information that is "vital" to its opposition to the affirmative act by the party claiming the privilege.[FN3] When Judge Scullin denied that portion of Defendants' motion for partial summary judgment that was premised on the qualified immunity defense, he did not even deem it necessary to address Defendants' presumed reliance on the confidential information in question (suggesting any reliance by Defendants on such information was minor).[FN4]

FN3. *See, e.g., WLIG-TV, Inc. v. Cablevisions Systems Corp.,* 879 F.Supp. 229, 234 (E.D.N.Y.1994); *Standard Chartered Bank PLC v. Ayala Intern. Holdings (U.S.) Inc.,* 111 F.R.D. 76, 80-81 (S.D.N.Y.1986); *Cornell v. Bernstein-Macaulay, Inc.,* 407 F.Supp. 420, 422-423 (S.D.N.Y.1976); *see also Hearn v. Rhay,* 68 F.R.D. 574, 580 (E.D.Wash.1975).

FN4. (Dkt. Nos. 387 at 27-28, 30-31 [Order of Judge Scullin, dated 3/28/05].)

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027910 (N.D.N.Y.)
(Cite as: 2007 WL 2027910 (N.D.N.Y.))

I note that the aforementioned requirement that the information in question be "vital" (to a party's opposition to the affirmative act of the party asserting the privilege) is very similar to the "essential" need requirement contained in the legal standard relied on by Judge Scullin in his Memorandum-Decision and Order of September 21, 2004. (Dkt. No. 318, at 12-13.) <sup>FN5</sup> For this reason, even if I applied the legal standard for overcoming the informer's privilege, I would reach the same conclusion as I do applying the legal standard for "at-issue" waiver.

> FN5. *See Matter of Search of Premises Known as 1182 Nassau Averill Park Road, 203 F.Supp.2d 139, 140-141 (N.D.N.Y.2002)* (Homer, M.J.) ("To overcome the privilege [for statements of informers to law enforcement agencies], the party seeking disclosure has the burden of establishing that the information sought is both relevant and essential to the presentation of his case on the merits ... and that the need for disclosure outweighs the need for secrecy.") [citations omitted].

In the event Defendants attempt to use the privileged information in such a *significant way* at trial, I would suspect that Judge Scullin would either preclude Defendants from doing so or perhaps order Defendants to somehow disclose the information. <sup>FN6</sup> However, in light of the possibility that Defendants will not attempt to use the privileged information in that significant way, it appears to me to be premature, unnecessary and contrary to the rationale for the privilege to either (1) overcome the privilege, or treat it as waived, at this time, or (2) preclude Defendants from *in any way* relying on the information provided by Investigator Blythe's confidential sources for the remainder of this lawsuit. <sup>FN7</sup>

> FN6. *See, e.g., Jones v. U.S., 9 F.Supp.2d 1119, 1138 (D.Neb.1998)* (precluding defendant from using informant privilege at trial in order to support its argument that plaintiff had failed to prove causation sufficient to recover actual damages, because previously "the court prohibited the plaintiffs from discovering the identity of the informant").

> FN7. *See, e.g., Llyod Lifestyle Ltd. v. Soaring Helmet Corp., 06-CV-0349, 2006 WL 753243, at *2 (W.D.Wash. March 23, 2006)* (granting defendant's motion to quash deposition subpoena in part on ground that plaintiff had failed to show that the information sought was not privileged, explaining, "It is conceivable, given the substance of the parties' dispute, that [defendant] may eventually raise [defense counsel's] declaration of personal knowledge on its registration applications as an affirmative defense; it might also eventually argue that [defense counsel's] knowledge gained from participating in the parties' licensing negotiations supports its defense. Absent such actions, the Court is unconvinced that an implied reference to the applications in generic pleading responses constitutes use of the privilege as a sword and justified a finding that [defendant] has waived the privilege as to [defense counsel's] potential testimony.").

**\*3** My conclusion-that Plaintiffs have not shown that access to the privileged information in question is vital to their opposition of Defendants' assertion of its affirmative defense of qualified immunity-is only bolstered by my reading of the previous rulings of Judges Scullin and Sharpe on this general issue, which are very similar to my ruling.

As stated earlier, Plaintiffs argue that the previous rulings of Judges Scullin and Sharpe on this general issue do not control the issue at hand because Judges Scullin and Sharpe merely held that Plaintiffs did not need the information in question "at that time," and they do need the information *at this time.* As an initial matter, I can find no language in Judge Scullin's Memorandum-Decision and Order of September 21, 2004, indicating that his decision held merely that Plaintiffs were not entitled to the information in question "at that time." For example, the issue on appeal to Judge Scullin, as articulated by him, was whether then-Magistrate Judge Sharpe erred when he "denied Plaintiffs' application for further inquiry of Investigator Blythe about confidential sources by interrogatory deposition, written question, or any other means," after "[a]pplying the informer's privilege" and "conclud[ing] that Plaintiffs had no need for the information they sought." <sup>FN8</sup> Furthermore, Judge Scullin

Not Reported in F.Supp.2d, 2007 WL 2027910 (N.D.N.Y.)
(Cite as: 2007 WL 2027910 (N.D.N.Y.))

rather clearly ruled that, because the information sought by Plaintiffs was not "relevant and essential to the merits of their case," their "need for disclosure does not outweigh Defendants' desire to maintain the secrecy of the identity of their confidential informants." FN9 Presumably, Plaintiffs would probably point out that, in issuing his ruling, Judge Sharpe made three statements that at least *appear* to condition his ruling on the facts and issues of the case at the time of his ruling. FN10 In any event, I find there is no need to resolve the question of whether the ruling of Judge Sharpe (or Judge Scullin) was indeed so conditioned because the sole relevance of such an inquiry, as far as I see it, would be to determine whether the law-of-the-case doctrine applies. I do not rely on that doctrine in reaching my conclusion that Plaintiffs have not shown that they need access to the privileged information in question in order to oppose Defendants' assertion of their affirmative defense of qualified immunity.

FN8. (Dkt. No. 318, at 12 [Memorandum-Decision and Order of Chief Judge Scullin, filed Sept. 21, 2004].)

FN9. (*Id.* at 12-13 [Memorandum-Decision and Order of Chief Judge Scullin, filed Sept. 21, 2004, ruling, in pertinent part, that "Plaintiffs appeal from this [November 17, 2003] determination [of then-Magistrate Judge Sharpe], arguing that then-Magistrate Judge Sharpe erred in denying their request [for his confidential sources] because, without the additional inquiry, they will not be able to rebut Defendants' anticipated motion for summary judgment on qualified immunity grounds.... The Court finds Plaintiffs' argument[ ] to be without merit. Plaintiffs have failed to show a compelling need for further investigation of Investigator Blythe to justify overriding the informer's privilege. Although Plaintiffs maintain that further questioning of Investigator Blythe will help them ascertain the credibility of his confidential sources, the credibility of these sources does not turn on the central issues of this case.... Moreover, the Court finds that Plaintiffs have not met their burden to prove that the information they seek is relevant and essential to the merits of their case. Therefore, the need for disclosure does not outweigh Defendants' desire to maintain

the secrecy of the identity of their confidential informants. Accordingly, the Court affirms then-Magistrate Judge Sharpe's [November 17, 2003] ruling with respect to this issue and denies Plaintiffs' motion to compel Investigator Blythe to provide additional information about the confidential sources."].)

FN10. *See Jones v. McMahon,* 98-CV-0374, Hearing Transcript and Order, at 76, 97 (N.D.N.Y. filed Nov. 17, 2003) (Sharpe, M.J.) ("There is no reason[,] *given the issues that are currently extant in this litigation [,]* to require Investigator Blythe to further identify those people he spoke to in advance of the 1997 incident that resulted in the state police response. He has been sufficiently deposed in that regard and there is no need *on this record* to disclose the identity of those sources.... By no means is any ruling of mine ever designed to foreclose further argument *depending upon what the development of new facts are.")* [emphasis added].

Rather, I rely on the decisions of Judges Scullin and Sharpe because (1) they are persuasive authority in that they the reach the same conclusion as I do through a similar analysis,FN11 and (2) they indicate that the facts and issues before Judges Scullin and Sharpe at the time they made their rulings were very similar to, if not identical to, the facts and issues that are before me at this time, suggesting that there has been no increase in Plaintiffs' asserted need to overcome the privilege in question. As I understand Plaintiffs' position, they argue that, to the contrary, there has been a change in the facts and issues in this case in that, after they made their first motion to compel the re-deposition of Investigator Blythe (which motion was the subject of the decisions of Judges Sharpe and Scullin), Defendants indeed filed a motion for partial summary judgment that was premised in part on qualified immunity and that cited the privileged information in question. If this is indeed their argument, I must respectfully reject it.

FN11. For example, Judge Scullin's conclusion that "Plaintiffs have failed to show a compelling need for further investigation of Investigator

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027910 (N.D.N.Y.)
(Cite as: 2007 WL 2027910 (N.D.N.Y.))

Blythe to justify overriding the informer's privilege" is very similar to my conclusion that Plaintiffs have not shown that access to the privileged information in question is "vital" to its opposition of Defendants' anticipated assertion of its affirmative defense of qualified immunity at trial. The reason for the disparity in the articulation of these conclusions appears to be due to the difference in legal standards relied on. While I rely on the legal standard for "at-issue" waiver of privileges in general, Judge Scullin relied on the legal standard for overcoming the informer's privilege in particular. (Dkt. No. 318, at 12.) *See, supra,* note 5 of this Decision and Order. As I stated earlier, even if I applied the legal standard for overcoming the informer's privilege, I would reach the same conclusion as I do applying the legal standard for "at-issue" waiver.

**\*4** During the motion argument before Judge Sharpe, Ms. Jodi Peikin (as counsel for Plaintiffs) argued that, "I assume that Investigator's Blythe's testimony, especially that part about the confidential sources and what they told him prior to the May 18th gathering are going to be a *centerpiece* of the qualified immunity motion if the defendants make their qualified immunity summary judgment motion. They will rely on the fact that Investigator Blythe found out that a gathering had a potential to be violent, and therefore, people came as they came." <u>FN12</u> *Those* were the facts and issues of the case, as the case stood before Judge Sharpe. After expressly acknowledging the role that the privileged information would likely play in Defendants' motion for summary judgment, Judge Sharpe still found Plaintiffs' need for the privileged information to be insufficient (because any such use of privileged information by Defendants would essentially be immaterial given the facts and issues of the case).<u>FN13</u> Furthermore, as described earlier, the role that the privileged information *actually* played in Defendants' motion for partial summary judgment appears to have been very limited, suggesting that the role that the privileged information would play at trial (during the assertion of Defendants' qualified immunity defense) would also be very limited. As a result, a tenable argument exists that the facts and issues of the case, as they currently exist, indicate an even *lesser* need on the part of Plaintiffs for the privileged information in question than the need they possessed for that information during the decisions by

Judges Sharpe and Scullin.

> <u>FN12.</u> *See Jones v. McMahon,* 98-CV-0374, Hearing Transcript and Order, at 90 (N.D.N.Y. filed Nov. 17, 2003) (Sharpe, M.J.) [emphasis added].

> <u>FN13.</u> *See Jones v. McMahon,* 98-CV-0374, Hearing Transcript and Order, at 93 (N.D.N.Y. filed Nov. 17, 2003) (Sharpe, M.J.) ("I'm sure the plaintiffs are right ... [that, in Defendants' motion for summary judgment, the privileged information in question] will support to some degree the argument by the state that certain things were preceded by facts which were reasonable, supporting issues of probable cause. That having been said, this case is not going to go away on any other issue than a finding of credibility by somebody as to what happened out there. They either used excessive force or they didn't. They either had facts which supported a particular arrest or [they] didn't.... It's that simple. That's where this case will ultimately be resolved.").

Simply stated, I find that Plaintiffs do not have a right to overcome the informer's privilege and/or law enforcement privilege and obtain the names of the five confidential sources in question (in part to attempt to show that Investigator Blythe manufactured those sources well after the incident in question) without more of a showing that Defendants are going to use that confidential information in a significant way to support the assertion of their qualified immunity defense at trial. As a result, I *deny* without prejudice Plaintiffs' request for an Order either (1) permitting them to re-depose retired Senior Investigator Dennis J. Blythe for the limited purpose of discovering information regarding the identity and reliability of five confidential sources about whom he testified at his initial deposition, or (2) precluding Defendants from relying on the information provided by Investigator Blythe's confidential sources for the remainder of this lawsuit.

**II. Request for Order Either Declaring that Martin J. Williams is a "Proper" Defendant in Plaintiffs' Second Amended Complaint or Permitting Plaintiffs to File a**

Not Reported in F.Supp.2d, 2007 WL 2027910 (N.D.N.Y.)
(Cite as: 2007 WL 2027910 (N.D.N.Y.))

**Third Amended Complaint Naming Him as a Defendant**

Plaintiffs request an Order either (1) declaring that Martin J. Williams is a "proper" Defendant in Plaintiffs' Second Amended Complaint or (2) permitting Plaintiffs to file a Third Amended Complaint naming Mr. Williams as a Defendant. (Dkt. No. 428, Part 1, at 10-11.)

**\*5** I construe Defendants' opposition to Plaintiffs' *initial* request (i.e., for an Order declaring that Martin J. Williams is a "proper" Defendant in Plaintiffs' Second Amended Complaint) as being premised on two related but somewhat distinct grounds: (1) Plaintiffs' Second Amended Complaint is devoid of sufficient factual allegations against Martin J. Williams, i.e., those factual allegations that would be necessary to give him *fair notice* of the nature of Plaintiffs' claims against him under Rule 8 of the Federal Rules of Civil Procedure; and (2) that the Second Amended Complaint does not allege any facts indicating the personal involvement of Mr. Williams in the constitutional violations alleged, which is a requirement to state a claim under 42 U.S.C. § 1983. Defendants oppose Plaintiffs' *alternative* request (i.e., for an Order permitting Plaintiffs to file a Third Amended Complaint naming him as a Defendant) on the ground that such a request was already denied by Judge Scullin on April 20, 2005, in connection with a different proposed amended pleading.

Plaintiffs reply that (1) various pieces of evidence demonstrate that Mr. Williams was involved in the incident in question, on May 18, 1997, and (2) although Plaintiffs' Second Amended Complaint does not contain specific allegations relating to Mr. Williams, their Amended Complaint does contain such allegations, in six paragraphs spanning one and a half pages, which placed Mr. Williams on notice, in or about November of 1998, of Plaintiffs' allegations against him.

**A. Plaintiffs' Initial Request for Declaratory Order**

With regard to Plaintiffs' initial request (i.e., for an Order declaring that Martin J. Williams is a "proper defendant in this case"), even though Defendants responded to this request as it was articulated, I find this request to be fatally flawed in that it misperceives the current posture of the case. Plaintiffs have filed a Second Amended Complaint whose caption and whose subtitle to its "First Claim for Relief" expressly refer to Mr. Williams but whose body does not appear to do so in any of its 613 paragraphs. (*See generally* Dkt. No. 149, Parts 1-3.) Under the circumstances, I find that Plaintiffs have *named* Mr. Williams as a Defendant in their Second Amended Complaint.FN14 Furthermore, Defendant Williams is considered by the Court to be a "proper" Defendant unless and until Defendants make some sort of dispositive motion with regard to Plaintiffs' claims against Defendant Williams, or the Court exercises its power to *sua sponte* review Plaintiffs' claims against him, for example, pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure, or pursuant to the authority recognized in *Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir.1988)*.

FN14. *See* Fed.R.Civ.P. 10(a) ("In the complaint the title of the action shall include the names of all the parties ...."); Fed.R.Civ.P. 8(f) ("All pleadings shall be so construed as to do substantial justice."); *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir.2005) (*"All* complaints must be read liberally [not just *pro se* complaints] ....") [emphasis in original]; *see, e.g., Jones v. State of La. Through Bd. of Tr. for State Coll. and Univ., 764 F.2d 1183, 1185 (5th Cir.1985)* ("We are of the opinion that ... [the] listing [of a person in the caption of a complaint] is sufficient to confer party status in [a] case," even where, as here, the person in question was "not named in the paragraph in the body of the complaint that lists the defendants.").

However, this literal interpretation of Plaintiffs' request ignores the obvious intent of the request, which is to seek an adjudication of the issue of whether they have stated a claim against Defendant Williams under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Under Rule 57 of the Federal Rules of Civil Procedure, and 28 U.S.C. § 2201, such an issue is not properly raised through, and decided on, a motion for a declaratory order. FN15 Rather, the issue is properly raised through, and decided on, a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Under the circumstances, I will sua sponte construe the parties' submissions as a motion to dismiss for failure to state a claim, and a response thereto.* FN16

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027910 (N.D.N.Y.)
(Cite as: 2007 WL 2027910 (N.D.N.Y.))

FN15. *See Int'l Bhd. of Teamsters v. E. Conf. of Teamsters,* 160 F.R.D. 452, 455-456 (S.D.N.Y.1995) ("[P]laintiffs fail to appreciate that when the Federal Rules of Civil Procedure specifically address a subject, a litigant is not free to disregard the requirements that the Rules impose. Thus, for example, a litigant seeking summary judgment must satisfy the requirements specified in Rule 56, and such a litigant cannot avoid these requirements merely by giving the motion a new name. In the instant case, plaintiffs have moved this Court for an order declaring that plaintiffs have certain rights to the funds in question, and the Federal Rules have established a procedure for a litigant who seeks such a declaration: an action for a declaratory judgment pursuant to Rule 57.... Because an action for a declaratory judgment is an ordinary civil action, a party may not make a *motion* for declaratory relief, but rather, the party must bring an *action* for declaratory judgment.") [emphasis in original].

FN16. *See, e.g., Int'l Bhd. of Teamsters,* 160 F.R.D. at 455-456 (construing improperly styled "motion for declaratory order" as motion for summary judgment).

*6 In addition to being in the interest of justice, this construction of the parties' submissions is in accord with the parties' perceived intent. I note that the current issue facing the Court originally arose out of a request by defense counsel, on December 12, 2006, that the Court dismiss Plaintiffs' Second Amended Complaint as it relates to Mr. Williams and deny any request by Plaintiffs to file a Third Amended Complaint containing factual allegations against Mr. Williams. (Dkt. No. 416, at 3.) On February 23, 2007, I denied that request without prejudice, directing counsel to confer in good faith in an attempt to resolve the issue, and instructing them that, if they were unable to resolve the dispute, I would address it in a teleconference between counsel and the Court. (Dkt. No. 423, at 4.) Subsequently, counsel were unable to resolve the dispute. On June 5, 2007, I conducted that teleconference and reserved decision on the issue, directing counsel to submit letter briefs in support of their positions. Plaintiffs' current

request followed.

As an initial matter, it is important to note that motions to dismiss for failure to state a claim may be based on one or both of two related but somewhat distinct grounds: (1) a challenge to the "sufficiency of the pleading" under Rule 8(a)(2); or (2) a challenge to the legal cognizability of the claim.[FN17] Here, as indicated above, I construe Defendants' opposition to Plaintiffs' first request as consisting of both types of challenges to Plaintiffs' Second Amended Complaint: (1) a challenge to the sufficiency of the pleading (in that the pleading does not contain those factual allegations that would be necessary to give Defendant Williams fair notice of the nature of Plaintiffs' claims against him); and (2) a challenge to the legal cognizability of the claim (in that, by failing to allege facts indicating the personal involvement of Defendant Williams in the constitutional violations alleged, Plaintiffs have failed to fulfill an essential requirement to state a claim against Defendant Williams under 42 U.S.C. § 1983).

FN17. *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514 (2002) ( "These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.... *In addition,* they state claims upon which relief could be granted under Title VII and the ADEA.") [emphasis added]; *Wynder v. McMahon,* 360 F.3d 73, 80 (2d Cir.2004) ( "There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Kittay v. Kornstein,* 230 F .3d 531, 541 (2d Cir.2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a][2]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 2005 U.S. Dist. LEXIS 6686 (S.D.N.Y. Apr. 20, 2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation [in order to give defendant fair notice of their claim], it does not protect a legally insufficient claim.") [citation omitted]; *Util. Metal Research & Generac Power Sys.,* 02-CV-6205, 2004 U.S. Dist. LEXIS 23314,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027910 (N.D.N.Y.)
(Cite as: 2007 WL 2027910 (N.D.N.Y.))

*4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8); *accord, Straker v. Metro Trans. Auth.,* 331 F.Supp.2d 91, 101-102 (E.D.N.Y.2004); *Tangorre v. Mako's, Inc.,* 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion-one aimed at the sufficiency of the pleadings under Rule 8(a), and the other aimed at the legal sufficiency of the claims).

**1. Challenge to Sufficiency of Pleading**

Recently, the Supreme Court clarified the nature of the "fair notice" pleading standard that governs Rule 8(a)(2) of the Federal Rules of Civil Procedure, under *Conley v. Gibson,* 355 U.S. 41, 47 (1957). Specifically, the Supreme Court held,

> While a complaint ... does not need detailed factual allegations, ... a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.... Factual allegations must be enough to raise a right to relief above the speculative level, ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact) ....

*Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1964-1965 (2007). Here, I find that the factual allegations of Plaintiffs' Second Amended Complaint, even when assumed to be true, are not enough to raise a right to relief (pursuant to any claim against Defendant Williams) above a speculative level. As stated earlier, although Plaintiffs name Martin J. Williams as a Defendant in the caption of their Second Amended Complaint and in the subtitle to their "First Claim for Relief," I cannot find his name in any of the 613 paragraphs of the body of that amended pleading. (*See generally* Dkt. No. 149, Parts 1-3.)

*7 Plaintiffs essentially argue that, despite the aforementioned omission of factual allegations against

Defendant Williams from their Second Amended Complaint, Defendant Williams had "fair notice" of Plaintiffs intended factual allegations against him because (1) various pieces of evidence demonstrate that Defendant Williams was involved in the incident in question, on May 18, 1997, and (2) Plaintiffs' Amended Complaint contained Plaintiffs' factual allegations against him. (Dkt. No. 428, Part 1, at 10-11.) I disagree.

With respect to Plaintiffs' reliance on various pieces of evidence allegedly demonstrating that Defendant Williams was involved in the incident in question, on May 18, 1997, I acknowledge that such evidence may very well actually exist. However, I have difficulty considering it under the circumstances. As I explained above, the legal standard that governs Plaintiffs' initial request is not a Rule 56 summary judgment standard (in which record evidence is considered) but a Rule 12(b)(6) motion to dismiss standard (in which merely the complaint and any attachments thereto are considered, unless the complaint has been authored by a *pro se* plaintiff, which this pleading was not). [FN18] Although I have found a handful of cases from within the Seventh Circuit and the District of Columbia Circuit holding that courts may look beyond the pleadings to pretrial conduct and communications between the parties when deciding whether a complaint has given a defendant "fair notice" of the plaintiff's claims against him, [FN19] I have found no cases from within the Second Circuit citing those cases.

FN18. *See Kopec v. Coughlin,* 922 F.2d 152, 153 (2d Cir.1991) ("We consider only the facts alleged in the amended complaint [when deciding a motion to dismiss]."); *Ronzani v. Sanofi S.A.,* 899 F .3d 195, 196 (2d Cir.1990) ("In reviewing the sufficiency of the complaint [on a motion to dismiss], we will consider only the facts alleged in the amended complaint and any documents attached thereto as exhibits or incorporated by reference."); *Cosmas v. Hassett,* 886 F.2d 8, 13 (2d Cir.1989) ("On a motion to dismiss, the district court must limit itself to a consideration of the facts alleged on the face of the complaint ... and to any documents attached as exhibits or incorporated by reference ....") [citations omitted]. Indeed, when courts consider documents outside the four corners of the complaint, they effectively convert a motion to

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027910 (N.D.N.Y.)
(Cite as: 2007 WL 2027910 (N.D.N.Y.))

dismiss into a motion for summary judgment. *See, e.g.,* Kopec, 922 F.2d at 153.

FN19. *See* Bob Willow Motors, Inc. v. Gen. Motors Corp., 872 F.2d 788, 791-792 (7th Cir.1989); *Sundstrand Corp. v. Standard Kollsman Indus., Inc.,* 488 F.2d 807, 811 (7th Cir.1973); *In re Consolidated Indus. Corp.,* 292 B.R. 354, 358 (N.D.Ind. Dec. 9, 2002); *Alaska Airlines v. Austin,* 90-CV-2879, 1992 WL 358840, at *2 & n. 2 (D.D.C. Nov. 19, 1992); *Berman v. Midwesco, Inc.,* 90-CV-7065, 1992 WL 59109, at *2 (N.D.Ill. March 13, 1992); *Mueller v. Ameritech Information Sys., Inc.,* 92-CV-3429, 1992 WL 48014, at *2 (N.D.Ill. March 3, 1992); *Augenstein v. Nat'l Student Marketing Corp.,* No. 2408-72, 1982 WL 1368, at *4 & n. 13 (D.D.C. Nov. 24, 1982).

Even if I were to consider the referenced pieces of evidence in determining whether Defendant Williams had notice of Plaintiffs' claims against him, I would conclude that such notice was not "fair," or, using the terminology recently used by the Supreme Court in *Twombly,* I would conclude that the notice was not sufficient to raise Plaintiffs' right to relief against Defendant Williams above a "speculative level." This is because Defendants have argued (and I have no reason to doubt) that, for some time now, they have disputed the personal involvement of Defendant Williams in the constitutional violations alleged.[FN20] Thus, for all Defendant Williams knew, Plaintiffs' withdrawal, in their Second Amended Complaint, of their previous factual allegations against him could have been not due to a mistake (as Plaintiffs assert, in Dkt. No. 418, Part 1, at 16) but due to an intentional act, in light of (1) Defendants' argument that Defendant Williams was not personally involved in the constitutional violations alleged, and/or (2) the duties imposed on Plaintiffs' counsel pursuant to Rule 11 of the Federal Rules of Civil Procedure. Furthermore, I find that, under the circumstances, this reasonable uncertainty (regarding whether Plaintiffs were, when they filed their Second Amended Complaint on October 25, 1999, continuing to assert factual allegations against Defendant Williams) caused Defendant Williams at least some prejudice, forcing him to either (1) spend the effort to conduct discovery and motion practice regarding the speculative factual allegations against him or (2) gamble

to his possible peril that no such factual allegations actually existed.[FN21] For example, I note that this confusion actually resulted in defense counsel futilely preparing and sending to Plaintiffs' counsel on April 11, 2006, a Stipulation of Dismissal with regard to Plaintiffs' claim against Defendant Williams.[FN22]

FN20. (*See, e.g.,* Dkt. No. 416, at 3 [Letter Brief by Defendants, filed 12/13/06, referencing letter from defense counsel to Plaintiffs' counsel dated 12/20/00 informing Plaintiffs that "it was the State defendants' position that Martin J. Williams is not a proper defendant in this case," and also referencing Stipulation of Dismissal regarding Defendant Williams that was sent to Plaintiffs on 4/11/06].)

FN21. As Judge Scullin aptly stated in a previous Memorandum-Decision and Order in this case, "Defendant Martin J. Williams is not addressed in that portion of Plaintiffs' second amended complaint [which is entitled 'Factual Allegations As to Each Defendant']. Presumably, Plaintiffs would ... argue this was due to inadvertence. However, a defendant should not be in a position of having to guess which of a plaintiff's inadvertent inclusions or exclusions have legal effect." (Dkt. No. 395, at 6, n. 6 [Mem.-Decision and Order of Judge Scullin, filed 4/20/05.)

I note that one of the purposes of the notice pleading standard is to permit an adverse party an opportunity to prepare an adequate defense. *See* Flores v. Bessereau, 98-CV-0228, 1998 WL 315087, at *1 (N.D.N.Y. June 8, 1998) (Pooler, J.) ("The purpose of [Rule 8 of the Federal Rules of Civil Procedure] is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of *res judicata* is applicable .") [citations omitted]; *see also* Herbert v. Syracuse, New York Welfare Off., 06-CV-0848, 2006 WL 2794400, at *1 (N.D.N.Y. Sept. 25, 2006) (Scullin, J.) ("A complaint that fails to comply with [Rules 8 and 10 of the Federal Rules of

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027910 (N.D.N.Y.)
(Cite as: 2007 WL 2027910 (N.D.N.Y.))

Civil Procedure] presents too heavy a burden for the defendants in shaping a comprehensive defense, provides no meaningful basis for the court to assess the sufficiency of the plaintiff's claims, and is properly subject to dismissal."); Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y.1996) (a complaint that fails to comply with Rule 8's notice-pleading standard "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims"), aff'd, 113 F.3d 1229 (2d Cir.1997) (unpublished table opinion cited not as precedential authority, but merely to show the case's subsequent history, consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit).

FN22. (See, e.g., Dkt. No. 416, at 3 [Letter Brief by Defendants, filed 12/13/06, referencing Stipulation of Dismissal regarding Defendant Williams that was sent to Plaintiffs' counsel on 4/11/06, which Stipulation Plaintiffs' counsel never returned].)

*8 With regard to Plaintiffs' reliance on Plaintiffs' factual allegations against Defendant Williams in their prior Amended Complaint, I acknowledge that such reliance, in appropriate circumstances, may have some legal justification. Specifically, approximately two years ago, the Second Circuit issued a decision in which they considered a plaintiff's original complaint and first amended complaint in assessing whether his second amended pleading gave defendants "fair notice" of his claims against defendants. See Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir.2005). As an initial matter, it is unclear whether the Second Circuit so considered the plaintiff's first two pleadings merely because he was proceeding pro se. See Phillips, 408 F.3d at 128 ("[A]s low as the requirements are for a complaint drafted by competent counsel, we hold pro se complaints to an even lower standard."). If so, it would explain why, in so ruling, the Second Circuit implicitly made an exception to the longstanding rule that the filing of an amended pleading ordinarily renders a prior pleading a nullity for all legal purposes.[FN23] Even if this ruling in Phillips did not turn on

the plaintiff's special status as a pro se litigant (which special status Plaintiffs in the current action do not enjoy), I would find that Phillips is distinguishable from our case on two alternative grounds.

FN23. See Int'l Controls Corp. v. Vesco, 556 F.2d 665, 668-669 (2d Cir.1977) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect.") [citations omitted], cert. denied, 434 U.S. 1014 (1978), accord, Shields v. Citytrust Bancorp., Inc., 25 F.3d 1124, 1128 (2d Cir.1994); see also N.D.N.Y. L.R. 7.1(a)(4) ("Except as the Court otherwise provides, the proposed amended pleading ... will supersede the original pleading in all respects.").

First, our case involves only one prior pleading that allegedly gave a defendant notice of the factual allegations against him, while Phillips involved two such prior pleadings.[FN24] More importantly, in our case, any such notice to Defendant Williams that may or may not have been gleaned by Plaintiffs' Amended Complaint was muddled by the fact that, as stated earlier, Defendants have, for some time now, disputed the personal involvement of Defendant Williams in the constitutional violations alleged. Thus, at the very least, there was reasonable confusion as to whether Plaintiffs' omission of factual allegations regarding Defendant Williams from their Second Amended Complaint was intentional rather than a mere mistake. For all of these reasons, any such notice provided to Defendant Williams was not the sort of "fair" notice required by Rule 8. Rather, Plaintiffs' right to relief against Defendant Williams was merely "speculative."

FN24. In particular, I can find no reference to "Martin J. Williams" in Plaintiffs' original Complaint in this action, although I do find some references to a "Mark S. Williams." (See generally Dkt. No. 1.)

Second, the ruling in question from Phillips appears to have been premised, ultimately, on the principle that a plaintiff's complaint should not be dismissed unless it is clear that the plaintiff would not be entitled to relief under

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027910 (N.D.N.Y.)
(Cite as: 2007 WL 2027910 (N.D.N.Y.))

"any set of facts" that could be proved consistent with the allegations. *Phillips,* 408 F.3d at 127 (quoting *Boddie v. Schnieder,* 105 F.3d 857, 860 [2d Cir.1997] ). This "any set of facts" language was clearly derived from the "no set of facts" language first used in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).[FN25] Recently, the Supreme Court unequivocally "retire[d]" that language.[FN26] Thus, it is questionable whether the ruling in question from *Phillips* is even still good law.

FN25. *See Phillips,* 408 F.3d at 127 (expressly relying on *Boddie v. Schnieder,* 105 F.3d 857, 860 [2d Cir.1997], which expressly relied on *Olkey v. Hyperion 1999 Term Trust, Inc.,* 98 F.3d 2, 5 [2d Cir.1996], which expressly relied on *I Meyer Pincus & Assoc. v. Oppenheimer & Co.,* 936 F.2d 759, 762 [2d Cir.1991], which expressly relied on *Hishon v. King & Spalding,* 467 U.S. 69, 73 [1984], which expressly relied on *Conley v. Gibson,* 355 U .S. 41, 45-46 [1957] ).

FN26. *See Twombly,* 127 S.Ct. at 1969 ("[T]he passage so often quoted [from *Conley* regarding 'no set of facts'] fails to mention [the] understanding on the part of the Court [regarding the minimum standard for adequate pleading], and after puzzling the profession for 50 years, this famous observation has earned its retirement. The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.... *Conley,* then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival.").

**\*9** Finally, I note that, earlier in this proceeding, Judge Scullin reached a similar conclusion regarding lack of fair notice with regard to Plaintiffs' factual allegations (or lack thereof) against Defendant Gregory Eberl. (Dkt. No. 375, at 8, n. 9 [Mem.-Decision and Order of Judge Scullin, filed 4/20/05].) As Judge Scullin stated with regard to yet another set of insufficient allegations in Plaintiffs' Second Amended Complaint, "[T]he Court cannot replead

Plaintiffs' case for them." (*Id.* at 10.)

## 2. Challenge to Legal Cognizability of Claim

Defense counsel is also correct that a defendant's personal involvement in alleged unlawful conduct is a prerequisite for a finding of liability in a claim pursuant to 42 U.S.C. § 1983. (Dkt. No. 427, at 2 [citing *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.), *cert. denied,* 434 U.S. 1087 (1978) ].) Because personal involvement is a requirement of a viable claim under Section 1983, a plaintiff who fails to allege facts "plausibly suggesting"[FN27] such personal involvement has failed to assert a claim that is legally cognizable under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See, e.g., Gill v. Mooney,* 824 F.2d 192, 194, 196 (2d Cir.1987) (affirming pursuant to 12[b][6] defendants' Rule 12[b][6] motion to dismiss for failure to allege facts indicating personal involvement of prison superintendent in constitutional violations alleged) [citations omitted] ).

FN27. *See Twombly,* 127 S.Ct. at 1965-1966 ("In applying these general standards to a ... claim [under Section 1 of the Sherman Act], we hold that stating such a claim requires a complaint with enough factual matter (taken as true) to *suggest* that an agreement was made. Asking for *plausible* grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.... The need at the pleading stage for allegations *plausibly suggesting* (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possesses enough heft to 'sho[w] that the pleader is entitled to relief.' ") [emphasis added].

As stated earlier, although Plaintiffs name Martin J. Williams as a Defendant in the caption of their Second Amended Complaint and in the subtitle to their "First Claim for Relief," I cannot find his name in any of the 613 paragraphs of the body of that amended pleading. (*See generally* Dkt. No. 149, Parts 1-3.) Because Plaintiffs'

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027910 (N.D.N.Y.)
(Cite as: 2007 WL 2027910 (N.D.N.Y.))

Second Amended Complaint contains no factual allegations whatsoever against Defendant Williams, Plaintiffs have not alleged facts from which a fact-finder could conclude that Defendant Williams was personally involved in the constitutional violations alleged. *See, e.g., Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987) ("Initially, we hold that appellants' claims [pursuant to 42 U.S.C. § 1983] against defendants herein cannot stand. Although the caption of appellants' complaint names as defendants Benjamin Ward, Police Commissioner of the City of New York, and Anthony Savarese, a sergeant in the New York City Police Department, the complaint is entirely devoid of any allegations of their personal involvement in [the constitutional violations alleged].").

**B. Plaintiffs' Alternative Request for Leave to File a Third Amended Complaint**

With regard to Plaintiffs' alternative request (i.e., for an Order granting them leave to file a Third Amended Complaint), I deny that motion on several grounds.

Motions to amend pleadings to add new parties are governed by Rule 15 of the Federal Rules of Civil Procedure, which states that leave to amend "shall be freely given when justice so requires." [FN28] Fed.R.Civ.P. 15(a). Elaborating on this standard, the Supreme Court has explained what this "freely given" term means:

> FN28. Although Rule 21 of the Federal Rules of Civil Procedure governs the addition of new parties to an action, a motion to add a party under Rule 21 is guided by the same liberal standard as is a motion to amend under Rule 15. *See U.S. v. Chilstead Building Co.,* 96-CV-0641, 1997 U.S. Dist. LEXIS 18134, at *2 (N.D.N.Y. Nov. 7, 1997) (McAvoy, C.J.) [citations omitted]; *Smith v. P.O. Canine Dog Chas,* 02-CV-6240, 2004 WL 2202564, at *12 n. 11 (S.D.N.Y. Sept. 28, 2004); *Clarke v. Fonix Corp.,* 98-CV-6116, 1999 WL 105031, at *6 (S.D.N.Y. Mar. 1, 1999); *Soler v. G & U, Inc.,* 86 F.R.D. 524, 527-28 (S.D.N.Y.1980); *Fair Hous. Dev. Fund Corp. v. Burke,* 55 F.R.D. 414, 419 (E.D.N.Y.1972).

*10 In the absence of any apparent or declared reason [to not grant leave to amend]-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.-the leave sought should ... be 'freely given.'

 *Foman v. Davis,* 371 U.S. 178, 182 (1962).

Here, I find that sufficient reason exists to deny Plaintiffs' request-specifically, (1) Plaintiffs' undue delay in filing this motion, (2) their repeated failures to cure the deficiency in question, and (3) the undue prejudice to Defendants that would occur if Plaintiffs' request were granted.

First, Plaintiffs have unduly delayed in filing the current request. The deadline for the filing of amended pleadings expired more than **seven-and-a-half years ago.** (Dkt. No. 146 [Order of Judge Scullin, filed 8/23/99, setting deadline for the filing of amended pleadings as 10/22/99]; *see also* Dkt. No. 395, at 7, n. 7 [Order of Judge Scullin, filed 4/20/05, stating that "any motion to amend would be over five years late"].) I note that, because Plaintiffs have not shown good cause for extending that filing deadline for amended pleadings, their request may be denied on that ground alone.[FN29] I am not sure why Plaintiffs have waited so long to file the current request to amend. They had actual notice that their Amended Complaint failed to contain any factual allegations against Defendant Williams at least by April 20, 2005, when Judge Scullin informed them, in a Memorandum-Decision and Order, that "Defendant Martin J. Williams is not addressed in that portion of Plaintiffs' second amended complaint [which is entitled 'Factual Allegations As to Each Defendant']." (Dkt. No. 395, at 6, n. 6 [Mem .-Decision and Order of Judge Scullin, filed 4/20/05.)[FN30] Indeed, it is conceivable that Plaintiffs were aware of the omissions regarding Defendant Williams as early as December 20, 1999, when defense counsel wrote them, stating that it was the State defendants' position that "Martin J. Williams is not a proper defendant in this case."[FN31]

FN29. *See* Fed.R.Civ.P. 16(b)(8) ("A schedule

Not Reported in F.Supp.2d, 2007 WL 2027910 (N.D.N.Y.)
(Cite as: 2007 WL 2027910 (N.D.N.Y.))

shall not be modified except upon a showing of good cause and by leave of the district judge or, when authorized by local rule, by a magistrate judge."); *Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir.2000)* ("[D]espite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause.").

FN30. Moreover, it appears that they were on at least *constructive* notice that their Amended Complaint failed to contain any factual allegations against Defendant Williams by April *4,* 2005, when they requested that Judge Scullin change a few sentences in a previous Memorandum-Decision and Order filed by him on the ground that Plaintiffs had inadvertently omitted from their Second Amended Complaint certain factual allegations regarding various Defendants (other than Defendant Williams). (*See* Dkt. No. 388, Part 1, at 3; Dkt. No. 391, at 1-2.)

FN31. (*See, e.g.,* Dkt. No. 416, at 3 [Letter Brief by Defendants, filed 12/13/06, referencing letter from defense counsel to Plaintiffs' counsel dated 12/20/00 informing Plaintiffs that "it was the State defendants' position that Martin J. Williams is not a proper defendant in this case," and also referencing Stipulation of Dismissal regarding Defendant Williams that was sent to Plaintiffs on 4/11/06].)

Second, Plaintiffs have repeatedly failed to cure the deficiency in question. As Judge Scullin stated in a previous Memorandum-Decision and Order in this case, "[T]he Court has already twice given Plaintiffs leave to amend their pleadings ...." (Dkt. No. 395, at 7, n. 7 [Mem.-Decision and Order of Judge Scullin, filed 4/20/05.) Specifically, Plaintiffs were able to file amended pleadings on November 24, 1998, and October 25, 1999. (Dkt.Nos.65, 149.)

Third, Defendants would experience undue prejudice if

Plaintiffs' request were granted. Defendants have already moved for dismissal and partial summary judgment, and those motions have been decided by the Court. Because Plaintiffs have waited so long to make the current request, if the Court were to grant that request, Defendants presumably would have to file an Amended Answer, file an Amended Crossclaim, conduct additional discovery, file yet another dispositive motion (regarding Plaintiffs' claims against Defendant Williams), and then for the Court to decide that motion.FN32 A similar conclusion of undue prejudice was reached by Judge Scullin in a previous Memorandum-Decision and Order in this case.FN33

FN32. *See, e.g., Ansam Assocs., Inc. v. Cola Petroleum, Ltd., 760 F.2d 442, 446 (2d Cir.1985)* (affirming denial of leave to amend because permitting plaintiff to allege a "new set of operative facts" would have been "especially prejudicial [to the defendant] given the fact that discovery had already been completed and [defendant] had already filed a motion for summary judgment").

FN33. (Dkt. No. 395, at 7, n. 7 [Mem.-Decision and Order of Judge Scullin, filed 4/20/05, stating, "Given that any motion to amend by Plaintiffs would be over five years late, that the Court has already twice given Plaintiffs leave to amend their pleadings, that this is a large case in which it is particularly important for the caption to give Defendants accurate notice of who the parties are, and that Plaintiffs have previously dropped many persons as Defendants, the Court concludes that Defendants would be unduly prejudiced if the Court were to allow Plaintiffs to amend their pleadings a third time ."].)

**11 Alternatively, I deny Plaintiffs' motion to amend on the ground that their request does not constitute a proper motion to amend their pleadings. Local Rule 7.1(a)(4) provides that

[a]n unsigned copy of the proposed amended pleading must be attached to a motion brought under Fed.R.Civ.P. 14, 15, 19-22. Except as the Court

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027910 (N.D.N.Y.)
(Cite as: 2007 WL 2027910 (N.D.N.Y.))

provides, the proposed amended pleading must be a complete pleading, which will supersede the original pleading in all respects. No portion of the prior pleading shall be incorporated into the proposed amended pleading by reference.

N.D.N.Y. L.R. 7.1(a)(4). I note that, when deciding a previous motion to amend filed by Plaintiffs, Judge Scullin denied that motion on these same alternative grounds. (Dkt. No. 375, at 5 [Mem.-Decision and Order of Judge Scullin, filed 4/20/05].)

For all these reasons, I deny Plaintiffs' request for a declaratory order, I deny Plaintiffs' request for leave to file a Third Amended Complaint, and I recommend that the Court dismiss Plaintiffs' claims against Defendant Williams for failure to state a claim under Rules 8 and 12 of the Federal Rules of Civil Procedure.[FN34]

> FN34. I find that I have the authority to deny Plaintiffs' motion to amend without issuing a report-recommendation. *See* 28 U.S.C. § 636(b)(1)(A) (providing that a district judge "may designate a magistrate to hear and determine any pretrial matter," with certain enumerated exceptions not relevant here); Fed.R.Civ.P. 72(a) (providing that "[a] magistrate judge to whom a pretrial matter not dispositive of a claim or defense of a party is referred to hear and determine shall ... when appropriate enter into the record a written order setting forth the disposition of the matter."). This conclusion is supported by the overwhelming weight of cases from the Second Circuit and from this Court. For example, I note that, in a fairly recent appeal in which the appellant challenged the authority of a magistrate judge to deny a motion to amend without issuing a report-recommendation, the Second Circuit rejected the argument based, in part, on *Maurice v. State Farm Mut. Auto. Ins. Co.,* 235 F.3d 7, 9 n. 2 (1st Cir.2000). *Marsh v. Sheriff of Cayuga County,* Civ. No. 99-368, 2002 WL 1159631 (2d Cir. May 31, 2002). Although this summary affirmance by the Second Circuit is not itself precedential authority, *see* Rules of the United States Court of Appeals for the Second Circuit,

§ 0.23, it clearly acknowledges the persuasive effect of *Maurice* in this Circuit. *See* Khan v. Ashcroft, 352 F.3d 521, 525 (2d Cir.2003) (relying on summary affirmance for similar purpose).

**III. Request for an Order Permitting Plaintiffs to Conduct the Deposition of Non-Party Lt. Frank DeGennaro Regarding the "Injury to Prisoner" Investigations Conducted by the New York State Police, and the Depositions of the Eight Non-Party New York State Police Investigators Who Conducted Those Investigations if Defendants Indicate an Intent to Rely on Those Investigations**

Plaintiffs request an Order permitting them to conduct the depositions of (1) non-party Lt. Frank DeGennaro regarding the "injury to prisoner" investigations conducted by the New York State Police following the occurrence of the incident in question on May 18, 1997, and (2) some or all of the eight other non-party New York State Police Investigators who conducted those investigations in the event it becomes apparent that Defendants intend, in a future motion or at trial, to rely on information collected by those investigators. (Dkt. No. 428, Part 1, at 8-9.)

Defendants oppose this request on essentially three grounds: (1) Plaintiffs do not need much of the information they seek because they already have the "factual portions" of the five "injury to prisoner" reports relating to the incident in question on May 18, 1997, and because they have already deposed all but three of the named Defendants in this case; (2) the remaining information that Plaintiffs seek has been ruled to be privileged by Judge Sharpe on November 17, 2003; and (3) Plaintiffs do not have a compelling need for that privileged information (i.e., a need that is sufficient to overcome the privilege) because the information is not relevant to Plaintiffs' claims in this case. (Dkt. No. 427, at 3.)

Plaintiffs reply with three arguments. First, they argue that the "factual portions" of the five "injury to prisoner" reports referenced by Defendants, and the deposition testimony of the named Defendants in this case, do not, in fact, regard how the "injury to prisoner" investigations

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027910 (N.D.N.Y.)
(Cite as: 2007 WL 2027910 (N.D.N.Y.))

were directed and conducted. (Dkt. No. 428, Part 1, at 9.) Second, Plaintiffs argue that they need the information in question because (1) the referenced "injury to prisoner" investigations were part of the New York State Police's alleged "cover-up" of their improper actions taken on May 18, 1997, and thus information about how those investigations were directed and conducted could lead to admissible evidence bearing on the reasonableness of Defendants' actions on May 18, 1997, and (2) the investigations "relate to injuries that certain Plaintiffs received on May 18, 1997 at the hands of the troopers, and information collected pertaining to such injuries may be relevant to damages." (*Id.* at 8-9.) Third, Plaintiffs argue that, indeed, on February 23, 2007, the Court ruled that the New York State Police's internal investigators "clearly could have" information relevant to the May 18, 1997 incident, regardless of whether that information was relevant to Plaintiffs' stated claims in this case. (*Id.* at 8.)

**\*12** I believe that a proper analysis of this issue starts with an analysis of what, if any, privilege applies to the information possessed by the investigators in question. Unfortunately, I cannot conduct a thorough such analysis on the record before me. On November 17, 2003, Judge Sharpe ruled that, apparently with respect to the "synopsis and conclusion" sections of the five "injury to prisoner" reports referenced above by Defendants and a "cover memorandum" from Defendant Parmley regarding the reports, "[i]t is my evaluation that all of the materials are either protected by the [deliberative process privilege] or are irrelevant to the issues raised insofar as issues of qualified immunity are concerned." *Jones v. McMahon,* 98-CV-0374, Hearing Transcript and Order, at 33 (N.D.N.Y. filed Nov. 17, 2003) (Sharpe, M.J.) [emphasis added]. In affirming Judge Sharpe's ruling, Judge Scullin, on September 21, 2004, appeared to indicate that the various materials ruled on by Judge Sharpe did not consist merely of the "synopsis and conclusion" sections of the five "injury to prisoner" reports and the "cover memorandum" referenced above but extended to several other documents. (Dkt. No. 318, at 8-9, n. 3) Because I do not have the documents referenced by Judge Scullin for an *in camera* review, and because I do not even know the names of the eight non-parties that Plaintiffs are reserving the right to depose, I cannot know whether any of the information sought by Plaintiffs is, in substance, the same information ruled to be privileged or irrelevant by Judge Sharpe.

Of course, even without relying on the rulings of Judges Sharpe and Scullin, it is theoretically possible for me to determine whether the deliberative-process privilege protects disclosure of the information sought by Plaintiffs. Specifically, it is conceivable to me that the information sought-which requires, in part, how certain police investigations were *directed* as a result of a *special policy* to allegedly "cover-up" the results of Defendants' conduct during the incident on May 18, 1997-falls within the parameters of the deliberative process privilege. (*See* Dkt. No. 318, at 6-8 [Mem.-Decision and Order of Judge Scullin, filed 9/21/04, describing legal standard for application of deliberative process privilege].) However, given the sensitive nature of the information at issue, I believe that it would be necessary for me to hear the proffered deposition testimony in question in chambers before properly determining whether the information they possess is or is not protected by the privilege. *See, e.g., Brown v. Middaugh,* 96-CV-1097, 1999 U.S. Dist. LEXIS 5764, at \*3-4 (N.D.N.Y. Apr. 21, 1999) (Munson, J.) ("Given the sensitive nature of these files, which pertain to internal investigations of Oneida County corrections officers and deputies, the court examined them *in camera.*").[FN35]

FN35. *See also Surles v. Air France,* 00-CV-5004, 2001 U.S. Dist. LEXIS 15315, at \*6 (S.D.N.Y. Sept. 27, 2001) ("In order to determine the significance or insignificance of portions of such material to the litigation, in camera examination may be appropriate .") [citations omitted]; *Montalvo v. Hutchinson,* 837 F.Supp. 576, 579 (S.D.N.Y.1993) ( "An appropriate solution to this dilemma ... would be for plaintiff to request an in camera inspection to determine if the Grand Jury minutes contain material important to the prosecution of plaintiff's claim.") [citation omitted].

Moreover, regardless of whether the privilege applies, and despite my ruling on February 23, 2007, I have trouble finding that Plaintiffs have shown good cause to believe that all of the information that they seek is *relevant* to the *subject matter involved in the action,* sufficient to warrant the issuance of an Order compelling all of the deposition testimony sought, under Rules 26, 34, 37, and 45 of the Federal Rules of Civil Procedure.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027910 (N.D.N.Y.)
(Cite as: 2007 WL 2027910 (N.D.N.Y.))

**\*13** It is important to briefly review the general provisions governing discovery for civil suits in the federal courts, as they are set forth in Rule 26. Under Rule 26, parties may, *without* a court order, obtain discovery of any matter, not privileged, that is relevant [FN36] to "the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). Moreover, parties may, *with* a court order, obtain discovery of not just any matter that is relevant to "the claim or defense of any party" but any matter that is relevant to "the subject matter involved in the action." *Id.* In both circumstances, discovery extends, not just to relevant evidence that is admissible at trial, but to relevant evidence that is *inadmissible* at trial if that relevant evidence "appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*

> FN36. "Relevant" means "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. *See also Young v. Liberty Mut. Ins. Co.,* 96-CV-1189, 1999 WL 301688, at *2-3 (D.Conn. Feb. 16, 1999) (citing Rule 401 in defining Rule 26[b] ); *B.C.F. Oil Refining Inc. v. Consolidated Edison Co.,* 168 F.R.D. 161, 164 (S.D .N.Y.1996) (using Rule 401 to determine what is discoverable under Rule 26[b] ); *Bogan v. Northwestern Mut. Life Ins. Co.,* 144 F.R.D. 51, 53 (S.D.N.Y.1992) (using Rule 401 to determine what is discoverable under Rule 26[b] ).

However, this broad scope of permissible discovery set forth in Rule 26 is curtailed somewhat by the requirement that a party moving to compel discovery of matter that is relevant to "the subject matter involved in the action" must show "good cause." *Id.*[FN37] On such a motion to compel, "[t]he good cause standard is meant to be flexible, but the party seeking such discovery should ordinarily be able to articulate a reason for believing it is warranted.... Discovery will only be broadened [beyond that which focuses on the actual claims and defenses of any party] when demanded by the reasonable needs of the action." *Hill v. Motel 6,* 205 F.R.D. 490, 492 (S.D.Ohio 2001) (citation omitted), *accord,* 8 Wright & Miller, Federal Practice and Procedure § 2008 (Supp.2004), *accord,* Advisory Committee Notes to 2000 Amendments to Fed.R.Civ.P. 26, *reprinted in* 192 F.R.D. at 389 (adding that "[t]he court may permit broader discovery in a

particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested").[FN38]

> FN37. *See RLS Associates, LLC v. United Bank of Kuwait, PLC,* No. 01 Civ. 1290, 2003 WL 1563330, *7 (S.D.N.Y. March 26, 2003)* ("The amended rule gives the Court discretion to order broader discovery, but only "[f]or good cause."); *Johnson Matthey, Inc. v. Research Corp. et al.,* No. 01 Civ. 8115, 2002 WL 31235717, *2 (S.D.N.Y. Oct. 3, 2002)* ("In order to compel production of information which is relevant only to the subject matter of an action [as opposed to the claim or defense of any party], the Rule requires that the party seeking discovery demonstrate 'good cause.' ").

> FN38. *See, e.g., Rus, Inc. v. Bay Indus., Inc.,* No. 01 Civ. 6133, 2003 WL 174075, * 14 (S.D.N.Y. Apr. 1, 2003)* (good cause not shown in motion to compel discovery of material relevant only to subject matter of action where movant did not make "any showing of need"); *RLS Assoc., LLC v. United Bank of Kuwait, PLC,* No. 01 Civ. 1290, 2003 WL 1563330, *8 (S.D.N.Y. March 26, 2003)* (good cause not shown in motion to compel discovery of material relevant only to subject matter of action where movant did not show that "production would serve the reasonable needs of the action").

This broad scope of permissible discovery is further curtailed by Rule 26(c), which permits motions for protective orders. Specifically, "[u]pon motion by a party ... and for good cause shown, the court ... may make any order which justice requires to protect a party or person ... including ... [an order] that the disclosure or discovery not be had ...." Fed.R.Civ.P. 26(c). In a motion for a protective order, "good cause" is established only on a "specific" and "particular" showing of harm to the party opposing disclosure. *See Alfadda, et al. v. Fenn, et al.,* 149 F.R.D. 28, 34 (S.D.N.Y.1993) (citations omitted); *Cooper v. Welch Foods, Inc.,* 105 F.R.D. 4, 6 (W.D.N.Y.1984) (citations omitted). For example, where the party opposing disclosure argues that production would violate a statute, he must specify which provision of

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027910 (N.D.N.Y.)
(Cite as: 2007 WL 2027910 (N.D.N.Y.))

the statute applies and make a factual showing sufficient to establish that the provision protects the information sought. *See* Alfadda, 149 F.R.D. at 34-36. In determining whether good cause exists, the Court must keep in mind the public interest, and "strike a balance between plaintiffs' desire for full disclosure of relevant information against the defendant[s]' desire to preserve the privacy of its employees." *Savitt v. Vacco, et al.,* No. 95-CV-1842, 1996 U.S. Dist. LEXIS 16875, *15-16 (N.D.N.Y. Nov. 8, 1996) (citation omitted).

**\*14** Here, I construe Plaintiffs' papers as requesting an Order to compel the production of the information in question on the ground that it is relevant (not to one of Plaintiffs' claims in their Second Amended Complaint, or to one of Defendants' defenses but) to the subject matter involved in the action for two reasons: (1) because the referenced "injury to prisoner" investigations were part of the New York State Police's alleged "cover-up" of their improper actions taken on May 18, 1997, information about how those investigations were directed and conducted could lead to admissible evidence bearing on the reasonableness of Defendants' actions on May 18, 1997; and (2) because the investigations "relate to injuries that certain Plaintiffs received on May 18, 1997 at the hands of the troopers," the "information collected pertaining to such injuries may be relevant to damages." (Dkt. No. 428, Part 1, at 9.) Furthermore, I construe Defendants' papers as opposing that request essentially on the ground that Plaintiffs have failed to show good cause and/or on the ground that good cause exists for an Order protecting the information from disclosure.

The main problem with Plaintiffs' argument for the issuance of an Order compelling the production of the information sought is the *speculative* nature of the asserted relevance of that information. Plaintiffs argue that the information about how the "injury to prisoner" investigations were directed and conducted "could lead to admissible evidence bearing on ... the reasonableness of defendants' actions on May 18, 1997," and that the information sought "may be" relevant to Plaintiffs' damages. (Dkt. No. 428, Part 1, at 8, 9.) As a district judge in the Southern District of New York stated under analogous circumstances (in which a defendant argued that information might be useful in its defense), "[I]nformation sought by a [party] does not become relevant merely because [the party] speculates that it might reveal useful

material." *Surles v. Air France,* 00-CV-5004, 2001 U.S. Dist. LEXIS 15315, at *6 (S.D.N.Y. Sept. 27, 2001) [citations omitted].

Plaintiffs are correct that, on February 23, 2007, I indeed ruled that New York State Police Superintendent James W. McMahon (and various members of the New York State Police who participated in an internal investigation) "clearly could have" information that is relevant to the subject matter involved in the action. (Dkt. No. 423.) However, the circumstances giving rise to that ruling appear to have been somewhat different than are the current circumstances in two respects. First, as I understand it, the information that Plaintiffs previously sought regarded an internal investigation that focused on the specific issue of whether *New York State Troopers had committed misconduct* during the May 18, 1997 incident, not an internal investigation regarding the somewhat distinct issue of whether (or to what extent) *Plaintiffs had sustained injuries* during the May 18, 1997 incident. (Dkt. No. 418, Part 1, at 2-15.) Simply stated, the latter seems slightly more attenuated from the subject matter of the action than does the former. Second, when Plaintiffs made their previous application, they had not had the benefit of the deposition of Superintendent McMahon (as well as various other depositions), which they do now. Simply stated, Plaintiffs' "need" for information that might support their "cover-up" theory has diminished somewhat during the past four months. (As explained above, an assessment of whether a party has shown good cause for an order directing disclosure of certain information is a flexible and fluid one, involving consideration of "the reasonable needs of the action" and "the circumstances of the case.")

**\*15** As a result, I make the following ruling regarding Plaintiffs' current request. That request is denied without prejudice with regard to the eight New York State Police Investigators who conducted the "injury to prisoner" investigations in question. However, that request is granted in part, and denied in part, with regard to Lt. Frank DeGennaro. A *brief* (i.e., two-hour) deposition of Lt. DeGennaro shall be permitted in the federal courthouse in Syracuse, at a date and time when, upon the assertion of any objection based on privilege, I shall be available to hear the proffered deposition testimony and promptly render a ruling on it. My Courtroom Deputy, Mr. Terry Mitchell, should be contacted (315-234-8613) to arrange

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027910 (N.D.N.Y.)
(Cite as: 2007 WL 2027910 (N.D.N.Y.))

an appropriate date, time and room for the deposition. *Moreover, at least one day prior to the deposition, defense counsel is directed to provide me with copies of the documents referenced in footnote 3 of Judge Scullin's Memorandum-Decision and Order of September 21, 2004, which Judge Sharpe apparently ruled (on November 17, 2003) were protected by the deliberative process privilege, for my in camera review in advance of the deposition.* (Dkt. No. 318, at 8-9, n. 3.)

**IV. Request for an Order Permitting Plaintiffs to Conduct the Depositions of 32 Non-Party New York State Troopers Who Were Either Present at the May 18, 1997 Incident or Involved in Its Immediate Aftermath, and the Brief Depositions of the Approximately 58 Remaining Such New York State Troopers if Defendants Indicate an Intent to Rely on Information Obtained by Those Troopers**

Plaintiffs request an Order permitting them to conduct (1) the depositions of 32 non-party New York State Troopers who were either present at the May 18, 1997 incident or involved in its immediate aftermath, and (2) the brief depositions of some or all of the approximately 58 remaining such New York State Troopers in the event it becomes apparent that Defendants intend, in a future motion or at trial, to rely on information obtained by those Troopers. (Dkt. No. 428, Part 1, at 9-10.) Plaintiffs argue that each of the aforementioned 32 Troopers possesses information relevant to the May 18, 1997 incident, for the reasons detailed in Exhibit E to their motion papers. (Dkt. No. 428, Part 6.)

Defendants oppose this request essentially on the ground that the requested depositions would violate Rules 30(a)(2)(A) and 26(b)(2)(C) of the Federal Rules of Civil Procedure in that (1) they would be unreasonably cumulative or duplicative of previously conducted depositions, and/or (2) Plaintiffs have already had ample opportunity, in previously conducted depositions, to obtain the information sought. (Dkt. No. 427, at 4.) More specifically, Defendants argue that, as of April 4, 2007, Plaintiffs had already conducted at least 98 depositions in this case-including at least 41 depositions of parties and non-parties who were directly involved in the arrests of Plaintiffs during the incident in question on May 18, 1997, and at least 44 depositions of parties and non-parties who

were present during, and observed, the incident in question on May 18, 1997. (*Id.*)

**\*16** In order to obtain leave to expand the ten-deposition limit imposed by Rule 30(a)(2)(A), it is the burden of the party seeking the additional depositions to show cause for the expansion, for example, by showing that (1) the proposed discovery is not "unreasonably cumulative or duplicative, or ... obtainable from some other source that is more convenient, less burdensome, or less expensive," (2) the party seeking the proposed discovery has not previously "had ample opportunity by discovery in the action to obtain the information sought," and (3) that "the burden or expense of the proposed discovery [does not] outweigh[ ] its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *See* Fed.R.Civ.P. 30(a) (2)(A), 26(b)(2)(C).

Here, Plaintiffs largely have not made this showing. Granted, Plaintiffs have submitted an exhibit wherein they attempt to specifically show why 32 of the proposed 90 depositions would yield information that is relevant to Plaintiffs' claims, Defendants' defenses, and/or the subject matter involved in the action. (Dkt. No. 428, Part 1, at 9-10; Dkt. No. 428, Part 6.) However, in that exhibit they often fail to squarely address the crux of Defendants' argument, which is that the proposed depositions would be unreasonably cumulative or duplicative of various of the approximately 98 previously conducted depositions in this action.[FN39]

FN39. By contrast, an instance in which Plaintiffs *do* make this showing is Paragraph 19 of Exhibit E, wherein they explain that non-party Michael L. Downey "supervised approximately six other NYSP members who were part of [the] traffic control squad [that was part of the NYSP response to the May 18, 1997 gathering] ..., none of whom [Plaintiffs] are seeking to depose. Plaintiffs have not yet previously deposed any member of the traffic control squad." (Dkt. No. 428, Part 6, ¶ 19.)

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027910 (N.D.N.Y.)
(Cite as: 2007 WL 2027910 (N.D.N.Y.))

Indeed, several of the proposed depositions seem duplicative of *one another.* For example, some of the proposed depositions seek to obtain the observations by the deponents of "a woman ... with a stroller" that contained an infant in "a body cast" who was allegedly knocked from the stroller (apparently Plaintiff Roberta Rockwell and her infant child, Plaintiff Odenhaida Rockwell). (*See, e.g.,* Dkt. No. 428, Part 6, ¶¶ 3, 4, 5, 11, 32.) Some of the proposed depositions seek the observations by the deponents of the treatment of a "a Channel 3 cameraman." (*Id.* at ¶¶ 1, 3, 5, 6.) Some of the proposed depositions seek to obtain the observations by the deponents of the arrest and alleged beating of Plaintiff Kenneth Kappelmeier. (*Id.* at ¶¶ 2, 4, 7, 12, 14, 22.) Some of the proposed depositions seek to obtain the observations by the deponents of the arrest and alleged beating of Plaintiff Robert E. Bucktooth, Jr. (other than the observations that are already evident from the videotape of his arrest. (*Id.* at ¶¶ 10, 26, 30.) Some of the proposed depositions seek to obtain the observations by the deponents of transportation of Plaintiffs Leighann Neff and Marissa Horton to SP Lafayette. (*Id.* at ¶¶ 17, 18.) [FN40]

> FN40. I note that other of the proposed depositions err in the opposite regard, seeking to obtain the observations by the deponents of unidentified (or at least unnamed) individuals. (*Id.* at ¶ 12 ["Trooper Brownsell was involved with an unidentified arrest"], ¶ 15 ["Trooper Parsons was involved with the arrest of a middle-aged man"], ¶ 16 ["Sergeant Raub handed an arrestee to a trooper"], ¶ 19 [Trooper Barker "escorted a male arrestee to a troop car"].)

Moreover, I note that, in addressing the burdens of proposed depositions, it is permissible for a Court to consider the fact that the targets of the proposed discovery are nonparties (as is the case here, where I note that, indeed, 13 of the 32 nonparty Troopers appear to be *retired* from the New York State Police).[FN41] *See Solarex Corp. v. Arco Solar, Inc.,* 121 F.R.D. 163, 179 (E.D .N.Y.1988) ("Of significance ..., in balancing the competing hardships [between disclosure and nondisclosure of the discovery sought], is the Society's status as a nonparty to this litigation. Under the authorities, this factor is significant in determining whether compliance with a discovery demand would constitute an undue burden.") [internal quotation marks and citations omitted], *aff'd,* 870 F.2d 642 (Fed.Cir.1989); *S.E.C. Seahawk Deep Ocean Tech., Inc.,* 166 F.R.D. 268, 269 (D.Conn.1996) ("The court may consider a movant's non-party status when weighing the burdens imposed in connection with the subpoena at issue."); *Jack Frost Lab., Inc. v. Physicians & Nurses Mfg. Corp.,* 92-CV-9264, 1994 WL 9690, at *2 (S.D.N.Y. Jan. 13, 1994) ("The most obvious burden is borne by the non-party witness, and we are instructed to be particularly sensitive to any prejudice to non-litigants drawn against their will into the legal disputes of others.") [citation omitted]; *In re Candor Diamond Corp.,* 26 B.R. 847, 849 (S.D.N.Y.1983) ( "Restrictions on discovery may be broader where a non-party is a target of discovery to protect such third parties from unnecessary harassment, inconvenience, expense or disclosure of confidential information.") [citations omitted].[FN42]

> FN41. (*Id.* at ¶¶ 5, 8, 11, 13, 14, 17, 18, 20, 24, 25, 30, 31, 32 [listing nonparty Troopers who are not currently members of the New York State Police].)

> FN42. *See also Katz v. Batavia Marine & Sporting Supplies, Inc.,* 984 F.2d 422, 424 (Fed.Cir.1993) ("Although Rule 26(b) applies equally to discovery of nonparties, the fact of nonparty status may be considered by the court in weighing the burdens imposed in the circumstances.") [citations omitted]; *Dow Chem. Co. v. Allen,* 672 F.2d 1262, 1277 (7th Cir.1982) ("[A] court may properly give account to the third-party status of those from whom production is sought in determining whether compliance would constitute an undue burden.") [citations omitted]; *Dart Indus. Co., Inc. v. Westwood Chem. Co.,* 649 F.2d 646, 649 (9th Cir.1980) ("While discovery is a valuable right and should not be unnecessarily restricted, ... the 'necessary' restriction may be broader when a nonparty is the target of discovery ... to protect third parties from harassment, inconvenience, or disclosure of confidential information .") [citations and internal quotation marks omitted].

**\*17** As a result, I make the following ruling regarding

Not Reported in F.Supp.2d, 2007 WL 2027910 (N.D.N.Y.)
(Cite as: 2007 WL 2027910 (N.D.N.Y.))

Plaintiffs' current request. That request is denied without prejudice with regard to the approximately 58 nonparty New York State Troopers who were not specifically identified in Plaintiffs' motion papers. However, that request is granted in part, and denied without prejudice in part, with regard to the 32 nonparty New York State Troopers who were specifically identified in Plaintiffs' motion papers. *Specifically, at this time, I will permit depositions of the following 19 nonparties: Arthur L. Broccoli; Robin L. Palmer; Robert W. Gardner; Jon E. Giddings; William J. Armstrong; Allen V. Svitak; Michael DiLorenzo; James Armstrong; Mark Williams; Gary L. Greene; Rodney Campbell; Dave R. Berry; Peter A. Kalin; Michael L. Downey; William M. Ambler; Mary A. Clark; Michael D. Grande; David J. Peters; and Mark W. Lovell.* (Dkt. No. 428, Part 6, ¶¶ 1, 2, 3, 4, 6, 7, 8, 9, 10, 11, 12, 14, 17, 19, 20, 23, 26, 30, 31.)

*However, counsel for Plaintiffs are directed to keep each of the depositions brief (i.e., under two hours) and to not seek to elicit testimony that is cumulative or duplicative of previous testimony adduced in this action. Moreover, defense counsel is advised that, before the depositions, I will entertain a motion for a protective order with regard to some or all of this deposition testimony upon a showing by Defendants that such testimony would be redundant of specific deposition testimony previously adduced in this action, should Defendants choose to file such a motion.*

**ACCORDINGLY,** it is

**ORDERED** that Plaintiffs' request for an Order either (1) permitting them to re-depose retired Senior Investigator Dennis J. Blythe for the limited purpose of discovering information regarding the identity and reliability of five confidential sources about whom he testified at his initial deposition, or (2) precluding Defendants from relying on the information provided by Investigator Blythe's confidential sources for the remainder of this lawsuit (Dkt. No. 428) be ***DENIED* without prejudice;** and it is further

**ORDERED** that Plaintiffs' request for an Order either (1) declaring that Martin J. Williams is a "proper" Defendant in Plaintiffs' Second Amended Complaint, or (2) permitting Plaintiffs to file a Third Amended Complaint naming Mr. Williams as a Defendant (Dkt. No. 428) be

***DENIED;*** and it is further

**ORDERED** that Plaintiffs' request for an Order permitting them to conduct the depositions of some or all of the eight non-party New York State Police Investigators (other than Lt. Frank DeGennaro) who conducted the above-referenced "injury to prisoner" investigation following the occurrence of the incident in question on May 18, 1997, in the event it becomes apparent that Defendants intend (in a future motion or at trial) to rely on information collected by those investigators (Dkt. No. 428), is ***DENIED* without prejudice;** and it is further

***18 ORDERED** that Plaintiffs' request for an Order permitting them to conduct the deposition of non-party Lt. Frank DeGennaro regarding the aforementioned "injury to prisoner" investigation (Dkt. No. 428) is ***GRANTED in part and DENIED in part,* as described above in Part III of this Memorandum-Decision and Order;** and it is further

**ORDERED** that Plaintiffs' request for an Order permitting them to conduct the depositions of 32 non-party New York State Troopers who were either present at the May 18, 1997 incident or involved in its immediate aftermath (Dkt. No. 428) is ***GRANTED in part and DENIED without prejudice in part,* as described above in Part IV of this Memorandum-Decision and Order;** and it is further

**ORDERED** that Plaintiffs' request for an Order permitting them to conduct the brief depositions of some or all of the approximately 58 remaining New York State Troopers who were either present at the May 18, 1997 incident or involved in its immediate aftermath, in the event it becomes apparent that Defendants intend (in a future motion or at trial) to rely on information obtained by those Troopers (Dkt. No. 428), is ***DENIED* without prejudice;** and it is further

**RECOMMENDED** that Defendants' motion to dismiss Plaintiffs' claims against Defendant Williams (Dkt.Nos.427, 416) be ***GRANTED*** for the reasons set forth above in Part II.A. of this Memorandum-Decision and Order.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027910 (N.D.N.Y.)
(Cite as: 2007 WL 2027910 (N.D.N.Y.))

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten
(10) days within which to file written objections to the
foregoing Report-Recommendation. Such objections shall
be filed with the Clerk of the Court. **FAILURE TO
OBJECT TO THIS REPORT WITHIN TEN (10)
DAYS WILL PRECLUDE APPELLATE REVIEW.**
*Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing
*Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15
[2d Cir.1989] ); 28 U.S.C. § 636(b) (1); Fed.R.Civ.P. 72,
6(a), 6(e).

N.D.N.Y.,2007.
Jones v. McMahon
Not Reported in F.Supp.2d, 2007 WL 2027910
(N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2002 WL 31309244 (N.D.N.Y.)
(Cite as: 2002 WL 31309244 (N.D.N.Y.))

**C**  Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Karus LAFAVE, Plaintiff,
v.
CLINTON COUNTY, Defendants.
**No. CIV.9:00CV0744DNHGLS.**

April 3, 2002.

Karus Lafave, Plaintiff, Pro Se, Plattsburgh, for the Plaintiff.

Maynard, O'Connor Law Firm, Albany, Edwin J. Tobin, Jr., Esq., for the Defendants.

### REPORT-RECOMMENDATION [FN1]

FN1. This matter was referred to the undersigned for Report-Recommendation by the Hon. David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and L.R. 72.3(c).

SHARPE, Magistrate J.

### I. INTRODUCTION

**\*1** Plaintiff, *pro se*, Karus LaFave ("LaFave") originally filed this action in Clinton County Supreme Court. The defendant filed a Notice of Removal because the complaint presented a federal question concerning a violation of LaFave's Eighth Amendment rights (Dkt. No. 1). Currently before the court is the defendant's motion to dismiss made pursuant to Rule 12(b)(6) and in the alternative, pursuant to Rule 56(b) of the Federal Rules of Civil Procedure (Dkt. No. 5). LaFave, in response, is requesting that the court deny the motion, excuse his inability to timely file several motions, and to permit the

matter to be bought before a jury [FN2]. After reviewing LaFave's claims and for the reasons set forth below, the defendant's converted motion for summary judgment should be granted.

FN2. It should be noted that the date for dispositive motions was February 16, 2001. The defendant's motion to dismiss was filed on September 29, 2000. On January 9, 2001, this court converted the defendant's motion to dismiss to a motion for summary judgment, and gave LaFave a month to respond. On April 16, 2001, after three months and four extensions, LaFave finally responded.

### II. BACKGROUND

LaFave brings this action under 42 U.S.C. § 1983 claiming that the defendant violated his civil rights under the Eighth Amendment [FN3]. He alleges that the defendant failed to provide adequate medical and dental care causing three different teeth to be extracted.

FN3. LaFave does not specifically state that the defendant violated his Eighth Amendment rights but this conclusion is appropriate after reviewing the complaint.

### III. FACTS [FN4]

FN4. While the defendant provided the court with a "statement of material facts not in issue" and LaFave provided the court with "statement of material facts genuine in issue," neither provided the court with the exact nature of the facts.

Between January and July of 1999, LaFave, on several occasions, requested dental treatment because he was experiencing severe pain with three of his teeth. After being seen on several occasions by a Clinton County

Not Reported in F.Supp.2d, 2002 WL 31309244 (N.D.N.Y.)
(Cite as: 2002 WL 31309244 (N.D.N.Y.))

Correctional Facility ("Clinton") doctor, he was referred to a dentist. Initially, LaFave's mother had made an appointment for him to see a dentist, but he alleges that Nurse LaBarge ("LaBarge") did not permit him to be released to the dentist's office [FN5]. Subsequently, he was seen by Dr. Boule, D.D.S ., on two occasions for dental examinations and tooth extractions.

> FN5. This appears to be in dispute because the medical records show that LaFave at first stated that his mother was going to make arrangements, but later requested that the facility provide a dentist.

IV. DISCUSSION

A. *Legal Standard*

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc ., 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); accord F.D.I.C. v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994). The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).* Once this burden is met, it shifts to the opposing party who, through affidavits or otherwise, must show that there is a material factual issue for trial. *Fed.R.Civ.P. 56(e); see Smythe v. American Red Cross Blood Services Northeastern New York Region,* 797 F.Supp. 147, 151 (N.D.N.Y.1992).

Finally, when considering summary judgment motions, *pro se* parties are held to a less stringent standard than attorneys. *Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); Haines v. Kerner,* 404 U.S. 519, 520-21, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972). Any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the non-moving party. *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990). With this standard in mind, the court

now turns to the sufficiency of LaFave's claims.

B. *Eighth Amendment Claims*

**\*2** LaFave alleges that his Eighth Amendment rights were violated when the defendant failed to provide adequate medical care for his dental condition. The Eighth Amendment does not mandate comfortable prisons, yet it does not tolerate inhumane prisons either, and the conditions of an inmate's confinement are subject to examination under the Eighth Amendment. *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 1975, 128 L.Ed.2d 811 (1994). Nevertheless, deprivations suffered by inmates as a result of their incarceration only become reprehensible to the Eighth Amendment when they deny the minimal civilized measure of life's necessities. *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991) (*quoting Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)).

Moreover, the Eighth Amendment embodies "broad and idealistic concepts of dignity, civilized standards, humanity, and decency ..." against which penal measures must be evaluated. See *Estelle v. Gamble,* 429 U.S. 97, 102, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976). Repugnant to the Amendment are punishments hostile to the standards of decency that " 'mark the progress of a maturing society." ' *Id.* (*quoting Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958) (plurality opinion)). Also repugnant to the Amendment, are punishments that involve " 'unnecessary and wanton inflictions of pain." ' *Id.* at 103, 97 S.Ct. at 290 (*quoting Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)).

In light of these elementary principles, a state has a constitutional obligation to provide inmates adequate medical care. See *West v. Atkins,* 487 U.S. 42, 54, 108 S.Ct. 2250, 2258, 101 L.Ed.2d 40 (1988). By virtue of their incarceration, inmates are utterly dependant upon prison authorities to treat their medical ills and are wholly powerless to help themselves if the state languishes in its obligation. *See Estelle,* 429 U.S. at 103, 97 S.Ct. at 290. The essence of an improper medical treatment claim lies in proof of "deliberate indifference to serious medical

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31309244 (N.D.N.Y.)
(Cite as: 2002 WL 31309244 (N.D.N.Y.))

needs." *Id.* at 104, 97 S.Ct. at 291. Deliberate indifference may be manifested by a prison doctor's response to an inmate's needs. *Id.* It may also be shown by a corrections officer denying or delaying an inmate's access to medical care or by intentionally interfering with an inmate's treatment. *Id.* at 104-105, 97 S.Ct. at 291.

The standard of deliberate indifference includes both subjective and objective components. The objective component requires the alleged deprivation to be sufficiently serious, while the subjective component requires the defendant to act with a sufficiently culpable state of mind. *See Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998). A prison official acts with deliberate indifference when he " 'knows of and disregards an excessive risk to inmate health or safety.' " *Id.* (*quoting Farmer,* 511 U.S. at 837, 114 S.Ct. at 1979). However, " 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' " *Id.*

**\*3** However, an Eighth Amendment claim may be dismissed if there is no evidence that a defendant acted with deliberate indifference to a serious medical need. An inmate does not have a right to the treatment of his choice. *See Murphy v. Grabo,* 1998 WL 166840, at \*4 (N.D.N.Y. April 9, 1998) (*citation omitted* ). Also, mere disagreement with the prescribed course of treatment does not always rise to the level of a constitutional claim. *See Chance,* 143 F.3d at 703. Moreover, prison officials have broad discretion to determine the nature and character of medical treatment which is provided to inmates. *See Murphy,* 1998 WL 166840, at \*4 (*citation omitted* ).

While there is no exact definition of a "serious medical condition" in this circuit, the Second Circuit has indicated what injuries and medical conditions are serious enough to implicate the Eighth Amendment. *See Chance,* 143 F.3d at 702-703. In *Chance,* the Second Circuit held that an inmate complaining of a dental condition stated a serious medical need by showing that he suffered from great pain for six months. The inmate was also unable to chew food and lost several teeth. The Circuit also recognized that dental conditions, along with medical conditions, can vary in severity and may not all be severe. *Id.* at 702. The court acknowledged that while some injuries are not serious enough to violate a constitutional right, other very similar

injuries can violate a constitutional right under different factual circumstances. *Id.*

The Second Circuit provided some of the factors to be considered when determining if a serious medical condition exists. *Id.* at 702-703. The court stated that " '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain' ' are highly relevant. *Id.* at 702-703 (*citation omitted* ). Moreover, when seeking to impose liability on a municipality, as LaFave does in this case, he must show that a municipal "policy" or "custom caused the deprivation." *Wimmer v. Suffolk County Police Dep't,* 176 F.3d 125, 137 (2d Cir.1999).

In this case, the defendant maintains that the medical staff was not deliberately indifferent to his serious medical needs. As a basis for their assertion, they provide LaFave's medical records and an affidavit from Dr. Viqar Qudsi [FN6], M.D, who treated LaFave while he was incarcerated at Clinton. The medical records show that he was repeatedly seen, and prescribed medication for his pain. In addition, the record shows that on various occasions, LaFave refused medication because "he was too lazy" to get out of bed when the nurse with the medication came to his cell (*Def. ['s] Ex. A, P. 4)* .

FN6. Dr. Qudsi is not a party to this action.

According to the documents provided, Dr. Qudsi, examined LaFave on January 13, 1999, after LaFave reported to LaBarge that he had a headache and discomfort in his bottom left molar (*Qudsi Aff., P. 2*). Dr. Qudsi noted that a cavity was present in his left lower molar. *Id.* He prescribed Tylenol as needed for the pain and 500 milligrams ("mg") of erythromycin twice daily to prevent bacteria and infection. *Id.* On January 18, 19, and 20, 1999, the medical records show that LaFave refused his erythromycin medication (*Def. ['s] Ex. B, P. 1).*

**\*4** Between January 20, and April 12, 1999, LaFave made no complaints concerning his alleged mouth pain. On

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31309244 (N.D.N.Y.)
(Cite as: 2002 WL 31309244 (N.D.N.Y.))

April 12, 1999, LaFave was examined by LaBarge due to a complaint of pain in his lower left molar (*Def. ['s] Ex. A, P. 4* ). Dr. Qudsi examined him again on April 14, 1999. *Id.* He noted a cavity with pulp decay and slight swelling with no discharge. *Id.* He noted an abscess in his left lower molar and again prescribed 500 mg erythromycin tablets twice daily and 600 mg of Motrin three times daily for ten days with instructions to see the dentist. *Id.* On the same day, LaBarge made an appointment for LaFave to see an outside dentist that provides dental service to facility inmates, Dr. Boule *(Qudsi Aff., P. 3).*

On May 3, 1999, LaBarge was informed by LaFave that his mother would be making a dental appointment with their own dentist and that the family would pay for the treatment (*Def. ['s] Ex. A, P. 4* ). On that same day, Superintendent Major Smith authorized an outside dental visit. *Id.* On May 12, 1999, he was seen by LaBarge for an unrelated injury and he complained about his lower left molar (*Def .['s] Ex. A, P. 5* ). At that time, LaFave requested that LaBarge schedule a new appointment with Dr. Boule because the family had changed their mind about paying an outside dentist. *Id.* LaBarge noted that he was eating candy and informed him of the deleterious effects of candy on his dental condition. *Id.* Thereafter, LaBarge scheduled him for the next available date which was June 24, 1999, at noon. *Id.*

On June 2, 1999, LaFave again requested sick call complaining for the first time about tooth pain in his upper right molar and his other lower left molar (*Def. ['s] Ex. A, P. 6* ). He claimed that both molars caused him discomfort and bothered him most at night. *Id.* LaFave confirmed that he had received treatment from Dr. Boule for his first lower left molar one week before. *Id.* The area of his prior extraction was clean and dry. *Id.* There was no abscess, infection, swelling, drainage or foul odor noted. *Id.* LaBarge recommended Tylenol as needed for any further tooth discomfort. *Id.*

On June 21, 1999, LaFave again requested a sick call and was seen by LaBarge (*Def. ['s] Ex. A, P. 6* ). No swelling, drainage or infection was observed. *Id.* However, LaBarge noted cavities in LaFave's lower left molar and right lower molars. *Id.* LaBarge made arrangements for Dr. Qudsi to further assess LaFave. *Id.* On June 23, 1999, Dr. Qudsi examined his right lower molar and noted cavitation with

decay in that area (*Def. ['s] Ex. A, P. 7* ). In addition, he noted that LaFave had a cavity in his second left lower molar. *Id.* He prescribed 500 mg of erythromycin twice daily for 10 days and 600 mg of Motrin three times daily for 10 days, with instructions to see a dentist. *Id.*

On June 30, 1999, Officer Carroll reported that LaFave was again non-compliant with his medication regimen as he refused to get up to receive his medication (*Def. ['s] Ex. A, P. 8* ). On July 7, 1999, he again requested sick call complaining of a toothache in his lower right molar (*Def. ['s] Ex. A, P. 9* ). Again, LaFave was non-compliant as he had only taken his erythromycin for five days instead of the ten days prescribed. *Id.* During the examination, Dr. Qudsi informed LaFave that extraction of these teeth could be necessary if he did not respond to conservative treatment. *Id.* At that time, LaFave informed Dr. Qudsi that he was going to be transferred to another facility. *Id.* Dr. Qudsi advised LaFave to follow-up with a dentist when he arrived at the new facility. *Id.* Dr. Qudsi prescribed 500 mg Naproxin twice daily for thirty days with instructions to follow-up with him in two weeks if the pain increased. *Id.* The following day, LaFave requested sick call complaining to LaBarge that he had taken one dose of Naproxin and it was not relieving the pain. *Id.* He was advised that he needed to take more than one dose to allow the Naproxin to take effect. *Id.*

**\*5** On July 17, 1999, LaFave was again seen by Dr. Qudsi and he indicated that he did not believe he was benefitting from the prescribed course of conservative treatment with medication (*Def. ['s] Ex. A, P. 10* ). Subsequently, LaBarge made a dental appointment for him on July 23 [FN7], 1999, at 3:15 p.m. *Id.* On July 23, 1999, a second extraction was conducted. *Id.* On July 28, 1999, he was again seen by Dr. Qudsi, for an ulceration at the left angle of his mouth for which he prescribed bacitracin ointment. *Id.* At this time, LaFave continued to complain of tooth pain so he was prescribed 600 mg of Motrin three times daily. *Id.*

FN7. The medical records contain an error on the July 17, 1999, note which indicted that an appointment was set for June 23, 1999, however, it should have been recorded as July 23, 1999.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31309244 (N.D.N.Y.)
(Cite as: 2002 WL 31309244 (N.D.N.Y.))

On August 4, 1999, he was seen for feeling a sharp piece of bone residing in the area of his lower left molar (*Def. ['s] Ex. A, P. 11* ). Dr. Qudsi recommended observation and to follow-up with dental care if his condition continued. *Id.* The defendant maintains that given all of the documentation that he was seen when he requested to be seen and prescribed numerous medications, the medical staff was not deliberately indifferent to his serious medical needs. The defendant contends that at all times, professional and contentious dental and medical treatment were provided in regards to his various complaints.

In his response, LaFave disagrees alleging that the county had a custom or policy not to provide medical treatment to prisoners. However, LaFave does not allege in his complaint that the county had a "custom or policy" which deprived him of a right to adequate medical or dental care. In his response to the motion for summary judgment, for the first time, LaFave alleges that the county had a policy which deprived him of his rights. He maintains that his continued complaints of pain were ignored and although he was prescribed medication, it simply did not relieve his severe pain.

This court finds that the defendant was not deliberately indifferent to his serious dental and medical needs. Moreover, even if this court construed his complaint to state a viable claim against the county, LaFave has failed to show that the county provided inadequate medical and dental treatment. As previously stated, an inmate does not have the right to the treatment of his choice. The record shows that he was seen numerous times, and referred to a dentist on two occasions over a six month period. While LaFave argues that the dental appointments were untimely, the record shows that the initial delay occurred because he claimed that his mother was going to make the appointment but later changed her mind. In addition, the record demonstrates that he did not adhere to the prescribed medication regime. On various occasions, LaFave failed to get out of bed to obtain his medication in order to prevent infection in his mouth. Although it is apparent that LaFave disagreed with the treatment provided by Clinton, the record does not show that the defendant was deliberately indifferent to his serious medical needs. Accordingly, this court recommends that the defendant's motion for summary judgment should be granted.

*6 WHEREFORE, for the foregoing reasons, it is hereby

RECOMMENDED, that the defendant's motion for summary judgment (Dkt. No. 5) be GRANTED in favor of the defendant in all respects; and it is further

ORDERED, that the Clerk of the Court serve a copy of this Report-Recommendation upon the parties by regular mail.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court within TEN days. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,2002.
Lafave v. Clinton County
Not Reported in F.Supp.2d, 2002 WL 31309244 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2005 WL 1862116 (D.Vt.)
(Cite as: 2005 WL 1862116 (D.Vt.))

**H** Only the Westlaw citation is currently available.

United States District Court,
D. Vermont.
Byron MARTIN, Brian Dyjack, and Richard Soucy,
Plaintiffs,
v.
Steven GOLD, Paul Brosseau, Keith Tallon, Ellen
McWard, Michael Foisy, James Kamel, Stephen Lavoie,
Dustin Warburton, Keith Reilly, Thomas Powell, Diane
Bogdan, Dr. Cotton, Dr. Labatti, Robert Hofmann,
Richard Bess, Sue James, Trina Nutter, and Celeste
Girrell, Defendants.
**No. 1:05-CV-28.**

Aug. 4, 2005.

*MAGISTRATE JUDGE'S REPORT AND
RECOMEMNDATION*

NIEDERMEIER, Magistrate J.

(Papers 21, 28, 30, 34, 36, 38, 41, 43 and 50)

*1 Plaintiff Byron Martin, a Vermont **inmate** proceeding
*pro se,* claims that his treatment in prison has been
constitutionally deficient in several respects. Martin's
complaint and proposed amendments charge that the
defendants have (1) subjected him to constant illumination
in his prison cell; (2) denied him a vegetarian diet in
violation of his religious rights; (3) imposed a "bad day"
disciplinary sanction without providing due process; (4)
placed him in "the hole" without due process; (5) denied
him medication for his psychiatric needs; and (6) denied
him dentures for a period of one year. (Papers 1, 30, 38,
41 and 43).

The defendants in this case consist of a large group of
state employees (hereinafter "State Defendants") and two

doctors, defendants Cotton and Labatti. The defendants
have moved to dismiss and/or for summary judgment
arguing, *inter alia,* that Martin has failed to exhaust his
administrative remedies with respect to four of his six
claims; that he is not entitled to compensatory or punitive
damages; that his official capacity claims are barred by the
Eleventh Amendment; that his claims for injunctive relief
are moot due to his transfer out of state; and that his state
law claims are barred for lack of jurisdiction and failure to
state a claim. (Papers 21, 28 and 34).[FN1] The State
Defendants have also opposed Martin's motion to amend
his complaint. For the reasons set forth below, I
recommend that the motions to dismiss be GRANTED in
part and DENIED in part, and GRANT Martin's motions
to amend.[FN2]

FN1. The motions were filed by an attorney
representing the state employees and by counsel
for Dr. Cotton. Dr. Labatti has not yet been
served.

FN2. Also pending before the Court is Martin's
motion for joinder with a case brought by **inmate**
David McGee in *McGee v. Reed,* 1:04-CV-335.
(Paper 36). In that case, the Court allowed
Martin to join McGee's case as a plaintiff, but
denied the motion to join the two actions. *See
McGee,* 1:04-CV-335 (Paper 39). For the
reasons set forth by the Court in the *McGee* case,
Martin's motion for joinder (Paper 36) is
DENIED.

*Factual Background*

In his initial complaint, Martin outlines the six claims
listed above and asserts that he is alleging constitutional
violations pursuant to 42 U.S.C. § 1983. With respect to
his claim of constant illumination, Martin states that "it is
cruel and unusual punishment to have constant
illumination of lights on in cells." For relief, Martin seeks
an injunction compelling the Vermont Department of
Corrections ("DOC") to "shut out the lights and if they
need to 'check' in our cell for counts or whatever then use
flashlights like the rest of the institutions in the U.S."

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 1862116 (D.Vt.)
(Cite as: 2005 WL 1862116 (D.Vt.))

(Paper 1 at 4).

Martin's next claim is that he is being deprived a vegetarian diet in violation of his First Amendment rights. *Id.* at 4-5. Martin claims that he is a Buddhist, and that his religious beliefs do not allow him to eat meat. He requests an injunction allowing him vegetarian meals, as well as compensatory and punitive damages arising out of defendants Gold and Tallon "refusing a vegetarian diet to me maliciously and sadistically." *Id.* at 5.

Martin's third claim is entitled "bad day," which is reportedly the name given by the DOC to a particular "system of discipline." A "bad day" can include loss of recreation privileges and "non programming activities for that day" (Paper 1-2 at 10), and can allegedly be imposed by a correctional officer "for any reason whatsoever" without a "hearing to produce the facts or have an **inmate** defend his innocence. The 'punishment' is not very severe yet it is implemented without due process." (Paper 1 at 6). For relief on this claim, Martin seeks to have the "bad day" punishment abolished, and that he be awarded $500 for each time he received a "bad day" punishment.

**\*2** Martin further claims that he was placed in "the hole" twice without a hearing and for no reason. After being placed in "the hole," the charges against him were allegedly dismissed and he was eventually released. Again, Martin is asking for $500 a day in compensation for each day in "the hole," plus punitive damages against each of the defendants.

Martin's fifth claim is that he has been denied medication for his ADHD. DOC psychiatrists have allegedly refused to give him the required medication because "this type of medication can be abused." *Id.* at 8. Martin requests an injunction ordering DOC staff to provide him with medication, as well as compensatory and punitive damages.

Finally, Martin alleges that the last of his teeth were pulled while he was incarcerated, but DOC failed to provide him with dentures for over a year. Martin specifically blames defendant Bogdan, "head nurse of the Vt. DOC," for his mistreatment, and asks for compensatory and punitive

damages.

Since filing his initial complaint, Martin has offered numerous amendments to his claims. (Papers 39, 38, 41 and 43). Most of these amendments, however, merely provide additional facts underlying his initial claims. The amendments also name additional defendants. For example, Martin's first amended complaint (Paper 30) expands on his claim that he was placed in segregated confinement. Again, Martin asserts that in each of three [FN3] occasions, the charges that had resulted in his placement in segregation were dismissed. In the proposed amendment, Martin names four new defendants, including current DOC Commissioner Robert Hoffman.

    [FN3.](#) The initial complaint alleged only two such incidents.

Martin's next amendments expand on his dietary, dental, and illumination claims. (Papers 38, 40 and 43, respectively). His amendment to the dietary claim is comprised of 19 pages of handwritten text, provides additional explanation about his Buddhist faith, and asserts a new claim under the Religious Freedom Restoration Act ("RFRA"). (Paper 38). Martin alleges that although a prison facility in Kentucky allowed him vegetarian meals from the start, Vermont prisons required him to litigate for two months "until they saw the light." *Id.* at 5.

In the amendment to his dental claim, Martin explains that he had nearly all of his teeth when he was first incarcerated in 2002. (Paper 40-1 at 2). He claims that "because of various reasons, such as stress related physical injury due to the extreme freezing temp [sic] ... my teeth began to hurt." *Id.* By November, 2003, all of his teeth had been pulled. Martin claims that he did not receive dentures until 13 months later. *Id.* In the meantime, Martin allegedly suffered "pain so bad that I had to lay down at night with such an excruciating headache along with an empty stomach because when I tried to eat the prison food without teeth I could not chew because the pain was too intense to try and break up the food in my mouth with no teeth." *Id.* at 6.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 1862116 (D.Vt.)
(Cite as: 2005 WL 1862116 (D.Vt.))

**\*3** Martin's final amendment to date provides additional facts with respect to his constant illumination claim. (Paper 43). Specifically, Martin claims that as a result of constant lighting in Vermont prisons, he has suffered migraines, damage to his eyesight and stress.

The defendants have filed motions to dismiss and/or for summary judgment. (Papers 21 and 28). Also, in response to Martin's **multiple** motions to amend his complaint, the defendants have either re-filed or supplemented their motions to dismiss and have opposed Martin's most recent **amendments**. (Papers 34, 35, 37, 45 and 46).

*Discussion*

I. *Motions To Amend Complaint*

The State Defendants have opposed Martin's motions to amend his complaint. (Paper 46). Conceding that Martin is allowed one amendment "as a matter of course" before a responsive pleading is served, the State Defendants oppose all but Martin's first amended complaint. In support of their opposition, the State Defendants primarily argue that the facts alleged in those amendments fail to properly counter their summary judgment motion, and should therefore be barred. (Paper 46 at 5-8). The State Defendants also charge that Martin's amendments were "unduly delayed." *Id.* at 9.

The rule for amending a complaint is quite lenient, stating that leave shall be granted "freely when justice so requires." Fed.R.Civ.P. 15(a). Here, Martin's amendments consist mostly of additional facts in support of his initial claims. The amendments were all filed prior to any discovery and, indeed, prior to the filing of answers by the defendants. While the defendants have had to supplement their filings in response to Martin's amendments, they have not suffered prejudice sufficient to bar his additional claims. Whether or not the new allegations survive summary judgment will be addressed below or in future Court rulings. The motions to amend (Papers 30, 38, 41 and 43) are, therefore, GRANTED.

II. *Conversion of the Motions to Dismiss* [FN4]

FN4. The State Defendants filed the first motion to dismiss in this case. (Paper 21). Defendant Cotton has incorporated the State Defendants' arguments into his motion to dismiss, and has provided additional arguments for dismissal of Martin's psychiatric care claims. (Paper 28 at 1). As discussed below, it appears that Martin has tried to amend his psychiatric care claims, but that his amendment was never filed with the Court. Accordingly, the Court should withhold judgment on Cotton's additional arguments (Papers 28 and 35) until Martin has had an opportunity to re-submit his amended claims.

Because Cotton's separate arguments are not now under consideration, I will refer primarily to the State Defendants' motion to dismiss. Any rulings on that motion will, of course, apply to defendant Cotton by virtue of his incorporation of the State Defendants' arguments.

The State Defendants first argue that Martin has failed to exhaust his administrative remedies. The State Defendants have also asked that the Court convert their motion to dismiss to a motion for summary judgment. (Paper 21). [FN5] Therefore, the first question the Court should address is whether such conversion is appropriate.

FN5. The State Defendants assert that they have filed a motion to dismiss, rather than a motion for summary judgment, because Rule 56 does not stay their time for filing an answer. As this Court has held in several recent cases, the failure to exhaust administrative remedies is an affirmative defense that must be proven, and therefore may require a summary judgment motion. The Court has also stated, however, that merely filing a motion to dismiss, thereby staying the time for filing an answer, and asking the Court to convert the motion to one for summary judgment is not the preferred practice. In the future, it would be preferable if defendants would file an answer prior to, or in conjunction with, their motion for summary judgment, thereby rendering the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 1862116 (D.Vt.)
(Cite as: 2005 WL 1862116 (D.Vt.))

conversion process unnecessary.

As this Court has noted in previous cases, it is not clear in this Circuit whether presenting evidence beyond the pleadings in order to resolve a question of exhaustion of administrative remedies is best brought as a motion to dismiss or a motion for summary judgment. *See McCoy v. Goord,* 255 F.Supp.2d 233, 249 (S.D.N.Y.2003). Several lower courts, however, have agreed that because exhaustion is an affirmative defense that must be proven, the motion must be either brought as or converted to a motion for summary judgment. *See Scott v. Gardner,* 287 F.Supp.2d 477, 485 (S.D.N.Y.2003); *McCoy,* 255 F.Supp.2d at 251; *Torrence v. Pesanti,* 239 F.Supp.2d 230, 233 (D.Conn.2003). Accordingly, the State Defendants have asked that the Court convert their motion to dismiss to a motion for summary judgment.

**\*4** A district court may convert a motion to dismiss into a summary judgment motion provided that the court gives "sufficient notice to an opposing party and an opportunity for that party to respond." *Groden v. Random House, Inc.,* 61 F.3d 1045, 1052 (2d Cir.1995). In such a conversion, "[n]otice is particularly important when a party is proceeding *pro se* and may be unaware of the consequences of his failure to offer evidence bearing on triable issues." *Beacon Enterprises, Inc. v. Menzies,* 715 F.2d 757, 767 (2d Cir.1983). When considering conversion, a court should also take into consideration "the nature of the papers submitted by the [*pro se* ] litigant and the assertions made therein as well as the litigant's participation in proceedings before the District Court." *Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 621 (2d Cir.1999).

Here, the State Defendants have set forth their motion in the format of a summary judgment motion, complete with a statement of undisputed facts. (Paper 21). The State Defendants have also provided Martin with a formal notice to *pro se* litigant of a summary judgment filing as required by Local Rule 7.1(c)(6). (Paper 22). In response, Martin has directly responded to the State Defendants' factual statements as required by Rule 56. (Paper 49). It is, therefore, clear that Martin had sufficient notice of a summary judgment filing, and has had an opportunity to respond appropriately to that motion. In light of these facts, the Court should construe the State Defendants'

motion to dismiss as a motion for summary judgment.

III. *Summary Judgment Standard*

Summary judgment should be granted only if, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Moller v. North Shore Univ. Hosp.,* 12 F.3d 13, 15 (2d Cir.1993). A fact is material when it affects the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute of fact is not genuine if there is insufficient evidence for a jury to find in the nonmoving party's favor. *See id.,* at 252.

In this case the State Defendants, as the moving parties, carry the burden of establishing that no genuine issue of fact exists. *See Celotex Corp.,* 477 U.S. at 323. Their burden will be met if they "can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Foundation,* 51 F.3d 14, 18 (2d Cir.1995). If the State Defendants meet this burden, the plaintiff must respond with a showing sufficient to establish the existence of that claim or element. *See Celotex Corp.,* 477 U.S. at 322-25. "[M]ere speculation and conjecture is insufficient to preclude the granting of the motion." *Harlen Assocs. v. Incorporated Vill. of Mineola,* 273 F.3d 494, 499 (2d Cir.2001) (citing *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990)). While the fact that the plaintiff is proceeding *pro se* requires the Court to read his filings "liberally and interpret them to raise the strongest arguments that they suggest," the application of this modified standard "does not relieve plaintiff of his duty to meet the requirements necessary" to defeat the State Defendants' motion. *Jorgensen v. Epic/Sony Records,* 351 F.3d 46, 50 (2d Cir.2003) (citation omitted).

IV. *Exhaustion*

**\*5** As noted above, the State Defendants' first argue that Martin has failed to exhaust his administrative remedies

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 1862116 (D.Vt.)
(Cite as: 2005 WL 1862116 (D.Vt.))

with respect to four of his six claims. The Prison Litigation Reform Act of 1996 ("PLRA") amended 42 U.S.C. § 1997e(a) to provide that:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a **prisoner** confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

The Second Circuit has held that administrative exhaustion is not a jurisdictional predicate. *See Richardson v. Goord,* 347 F.3d 431, 434 (2d Cir.2003). In addition, as discussed above, the Second Circuit considers a failure to exhaust administrative remedies to be an affirmative defense. *See Ziemba v. Wezner,* 366 F.3d 161, 163 (2d Cir.2004); *Jenkins v. Haubert,* 179 F.3d 19, 28-29 (2d Cir.1999). The defendants thus bear the burden of proving the plaintiff's failure to exhaust administrative remedies. *See, e . g., Ruocco v. Tung,* 2004 WL 721716, at *5 (D.Conn. March 30, 2004) ("By characterizing non-exhaustion as an affirmative defense, the Second Circuit requires the defendants to present proof of non-exhaustion."); *Reyes v. Punzal,* 206 F.Supp.2d 431, 433 (W.D.N.Y.2002); *Hallett v. New York State Dep't of Correctional Serv. .,* 109 F.Supp.2d 190, 196-97 (S.D.N.Y.2000).

The Second Circuit has also held that the PLRA only requires exhaustion where administrative remedies are "available," and that "availability" under the PLRA means "the possibility of some relief for the action complained of." *Abney v. McGinnis,* 380 F.3d 663, 667 (2d Cir.2004) (citing *Booth v. Churner,* 532 U.S. 731, 738, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001)). Recently the Second Circuit has explained that "there are certain 'special circumstances' in which, though administrative remedies may have been available ... the **prisoner's** failure to comply with administrative procedural requirements may nevertheless be justified." *Giano v. Goord,* 380 F.3d 670, 677 (2d Cir.2004). Such circumstances may include "situations where prison officials fail to timely advance the **inmate's** grievance or otherwise prevent him from seeking his administrative remedies ... [or] where claims are fully exhausted through other administrative procedures which were pursued for good reasons." *Abney v. McGinnis,* 380 F.3d 663, 667 (2d Cir.2004) (citing *Hemphill v. State of*

*New York,* 380 F.3d 680, 687 (2d Cir.2004)).

The DOC has established a procedure for **inmates** wishing to voice a grievance. (See Paper 21, Exhibit A, Attachment 2). First, the **inmate** must file a "grievance form one" which the DOC then investigates and responds to on a "grievance form two." The investigator has 15 days to return the grievance form two to a work site manager who has three days to return it to the **inmate**. If an **inmate** is dissatisfied with the DOC's form two response, the **inmate** has the right to file a "grievance form three" with the Commissioner of Corrections. The Commissioner then investigates the form three complaint and provides a response. This response to the form three complaint is final. Once the form three response is rendered, the **inmate's** administrative remedies are exhausted. *Id.*

**\*6** The DOC mandates that all **inmates** be notified of the grievance procedure. The DOC also specifically notes that out-of-state **inmates** under the "care and custody of the Vermont Department of Corrections" may submit grievances to their caseworker in Vermont using letter format. Finally, the DOC allows that "[i]f, after any phase in the grievance process, the grievance has not been responded to within the prescribed time frames, the offender may assume the grievance has been denied and may proceed to the next step in the grievance process." *Id.*

In support of their exhaustion argument, the State Defendants have filed the affidavit of DOC employee John Murphy. (Paper 21, Ex. A). In his affidavit, Murphy states that the DOC's database for level three grievance has been searched for the period of January 1, 2004 through March 31, 2005, and that Martin did not file any such grievances during that time pertaining to "1) a claim regarding 24-hour cell lights at SSCF, 2) a claim regarding "bad day" punishments at SSCF, 3) a claim regarding segregation time at SSCF, and 4) a claim regarding appropriate psychiatric medication." *Id.* Consequently, the State Defendants have moved for summary judgment on these four claims. There is no dispute that Martin exhausted his administrative remedies for his vegetarian diet and dental care claims.

Martin argues that with respect to each of the claims in

Not Reported in F.Supp.2d, 2005 WL 1862116 (D.Vt.)
(Cite as: 2005 WL 1862116 (D.Vt.))

question, he has either exhausted his administrative remedies or exhaustion is not required. In support of his claim that no exhaustion is required, Martin cites *Wright v. Hollingsworth,* 201 F.3d 663, 665 (5th Cir.2000) for the proposition that a **prisoner** seeking monetary damages or other relief that is unavailable at the administrative level is not required to exhaust his administrative remedies. In *Booth v. Churner,* 532 U.S. 731, 738-41, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001), however, the Supreme Court ruled to the contrary, holding that the exhaustion requirement extends to § 1983 cases in which plaintiffs seek monetary damages or other relief, regardless of whether such relief is, in fact, available administratively. Consequently, the Fifth Circuit subsequently reversed its holding in *Wright,* and Martin's argument is without legal support. See *Wright v. Hollingsworth,* 260 F.3d 357, 358 (5th Cir.2001).

Martin has also submitted a series of grievance forms which, he claims, demonstrate exhaustion. In bringing his constant illumination claim, Martin submitted a grievance form one dated January 12, 2005. (Paper 43, Exhibits at 8). His grievance form three was dated April 10, 2005. *Id.,* Exhibits at 9. Martin filed his complaint in this case over three months prior, on January 28, 2005.

The rule in this Circuit is that exhaustion after filing suit is insufficient. See *Neal v. Goord,* 267 F.3d 116, 122 (2d Cir.2001), *overruled in part on other grounds by Porter v. Nussle,* 534 U.S. 516, at 529-31, 122 S.Ct. 983, 152 L.Ed.2d 12 (2001). Accordingly, when faced with a case where exhaustion was not complete prior to the filing of the complaint, the only action a Court in this Circuit may take is to dismiss the claim. *See, e .g., Martinez v. Dr. Williams R.,* 186 F.Supp.2d 353, 356 (S.D.N.Y.2002) ("Exhausting administrative remedies after a complaint is filed will not save a case from dismissal."). Therefore, Martin's effort to exhaust his constant illumination claim while this case was pending will not avoid dismissal of that claim.

**\*7** Martin contends, in the alternative, that even if his administrative remedies were not exhausted on the constant illumination claim, those remedies were nonetheless exhausted by a fellow **inmate.** That **inmate,** David McGee, has filed suit in this Court claiming constant illumination in Vermont prisons, and as

mentioned above, Martin has been allowed to join that case as a plaintiff. See *McGee v. Reed,* 1:04-CV-335 (Paper 39). McGee's exhaustion of his own administrative remedies does not, however, necessarily exhaust Martin's remedies on an identical or similar claim. Indeed, "[t]he fact that other **inmates** filed similar grievances does not excuse plaintiff from filing his own grievance. To allow plaintiff to circumvent the PLRA's exhaustion requirement because other **inmates** filed similar grievances would be contrary to Congress's intent in enacting the [PLRA]." *Laureano v. Pataki,* 2000 WL 1458807, at \*2 (S.D.N.Y. Sept.29, 2000); *see Morrow v. Goord,* 2005 WL 1159424, at \*3 (W.D.N.Y. May 17, 2005). Therefore, the Court should not accept McGee's grievances as replacements for Martin's untimely efforts to exhaust his administrative remedies.<sup>FN6</sup>

FN6. In McGee's litigation, the plaintiffs have requested that the action be certified as a class action. If a class is certified, there is authority supporting the argument that McGee's exhaustion satisfies the exhaustion requirement for the class. See *Orafan v. Goord,* 2003 WL 21972735, at \*5 n. 7 (N.D.N.Y. Aug.11, 2003). That issue, however, will be addressed in the McGee litigation, and need not be resolved here.

Martin's segregation claim is similarly barred. In his initial complaint, Martin asserted that he was wrongfully placed in "the hole" on two occasions, "from July 9-until July 12th and December 23rd-until December 31st." (Paper 1 at 7). Martin has subsequently contended that he is suing for "three periods in segregation." (Paper 49 at 4). Regardless of the number of segregations in question, Martin has again failed to show that he exhausted his administrative remedies prior to filing suit.

Martin points the Court to several grievances filed between 2003 and 2005 with respect to his allegedly wrongful segregations. (Paper 51-2 at 8-15). Of these grievances, the only form three grievances pertaining directly to wrongful segregations were submitted on April 10, April 11 and April 19, 2005. (Paper 30-2 at 1, 2 and 11; Paper 51-2 at 13). As with his illumination-related grievances, these grievances were filed after this suit was commenced, and therefore do not satisfy the PLRA's exhaustion requirement. Martin asserts that other form

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 1862116 (D.Vt.)
(Cite as: 2005 WL 1862116 (D.Vt.))

three grievances from earlier dates pertain to his wrongful segregation claim, but a review of those grievances reveals that they pertain only to his claim that personal property was by prison personnel and not returned. (Paper 30-2 at 7; Paper 51-2 at 11).[FN7] Consequently, these earlier grievances did not exhaust his administrative remedies with respect to his wrongful segregation claim.

> FN7. The State Defendants have also submitted a grievance form three, dated December 2, 2004, relating to Martin's discipline. (Paper 21-5 at 13). In this grievance, Martin claims that he was wrongly accused of possessing contraband. He also complains that DOC "willfully and wrongly took my boots without my permission...." This grievance appears to relate to an incident on October 5, 2004. Martin's current claims of wrongful segregation pertain to periods of segregation beginning in April, 2003, on June 9, 2004, and on December 23rd, 2004. (Paper 30 at 1-2). Consequently, it does not appear that the December 2, 2004 grievance form three related to any of his current claims.

In response to the argument that he failed to exhaust his remedies for his psychiatric medication claim, Martin refers the Court to an exhibit. (Paper 49 at 4). This exhibit, however, is not a grievance form. Instead, it states that "[t]here is, in my possession, a level # 3 grievance answered by Steven Gold dated November 8th 2004. If you need a copy I will send it in to you yet check in the files of Vt. DOC." (Paper 49 at 2). Martin further explains that "Gold told me that Dr. Cotton prescribed something and if I don't like it then let him know. I did on 1-13-05 again." (Paper 51-2 at 16). In a post-script to this exhibit, Martin claims that he included this grievance form "as an exhibit # 1-A of the 'psych' amended complaint."

**8** The Court has not received a so-called "psych" amended complaint. It has received single-issue amendments with respect to Martin's segregation (Paper 30), vegetarian diet (Paper 38), dental care (Paper 40) and constant illumination (Paper 43) claims, but no such amendment dealing specifically with his mental health care. The defendants, however, appear to have received some sort of amendment to this claim, as defendant Cotton has supplemented his motion to dismiss in response to an

amendment that reportedly accuses him of defamation. (Paper 35). Again, the Court has received no such amendment. Consequently, the Court's will not rule on the exhaustion issue, or Cotton's motions to dismiss, until Martin has filed his amended "psych" complaint with the Court. Martin may file this proposed amendment within 30 days of the date of this Report and Recommendation. Failure to comply with this deadline may result in dismissal of his "psych" claim due to a lack of evidence of exhaustion.

The State Defendants' final exhaustion challenge pertains to Martin's "bad day" claim. The only exhibit presented with respect to this claim is a grievance form two in which the investigator wrote that the "bad day" policy is "not grievable." (Paper 1-2 at 9). Martin claims that despite this response, he still submitted a grievance form three to the Commissioner, and has attached an undated copy of that form to his most recent filing. (Paper 51-2 at 5).[FN8]

> FN8. The Form is dated July 14, 2005 at the top, but it is not clear whether this is the date that Martin filed to form with DOC, or that date that he sent it to the Court. The Court received the form from Kentucky on July 22, 2005.

Whether Martin fully exhausted this claim is immaterial, since an **inmate** who is told that a claims is not grievable is not required to appeal the investigator's determination. *See Ziemba v. Armstrong,* 343 F.Supp.2d 173, 180 (D.Conn.2004) (where plaintiff filed grievance form one but learned that issue was not grievable, claim was exhausted); *Kearsey v. Williams,* 2004 WL 2093548, at *4 (S.D.N.Y. Sept.20, 2004); *Cf. Giano v. Goord,* 380 F.3d 670 (2d Cir.2004) (failure to exhaust was justified where **inmate** failed to file grievance based on mistaken, but not unreasonable, belief that claim regarding a disciplinary proceeding was not grievable). Accordingly, the Court should not dismiss this claim for lack of exhaustion.

In sum, Martin has failed to exhaust his constant illumination and wrongful segregation claims. These claims should, therefore, be DISMISSED. *See Ortiz v. McBride,* 380 F.3d 649, 656-662 (2d Cir.2004) (PLRA requires only the dismissal of unexhausted claims, and not dismissal of entire complaint when complaint consists of

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 1862116 (D.Vt.)
(Cite as: 2005 WL 1862116 (D.Vt.))

both exhausted and unexhausted claims). Martin's exhaustion with respect to his psychiatric care claim is not clear without the benefit of the amended complaint that Martin allegedly filed, but the Court has never received. The Court will withhold judgment on that claim for 30 days as it awaits the filing of Martin's "psych" amended complaint. Finally, Martin's "bad day" claim should be deemed exhausted, and the State Defendants' motion for summary judgment on this claim should be DENIED.

V. *Actual Physical Injury*

**\*9** The defendants also argue that Martin's damages claims are barred by his failure to allege physical injury. The PLRA states in relevant part: "No Federal civil action may be brought by a **prisoner** confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." [42 U.S.C. § 1997e(e)](). Also, the Second Circuit has held that the PLRA bars claims for compensatory damages arising out of claims of mental or emotional injury. *See [Thompson v. Carter](), 284 F.3d 411, 417 (2d Cir.2002)*.

The State Defendants claim that in addition to Martin's failure to allege any physical injury, his claims are not of the sort that would lead to physical injury.

Indeed, there is no basis to conclude that cell illumination could cause a physical injury, that the absence of a strict vegetarian diet could cause physical injury, that the minor discipline available according to the "bad day" Exhibit Plaintiff attached to his complaint and amended complaint could cause physical injury, that two short stints in segregation could cause physical injury, that the denial of Plaintiff's psychotropic drug of choice could cause physical injury, or that the absence of dentures could cause physical injury.

(Paper 34 at 12). In response, Martin contends that he suffered physical injury on "the 'dental' issue ... the 24 hr. lights issue ... and the vegetarian issue." (Paper 51 at 1). Martin also argues that he is not required to show injury on a First Amendment claim asserting his religious right to special meals.

As a part of his amended dental care claim, Martin has provided a sworn affidavit in which he clearly sets forth the physical pain he experienced as a result of his lack of dentures. (Paper 40 at 6). In his affidavit, Martin explains that he could not chew his food "because the pain was too intense to try and break up the food in my mouth with no teeth." *Id.* Martin also states that his dental condition caused him "excruciating headache[s] along with an empty stomach." *Id.* Although headaches and hunger pains may not satisfy the PLRA requirement, *see, e.g., [Pinkston-Bey v. DeTella](), 1997 WL 158343, at \*3 (N.D.Ill. Mar.31, 1997)* (severe headaches are not physical injury), Martin's allegations of consistent physical pain for the nearly one year period in which he was toothless should render him eligible for compensatory damages on this claim.

Martin's vegetarian diet claim is brought under RFRA and the First Amendment. As Martin appropriately argues, the PLRA's physical injury requirement does not bar a damages claim under the First Amendment. *See [Lipton v. County of Orange](), 315 F.Supp.2d 434, 457-58 (S.D.N.Y.2004)*. "[A] First Amendment deprivation presents a cognizable injury standing alone and the PLRA 'does not bar a separate award of damages to compensate the plaintiff for the First Amendment violation in and of itself.' " *[Id. at 457]()* (quoting *[Ford v. McGinnis](), 198 F.Supp.2d 363, 366 (S.D.N.Y.2001)* (concluding that the PLRA was applicable to First Amendment claims, and did not preclude an award of compensatory damages for the denial of a kosher meal to the plaintiff). Accordingly, Martin's claim for compensatory damages resulting from the alleged First Amendment violation should survive the State Defendants' motion for summary judgment.

**\*10** Martin does not argue, and there is no evidence to show, that the DOC's "bad day" policy resulted in physical harm. Unlike First Amendment claims, the PLRA's physical injury requirement does apply to due process claims. *See, e.g., [Rivera v. Wohlrab](), 2000 WL 1300403, at \*1 (S.D.N.Y. Sept.14, 2000)*. Therefore, any claim for compensatory damages with respect to the "bad day" policy should be DISMISSED.

Because Martin has failed to exhaust his administrative remedies with respect to the constant illumination and

Not Reported in F.Supp.2d, 2005 WL 1862116 (D.Vt.)
(Cite as: 2005 WL 1862116 (D.Vt.))

wrongful segregation claims, the Court need not address the State Defendants' PLRA arguments on these claims. As to Martin's claim of inadequate psychiatric care, the Court may address the PLRA issue on that claim once it has been able to assess whether or not the claim has been administratively exhausted.

## VI. *Punitive Damages*

Although the Second Circuit has generally barred **prisoner** claims for compensatory damages resulting from mental or emotional harm, it has also held that nominal and/or punitive damages are permissible under the PLRA. *See Thompson v. Carter,* 284 F.3d 411, 418 (2d Cir.2002). Here, Martin has asked for punitive damages on several of his claims. A claim for punitive damages under § 1983 must show that " 'the defendant's conduct [was] motivated by an evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." ' *See Disorbo v. Hoy,* 343 F.3d 172, 186 (2d Cir.2003) (quoting *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983)).

Martin claims that certain defendants acted with "deliberate indifference" toward his needs, and at times in a manner that approached "torture." (Paper 40 at 6.) The State Defendants argue that such statements are "entirely conclusory" and should not survive summary judgment. (Paper 34 at 13 n.14). The Court notes, however, that there has been no discovery in this case to date. Because there has been no discovery, Martin has had little opportunity to develop evidence in support of his claims for punitive damages. Unlike the evidence pertaining to exhaustion, proof of the defendants' intent is not readily available to an **inmate** when filing his complaint. Since his allegations would be arguably sufficient to survive a motion to dismiss, the Court should not dismiss them at this early stage in the case. Once Martin has had an opportunity to develop his claims more fully, the defendants may again move for summary judgment on these claims if appropriate.

## VII. *Official Capacity Claims*

The defendants next argue that Martin's damages claims

are barred by virtue of their immunity from suit in their official capacities. Under the doctrine of sovereign immunity, the Eleventh Amendment bars suits by private citizens against a state or its agencies in federal court unless the state has waived its immunity or Congress has properly abrogated that immunity. *See Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 98-99, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Seminole Tribe v. Florida,* 517 U.S. 44, 55, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). The protection of the Eleventh Amendment also extends to suits for monetary damages against state officers sued in their official capacities. *See Brandon v. Holt,* 469 U.S. 464, 471, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985). Moreover, the Supreme Court has held that, just as states and state agencies are not "persons" under § 1983, state officers acting in their official capacities are not "persons" within the meaning of the statute since they assume the identity of the government that employs them. *See Hafer v. Melo,* 502 U.S. 21, 27, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).

**\*11** With respect to this case, it is clear that neither Vermont nor Congress has waived the sovereign immunity that protects the State Defendants from a damages action brought against them in their official capacities. There is no indication in 42 U.S.C. § 1983 that Congress intended to abrogate state sovereign immunity, and the Supreme Court has specifically held that Congress did not intend to override well-established immunities such as state sovereign immunity when it enacted § 1983. *See Will v. Michigan Dept. of State Police,* 491 U.S. 58, 67, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). It is equally clear that Vermont has not waived its sovereign immunity under § 1983. *See* 12 V.S.A. § 5601(g) (Vermont Tort Claims Act reserves Eleventh Amendment immunity for all claims not explicitly waived). Therefore, Martin's claims for damages against the State Defendants in their official capacities should be DISMISSED.

## VIII. *Mootness*

Unlike damages claims, official capacity claims seeking prospective injunctive relief are not treated as actions against the state. *See Kentucky v. Graham,* 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Edelman v. Jordan,* 415 U.S. 651, 676-77, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Ex parte Young,* 209 U.S. 123,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 1862116 (D.Vt.)
(Cite as: 2005 WL 1862116 (D.Vt.))

159-60, 28 S.Ct. 441, 52 L.Ed. 714 (1908). However, the State Defendants argue that Martin's injunctive relief claims should, nonetheless, be dismissed as moot due to Martin's transfer to a facility outside of Vermont. A case is deemed moot where the problem sought to be remedied has ceased, or where there "is no reasonable expectation that the wrong will be repeated." *Prins v. Coughlin,* 76 F.3d 504, 506 (2d Cir.1996). Consequently, a transfer from a prison facility generally moots an action for injunctive and declaratory relief against the transferring facility because the **inmate** is no longer located there. *See Thompson v. Carter,* 284 F.3d 411, 415 (2d Cir.2002) (holding that "[a] **prisoner's** transfer to a different correctional facility generally moots his request for injunctive relief against employees of the transferor facility" and affirming district court's dismissal of claims for prospective injunctive and declaratory relief against defendants from transferor facility); *Young v. Coughlin,* 866 F.2d 567, 568 n. 1 (2d Cir.1989); *Williams v. Goord,* 142 F.Supp.2d 416, 420 n. 3 (S.D.N.Y.2001); *Graham v. Perez,* 121 F.Supp.2d 317, 325 (S.D.N.Y.2000).

There is an exception to the mootness principle, however, for claims that are "capable of repetition, yet evad[e] review." *Altman v. Bedford Cent. Sch. Dist.,* 245 F.3d 49, 71 (2d Cir.2001) (quoting *City of Los Angeles v. Lyons,* 461 U.S. 95, 109, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) and *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975)). "The capable-of-repetition doctrine applies only in exceptional situations, where the following two circumstances are simultaneously present: (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Commer v. District Council 37,* 2003 WL 21692816, at *5 (S.D.N.Y. July 21, 2003) (citing *Spencer v. Kemna,* 523 U.S. 1, 17, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998)).

**\*12** Martin has not presented any argument, much less evidence, in response to the State Defendants' mootness claim.[FN9] Even if Martin were to speculate that although he is currently incarcerated in Kentucky, he might someday be transferred back to Vermont, such an argument would not save his injunctive relief claims from dismissal. *See Preiser v. Newkirk,* 422 U.S. 395, 403, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975); *Murphy v. Hunt,* 455 U.S. 478, 482-83, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982); *see also*

*Smith v. Dudley,* 190 F.3d 852, 855 (8th Cir.1995); *Higgason v. Farley,* 83 F.3d 807, 811 (7th Cir.1995). Therefore, this Court should DISMISS Martin's claims for injunctive relief. Those claims, however, should be dismissed without prejudice, such that if Martin is ever transferred back to Vermont and the policies of which he complains are still in place, he may present his claims to this Court at that time.

> FN9. Instead, Martin states that he is not seeking injunctive relief: "I am seeking damages only." (Paper 51 at 2).

IX. *Declaratory Relief*

The State Defendants' final claim is that Martin is not entitled to declaratory relief on his "bad day" claim. In their motion, the State Defendants refer to an amended complaint dated April 20, 2005. (Paper 34 at 2 n.7). The Court has received no such filing. Furthermore, in Martin's original complaint he sought only injunctive relief and damages for his "bad day" claim. (Paper 1 at 7). Until such time as the Court has received and allowed a complaint pursuing a declaratory judgment on the "bad day" claim, it will not address this issue. If Martin has, in fact, attempted to file an amendment to his "bad day" claim but the Court has not received it, he may have 30 days from the date of this Report and Recommendation in which to re-submit such an amendment.

X. *Remaining Motions*

As part of Martin's amended complaint with respect to his vegetarian diet claim, he asks that in addition to accepting the amendment to his complaint, the Court construe his filing as a "motion for summary judgment and rule in plaintiff's favor and/or begin the plaintiff's motion for discovery and grant it." (Paper 38 at 12). The facts and legal arguments contained in Paper 38 respond directly to the defendants' motions to dismiss and/or for summary judgment, and have thus been construed, in part, as an opposition to those motions. Martin has not submitted a separate statement of undisputed facts as required by Local Rule 7.1(c)(1), and did not put the opposing parties on clear notice of a summary judgment filing. Therefore,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 1862116 (D.Vt.)
(Cite as: 2005 WL 1862116 (D.Vt.))

the Court will not construe his filing as a summary judgment motion.

With respect to Martin's reference to a "motion for discovery," the Court has not received any such motion. If Paper 38 was intended to be a request for discovery to commence, no such request is necessary. The parties may proceed with discovery as set forth in the Federal Rules of Civil Procedure, and need only enlist the assistance of the Court when required by those Rules or in the event of a discovery-related disagreement. To the extent that Martin's filing constitutes a motion for discovery and that motion requires a ruling, the motion is DENIED.[FN10]

> FN10. The Court will, however, issue an Order below requiring the parties to submit a stipulated discovery order setting forth the deadlines for discovery, motion filing and trial.

XI. *Plaintiffs Dyjack and Soucy*

**\*13** In his initial complaint, Martin names two other **inmates**, Brian Dyjack and Richard Soucy, as plaintiffs "for the 'lights' issue only." (Paper 1 at 1). While litigants in federal court have a statutory right to choose to act as their own counsel, an individual who is not licensed as an attorney "may not appear on another person's behalf in the other's cause." *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir.1998); *see also Eagle Assoc. v. Bank of Montreal*, 926 F.2d 1305, 1308 (2d Cir.1991). Because Martin cannot represent Dyjack and Soucy, and since Dyjack and Soucy have failed to appear in this case themselves, their claims should be DISMISSED without prejudice.

*Conclusion*

For the reasons set forth above, Martin's motions to amend his complaint (Papers 30, 38, 41 and 43) are GRANTED. The State Defendants' motions to dismiss (Papers 21 and 34) will be construed as motions for summary judgment, and should be GRANTED in part and DENIED in part. Specifically, Martin's claims of constant illumination and wrongful segregation should be DISMISSED for failure to exhaust administrative remedies. Martin's claims for

compensatory damages on his "bad day" claim should also be DISMISSED. Further, the Court should DISMISS Martin's damages claims against the State Defendants in the official capacities, as well as his claims for injunctive relief on grounds of mootness.

To the extent that Defendant Cotton's first motion to dismiss (Paper 28) incorporates the arguments of the State Defendants in their motions, the above rulings should apply to the claims against Cotton as well. Until the Court receives Martin's amended "psych" complaint and/or evidence that the "psych" claim has been administratively exhausted, the Court should withhold judgment on the remainder of Cotton's arguments for dismissal (Papers 28 and 35).

Martin's Paper 38 will not be construed as a motion for summary judgment, and his motion for discovery in Paper 38 is DENIED. Martin's motion for an enlargement of time to file a responsive memorandum (Paper 50) is GRANTED, and his motion for joinder (Paper 36) is DENIED. Finally, Plaintiffs Dyjack and Soucy should be DISMISSED without prejudice.

It is further ORDERED that Martin shall have 30 days from the date of this Report and Recommendation to resubmit to the Court the above-referenced amendments to his "psych" and "bad day" claims which the Court never received. The parties shall also, within 30 days of this Report and Recommendation, submit to the Court a stipulated discovery schedule in compliance with Local Rule 26.1(b).

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. Failure to file objections within the specified time waives the right to appeal the District Court's order. See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b), 6(a) and 6(e).

D.Vt.,2005.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 1862116 (D.Vt.)
(Cite as: 2005 WL 1862116 (D.Vt.))

Martin v. Gold
Not Reported in F.Supp.2d, 2005 WL 1862116 (D.Vt.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2002 WL 31075804 (S.D.N.Y.)
(Cite as: 2002 WL 31075804 (S.D.N.Y.))

▷   Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
Jeffrey NELSON, Plaintiff
v.
Byron RODAS, et al., Defendants.
**No. 01CIV7887RCCAJP.**

Sept. 17, 2002.

Prison defendants moved for summary judgment on prisoner's civil rights claims. In issuing his report and recommendation, United States Magistrate Judge Peck, held that: (1) prisoner did not satisfy Prison Litigation Reform Act's (PLRA) exhaustion requirements with respect to non-medical claims; (2) if a prisoner's § 1983 complaint contains exhausted and unexhausted claims, district court may address the merits of the exhausted claims and dismiss only those that are unexhausted; and (3) prisoner failed to establish that prison defendants demonstrated deliberate indifference serious medical and dental conditions.

Motion granted as to exhausted claims; unexhausted claims dismissed.

West Headnotes

**[1] Civil Rights 78**  ⚷   **1319**

78 Civil Rights
    78III Federal Remedies in General
        78k1314 Adequacy, Availability, and Exhaustion of State or Local Remedies
            78k1319 k. Criminal Law Enforcement; Prisons.
Most Cited Cases
    (Formerly 78k209)
Prisoner's complaint letter to Commissioner of New York State Department of Correctional Services (DOCS) with respect to non-medical claims did not satisfy Prison Litigation Reform Act's (PLRA) exhaustion requirements in prisoner's civil rights action. 42 U.S.C. § 1997e(a).

**[2] Civil Rights 78**  ⚷   **1311**

78 Civil Rights
    78III Federal Remedies in General
        78k1306 Availability, Adequacy, Exclusivity, and Exhaustion of Other Remedies
            78k1311 k. Criminal Law Enforcement; Prisons.
Most Cited Cases
    (Formerly 78k194)
Prisoner asserting civil rights claims did not satisfy Prison Litigation Reform Act's (PLRA) exhaustion requirements with respect to non-medical claims by filing appeals from various disciplinary hearing dispositions. 42 U.S.C. § 1997e(a).

**[3] Civil Rights 78**  ⚷   **1311**

78 Civil Rights
    78III Federal Remedies in General
        78k1306 Availability, Adequacy, Exclusivity, and Exhaustion of Other Remedies
            78k1311 k. Criminal Law Enforcement; Prisons.
Most Cited Cases
    (Formerly 78k194)
If a prisoner's § 1983 complaint contains exhausted and unexhausted claims, district court may address the merits of the exhausted claims and dismiss only those that are unexhausted under Prison Litigation Reform Act (PLRA). 42 U.S.C. § 1983; 42 U.S.C. § 1997e(a).

**[4] Civil Rights 78**  ⚷   **1420**

78 Civil Rights
    78III Federal Remedies in General
        78k1416 Weight and Sufficiency of Evidence
            78k1420 k. Criminal Law Enforcement; Prisons.
Most Cited Cases
    (Formerly 78k242(5))

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31075804 (S.D.N.Y.)
(Cite as: 2002 WL 31075804 (S.D.N.Y.))

Prisoner failed to establish that prison defendants demonstrated deliberate indifference to serious medical and dental conditions regarding an abnormal growth of tissue-cells within his chest, a defective back, and worn-out amalgams fillings that caused him a perpetual headache; prisoner offered no evidence to support his claims other than conclusory allegations and refused to accept dental treatment. U.S.C.A. Const.Amend. 8; 42 U.S.C. § 1983.

**[5] Conspiracy 91 ☞ 18**

91 Conspiracy
 91I Civil Liability
  91I(B) Actions
   91k18 k. Pleading. Most Cited Cases
Prisoner's conclusory allegations did not state conspiracy claim under § 1985(3); additionally, conspiracy claim was not stated since prisoner failed to establish that defendants conspired against him because of any racial or class-based, invidious discriminatory animus. 42 U.S.C. § 1985(3).

REPORT AND RECOMMENDATION

PECK, Magistrate J.

*1 Pro se plaintiff Jeffrey Nelson, an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, alleging that numerous Green Haven Correctional Facility employees violated his constitutional rights, and asserting claims for: (1) deliberate indifference to serious medical needs; (2) conspiracy; (3) retaliation; (4) deliberate indifference to serious harm; (5) excessive force; and (6) denial of due process. (Dkt. No. 2: Compl.; Dkt. No. 40: Am. Compl.) Nelson demands compensatory damages of $1.329 billion and punitive damages of an additional $1.329 billion. (Am. Compl. at 36-37.) After the conclusion of discovery, defendants moved for summary judgment under Fed.R.Civ.P. 56, or, in the alternative, to dismiss the amended complaint under Fed R. Civ. P. 12(b)(6).

For the reasons set forth below, (1) defendants' summary

judgment motion should be GRANTED as to Nelson's claims against defendants Rodas, Koenigsmann and Licerio for deliberate indifference to serious medical needs and conspiracy; and (2) Nelson's remaining claims should be DISMISSED WITHOUT PREJUDICE for failure to exhaust administrative remedies.

PROCEDURAL BACKGROUND

At all times relevant to this action (October 2000 through May 2001), Nelson was an inmate under DOCS custody at Green Haven Correctional Facility (Dkt. No. 40: Am. Compl. at 3-6, 15-21; Dkt. No. 46: Defs. Br. at 2; Dkt. No. 48: Defs. 56.1 Stmt. ¶ 1),[FN1] and defendants were employed by DOCS at Green Haven.[FN2]

FN1. On November 19, 2001, Nelson was transferred to Clinton Correctional Facility. (Am. Compl. at 1-2.)

FN2. Defendants include: physician's assistant Byron Rodas, Medical Director Carl Koenigsmann, dentist Edward Licerio, corrections counselors Joseph Joseph and Jim Temple, Superintendent Charles Greiner, Deputy Superintendents Jeff McKoy and Gayle Haponik, Corrections Officers Tracy Kohler, Barry Barizone, Jim Lawyer, James Weckesser, "Kordougber," Alvin Thomas and Charles Butenhoff, Sergeant John Ross, Lieutenant Michael Nagy, education supervisor Frank Meeuwisse, and an unknown "John Doe." (Am. Compl. at iii.)

Nelson's original complaint also named Commissioner Goord and Attorney General Spitzer as defendants. (Compl.) On Nelson's consent at the February 6, 2002 conference, his claims against those defendants were dismissed with prejudice. (Dkt. No. 33: 2/8/02 Order .)

Nelson commenced this action by filing a complaint dated July 18, 2001, received by this Court's Pro Se Office on

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31075804 (S.D.N.Y.)
(Cite as: 2002 WL 31075804 (S.D.N.Y.))

July 25, 2001 and filed as of August 23, 2001. (Dkt. No. 2: Compl.) The Court directed Nelson to amend his complaint to provide additional facts supporting the allegations in his complaint. (Dkt. No. 32: 2/6/02 Memo Endorsed Order.) On March 8, 2002, Nelson's amended complaint was filed. (Dkt. No. 40: Am. Compl.)

Nelson's claims in the amended complaint can be divided into two categories. The first category involves claims against defendants Byron Rodas, Dr. Carl Koenigsmann and Edward Licerio for deliberate indifference to Nelson's serious medical (and dental) needs and conspiracy relating thereto (hereafter, the "Medical Claims"). (Am. Compl. at 3-14; Dkt. No. 52: Nelson 4/30/02 Aff. ¶¶ 4-14; Dkt. No. 53: Nelson Br. ¶¶ 5-8.) The second category involves claims against the remaining sixteen defendants for excessive force, deliberate indifference to serious harm, denial of due process,[FN3] retaliation, and conspiracy relating to a variety of incidents at Green Haven, including, *inter alia,* physical attacks by corrections officers and fellow inmates, and various disciplinary measures levied against Nelson (hereafter, the "Non-Medical Claims"). (Am. Compl. at 15-35; Nelson 4/30/02 Aff. ¶¶ 15-33; Nelson Br. ¶¶ 9-12.)[FN4]

FN3. While Nelson's amended complaint does not expressly reference the Due Process Clause, his allegations, construed liberally, appear to claim a denial of due process in various disciplinary proceedings. (Am. Compl. at 15-21.) *See, e.g., LaBounty v. Kinkhabwala,* No. 99-0329, 2 Fed. Appx. 197, 200-01, 2001 WL 99819 at *2-3 (2d Cir.2001) (reversing dismissal of procedural due process claim arising out of prisoner's disciplinary hearing).

FN4. Nelson's submissions are not a model of clarity, often rendering his claims difficult to understand. In one particularly bizarre passage, Nelson appears to confuse this Court with NASA Mission Control:

Therefore the Magistrate Judge residing is a scientist in the Laws of Land of the United States in the Southern Jurisdiction, District Court of New York State whom adheres and give fair elevation to the United States Constitution and the laws subsequently thereof. As in the near future the constitution and the Laws of the Land of the United States will be firmly establish in the United States Space Society. As the United States NASA-"NATIONAL AERONAUTICS AND SPACE ADMINISTRATION" path the way by advancing the technology for adequate comfortable living condition in such atmosphere.

(Dkt. No. 41: Nelson 2/22/02 Aff. ¶ 5.)

At the close of discovery, defendants moved for summary judgment, or, in the alternative, to dismiss the amended complaint. (Dkt.Nos.45-49, 54.)[FN5]

FN5. The Court's ability to decide the summary judgment motion was seriously hampered by the failure of the Assistant Attorney General on this case to take plaintiff Nelson's deposition. The Assistant Attorney General tried to "pull a fast one" by submitting a proposed order for the taking of Nelson's deposition (an order is needed to depose an incarcerated party) *after* the discovery cut-off date, which the Court accordingly denied. (*See* Dkt. No. 39: 3/11/02 Memo Endorsed Order; *see also* Dkt. No. 43: 3/20/02 Memo Endorsed Order, again denying request to depose Nelson, noting that "[t]he Court is not amused by defense counsel's conduct.")

ANALYSIS

I. NELSON'S NON-MEDICAL CLAIMS SHOULD BE DISMISSED WITHOUT *PREJUDICE FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES*

**\*2** Under 42 U.S.C. § 1997e(a), as amended by the Prison Litigation Reform Act of 1996 ("PLRA"), a prisoner must exhaust administrative remedies before bringing suit in federal court under federal law:

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31075804 (S.D.N.Y.)
(Cite as: 2002 WL 31075804 (S.D.N.Y.))

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) This provision requires complete exhaustion in accordance with the administrative procedures within the New York State Department of Correctional Services ("DOCS"). Exhaustion is required even when a prisoner seeks a remedy that cannot be awarded by such administrative procedures. *Porter v. Nussle,* 534 U.S. 516, 122 S.Ct. 983, 988, 152 L.Ed.2d 12 (2002); *Booth v. Churner,* 532 U.S. 731, 741, 121 S.Ct. 1819, 1825, 149 L.Ed.2d 958 (2001). The Supreme Court this past term made clear that there are no exceptions to the PLRA's exhaustion requirement:

[W]e hold that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.

*Porter v. Nussle,* 122 S.Ct. at 992; *accord, e.g., Feaster v. United States Bureau of Prisons,* No. 00-0118, 37 Fed. Appx. 15, 16, 2002 WL 970941 at *1 (2d Cir. May 10, 2002) (applying *Porter v.. Nussle* holding to require exhaustion of prisoner's due process and retaliation claims).[FN6] Dismissal of an action for failure to comply with the PLRA is without prejudice. *E.g., Morales v. Mackalm,* 278 F.3d 126, 128, 131 (2d Cir.2002) (per curiam) (Second Circuit "clarif[ies] that if a district court dismisses a prisoner's complaint for failure to exhaust administrative remedies, it should do so without prejudice.").

FN6. Prior to the Supreme Court's decision in *Porter v. Nussle,* the Second Circuit had ruled that claims like Nelson's which applied only to the plaintiff, such as "particular instances of assault or excessive force," did not relate to general "prison conditions" and thus were not subject to the PLRA's exhaustion requirement. *Nussle v. Willette,* 224 F.3d 95, 106 (2d Cir.2000), *rev'd, Porter v. Nussle,* 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). In *Porter v. Nussle,* the Supreme Court reversed, declaring that claims of every sort relating to prison life-including claims for excessive force against an individual inmate-had to be exhausted before an action could be commenced in this Court pursuant to 42 U.S.C. § 1983. *Porter v. Nussle,* 122 S.Ct. at 988; *see also Lawrence v. Goord,* 238 F.3d 182, 185 (2d Cir.2001) (retaliation claims need not be exhausted), *vacated,* 535 U.S. 901, 122 S.Ct. 1200, 152 L.Ed.2d 139 (2002).

DOCS has a well-established inmate grievance procedure ("IGP"):

It consists of three levels. The first is the filing of a complaint with the facility's Inmate Grievance Review Committee. The second is an appeal to the facility superintendent. The final level is an appeal to the DOCS Central Office Review Committee in Albany.... A prisoner has not exhausted his administrative remedies until he goes through all three levels of the grievance procedure.

*Hemphill v. New York,* 198 F.Supp.2d 546, 548 (S.D.N.Y.2002); *see also, e.g., Perez v. Blot,* 195 F.Supp.2d 539, 542-43 (S.D.N.Y.2002); *Cruz v. Jordan,* 80 F.Supp.2d 109, 117-18 (S.D.N.Y.1999); *Vasquez v. Artuz,* 97 Civ. 8427, 1999 WL 440631 at *5 (S.D.N.Y. June 28, 1999) (Peck, M.J.); N.Y. Correct. Law §§ 138-39 (McKinney's 2002); Official Compilation of Codes, Rules & Regulations of the State of New York ("NYCRR") Title 7, § 701.1 *et seq.*.

Nelson did not exhaust DOCS' grievance procedures with respect to any of the Non-Medical Claims.[FN7] Nelson concedes that he did not follow the formal grievance procedure with respect to his excessive force claim, but rather appealed directly to DOCS Commissioner Glenn Goord in a letter dated March 10, 2001. (Dkt. No. 52: Nelson 4/30/02 Aff. Ex. 1: 3/10/01 Nelson Letter to Goord; *see* Dkt. No. 50: 3/11/02 Hearing Tr. at 22; Dkt. No. 53: Nelson Br. at 9-11; Am. Compl. at iv; *see also* Dkt. No. 47: Gould Aff. Ex. B: Egan 3/25/02 Aff.) Nelson argues that, in light of correction officers' violent attacks and retaliatory behavior, he had "no other resource or

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31075804 (S.D.N.Y.)
(Cite as: 2002 WL 31075804 (S.D.N.Y.))

remedy at the facility other than to file his complaint(s) ... directly to" Commissioner Goord. (Nelson Br. at 9; 3/11/02 Hearing Tr. at 22; Nelson 4/30/02 Aff. Ex. 1: 3/10/01 Nelson Letter to Goord.) According to Nelson, his situation qualified as an "emergency" under the IGP, thus allowing an appeal directly to Commissioner Goord in lieu of ordinary exhaustion. (Nelson Br. at 9-10.)

FN7. Defendants originally asserted that only Nelson's excessive force claim was unexhausted, (Dkt. No. 46: Defs. Br. at 34-38; Dkt. No. 54: Defs. Reply Br. at 6-10), effectively ignoring Nelson's apparent failure to exhaust the remaining Non-Medical Claims. Rather than *sua sponte* dismissing such claims for lack of exhaustion, the Court gave Nelson an "opportunity to be heard" on the exhaustion issue (Dkt. No. 57: 8/5/02 Order), as required by *Neal v. Goord*, 267 F.3d 116, 123-24 (2d Cir.2001). Nelson, however, did not respond.

**\*3** Nelson is mistaken. DOCS grievance procedure establishes an expedited grievance procedure in cases of alleged staff "harassment" of an inmate, defined as "employee misconduct meant to annoy, intimidate, or harm an inmate." 7 NYCRR § 701.11(a). That procedure is as follows:

(b) Procedure.

(1) An inmate who feels that s(he) has been the victim of employee misconduct or harassment should first *report such occurrences to the immediate supervisor of that employee.* This does not preclude submission of a formal grievance.

(2) All allegations of employee misconduct shall be given a grievance calendar number and recorded in sequence. All documents submitted with the allegation must be *forwarded to the superintendent* by close of business that day.

(3) The superintendent or his designee shall promptly determine whether the grievance, if true, would

represent a bona fide case of harassment as defined in subdivision (a) of this section. If not, then it shall be returned to the IGRC for normal processing.

7 NYCRR § 701.11(b) (emphasis added). Nelson did not follow this procedure when he wrote to Commissioner Goord.[FN8]

FN8. The IGP also provides for other "emergency situations" as follows:

(a) Definition. An emergency shall include, but is not limited to, a situation, action, or condition in which an inmate or an employee's health, safety, or welfare is in serious threat or danger. The IGP supervisor will determine if a grievance falls within this category.

(b) The IGP supervisor shall refer any grievance of an emergency nature directly to the appropriate response level with the authority to ensure an immediate or expeditious, meaningful response.

7 NYCRR § 701.9. The "IGP supervisor" is a prison employee at Green Haven, *see* 7 NYCRR §§ 701.4(a)(2), 701.4(b)(2)(i), 701.4(d), and is not Commissioner Goord. Nelson thus has no basis to argue that the IGP's exhaustion procedure can be circumvented by the "emergency situation" procedure contained in 7 NYCRR § 701.9, which simply requires the IGP supervisor to direct a grievance to an "appropriate response level" in the event of an emergency.

[1] Courts have repeatedly held that complaint letters to the DOCS Commissioner or the facility Superintendent do not satisfy the PLRA's exhaustion requirements. *See, e.g. Saunders v. Goord,* 98 Civ. 8501, 2002 WL 1751341 at *3 (S.D.N.Y. July 29, 2002) ("It is well established that '[p]laintiffs may not bypass this procedure by sending letters directly to the Superintendent.' "); *Byas v. State,* 99 Civ. 1673, 2002 WL 1586963 at *2 (S.D.N.Y. July 17,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31075804 (S.D.N.Y.)
(Cite as: 2002 WL 31075804 (S.D.N.Y.))

2002) ("Prisoners may not bypass this procedure [in 7 NYCRR § 701.11(b) ] by sending letters directly to the Superintendent.") (citing cases); *Nunez v. Goord,* 99 Civ. 4640, 2002 WL 1162905 at *1 (S.D.N.Y. June 3, 2002) (inmate's letter to prison Superintendent in lieu of filing grievance failed to exhaust excessive force claim); *Hemphill v. New York,* 198 F.Supp.2d at 548-49 (same; letter to Superintendent does not satisfy 7 NYCRR § 701.11 procedures either); *Mills v. Garvin,* 99 Civ. 6032, 2001 WL 286784 at *3 (S.D.N.Y. Mar.2, 2001) (inmate's letters to prison officials were insufficient to exhaust his administrative remedies; "letter writing is not the equivalent of an exhaustion of administrative remedies under the PLRA."); *Noguera v. Hasty,* 99 Civ. 8786, 2000 WL 1011563 at *12 n. 23 (S.D.N.Y. July 21, 2000) (Peck, M.J.) ("The Court notes that simple letter complaints to the Commissioner of the New York State Department of Correctional Services about excessive force and medical indifference appear quite common, and such complaints are not normally sufficient to serve as a proxy for following and exhausting proper administrative remedies.") (citing cases), *report & rec. adopted in part,* 2001 WL 243535 (S.D.N.Y. Mar.12, 2001) (Wood, D.J.); *Beatty v. Goord,* 99 Civ. 2136, 2000 WL 288358 *4-5 (S.D.N.Y. Mar.16, 2000) (complaint dismissed without prejudice for failure to exhaust where inmate sent letters to prison medical director, Superintendent and Commissioner rather than following IGP); *Adams v. Galletta,* 96 Civ. 3750, 1999 WL 959368 at *3 (S.D.N.Y. Oct.19, 1999) (letter to warden insufficient to exhaust administrative remedies); *Salahuddin v. Mead,* 95 Civ. 8581, 1997 WL 357980 at *4 (S.D.N.Y. June 26, 1997) (letter to Superintendent and Commissioner insufficient to exhaust), *rev'd on other grounds,* 174 F.3d 271 (2d Cir.1999).[FN9]

FN9. Contrary to the *dicta* in *Perez v. Blot,* 195 F.Supp.2d 539, 544-46 (S.D.N.Y.2002), this Court construes *Marvin v. Goord,* 255 F.3d 40, 43 n. 3 (2d Cir.2001), as holding merely that a grievance through informal channels satisfies the exhaustion requirement *if* the prisoner thereby obtained a favorable resolution of his grievance.

*4 [2] Nelson also appears to claim that he satisfied the exhaustion requirement by filing appeals from various disciplinary hearing dispositions. (Dkt. No. 40: Am. Compl. at iv: "Chronology-Exhaustion of Administrative

Remedies.") However, "[e]xhausting appeals of a disciplinary hearing determination does not constitute exhausting administrative remedies for [the inmate's] grievance, even if the underlying facts are the same." *Benjamin v. Goord,* 02 Civ. 1703, 2002 WL 1586880 at *2 (S.D.N.Y. July 17, 2002); *accord, e.g., Byas v. State,* 2002 WL 1586963 at *3 & n. 3 (inmate's claim unexhausted despite "the two letters he sent to Sing Sing Superintendent Greiner within days of the incident and ... his appeal of the disciplinary hearing determination;" "the fact that plaintiff appealed his disciplinary finding does not relieve him of the obligation to file a grievance"); *Cherry v. Selsky,* 99 Civ. 4636, 2000 WL 943436 at *1, 7 (S.D.N.Y. July 7, 2000) (exhaustion of grievance procedure necessary even though inmate appealed disciplinary charges).

Nelson asserts several other exhaustion arguments that border on the frivolous. He argues that the exhaustion requirement is satisfied if the inmate's complaint has been "reviewed at the highest levels of the agency." (Nelson Br. at 10, citing *Noguera,* 2000 WL 1011563 at *10-11.) While this may be true, Nelson has not submitted any evidence that his complaints were, "in fact," investigated at that level. Nelson also argues that a grievance procedure is essentially unavailable if the inmate does not know the identities of the relevant prison officials. (Nelson Br. at 11.) Whether or not this could ever be a factor, here Nelson has had no difficulty identifying his alleged attackers. (*See* Am. Compl. at 15-21.)

Finally, Nelson argues that "an administrative remedy may be inadequate 'because of some doubt as to whether the agency was empowered to grant effective relief' ' or because exhaustion would otherwise be futile. (Nelson Br. at 10-11, quoting *McCarthy v. Madigan,* 503 U.S. 140, 147, 112 S.Ct. 1081, 1088, 117 L.Ed.2d 291 (1992).) The Supreme Court, however, has made clear that *McCarthy* was superseded by the PLRA: "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." *Booth v. Churner,* 532 U.S. at 739-41 & n. 6, 121 S.Ct. at 1824-25 & n. 6 ("we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise"); *see also, e.g., Saunders v. Goord,* 2002 WL 1751341 at *3 (rejecting plaintiff's argument that corrections officers interfered with his ability to file administrative grievances, stating that "there is no general

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31075804 (S.D.N.Y.)
(Cite as: 2002 WL 31075804 (S.D.N.Y.))

futility exception [to] the exhaustion requirement under the PLRA.").

In short, Nelson's Non-Medical Claims have not been administratively exhausted, and therefore should be dismissed without prejudice.[FN10]

> FN10. In a March 25, 2002, letter to the Court, Assistant Attorney General Anthony Gould represented that:

>> In light of the Court's concern [expressed at the March 11, 2002 conference] that a dismissal of this action on exhaustion grounds might leave plaintiff without a remedy for his excessive force claim, Deputy DOCS Commissioner Anthony Annucci has indicated that, given the particular facts and circumstances of this case, plaintiff herein will be permitted to file a late grievance as to the alleged excessive force incident in March 2001, and that the grievance will be addressed on its merits without reference to the late date of its filing.

> (Dkt. No. 58.) By letter dated September 16, 2002, the State declined to extend that position to all the unexhausted claims. (Dkt. No. 63: 9/16/02 Letter to Court from Assistant Attorney General Rebecca Ann Durden.) The Court strongly suggests to Nelson that he file all grievances within fourteen days of this Report & Recommendation. See 7 N.Y.C.R.R. § 701.7(a)(1). The Court need not decide now what the effect would be on a future suit if DOCS denies Nelson's grievance as untimely. The Court reiterates its concern, however, that while DOCS' requirement that grievances be brought within fourteen days may serve valid institutional purposes, it may be too short a "statute of limitations" period to the extent exhaustion of grievance procedures is a PLRA prerequisite to a § 1983 lawsuit. The Court's concern is especially great for suits, such as Nelson's, brought during the period before the Supreme Court clarified the exhaustion

requirement. The Court further notes that 7 N.Y.C.R.R. § 701.7(a) provides for "exceptions" to the fourteen day limit "based on mitigating circumstances" and gives as an example of such a circumstance "referrals back to the IGP by the courts." DOCS would be well-advised to carefully decide whether to grant an "exception" in this case.

Defendants argue, however, that "pursuant to the PLRA's requirement that 'no action' may be brought until administrative remedies are exhausted, 42 U.S.C. § 1997e(a)," Nelson's failure to exhaust his excessive force claims requires the Court to dismiss Nelson's *entire* complaint. (Defs. Br. at 38.) Defendants offer no case law or analysis to support this proposition (*id.*), despite this Court's specific instructions to defense counsel to address the issue. (*See* Dkt. No. 50: 3/11/02 Conf. Tr. at 23-26.)

**\*5** [3] The issue thus is whether the PLRA compels a rule of "total exhaustion"-whether a district court must dismiss a prisoner's *entire* § 1983 action if some but not all claims are administratively unexhausted, or if the Court may dismiss only those claims that are unexhausted while ruling on the exhausted claims. The decisions are divided on the issue. Some require "total exhaustion." *See, e.g., Julian-Bev v. Crowley,* No. 00-2313, 24 Fed. Appx. 393, 395, 2001 WL 1555950 at \*2 (6th Cir. Dec.3, 2001) (dismissing "mixed" complaint; rejecting argument that "the exhaustion of at least one claim is sufficient to prevent dismissal"); *Graves v. Norris,* 218 F.3d 884, 885 (8th Cir.2000) ("When multiple prison condition claims have been joined, as in this case, the plain language of § 1997e(a) requires that all available prison grievance remedies must be exhausted as to all of the claims."); *Taylor v. Clarke,* No. C 99-4190, 2002 WL 535421 at \*2 (N.D.Cal. Apr.3, 2002) ("An action containing both exhausted and unexhausted [§ 1983] claims at the time of filing should be dismissed without prejudice."); *Rivera v. Whitman,* 161 F.Supp.2d 337, 339-43 (D.N.J.2001) (plain language of § 1997e(a), as well as the legislative intent and policy interests behind it, compel a "total exhaustion" rule).[FN11] Other decisions, however, do not. *See, e.g., McElhaney v. Elo,* No. 98-2173, 230 F.3d 1358 (table), 2000 WL 1477498 at \*3 (6th Cir. Sept.25, 2000) ("If a [§ 1983] complaint contains exhausted and unexhausted claims, the district court may address the merits of the exhausted claims and dismiss only those that are

Not Reported in F.Supp.2d, 2002 WL 31075804 (S.D.N.Y.)
(Cite as: 2002 WL 31075804 (S.D.N.Y.))

unexhausted."); *Riley v. Richards,* No. 99-1327, 210 F.3d 372 (table), 2000 WL 332013 at *2 (6th Cir. Mar.23, 2000) (same); *Hartsfield v. Vider,* 199 F.3d 305, 309 (6th Cir.1999) (same); *Johnson v. True,* 125 F.Supp.2d 186, 188 (W.D.Va.2000) ( "total exhaustion" rule contradicts congressional intent and policy), *appeal dismissed,* 32 Fed. Appx. 692 (4th Cir.2002); *Cooper v. Garcia,* 55 F.Supp.2d 1090, 1094-95 (S.D.Cal.1999) (same); *Jenkins v. Toombs,* 32 F.Supp.2d 955, 958-59 (W.D.Mich.1999) (same).

> FN11. *See also, e.g., Lira v. Director of Corr. of State of Calif.,* No. C 00-905, 2002 WL 1034043 at *3 (N.D.Cal. May 17, 2002); *Thorp v. Kepoo,* 100 F.Supp.2d 1258, 1263 (D.Haw.2000); *Keenan v. Twommey,* No. 1:97-cv-549, 1999 U.S. Dist. LEXIS 11829 at *2-17 (W.D.Mich. July 29, 1999), *aff'd,* 229 F.3d 1152 (6th Cir.2000); *Abenth v. Palmer,* No. C 96-3938, 1997 WL 255332 at *1 (N.D.Cal. Apr.28, 1997).

The Second Circuit has not addressed the issue, and the few district court decisions in this Circuit also are split. *Compare Saunders v. Goord,* 2002 WL 1751341 at *3 (dismissing inmate complaint containing some unexhausted claims, citing "the plain language of 42 U.S.C. § 1997e(a)"), *with Espinal v. Coughlin,* 98 Civ. 2579, 2002 WL 10450 at *1 (S.D.N.Y. Jan.3, 2002) (dismissing unexhausted claims while ruling on merits of exhausted claims, without discussing why court could do so).

The Court need not try to predict what the Second Circuit (and eventually the Supreme Court) will do, nor take its own position in this general debate. At least on the particular facts of this case, the Court believes it appropriate to address the merits of the exhausted Medical Claims while dismissing the Non-Medical Claims without prejudice.[FN12]

> FN12. The alleged acts about which Nelson complains in his Non-Medical Claims took place from October 2000 through May 2001 (Dkt. No. 40: Am. Compl. at 15-21), and Nelson thus may have relied on the Second Circuit's August 24, 2000 decision in *Nussle v. Willette,* 224 F.3d 95,

106 (2d Cir.2000), *rev'd, Porter v. Nussle,* 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002), in which the Second Circuit held that the PLRA's exhaustion requirements did not apply to excessive force claims. Inmates who relied on the Second Circuit's *Nussle* decision would have a good argument after dismissal of such a suit that DOCS' time limits for grievances should be extended for a reasonable time after the dismissal order. *See, e.g., Peoples v. Beldock,* No. 01-CV-6326, 2002 WL 1750742 at *2 (W.D.N.Y. July 10, 2002) (complaint dismissed without prejudice for failure to exhaust despite fact that Second Circuit's *Nussle* decision governed at the time complaint was filed; "Should plaintiff choose to file a new grievance, he can thus attempt to show that the intervening change in the law occasioned by [the Supreme Court's decision in] *Nussle* constitutes 'mitigating circumstances' that would justify an exception to the time limit imposed by the [DOCS grievance] regulations. 7 N.Y.C.R.R. § 701.7(a)(1)."); *Hemphill v. New York,* 198 F.Supp.2d 546, 550 (S.D.N.Y.2002) ("Since reliance on the Second Circuit's interpretation [in *Nussle* ] of the PLRA would be the only possible factor that might augur in favor of non-retroactive application of the Supreme Court's [*Porter v. Nussle* ] decision, there is no equitable basis to evade the firm rule of retroactivity" where Second Circuit decision in *Nussle* came long after plaintiff failed to file a grievance).

**\*6** Discovery in this case was completed at the time of the Supreme Court's February 26, 2002 *Porter v. Nussle* decision. (*See* Dkt. No. 18: Rule 16 Scheduling Order, setting a 2/27/02 discovery cut-off date.) The parties and the Court expended a great deal of resources before *Porter v. Nussle* changed the governing law in the Second Circuit. That alone does not preclude retroactive application of *Porter v. Nussle* to pending cases. Here, however, it is significant that the Medical and Non-Medical Claims are easily separated, since they involve discrete parties and acts. (*Compare* Am. Compl. at 3-14 *with id.* at 15-35.) Even under these facts, the Court could dismiss the entire action without prejudice. But I see no reason why the Court cannot exercise its discretion in these particular circumstances to dismiss without prejudice the separable

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31075804 (S.D.N.Y.)
(Cite as: 2002 WL 31075804 (S.D.N.Y.))

Non-Medical Claims while reaching the merits (or rather, lack thereof) of the fully exhausted Medical Claims.

Accordingly, I recommend that only the Non-Medical Claims be dismissed without prejudice as unexhausted, and that the separable exhausted Medical Claims be adjudicated on the merits.

**II. SUMMARY JUDGMENT SHOULD BE GRANTED TO DEFENDANTS WITH RESPECT TO NELSON'S CLAIMS OF DELIBERATE INDIFFERENCE TO *SERIOUS MEDICAL NEEDS AND CONSPIRACY RELATING THERETO***

A. *Factual Background Regarding Nelson's Medical Claims*

Shortly after Nelson was transferred to Green Haven on October 11, 2000 (Dkt. No. 48: Defs. 56.1 Stmt. ¶ 11; Dkt. No. 40: Am. Compl. ¶ 8), he submitted a letter dated October 16, 2000 to Green Haven's "Health Services Director," stating:

> May I please be seen by an Medical Doctor. I am requesting a full check up for an blood test for hormone poison, level of mercury poison, problems with my back as i am in need of defecating my back start's stiffen with pressur.

> And my left knee have a tore tigament. As i walk up the stair's my knee give out.

> May I please be seen and treated by an Independent Medical Doctor.

(Dkt. No. 47: Gould Aff. Ex. 1; [FN13] *see* Am. Compl. at 3; Defs. 56.1 Stmt. ¶ 11.) Two days later, on October 18, 2000, Nelson was interviewed by defendant Byron Rodas, a Green Haven physician's assistant. (Am. Compl. at 3; Dkt. No. 52: Nelson 4/30/02 Aff. ¶ 5; Defs. 56.1 Stmt. ¶¶ 7, 9, 12.) Nelson alleges that while he "was explaining his medical condition, ... Rodas became very defensive saying

'I'm the doctor here and I determine what examination and treatment you require, and from what i see here there is nothing wrong with you.' The interview was terminated and plaintiff was not physically examine [d]." (Am. Compl. at 3; *see* Nelson 4/30/02 Aff. ¶ 5.)

> [FN13.] Where both parties submitted the same document, the Court refers to only a single cite for the exhibit.

Nelson wrote a second letter, dated October 23, 2000, to defendant Dr. Carl Koenigsmann, Green Haven's Medical Director, complaining about Rodas' conduct, claiming that he was suffering from "hormone poison, mercury poison," muscle spasms in his back, and torn ligaments in his knee, and requesting a full examination by an "Independent Outside Medical Doctor" as well as a blood test and a "CAT scan." (Gould Aff. Ex. 2; Am. Compl. at 4.) [FN14] Dr. Koenigsmann responded to Nelson's October 16 and 23, 2000 letters by memorandum dated November 1, 2000, stating: "This will acknowledge receipt of your letter regarding treatment issues and/or issues with your Primary Care Provider ["PCP"]. A copy of your letter has been forwarded to your Primary Care Provider for response. The PCP's response and your medical folder will be reviewed." (Gould Aff. Ex. 3; *see* Am. Compl. at 4; Defs. 56.1 Stmt. ¶ 13.)

> [FN14.] Nelson also requested "tomography" (Gould Aff. Ex. 2)-an apparently redundant request for a "CAT scan" ("Computerized Axial *Tomography* "). *See Dorland's Illustrated Medical Dictionary*, 295, 1847-48 (29th ed.2000).

**\*7** Nelson alleges that on October 24, 2000, he was examined by defendant Edward Licerio, a Green Haven dentist, who allegedly advised Nelson that at a "follow-up appointment," Nelson's "worn-out amalgams fillings" that were causing Nelson's "headache and memory-loss" would be removed. (Am. Compl. at 4; Nelson 4/30/02 Aff. ¶ 6; *see* Defs. 56.1 Stmt. ¶¶ 7, 9.) Nelson allegedly explained to Licerio that as Nelson was eating, the "silver spoon ...came in contact with the worn-out fillings, causing plaintiff to receive an electric-charge." (Am. Compl. at 4.) Nelson claims that at a November 14, 2000 follow-up

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31075804 (S.D.N.Y.)
(Cite as: 2002 WL 31075804 (S.D.N.Y.))

appointment, Licerio refused to remove the fillings, "giving plaintiff no logical reason" for the refusal. (Am. Compl. at 4-5; Nelson 4/30/02 Aff. ¶ 6.) Licerio also requested Nelson to "sign some medical document(s)," which Nelson refused because he allegedly did not understand the handwriting. (Am. Compl. at 5.)

Nelson's Dental Treatment Records, signed by Licerio, state in relevant part:

Oct 26 2000 Place on [illegible] & filling list

Nov 14 2000 Doesn't want any dental filling done on him, he wants me to take out all his silver fillings in his mouth his request has been denied, he refused to sign the refusal slip.

(Nelson 2/22/02 Aff. Ex. 8.)

Nelson claims that "Licerio was deliberately indifferent to plaintiff serious medical needs by his reckless and complete denial to treat plaintiff for the worn-out filling within his teeth." (Am. Compl. at 6.)

Nelson references a November 19, 1998 report by Dr. Elizabeth Gaary:

Bilateral mammography was performed in the craniocaudad and mediolateral oblique projections. There are no prior studies available for comparison.

There are no clustered irregular microcalcifications. There is no evidence of skin thickening or nipple retraction. There are no lymph nodes visualized. Bilateral right greater than left gynecomastia is noted.[FN15]

FN15. "Gynecomastia" is "excessive growth of the male mammary glands, in some cases including development to the stage at which milk is produced, usually associated with metabolic derangements that lead to estrogen accumulation, testosterone deficiency, and hyperprolactinemia. A mild form may develop transiently during normal puberty." *Dorland's Illustrated Medical Dictionary* (29th ed.2000).

Clinical correlation recommended. If there is a palpable abnormality, ultrasound may be of help for further evaluation.

IMPRESSION: Bilateral gynecomastia right greater than left. If there is a palpable abnormality, ultrasound may be of help for further evaluation.

(Nelson 2/22/02 Aff. Ex. 6; *see* Am. Compl. at 6; Nelson 4/30/02 Aff. ¶ 8.) Based on this report, Nelson claims that Rodas and Dr. Koenigsmann knew of and were deliberately indifferent to Nelson's serious medical needs, presumably regarding the gynecomastia, in denying Nelson access to a doctor for diagnosis and treatment. (Am. Compl. at 6; Nelson 4/30/02 Aff. ¶ 9.)

Based on the above allegations, Nelson charges Rodas, Dr. Koenigsmann, and Licerio with "conspiracy." (Am. Compl. at 10-11; Nelson 4/30/02 Aff. ¶¶ 12-14.)

Nelson filed an "Inmate Grievance Complaint" dated November 21, 2000, in which he requested to be examined by an independent outside medical doctor, a "TOMOGRAPHY, and CAT-SCAN for detail viewing of my back and knee, a blood test to identifie certain poison, and to be treated by an out-side dentist who is knowledgeable in removing worn-out toxic amalgams fillings." (Gould Aff. Ex. 4; *see* Am. Compl. at iv; Defs. 56.1 Stmt. ¶ 14.)

**8** On December 6, 2000, Dr. Koenigsmann responded by memo to an inquiry from the facility grievance coordinator:

I have reviewed the medical record as it relates to this grievance. I have also referred it to the Dental Department for evaluation. The investigation reveals

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31075804 (S.D.N.Y.)
(Cite as: 2002 WL 31075804 (S.D.N.Y.))

that the patient has had evaluations for his back and knee pains in the past including x rays. The decision to proceed with additional studies or specialty referrals is best determined by the Primary Provider. At his time, based on prior examination and results of prior work up, the Primary Provider does not feel these needs exist. Regarding the follow up of the laboratory work performed, the results are available on the medical record and have been reviewed by the Primary Provider. I will request a follow up appointment with the Provider to review the laboratory results.

Pertaining to [Nelson's] claim that a Dental provider had recommended the removal of the patient's amalgam fillings, this is incorrect. The Dental provider responded that [Nelson] requested the removal of the amalgam fillings. Currently there are no generally accepted Dental recommendations for the removal of amalgam fillings nor restrictions on the use of amalgam fillings.

(Gould Aff. Ex. 5; *see* Defs. 56.1 Stmt. ¶ 15.)

The Inmate Grievance Resolution Committee held a hearing on January 2, 2001, and denied Nelson's complaint. (Gould Aff. Ex. 6, first page; Defs. 56.1 Stmt. ¶¶ 16-17.) Nelson appealed to Superintendent Greiner (Gould Aff. Ex. 6, last page; Defs. 56.1 Stmt. ¶ 17), who denied the grievance in a statement dated January 10, 2001:

Grievant would like a check up from an outside doctor, including such tests as a CAT scan and blood work. He also would like to have work done by an outside Dentist.

The investigation indicates that X-rays have been completed for knee & back pain. Your primary provider feels that further studies are not indicated at this time.

Your primary provider should set up an appointment with you to review results of the lab work. There was no indication that your amalgam fillings need to be removed and this is generally not recommended. There are also no restrictions on using said filling. The use of

an outside dentist[ ] is not indicated.

Grievance is denied.

(Gould Aff. Ex. 7; *see* Defs. 56.1 Stmt. ¶ 17.)

Nelson appealed Superintendent Greiner's decision to the Central Office Review Committee ("CORC"), noting the additional complaint that he had mistakenly been provided with "hemorrhoidal ointment" instead of appropriate medicine for his back pain. (Gould Aff. Ex. 7; Defs. 56.1 Stmt. ¶¶ 17-18.) The CORC issued a unanimous report dated February 21, 2001:

Upon full hearing of the facts and circumstances in the instant case, and upon recommendation of the Division of Health Services, the action requested herein is hereby accepted only to the extent that CORC upholds the determination of the Superintendent for the reasons stated.

**\*9** CORC notes that the grievant has been examined by the doctor and received appropriate medical treatment. CORC also notes that the doctor determined that there was no medical need for the additional tests requested by the grievant. Contrary to the grievant's assertions, CORC has not been presented with sufficient evidence to substantiate any malfeasance by the employee referenced in this instant complaint.

CORC asserts that, consistent with Health Services Policy Manual Item # 1.21-Health Care Referrals, the Facility Health Services Directors (FHSD) have the sole responsibility for providing treatment to the inmates under their care. The FHSDs have the responsibility of determining what outside health referrals are needed by the target population. Outside specialists may only make recommendations for treatment; however, the implementation of those recommendations is at the discretion of the FHSDs, based on their professional judgment.

(Gould Aff. Ex. 8; *see* Defs. 56.1 Stmt. ¶ 19.)

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31075804 (S.D.N.Y.)
(Cite as: 2002 WL 31075804 (S.D.N.Y.))

**B.** *Summary Judgment Standards in* Section 1983 *Cases*
FN16

> FN16. For additional cases authored by this Judge discussing the summary judgment standards in Section 1983 cases, in language substantially similar to that in this entire section of this Report and Recommendation, *see, e.g., Walker v. Pataro,* 99 Civ. 4607, 2002 WL 664040 at *4-5 (S.D.N.Y. Apr.23, 2002) (Peck, M.J.); *Espinal v. Goord,* 00 Civ. 2242, 2001 WL 476070 at *5-7 (S.D.N.Y. May 7, 2001)(Peck, M.J.); *Fulmore v. Mamis,* 00 Civ. 2831, 2001 WL 417119 at *5 (S.D.N.Y. Apr.23, 2001) (Peck, M.J.); *Freeman v. Strack,* 99 Civ. 9878, 2000 WL 1459782 at *4 (S.D.N.Y. Sept.29, 2000) (Peck, M.J.); *Culp v. Koenigsmann,* 99 Civ. 9557, 2000 WL 995495 at *4 (S.D.N.Y. July 19, 2000) (Peck, M.J.); *Carbonell v. Goord,* 99 Civ. 3208, 2000 WL 760751 at *4 (S.D.N.Y. June 13, 2000) (Peck, M.J.); *Greenfield v. City of New York,* 99 Civ. 2330, 2000 WL 124992 at *3 (S.D.N.Y. Feb.3, 2000) (Peck, M.J.); *Salahuddin v.. Coughlin,* 999 F.Supp. 526, 534 (S.D.N.Y.1998) (Rakoff, D.J. & Peck, M.J.); *Watson v. McGinnis,* 981 F.Supp. 815, 817 (S.D.N.Y.1997) (Kaplan, D.J. & Peck, M.J.).

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.,* 949 F.2d 576, 580 (2d Cir.1991).

The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment-here, defendants. *See, e.g., Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 36 (2d Cir.1994); *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1223 (2d Cir.1994). The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on an issue on which the non-movant has the burden of proof. *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. at 323, 106 S.Ct. at 2552-53.

To defeat a summary judgment motion, the non-moving party must do "more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp .,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Instead, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *accord, e.g ., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. at 587, 106 S.Ct. at 1356.

In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. at 2513; *see also, e.g., Chambers v. TRM,* 43 F.3d at 36; *Gallo v. Prudential,* 22 F.3d at 1223. The Court draws all inferences in favor of the nonmoving party, Nelson-only after determining that such inferences are reasonable, considering all the evidence presented. *See, e.g., Apex Oil Co. v. DiMauro,* 822 F.2d 246, 252 (2d Cir.), *cert. denied,* 484 U.S. 977, 108 S.Ct. 489 (1987). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Chambers v. TRM,* 43 F.3d at 37.

**\*10** In considering a motion for summary judgment, the Court is not to resolve contested issues of fact, but rather is to determine whether there exists any disputed issue of material fact. *See, e.g., Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 58 (2d Cir.1987); *Knight v. United States Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). To evaluate a fact's materiality, the substantive law determines which facts are critical and

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31075804 (S.D.N.Y.)
(Cite as: 2002 WL 31075804 (S.D.N.Y.))

which facts are irrelevant. *See, e.g., Anderson v. Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510. While "disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment [,][f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510 (citations omitted); *see also, e.g., Knight v. United States Fire Ins. Co.,* 804 F.2d at 11-13.

"The Court recognizes that it must 'extend extra consideration' to pro se plaintiffs" such as Nelson and that "pro se parties are to be given special latitude on summary judgment motions." *Salahuddin v. Coughlin,* 999 F.Supp. at 535 (citations & internal quotations omitted); *see also, e.g., McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (a pro se party's pleadings should be read liberally and interpreted " 'to raise the strongest arguments that they suggest' "). Moreover, the pro se party must be given express notice of the consequences of failing to respond appropriately to a motion for summary judgment. *See, e.g., Trammel v. Coombe,* No. 97-2622, 201 F.3d 432 (table), 1999 WL 1295856 at *2 (2d Cir. Dec.23, 1999); *McPherson v. Coombe,* 174 F.3d 276, 280-81 (2d Cir.1999) (" '[t]he failure of a district court to apprise *pro se* litigants of the consequences of failing to respond to a motion for summary judgment is ordinarily grounds for reversal.' ") (citations omitted); *Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 620-21 (2d Cir.1999); *Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996). Defendants' notice of motion duly advised Nelson of the nature of a summary judgment motion and the consequences of failing to appropriately respond. (*See* Dkt. No. 45: Notice of Motion for Summary Judgment; Dkt. No. 49: 3/25/02 Notice to Pro Se Litigant Opposing Motion for Summ. Judgment Per Local Civil Rule 56.2.)

"Nevertheless, proceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment, and a *pro se* party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Cole v. Artuz,* 93 Civ. 5981, 1999 WL 983876 at *3 (S.D.N.Y. Oct.28, 1999) (citing cases); *see also, e.g., Smith v. Planas,* 975 F.Supp. 303, 305 n. 2 (S.D.N.Y.1997).

Because Nelson has verified his Amended Complaint

(Dkt. No. 40: Am. Compl.; Dkt. No. 41: Nelson 2/22/02 Aff. In Supp. of Am. Compl. ¶ 2), this Court will accept for purposes of this motion all admissible facts set forth in the Amended Complaint that are based on Nelson's personal knowledge and about which Nelson is competent to testify. *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995) ("A verified complaint is to be treated as an affidavit for summary judgment purposes ... provided that it meets the other requirements for an affidavit under Rule 56(e) ... requiring affidavits to be made on personal knowledge, to set forth facts that would be admissible in evidence, and to demonstrate the affiant's competency to testify to the matters in the affidavit ..."); *accord, e.g., Davidson v. Bennis,* No. 96-2999, 152 F.3d 917 (table), 1998 WL 391112 at *1 (2nd Cir. May 20, 1998) (pro se prisoner's verified complaint was "treat[ed] as an affidavit for summary judgment purposes"); *Johnson v. Doe,* 00 Civ. 3920, 2001 WL 314618 at *1 (S.D.N.Y. Mar.30, 2001) ("Although a verified complaint may serve as an affidavit for summary judgment purposes, [citing *Colon* ], mere verification does not transform rhetoric, conclusions, and other non-admissible statements into admissible evidence.").

C. Applicable Law Regarding Claims of Deliberate Indifference to Serious Medical Needs [FN17]

> FN17. For additional cases authored by this Judge discussing the governing standard in medical indifference claims, in language substantially similar to that in this entire section of this Report and Recommendation, *see Espinal v. Goord,* 00 Civ. 2242, 2001 WL 476070 at *7-10 (S.D.N.Y. May 7, 2001)(Peck, M.J.); *Fulmore v. Mamis,* 00 Civ. 2831, 2001 WL 417119 at *7-8 (S.D.N.Y. Apr.23, 2001) (Peck, M.J.); *Freeman v. Strack,* 99 Civ. 9878, 2000 WL 1459782 at *5-6 (S.D.N.Y. Sept.29, 2000) (Peck, M.J.); *Culp v. Koenigsmann,* 99 Civ. 9557, 2000 WL 995495 at *6-7 (S.D.N.Y. July 19, 2000) (Peck, M.J.); *Carbonell v. Goord,* 99 Civ. 3208, 2000 WL 760751 at *5-6 (S.D.N.Y. June 13, 2000) (Peck, M.J.).

**\*11** To prevail in a § 1983 action, a plaintiff must demonstrate that he has been denied a constitutional or federal statutory right and that the deprivation occurred

Not Reported in F.Supp.2d, 2002 WL 31075804 (S.D.N.Y.)
(Cite as: 2002 WL 31075804 (S.D.N.Y.))

under color of state law. *See* 42 U .S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 2254-55, 101 L.Ed.2d 40 (1988). "Section 1983 itself," however, "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993) (citation omitted), *cert. denied,* 512 U.S. 1240, 114 S.Ct. 2749, 129 L.Ed.2d 867 (1994).

The Eighth Amendment protects prisoners from "cruel and unusual punishment" in the form of "unnecessary and wanton infliction of pain" at the hands of prison officials and conduct that offends "evolving standards of decency." *E.g.,* *Hudson v. McMillan,* 503 U.S. 1, 5, 8, 112 S.Ct. 995, 998, 1000, 117 L.Ed.2d 156 (1992); *Wilson v. Seiter,* 501 U.S. 294, 297, 308, 111 S.Ct. 2321, 2323, 2329, 115 L.Ed.2d 271 (1991); *Estelle v. Gamble,* 429 U.S. 97, 102, 104-05, 97 S.Ct. 285, 290, 291, 50 L.Ed.2d 251 (1976); *Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976).

To establish an Eighth Amendment violation based on a claim that a prison official has placed an inmate's health in danger, the inmate must show that the prison official acted with "deliberate indifference" to the inmate's serious medical needs. *See, e.g., Helling v. McKinney,* 509 U.S. 25, 32, 113 S.Ct. 2475, 2480, 125 L.Ed.2d 22 (1993); *Estelle v. Gamble,* 429 U.S. at 104-05, 97 S.Ct. at 291. The deliberate indifference test applies to dental as well as medical claims. *Chance v. Armstrong,* 143 F.3d 698, 702-03 (2d Cir.1998) (citing cases).

As the Second Circuit has explained, "the deliberate indifference standard embodies both an objective and a subjective prong." *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1994), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995). "Objectively, the alleged deprivation must be 'sufficiently serious .'" *Id.; see also, e.g., Hudson v. McMillian,* 503 U.S. at 9, 112 S.Ct. at 1000 ("Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious' "). " 'The Constitution does not command that inmates be given the kind of medical attention that judges would wish to have for themselves ....' " *Dean v. Coughlin,* 804 F.2d 207, 215 (2d Cir.1986). "[O]nly those deprivations

denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991) (citation omitted); *see also, e.g., Dean v. Coughlin,* 804 F.2d at 215 (" '[T]he essential test is one of medical necessity and not one simply of desirability' "). Thus, Eighth Amendment protection is limited to " 'a condition of urgency' that may result in 'degeneration' or 'extreme pain.' " *Chance v. Armstrong,* 143 F.3d at 702; [FN18] *accord, e.g., Morales v. Mackalm,* 278 F.3d 126, 132 (2d Cir.2002); *Harrison v. Barkley,* 219 F.3d 132, 136 (2d Cir.2000) ("A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.' ").

> [FN18.] The Second Circuit in *Chance v. Armstrong* identified several factors that are relevant in determining whether a serious medical condition exists, including " '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.' " 143 F.3d at 702. The Second Circuit in that case stated that a medical condition could be serious where the prisoner alleged that he "suffered extreme pain, his teeth deteriorated, and he has been unable to eat properly." *Id.* at 703.

**\*12** "Subjectively, the charged official must act with a sufficiently culpable state of mind." *Hathaway v. Coughlin,* 99 F.3d at 553. "The required state of mind, equivalent to criminal recklessness, is that the official " 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' " " *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998) (quoting *Hathaway v. Coughlin,* 99 F.3d at 553 (quoting *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994))); *see also, e.g., LaBounty v. Coughlin,* 137 F.3d 68, 72-73 (2d Cir.1998) ("To succeed in showing deliberate indifference, [plaintiff] must show that the acts of

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31075804 (S.D.N.Y.)
(Cite as: 2002 WL 31075804 (S.D.N.Y.))

defendants involved more than lack of due care, but rather involved obduracy and wantonness in placing his health in danger.").

Deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care." *Estelle v. Gamble,* 429 U.S. at 104-05, 97 S.Ct. at 291 (fn.omitted); *accord, e.g., Kaminsky v. Rosenblum,* 929 F.2d 922, 926 (2d Cir.1991) ("Cruel and unusual punishment may consist of prison officials delaying an inmate access to needed medical care.").[FN19] However, an "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle v. Gamble,* 429 U.S. at 105-06, 97 S.Ct. at 292; *accord, e.g., Burton v. New York State Dep't of Corrections,* 93 Civ. 6028, 1994 WL 97164 at *2 (S.D.N.Y. March 2, 1994) (Sotomayor, D.J.). "Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim ... under the Eighth Amendment." *Estelle v. Gamble,* 429 U.S. at 106, 97 S.Ct. at 292.[FN20] As the Supreme Court has stated, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble,* 429 U.S. at 106, 97 S.Ct. at 292; *accord, e.g., Hathaway v. Coughlin,* 99 F.3d at 553; *Burton v. New York State Dep't of Corrections,* 1994 WL 97164 at *2. An act of malpractice will amount to deliberate indifference only if "the malpractice involves culpable recklessness, *i.e.,* an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm." ' *Chance v. Armstrong,* 143 F.3d at 703 (quoting *Hathaway v. Coughlin,* 99 F.3d at 553); *Harrison v. Barkley,* 219 F.3d at 139 ("We agree that the mere malpractice of medicine in prison does not amount to an Eighth Amendment violation.... This principle may cover a delay in treatment based on a bad diagnosis or erroneous calculus of risks and costs, or a mistaken decision not to treat based on an erroneous view that the condition is benign or trivial or hopeless, or that treatment is unreliable, or that the cure is as risky or painful or bad as the malady.... [But][c]onsciously disregarding an inmate's legitimate medical needs is not 'mere medical malpractice." '); *Hathaway v. Coughlin,* 37 F.3d at 66 ("Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm.").

FN19. *See, e.g., Hathaway v. Coughlin,* 37 F.3d 63, 67 (2d Cir.1994) (delay for more than two years in removing broken pins from prisoner's hip despite nearly fifty complaints of pain), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995); *Liscio v. Warren,* 901 F.2d 274, 277 (2d Cir.1990) (failure to provide medical attention to a delirious inmate for three days); *Archer v. Dutcher,* 733 F.2d 14, 15-17 (2d Cir.1984) (denying summary judgment where plaintiff "identifie[d] intentional efforts on the part of defendants to delay her access to medical care at a time [when] she was in extreme pain"); *Williams v. Vincent,* 508 F.2d 541, 544 (2d Cir.1974).

FN20. *Accord, e.g., Hathaway v. Coughlin,* 99 F.3d at 553; *Felipe v. New York State Dep't of Correctional Servs.,* No. 95-CV-1735, 1998 WL 178803 at *3 (N.D.N.Y. Apr.10, 1998) (Pooler, D.J.).

**\*13** "It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance v. Armstrong,* 143 F.3d at 703; *accord, e.g ., Hathaway v. Coughlin,* 37 F.3d at 70 (Jacobs, C.J., dissenting) (" 'We do not sit as a medical board of review. Where the dispute concerns not the absence of help, but the choice of a certain course of treatment, or evidences mere disagreement with considered medical judgment, we will not second guess the doctors." '); *Culp v. Koenigsmann,* 2000 WL 995495 at *7 ("Mere disagreements with the quality of medical care, however, do not state an Eighth Amendment claim."); *see also, e.g., Troy v. Kuhlmann,* 96 Civ. 7190, 1999 WL 825622 at *6 (S.D.N.Y. Oct.15, 1999) ("a prisoner's disagreement with the diagnostic techniques or forms of treatment employed by medical personnel does not itself give rise to an Eighth Amendment claim"); *Brown v. Selwin,* 98 Civ. 3008, 1999 WL 756404 at *6 (S.D.N.Y. Sept.24, 1999) (citing cases); *Negron v. Macomber,* 95 Civ. 4151, 1999 WL 608777 at *6 (S.D.N.Y. Aug.11, 1999); *Espinal v. Coughlin,* 98 Civ. 2579, 1999 WL 387435 at *3 (S.D.N.Y. June 14, 1999).[FN21]

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31075804 (S.D.N.Y.)
(Cite as: 2002 WL 31075804 (S.D.N.Y.))

FN21. Furthermore, a delay in medical treatment does not necessarily invoke the Eighth Amendment:

> Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, this Court has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment; ignored a "life-threatening and fast-degenerating" condition for three days; or delayed major surgery for over two years. No such circumstances are present here. At no point was [plaintiff's] condition "fast-degenerating" or "life-threatening," and there is no indication that [defendant] delayed treatment in order to punish him. Moreover, any delay in treatment in this case does not rise to the egregious level identified in *Hathaway*. That [plaintiff] feels something more should have been done to treat his injuries is not a sufficient basis for a deliberate indifference claim.

*Demata v. New York State Correctional Dep't of Health Servs.,* No. 99-0066, 198 F.3d 233 (table), 1999 WL 753142 at *2 (2d Cir. Sept.17, 1999) (citations omitted) (summary judgment for defendants where plaintiff complained of knee injury in February 1994 and surgery not performed until March 1997); *accord, e.g., Freeman v. Strack,* 2000 WL 1459782 at *9 (no Eighth Amendment claim against nurse who scheduled inmate with appendicitis requiring appendectomy for appointment two hours later rather than seeing inmate immediately where "[t]here was nothing in [the inmate]'s medical history which would have put [the nurse] on notice that [plaintiff] was suffering from the onset of appendicitis ... and there is no evidence that [the officer] gave [the nurse] any reason to believe that there was an emergency on hand"); *Culp v. Koenigsmann,* 2000 WL 995495 at *7-8 (rejecting claim based on fact that one doctor recommended arthroscopic surgery for knee injury in April 1999, while another doctor concluded that surgery was not

warranted until more conservative measures like physical therapy had been tried and failed).

D. *Nelson's Medical Indifference Claims Should Be Dismissed*

[4] Nelson asserts that defendants demonstrated deliberate indifference to the following three "serious medical conditions":

> (i) ... an abnormal growth of tissue-cells within plaintiff chest that serve no physiological function.

> (ii) The worn-out amalgams fillings thats causing plaintiff perpetual headache especially when awaking in the morning, and chewing certain food, and

> (iii) plaintiff defective back-as plaintiff in need of having to defecate his back muscle stiffen with pressure.

(Dkt. No. 40: Am. Compl. at 5; *see* Dkt. No. 52: Nelson 4/30/02 Aff. ¶ 11.)

Nelson offers no evidence to support his claims other than the conclusory allegations in his verified complaint. (Am. Compl. at 3-14; *see also* Nelson 4/30/02 Aff. ¶¶ 4-14.) Unfortunately, defendants fail to fill the gap: through attorney neglect they did not depose Nelson (*see* fn.5 above) and have submitted no admissible evidence on this motion other than copies of Nelson's complaint letters, the State's written responses, and the records pertaining to Nelson's grievance procedure, largely consisting of rank hearsay. (Dkt. No. 47: Gould Aff. Exs. 1-8; *see also* Dkt. No. 46: Defs. Br. at 6-14.) Indeed, defense counsel has not bothered to submit copies of Nelson's medical records. FN22 The Assistant Attorney General's performance in this case did little to help the Court, or his clients. The Court thus is left guessing as to Nelson's course of medical treatment or lack thereof. FN23

FN22. Nelson submitted copies of his cryptic

Not Reported in F.Supp.2d, 2002 WL 31075804 (S.D.N.Y.)
(Cite as: 2002 WL 31075804 (S.D.N.Y.))

dental treatment records from Green Haven. (Dkt. No. 41: Nelson 2/22/02 Aff. Ex. 8.)

FN23. Although defendants submitted a statement pursuant to Rule 56.1 (Dkt. No. 48), it largely fails to cite supporting admissible evidence. *See* S.D.N.Y. Local Civil Rule 56.1(d) ("Each statement of material fact by a movant or opponent must be followed by citation to evidence which would be admissible ....").

Nevertheless, Nelson has the burden on this motion. While a plaintiff alleging medical indifference in a Section 1983 action is not required to produce "expert medical testimony," *Hathaway v. Coughlin,* 37 F.3d 63, 68 (2d Cir.1994), Nelson "may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that '[his] version of the events is not wholly fanciful." ' *Morris v. Lindau,* 196 F.3d 102, 109 (2d Cir.1999) (§ 1983 action) (quoting *D'Amico v. City of New York,* 132 F.3d 145, 149 (2d Cir.), *cert. denied,* 524 U.S. 911, 118 S.Ct. 2075, 141 L.Ed.2d 151 (1998)). And although Nelson, as a pro se litigant, is granted a certain degree of leeway, the superficial allegations of his amended complaint fail to satisfy the stringent requirements of an Eighth Amendment claim, for the following reasons.

**\*14** Nelson's first grievance relates to "an abnormal growth of tissue-cells within plaintiff chest that serve no physiological function." (Am. Compl. at 5; *see* Nelson 4/30/02 Aff. ¶ 11.) This apparently refers to a November 19, 1998 report by Dr. Elizabeth Gaary which noted that Nelson's "bilateral right ... gynecomastia" was "greater" than his left gynecomastia. (*See* pages 16-17 above.) Nelson, however, entirely fails to allege how this gynecomastia is " 'a condition of urgency, one that may produce death, degeneration, or extreme pain." ' *Morales v. Mackalm,* 278 F.3d 126, 132 (2d Cir.2002); *see also* cases cited at pages 25-26 above. His allegations thus fail to satisfy the pleading standard for a medical indifference claim, much less the standard for opposing a summary judgment motion.

Second, Nelson complains of indifference to his "defective back-as plaintiff in need of having to defecate his back

muscle stiffen with pressure." (Am. Compl. at 5; *see* Nelson 4/30/02 Aff. ¶ 11.) Nelson elsewhere referred to this problem as "muscle spasm[s]" in his back. (Nelson 2/22/02 Aff. Ex. 4: 10/23/00 Nelson Letter to Koenigsmann.) This claim should be rejected, both because there is no evidence that Nelson's alleged back problems were sufficiently serious to qualify as an Eighth Amendment violation, and because Nelson's claim concerns not the absence of help, but the choice of a certain course of treatment.

Severe back pain, especially if lasting an extended period of time, can amount to a "serious medical need" under the Eighth Amendment.[FN24] Here, however, Nelson merely alleges "back spasms," without describing the intensity or duration of the pain. That is insufficient to survive a summary judgment motion, even under the most liberal standard. *See, e.g., Tobias v. County of Putnam,* 191 F.Supp.2d 364, 379 (S.D.N.Y.2002) ("we do not believe that [plaintiff's] injuries caused him such extreme pain as to meet his burden. He does not allege in his complaint that he suffered extreme pain, but rather just vague 'physical injury.' "); *Benitez v. Pecenco,* 92 Civ. 7670, 1995 WL 444352 at \*3 (S.D.N.Y. July 27, 1995) (§ 1983 medical indifference claim dismissed because "there is nothing in the record to suggest that plaintiff's back was severe or excruciating"); *Sassower v. City of White Plains,* 89 Civ. 1267, 1995 WL 222206 at \*8 (S.D.N.Y. Apr.13, 1995) (granting defendants summary judgment because, *inter alia,* "Plaintiff does not even attest that she experienced a life threatening condition, nor that she suffered from extreme pain or the threat of death or degeneration. In fact, according to Plaintiff's affidavits, she suffered simply from 'stress and strain.' ").[FN25] While Nelson's pleading might survive a motion to dismiss, more is required to survive summary judgment, even from a pro se plaintiff.

FN24. *See, e.g., Hathaway v. Coughlin,* 37 F.3d at 67 (finding plaintiff with degenerative hip condition who experienced great pain over an extended period of time and had difficulty walking had "serious medical needs"); *Ramos v. Artuz,* 00 Civ. 0149, 2001 WL 840131 at \*11 (S.D.N.Y. July 25, 2001) (claim of chronic back pain survived motion to dismiss); *Cole v. Artuz,* 97 Civ. 0977, 2000 WL 760749 at \*5 (S.D.N.Y. June 12, 2000) (claim relating to chronic back

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31075804 (S.D.N.Y.)
(Cite as: 2002 WL 31075804 (S.D.N.Y.))

injury survived motion to dismiss); *Bryant v. Artuz,* 96 Civ. 3274, 1998 WL 24360 at *2 (S.D.N.Y. Jan.23, 1998) (prisoner's allegation of severe back pain following disc surgery was held to be sufficiently serious medical condition to survive a motion for summary judgment); *Gill v. Gilder,* 95 Civ. 7933, 1996 WL 103837 at *5 (S.D.N.Y. Mar.8, 1996) (denying defendants' motion to dismiss where plaintiff had alleged that a back problem caused him "severe pain"); *cf., Solomon v. Moore,* 97 Civ. 0201, 2000 WL 385521 at *2-3 (S.D.N.Y. Apr.14, 2000) (back pain did not rise to level of violation: "These alleged problems [including back pain] taken together are clearly 'conditions which many people suffer from and function despite on a day-to-day basis and the fact that a sufferer is incarcerated does not elevate every perceived lack of treatment to the level of cruel and unusual punishment." ').

FN25. *See also, e.g., Fulmore v. Mamis,* 00 Civ. 2831, 2001 WL 417119 at *8 (S.D.N.Y. Apr.23, 2001) (Peck, M.J.) ("At no point was [plaintiff's] condition 'fast-degenerating' or 'life-threatening,' and there is no indication that [defendant] delayed treatment in order to punish him. Moreover, any delay in treatment in this case does not rise to the egregious level identified in *Hathaway [v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996) ]. That [plaintiff] feels something more should have been done to treat his injuries is not a sufficient basis for a deliberate indifference claim.").

In addition, Nelson's complaint seems to be, not that the prison authorities failed to treat his back pain, but that they refused Nelson's request for a CAT scan and for a consultation with an outside physician. (*See* pages 15, 17-18, 29-31 above.) Nelson's complaints thus amount to no more than a disagreement about the proper course of treatment that cannot form the basis of an Eighth Amendment claim:

**\*15** [T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment.

A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court ....

*Estelle v. Gamble,* 429 U.S. 97, 107, 97 S.Ct. 285, 293, 50 L.Ed.2d 251 (1976); *accord, e.g., Randle v. Mesrobian,* No. 98-1590, 165 F.3d 32 (table), 1998 WL 551941 at *3 (7th Cir. Aug.27, 1998) ("inmates have no automatic right to consult with outside physicians") (citing cases); *Austin v. Rhode Island Dep't of Corr.,* No. 00-104, 2001 WL 1136101 at *5 (D.R.I. Aug.24, 2001) (refusal of prisoner's request to be examined by outside physician did not state a § 1983 claim); *Fulmore v. Mamis,* 2001 WL 417119 at *8-9 & n. 26 (Physician's failure to order CAT scan or orthopedic shoes, and refusal to refill prisoner's inhaler medication on certain occasions reflected, "at most, ... a difference in opinion as to [prisoner's] medical treatment rather than any deliberate indifference to [prisoner's] medical needs," citing cases); *Wicks v. Oualtere,* 95-CV-426, 1997 WL 176338 at *3 (N.D.N.Y. Apr.4, 1997) (Pooler, D.J.) (refusal to order X-ray did not state a claim).FN26

FN26. *See, e.g., Kelley v. Lutz,* No. 95-16003 87 F.3d 1320 (table), 1996 WL 341299 at *1 (9th Cir. June 19, 1996) (prison doctor's denial of inmate's request for CAT scan did not constitute deliberate indifference where inmate had been seen by several specialists and x-rays did not reveal any abnormality); *Vento v. Lord,* 96 Civ. 6169, 1997 WL 431140 at *5 (S.D.N.Y. July 31, 1997) (Sotomayor, D.J.) ("plaintiff's [denied] x-ray request and claim that without new x-rays her physical therapy is ineffective fails to state a claim of deliberate indifference"); *Sharp v. Jeanty,* 93 Civ. 0220, 1993 WL 498095 at *2 (S.D.N.Y. Nov.30, 1993) (Leval, D.J .) (dismissing complaint where prisoner's knee was x-rayed but he was not given an orthroscan, because plaintiff's medical "records indicate[d] an extensive and ongoing course of medical treatment" of his injury, and many of his allegations amounted to "second-guessing the treatments of his health care providers", and explaining that " '[a] prisoner's disagreement with his prescribed treatment does not afford a basis for relief under § 1983." '); *see also, e.g.,*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31075804 (S.D.N.Y.)
(Cite as: 2002 WL 31075804 (S.D.N.Y.))

*Burley v. O.D.O.C.,* No. CV-99-1462, 2000 WL 1060658 at *4-5 (D.Or. July 11, 2000) (granting defendants summary judgment on Eighth Amendment claim where "[p]laintiff disputes that the lumbar/sacral spine x-ray shows that nothing is wrong with his head, neck, and back" and "believes that only an 'MRI' or 'Cat Scan' can confirm his injuries in those areas"); *Lewis v. Herbert,* No. Civ. A. 96-2933, 1996 WL 663874 at *4 (E.D.Pa. Nov.14, 1996) ("[E]ven if Defendant's decision not to ... order an X-Ray or Cat Scan ... amounted to medical malpractice, a tort is not transformed into a constitutional violation simply because the victim is a prisoner."); *Coppage v. Mann,* 906 F.Supp. 1025, 1038-39 (E.D.Va.1995) (rejecting plaintiff's argument that prison doctor was deliberately indifferent when he ordered two diagnostic tests which were less effective than an MRI; "The case law draws a clear distinction between situations in which the physician provides no medical care, which may amount to deliberate indifference, and those in which the physician provides merely substandard care, which amounts at most to negligence."); *Trejo v. Gomez,* No. C-93-0360, 1995 WL 429247 at *3 (N.D.Cal. July 13, 1995) (rejecting claim that prison doctor's failure to order CAT scan or MRI for inmate complaining of neck, back and shoulder pain constituted deliberate indifference); *Johnson v. Department of Corr.,* 92 Civ. 7716, 1995 WL 121295 at *3 (S.D.N.Y. Mar.21, 1995) (summary judgment for defendants where inmate suffering from hip condition who was examined and treated on numerous occasions complained he should have received an MRI; "the Eighth Amendment does not mandate the use of any particular medical technology or course of treatment"); *Wilkerson v. Marshall,* No. C 94-0009, 1994 WL 564650 at *1-4 (N.D.Cal. Oct.3, 1994) (rejecting inmate's claim that prison doctor's failure to order an MRI constituted deliberate indifference); *Lopez v. Medical Dep't,* Civ. A. No. 90-5287, 1990 WL 174361 at *1 (E.D.Pa. Nov.6, 1990) (prison medical staff's refusal to "take x-rays, perform a CAT scan and administer other medical tests" did not give rise to Eighth Amendment claim).

Nelson's claim regarding his allegedly torn knee ligament suffers from the same deficiencies, and should therefore be dismissed as well. (Am. Compl. at 5; *see* Nelson 4/30/02 Aff. ¶ 11.) His isolated assertion that "As i walk up the stair's my knee give out" fails to make out a claim. *See, e.g., Espinal v. Coughlin,* 98 Civ. 2579, 2002 WL 10450 at *4 (S.D.N.Y. Jan.3, 2002) (plaintiff's claim relating to "an exacerbated injury to his knee" was "at most an allegation of negligence or disagreement with a course of treatment which does not rise to the deliberate indifference standard").

Finally, Nelson claims an Eighth Amendment violation based on indifference to his "worn-out amalgams fillings thats causing plaintiff perpetual headache especially when awaking in the morning, and chewing certain food(s)." (Am. Compl. at 5; *see* Nelson 4/30/02 Aff. ¶ 11.) In contrast to his other medical indifference claims, Nelson's dental indifference claim at least minimally alleges the nature and severity of his pain, which allegations might be sufficient to state a claim. *Cf. Harrison v. Barkley,* 219 F.3d 132, 138 (2d Cir.2000) (Denying summary judgment: "District courts in this Circuit have ruled that a one-year delay in treating a cavity can evidence deliberate indifference on the part of prison officials.... It follows that (1) outright refusal of any treatment for a degenerative condition that tends to cause acute infection *and* pain if left untreated and (2) imposition of a seriously unreasonable condition on such treatment, both constitute deliberate indifference on the part of prison officials."); *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) (Denying motion to dismiss where prisoner "alleged that he has been in 'great pain' for at least six months, that he has been unable to chew properly, ... that he has choked on his food," and that he has lost "one and possibly three of his teeth," "all because of [the prison doctors'] actions."); *Ramos v. O'Connell,* 28 F.Supp.2d 796, 802 (W.D.N.Y.1998) (summary judgment denied where prisoner alleged that his tooth pain was so "unbearable" that "he was unable to chew food properly, and that the denial of dental treatment caused the infected tooth to abscess"); *Dennis v. Milicevic,* 97 Civ. 7147, 1998 WL 474200 at *3 (S.D.N.Y. Aug.13, 1998) (severe chronic headache following operation raised issue of material fact "of whether a sufficiently serious [medical] condition existed"). But here, again, Nelson's complaint appears to

Not Reported in F.Supp.2d, 2002 WL 31075804 (S.D.N.Y.)
(Cite as: 2002 WL 31075804 (S.D.N.Y.))

be not that his dental problems were not treated, but that they were not treated to his liking-namely, by taking out all of the silver (amalgam) fillings in his mouth that were allegedly causing his headaches and memory loss. (Am. Compl. at 4-5; Nelson 4/30/02 Aff. ¶ 6; Nelson 2/22/02 Aff. Ex. 8: Dental Treatment Record.) FN27 Such a disagreement over the proper course of treatment cannot support an Eighth Amendment Claim, especially where plaintiff offers no evidence as to the efficacy of the requested alternative treatment.

> FN27. The November 14, 2000 entry in his Dental Treatment Record states: "Doesn't want any dental filling done on him, he wants me to take out all his silver fillings in his mouth his request has been denied, he refused to sign the refusal slip." (Nelson 2/22/02 Aff. Ex. 8; *see* page 16 above.)

*16 Indeed, Nelson's refusal to accept dental treatment (*see* Nelson 2/22/02 Aff. Ex. 8: Dental Treatment Record) effectively rebuts his claim of deliberate indifference to serious medical needs. *See, e.g., Brown v. Selwin,* 98 Civ. 3008, 1999 WL 756404 at *6-7 (S.D.N.Y. Sept.24, 1999) (finding no deliberate indifference when it was "uncontroverted that [plaintiff] refused medical treatment on several occasions"); *Ross v. Kelly,* 784 F.Supp. 35, 46-47 (W.D.N.Y.) (evidence failed to establish deliberate indifference to medical needs where plaintiff was largely to blame for many of the delays in his treatment due to his second-guessing of physician's advice and refusal of treatment), *aff'd,* 970 F.2d 896 (2d Cir.), *cert. denied,* 506 U.S. 1040, 113 S.Ct. 828, 121 L.Ed.2d 698 (1992).

E. *Nelson's Conspiracy Claims Under §§ 1983 and 1985 Should Be Dismissed*

[5] Nelson alleges that defendants Rodas, Koenigsmann, and Licerio conspired to deny him adequate medical care in violation of 42 U.S.C. §§ 1983 and 1985. (Dkt. No. 40: Am. Compl. at 3-14; Dkt. No. 52: Nelson 4/30/02 Aff. ¶¶ 4-14.) "To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing

damages." *Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir.1999). FN28 "To state a cause of action under § 1985(3), a plaintiff must allege (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." *Thomas v. Roach,* 165 F.3d 137, 146 (2d Cir.1999). Further, the § 1985 conspiracy must also be motivated by " 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." ' *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.,* 7 F.3d 1085, 1088 (2d Cir.1993).

> FN28. *Accord, e.g., Espinal v. Goord,* 00 Civ. 2292, 2001 WL 476070 at *10 (S.D.N.Y. May 7, 2001) (Peck, M.J.); *Sundwall v. Leuba,* No. Civ. A. 300CV1309, 2001 WL 58834 at *8 (D.Conn. Jan.23, 2001), *aff'd,* 28 Fed. Appx. 11 (2d Cir.2001); *Cipolla v. County of Rensselaer,* 129 F.Supp.2d 436, 449 (N.D.N.Y.), *aff'd,* 20 Fed. Appx. 84 (2d Cir.2001); *Santiago v. City of New York,* 98 Civ. 6543, 2000 WL 1532950 at *8 (S.D.N.Y. Oct.17, 2000).

Nelson's conspiracy allegations are entirely conclusory, and should therefore be dismissed. *See, e.g., Leon v. Murphy,* 988 F.2d 303, 311 (2d Cir.1993) (affirming summary judgment dismissing conspiracy claim based only on conclusory allegations); *Rivera v. Goord,* 119 F.Supp.2d 327, 345 (S.D.N.Y.2000) (Plaintiff "alleges no specific facts that would indicate the existence of any kind of conspiracy against him. The mere use of the word 'conspiracy,' without more, does not state a claim under § 1985."). Further, Nelson's § 1985 conspiracy claim should be dismissed for the additional reason that he failed to allege that defendants conspired against him because of any racial or class-based, invidious discriminatory animus. *See, e.g., Brown v. City of Oneonta,* 221 F.3d 329, 341 (2d Cir.2000); *Moore v. Gardner,* 199 F.Supp.2d 17, 24 (W.D.N.Y.2002).

CONCLUSION

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31075804 (S.D.N.Y.)
(Cite as: 2002 WL 31075804 (S.D.N.Y.))

**\*17** For the reasons set forth above, defendants should be granted summary judgment dismissing Nelson's medical claims, and Nelson's remaining claims should be dismissed without prejudice for failure to exhaust administrative remedies.


FILING OF OBJECTIONS TO THIS REPORT AND
RECOMMENDATION


Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Richard C. Casey, 500 Pearl Street, Room 1950, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Casey. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL-CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57-59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237-38 (2d Cir.1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).


S.D.N.Y.,2002.
Nelson v. Rodas
Not Reported in F.Supp.2d, 2002 WL 31075804 (S.D.N.Y.)


END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2006 WL 1133254 (N.D.N.Y.)
(Cite as: 2006 WL 1133254 (N.D.N.Y.))

**H** Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Jose ORRACA, Plaintiff,
v.
T, McCREERY; M. Bertone; Mr. Andrews; T.
Nasaveria; Mr. Wright; Mr. Maly; and Mr. Mayberry,
Defendants.
**No. 9:04-CV-1183.**

April 25, 2006.

Jose Orraca, Pine City, NY, Plaintiff, pro se.

Hon. Eliot Spitzer, Attorney General of the State of New
York, Stephen M. Kerwin, Esq., Asst. Attorney General,
Albany, NY, for Defendants.

***ORDER***

DAVID N. HURD, District Judge.

**\*1** Plaintiff, Jose Orraca, brought this civil rights action
pursuant to 42 U.S.C. § 1983. In a Report
Recommendation dated February 14, 2006, the Honorable
David E. Peebles, United States Magistrate Judge,
recommended that defendants' motion be granted, in part,
and plaintiff's claims against them in their official
capacities for damages be dismissed, based upon the
Eleventh Amendment; that plaintiff's claims against
defendant Maly be dismissed, with leave to replead, based
upon the lack of his personal involvement in the
deprivations alleged; and that plaintiff's claim for
compensatory damages for mental anguish and emotional
distress be dismissed; but that defendants; motion be
denied in all other respects. (Docket No. 33). The
defendants have filed timely objections to the
recommendations of the Magistrate Judge. (Docket No.

34). The plaintiff filed a response. (Docket No. "35").

Based upon a de novo determination of the portions of the
Report-Recommendation to which the parties have
objected, the Report-Recommendation is accepted and
adopted in whole. *See* 28 U.S.C. 636(b)(1).

Accordingly, it is

ORDERED that

1. Defendants' motion to dismiss is GRANTED in part and
DENIED in part;

2. Plaintiff's claims for damages against defendants in their
official capacities is DISMISSED, based upon the
Eleventh Amendment;

3. Plaintiff's claims against defendant Mr. Maly are
DISMISSED;

4. Plaintiff's claim for compensatory damages for mental
anguish and emotional distress is DISMISSED;

5. Defendants' motion is DENIED in all other respects; and

6. The defendants shall file and serve an answer to the
remaining allegations in the complaint on or before May
10, 2006.

IT IS SO ORDERED.
DAVID E. PEEBLES, Magistrate Judge.

*REPORT AND RECOMMENDATION*

Not Reported in F.Supp.2d, 2006 WL 1133254 (N.D.N.Y.)
(Cite as: 2006 WL 1133254 (N.D.N.Y.))

Plaintiff Jose Orraca, a New York state prison inmate who is proceeding *pro se* and *in forma pauperis,* has commenced this civil rights action pursuant to 42 U.S.C. § 1983 against seven individuals employed by the New York State Department of Correctional Services ("DOCS") at the prison facility in which he was incarcerated at the relevant times. In his complaint, plaintiff alleges that the defendants took various actions against him in retaliation for having complained of the loss or destruction of legal documents and personal property. Plaintiff's complaint names the seven defendants in both their individual and official capacities, and seeks recovery of compensatory and punitive damages.

In response to plaintiff's complaint, defendants have moved seeking dismissal of all or portions of plaintiff's claims on various bases including, *inter alia,* plaintiff's failure to exhaust available administrative remedies before commencing suit. Based upon my review of plaintiff's complaint and defendants' moving papers, I recommend dismissal of plaintiff's damage claims against the defendants in their official capacities, and of his claim for compensatory damages for mental anguish and emotional distress based upon his failure to plead the existence of physical injury, but denial of the portions of defendants' motion seeking additional relief.

I. *BACKGROUND* [FN1]

> FN1. In light of the procedural posture of this case, the following facts are taken from plaintiff's complaint, which has been interpreted in a light most favorable to him, and with all inferences drawn and ambiguities resolved in his favor. *Cooper v. Pate,* 378 U.S. 546, 546, 84 S.Ct. 1733, 1734 (1964).

*2 Plaintiff is a New York State prison inmate entrusted to the custody of the DOCS and, at the times relevant to his complaint, was confined within the Shawangunk Correctional Facility ("Shawangunk"). While at Shawangunk, plaintiff has complained to prison officials regarding the loss or destruction of legal transcripts and other court papers, as well as personal property, apparently including civilian clothes which were sent to him for use when appearing in United States District Court

for the Western District of New York in connection with a civil action brought by him in that forum. [FN2]

> FN2. An attachment to plaintiff's complaint reflects that he brought an action in the United States District Court for the Western District of New York, entitled *Orraca v. Cetti, et al.,* Civil Action No. 96-CV-6385 (W.D.N.Y., filed 1996). According to publicly available records regarding that suit, that action concerned matters which occurred during the course of plaintiff's imprisonment in the Attica Correctional Facility.

After lodging complaints regarding the loss and destruction of property while at Shawangunk and pursuing grievances associated with those issues, plaintiff began experiencing recrimination. In retaliation for voicing those complaints, plaintiff has been issued five drug-related misbehavior reports by defendants T. McCreary and M. Bertone, beginning in October of 2003, resulting in Tier III disciplinary proceedings against him. [FN3] According to the plaintiff, defendants' actions have resulted in periods of disciplinary keeplock and special housing unit ("SHU") confinement for him, the requirement that he undergo drug counseling, denial of his participation in a family reunion program, and the further destruction of legal materials and corresponding denial of court access.

> FN3. The DOCS conducts three types of inmate disciplinary hearings. Tier I hearings address the least serious infractions, and can result in minor punishments such as the loss of recreation privileges. Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the Special Housing Unit (SHU). Tier III hearings concern the most serious violations, and could result in unlimited SHU confinement and the loss of "good time" credits. *See Hynes v. Squillace,* 143 F.3d 653, 655 (2d Cir.), *cert. denied,* 525 U.S. 907, 119 S.Ct. 246 (1998).

II. *PROCEDURAL HISTORY*

Plaintiff, who appears to be an experienced *pro se* litigant,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1133254 (N.D.N.Y.)
(Cite as: 2006 WL 1133254 (N.D.N.Y.))

commenced this action on February 14, 2004.[FN4] Dkt. No. 1. Named as defendants in plaintiff's complaint are seven DOCS workers employed at Shawangunk, including T. McCreary, a corrections officer; M. Bertone, a corrections sergeant; (first name unknown) Andrews, a hearing officer; T. Nasaveria, a property officer; (first name unknown) Wright, a corrections lieutenant; (first name unknown) Maly, Deputy Superintendent of Security at the facility; and C. Mayberry, a recreational officer. Although somewhat ambiguous on this score, plaintiff's complaint appears to assert only a claim of unlawful retaliation against the various defendants.

> FN4. A search of this court's records reflects the filing by plaintiff of six other lawsuits in this district, in addition to the instant action, arising from the terms of his confinement. *See Orraca v. Pilatich,* Civil Action No. 9:05-CV-1305 (DNH/GHL) (N.D.N .Y., filed Oct. 14, 2005); *Orraca v. Lee,* 9:04-CV-1249 (DNH/DRH) (N.D.N.Y., filed Oct. 27, 2004); *Orraca v. Clark,* Civil Action No. 9:00-CV-766 (TJM/GJD) (N.D.N.Y., closed May 11, 2004); *Orraca v. Estabrook,* Civil Action No. 9:99-CV-1216 (NAM/GLS) (N.D.N.Y., closed Mar. 28, 2002); *Orraca v. Maloy,* Civil Action No. 9:96-CV-2000 (NAM/DEP) (N.D.N.Y., closed Mar. 22, 2001); *Orraca v. Walker,* Civil Action No. 6:98-CV-448 (LEK) (N.D.N.Y., closed March 29, 2000). In addition, it appears that plaintiff has filed at least two suits in the Western District of New York, including *Orraca v. Cetti,* Civil Action No. 96-CV-6385 (DGL/JWF) (W.D.N.Y., filed 1996); and *Orraca v. Kelly,* Civil Action No. 1:95-CV-729 (WMS) (W.D.N.Y., filed 1995). Plaintiff's responsive motion papers also disclose the existence of at least one action commenced by the plaintiff in the Southern District of New York, *Orraca v. Walker,* Civil Action No. 00-CV-5503 (LMM) (S.D.N.Y., filed 2000). *See* Orraca Decl. (Dkt. No. 32) at 3. All of the foregoing matters appear to have involved claims associated with his DOCS confinement. Notwithstanding the commencement of these actions, when asked in the form complaint which he filed with the court in this action whether he had commenced other lawsuits in state or federal court relating to his imprisonment, plaintiff responded that he had

not. *See* Complaint (Dkt. No. 1) § I(a).

In lieu of answering plaintiff's complaint, defendants have instead moved seeking its dismissal on a variety of grounds, arguing that 1) plaintiff's claims against them in their official capacities are barred by the Eleventh Amendment; 2) plaintiff's complaint is subject to dismissal in its entirety based upon his failure to exhaust available administrative remedies; 3) plaintiff's complaint fails to allege the requisite personal involvement with regard to all or some of the defendants named; and 4) plaintiff's compensatory damages cause of action is subject to dismissal under 42 U.S.C. § 1997e(e), in light of his failure to allege that he suffered physical injury as a result of defendants' actions. Dkt. No. 21. Plaintiff has since submitted both a declaration and exhibits (Dkt. No. 32) in opposition to defendants' motion, which is now ripe for determination and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See also* Fed.R.Civ.P. 72(b).

III. *DISCUSSION*

A. *Dismissal Motion Standard*

**\*3** A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading, applying a standard which is neither controversial nor rigorous in its requirements. Under that provision, a court may not dismiss a complaint unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him [or her] to relief." *Davis v. Goord,* 320 F.3d 346, 350 (2d Cir.2003) (citing, *inter alia, Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 102 (1957)). In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true, and draw all inferences in favor of the non-moving party. *Cooper,* 378 U.S. at 546, 84 S.Ct. at 1734; *Miller v. Wolpoff & Abramson, LLP,* 321 F.3d 292, 300 (2d Cir.), *cert. denied,* 540 U.S. 823, 124 S.Ct. 153 (2003); *Burke v. Gregory,* 356 F.Supp.2d 179, 182 (N.D.N.Y.2005) (Kahn, J.). The court's determination as to the sufficiency of a complaint must take into consideration the fact that the governing

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1133254 (N.D.N.Y.)
(Cite as: 2006 WL 1133254 (N.D.N.Y.))

rules require only that the defendant be afforded "fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley, 355 U.S. at 47, 78 S.Ct. at 103; see Phillips v. Girdich, 408 F.3d 124, 127-29 (2d Cir.2005).

When assessing the sufficiency of a complaint against this backdrop, particular deference must be afforded to a *pro se* litigant; a court must generously construe a *pro se* plaintiff's complaint when determining whether it states a cognizable cause of action. Davis, 320 F.3d at 350 (citation omitted). A complaint drafted by an uncounselled plaintiff should not be dismissed unless "it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations." Boddie v. Schnieder, 105 F.3d 857, 860 (2d Cir.1997) (citation omitted). In the event of a perceived deficiency in a *pro se* plaintiff's complaint, a court should not dismiss without granting leave to amend at least once if there is any indication that a valid claim could potentially be stated. Branum v. Clark, 927 F.2d 698, 704-05 (2d Cir.1991); see also Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

B. *Eleventh Amendment*

In his description of the parties to this action, plaintiff identifies the seven DOCS employees named as defendants and states that "[e]ach defendant is being sued in their [sic] individual and official capacity." Complaint (Dkt. No. 1) at 3 (unnumbered). Plaintiff's prayer for relief reiterates his intention to recover damages against the defendants both individually and in their official capacities, stating that he requests the entry of judgment

[i]n favor of plaintiff for actual compensatory and consequential damages in the amount of $350,000.00 *(three hundred and fifty thousand dollars)*, three hundred and fifty thousand dollars in punitive damages against defendants *T. McCreery, M. Bertone, and T. Nagaveria* [sic] in their individual and official acting capacity [sic].

*4 *Id.* at 7 (emphasis in original). Defendants assert that plaintiff's damage claims against them in their official capacities are barred by the Eleventh Amendment.

The Eleventh Amendment protects a state against suits brought in federal court by citizens of that state, regardless of the nature of the relief sought. Alabama v. Pugh, 438 U.S. 781, 782, 98 S.Ct. 3057, 3057-58 (1978). This absolute immunity which states enjoy under the Eleventh Amendment extends to both state agencies and state officials sued in their official capacities, when the essence of the claim involved is one against a state as the real party in interest. Richards v. State of New York Appellate Division, Second Department, 597 F.Supp. 689, 691 (E.D.N.Y.1984) (citing *Pugh* and Cory v. White, 457 U.S. 85, 89-91 102 S.Ct. 2325, 2328-29 (1982)). "To the extent that a state official is sued for damages in his official capacity ... the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." [FN5] Hafer v. Melo, 502 U.S. 21, 25, 112 S.Ct. 358, 361 (1991); Kentucky v. Graham, 473 U.S. 159, 166-67, 105 S.Ct. 3099, 3105 (1985).

> FN5. By contrast, the Eleventh Amendment does not establish a barrier against suits seeking to impose individual or personal liability on state officials under section 1983. See Hafer, 502 U.S. at 30-31, 112 S.Ct. at 364-65.

Plaintiff's complaint in this action seeks only money damages, without additionally requesting equitable relief.[FN6] Since plaintiff's damage claims against the defendants in their official capacities are plainly barred by the Eleventh Amendment, I recommend their dismissal.

> FN6. The Eleventh Amendment does not preclude maintenance of an action against a governmental employee in his or her official capacity seeking only equitable relief. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 n. 10, 109 S.Ct. 2304, 2312 n. 10 (1989).

C. *Exhaustion of Remedies*

Responding to questions set forth in his form complaint, the plaintiff answered both "yes" and "no" to inquiries regarding both the existence of a grievance procedure at

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1133254 (N.D.N.Y.)
(Cite as: 2006 WL 1133254 (N.D.N.Y.))

Shawangunk and the filing of grievances related to the matters set forth in his complaint. Complaint (Dkt. No. 1) at 4. When asked to describe the steps taken to present grievances relating to the matters in suit, plaintiff answered that "[g]rievance does not provide relief that I am seeking." *Id.* Responding to an inquiry regarding the result of his grievance filings, plaintiff stated that

[a]llegations of employee harassment/discrimination are of particular concern to the administrators of department facilities. Prison Directive 4040(VII) after exercising initial obligations (reported the incidents to supervisors first) after being again threaten [sic] plaintiff was discouraged to process with this complaint any further with the facility out of fear for his safety.

*Id.* Citing the equivocal nature of this response, defendants argue that plaintiff's complaint fails to reflect compliance with the requirement that he exhaust available administrative remedies before commencing suit.

The Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104-134, 110 Stat. 1321 (1996), altered the inmate litigation landscape considerably, imposing several restrictions on the ability of prisoners to maintain federal civil rights actions. One such restriction introduced by the PLRA requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 992 (2002).

**\*5** New York prison inmates are subject to an Inmate Grievance Program established by the DOCS, and recognized as an "available" remedy for purposes of the PLRA. *See Mingues v. Nelson,* No. 96 CV 5396, 2004 WL 324898, at \*4 (S.D.N.Y. Feb. 20, 2004) (citing *Mojias v. Johnson,* 351 F.3d 606 (2003) and *Snider v. Melindez,* 199 F.3d 108, 112-13 (2d Cir.1999)). The New York Inmate Grievance Program consists of a three-step

review process. First, a written grievance is submitted to the Inmate Grievance Review Committee ("IGRC") within fourteen days of the incident.[FN7] 7 N.Y.C.R.R. § 701.7(a). The IGRC, which is comprised of inmates and facility employees, then issues a determination regarding the grievance. 7 N.Y.C.R.R. § 701.7(a). If an appeal is filed, the superintendent of the facility next reviews the IGRC's determination and issues a decision. *Id.* § 701.7(b). The third level of the process affords the inmate the right to appeal the superintendent's ruling to the Central Office Review Committee ("CORC"), which makes the final administrative decision. *Id.* § 701.7(c). Only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to section 1983 in federal court. *Reyes v. Punzal,* 206 F.Supp.2d 431, 432 (W.D.N . Y.2002) (citing, *inter alia,* *Sulton v. Greiner,* No. 00 Civ. 0727, 2000 WL 1809284, at \*3 (S.D.N.Y. Dec. 11, 2000)).

FN7. The Inmate Grievance Program supervisor may waive the timeliness of the grievance submission due to "mitigating circumstances." 7 N.Y.C.R.R. § 701.7(a)(1).

In their motion, defendants interpret plaintiff's responses to the form complaint's grievance inquiries as a concession that he did not avail himself of the Inmate Grievance Program with regard to the claims now asserted. *See* Defendants' Memorandum (Dkt. No. 21) at 8. Interpreted in a light most favorable to him, however, plaintiff's complaint could be construed as avowing both that he did file grievances, where appropriate, and that in certain instances he was discouraged by prison officials from pursuing matters through the grievance process. Since the exertion of threats and intimidation by prison officials in an effort to dissuade a prisoner from pursuing claims through the grievance process can, under appropriate circumstances, provide a basis for excusing the PLRA's exhaustion requirement, *Hemphill v. State of New York,* 380 F.3d 680, 683-84, 688 (2d Cir.2004), I am unable to conclude as a matter of law, based upon plaintiff's complaint, that his claims are subject to dismissal for failure to exhaust.[FN8]

FN8. Among the materials submitted by the plaintiff in opposition to defendants' motion are documents reflecting the filing by him of several grievances, many of which addressed the matters

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1133254 (N.D.N.Y.)
(Cite as: 2006 WL 1133254 (N.D.N.Y.))

at issue in this suit, and some of which were pursued by him to the CORC. *See, e.g.,* Orraca Decl. (Dkt. No. 32) at 9, 29, 43, 45, 47-49. While as a technical matter the court may not directly consider these documents in connection with defendants' dismissal motion without converting it to a summary judgment application, in light of plaintiff's *pro se* status I will read plaintiff's opposition papers in conjunction with his complaint in order to assess the sufficiency of evidence as to plaintiff's efforts to exhaust his administrative remedies. *Massey v. Fisher,* No. 02CIV10281, 2004 WL 1908220, at *3 (S.D.N.Y. Aug. 26, 2004); *Negron v. Macomber,* No. 95 Civ. 4151, 1999 WL 608777, at *5 (S.D.N.Y. Aug. 11, 1999); *see also Gill v. Mooney,* 824 F.2d 192, 195 (2d Cir.1987); *Tsai v. The Rockefeller Univ.,* 137 F.Supp.2d 276, 280 (S.D.N.Y.2001); *Donahue v. United States Dep't of Justice,* 751 F.Supp. 45, 49 (S.D.N.Y.1990)

Because plaintiff's complaint, construed in a light most favorable to him and with all ambiguities resolved in his favor, does not firmly establish that plaintiff failed to satisfy his administrative exhaustion requirement under the PLRA before commencing this action, I recommend denial of defendants' motion to dismiss plaintiff's complaint for failure to exhaust available administrative remedies.

D. *Personal Involvement*

In their motion, defendants also attack the sufficiency of plaintiff's allegations regarding their personal involvement in the constitutional deprivations alleged.

**\*6** Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282 (1978)). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible

connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).

A supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor-there is no *respondeat superior* liability under section 1983. *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright,* 21 F.3d at 501. A supervisory official can, however, be liable in one of several ways: 1) the supervisor may have directly participated in the challenged conduct; 2) the supervisor, after learning of the violation through a report or appeal, may have failed to remedy the wrong; 3) the supervisor may have created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) the supervisor may have been grossly negligent in managing the subordinates who caused the unlawful event; or 5) the supervisor may have failed to act on information indicating that unconstitutional acts were occurring. *Richardson,* 347 F.3d at 435; *Wright,* 21 F.3d at 501; *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986).

Defendants' motion apparently concedes the sufficiency of plaintiff's allegations regarding the conduct of defendants McCreery and Bertone, particularly in filing false misbehavior reports allegedly in retaliation for Orraca having engaged in protected activity. Defendants' Memorandum (Dkt. No. 21) at 1. Defendants do, however, challenge the sufficiency of plaintiff's allegations of personal involvement on the part of the remaining defendants.

In his complaint, Orraca alleges that defendants Andrews, Nasaveria, Wright and Mayberry "are either part of the writing of misbehavior reports or conducted the hearings of the violations [sic] or were aware of the harassment and discrimination against the plaintiff and did nothing to stop the violations." Complaint (Dkt. No. 1) at 3. While these allegations are both conclusory and skeletal, they reveal a potential basis for finding their personal involvement in the violations alleged in plaintiff's complaint. *See Richardson,* 347 F.3d at 435.

The allegations against the remaining defendant, Deputy Superintendent Maly, stand on different footing. A

Not Reported in F.Supp.2d, 2006 WL 1133254 (N.D.N.Y.)
(Cite as: 2006 WL 1133254 (N.D.N.Y.))

thorough search of plaintiff's complaint and the attached documents fails to disclose any basis on which to conclude that defendant Maly was personally involved in any of the retaliatory conduct alleged to a sufficient degree to support a finding of liability on his part. Accordingly, I recommend dismissal of plaintiff's claims as against defendant Maly, with leave to replead. See *Hucks v. Artuz,* No. 99 Civ. 10420, 2001 WL 210238, at *5 (S.D.N.Y. Feb. 27, 2001) (no personal involvement when defendant named in caption but not described in body of complaint); *Dove v. Fordham Univ.,* 56 F.Supp.2d 330, 335 (S.D.N.Y.1999) (same); *Brown v. Costello,* 905 F.Supp. 65, 77 (N.D.N.Y.1995) (same)

E. *42 U.S.C. § 1997e(e)*

*7 In their next and final point, defendants argue that plaintiff's failure to allege he suffered physical injury as a result of the acts complained of is fatal to his claims altogether, and should result in his dismissal of his complaint. Plaintiff opposes the granting of that relief.

Section 1997e(e), a provision added by the Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104-134, 110 Stat. 1321 (1996), provides in relevant part that

[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e). Section 1997e(e) includes within its purview alleged constitutional violations. *Thompson v. Carter,* 284 F.3d 411, 417-18 (2d Cir.2002); *Petty v. Goord,* No. 00 Civ.803, 2002 WL 31458240, at *8-*9 (S.D.N.Y. Nov. 4, 2002). Claims brought by inmates pursuant to section 1983 for emotional damages unrelated to any physical injury should be dismissed. *Shariff v. Coombe,* No. 96 Civ. 3001, 2002 WL 1392164, at *4 (S.D.N.Y. June 26, 2002). The absence of physical injury does not totally bar claims by inmates under section 1983, however, since section 1997e(e) does not preclude claims for nominal damages, punitive damages, or declaratory or injunctive relief. *Id.,* at *5 (citation omitted).

A thorough search of plaintiff's complaint fails to reveal any indication that he has suffered physical injury as a result of the retaliatory acts of which he complains. The lack of such an allegation is fatal to Orraca's quest for recovery for compensatory damages for mental anguish and emotional distress, in light of the preclusive effect of 42 U.S.C. § 1997e(e). As plaintiff correctly argues, however, that section does not require dismissal of his complaint, as now sought by the defendants; instead, plaintiff should be afforded the opportunity to pursue his claims and seek recovery of other forms of appropriate relief, including nominal damages, which are potentially recoverable despite operation of section 1997e(e).[FN9] *See Thompson v. Carter,* 284 F.3d 411, 418 (2d Cir.2002). I therefore recommend that this portion of defendants' motion be granted only to the extend of dismissing plaintiff's claim for compensatory damages for mental anguish and emotional distress.

FN9. I note that plaintiff may well be found entitled to recover compensatory damages for the loss of any property allegedly taken or destroyed in retaliation for his having engaged in protected activity. Such a recovery would not be precluded by 42 U.S.C. § 1997e(e) based upon plaintiff's failure to plead and prove the existence of physical injury. *See, e.g., Lipton v. County of Orange, New York,* 315 F.Supp.2d 434, 457-58 (S.D.N.Y.2004).

IV. *SUMMARY AND RECOMMENDATION*

Having reviewed the four corners of plaintiff's complaint and interpreted its allegations liberally, and in a manner most favorable to him, I find that it adequately pleads a basis for finding personal involvement on the part of all of the defendants, with the exception of Deputy Superintendent for Security Maly, in the constitutional violations alleged. As to defendant Maly, since his involvement in the violations alleged is not readily apparent, Orraca's claims against him should be dismissed, with leave to replead.

At this early juncture, and based upon the scant record

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1133254 (N.D.N.Y.)
(Cite as: 2006 WL 1133254 (N.D.N.Y.))

now before the court, I am unable to conclude that plaintiff either did not pursue available administrative remedies with regard to the matters complained of or cannot establish a basis for being excused from that requirement. I therefore recommend denial of the portion of defendants' motion seeking dismissal of his complaint for failure to exhaust administrative remedies.

**\*8** Turning to the legal sufficiency of plaintiff's damage claims, I find that to the extent he has named the defendants in their official capacities, such claims are barred by the Eleventh Amendment. Additionally, I find that plaintiff's claims for recovery of compensatory damages for mental anguish and emotional distress are subject to dismissal under 42 U.S.C. § 1997e(e), in light of his failure to plead the existence of physical injury resulting from the constitutional violations alleged.

Based upon the foregoing it is hereby

RECOMMENDED that defendants' motion be GRANTED, in part, and plaintiff's claims against them in their official capacities for damages be DISMISSED, based upon the Eleventh Amendment; that plaintiff's claims against defendant Maly be DISMISSED, with leave to replead, based upon the lack of his personal involvement in the deprivations alleged; and that plaintiff's claim for compensatory damages for mental anguish and emotional distress be DISMISSED; but that defendants' motion be DENIED in all other respects.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties by regular mail.

N.D.N.Y.,2006.
Orraca v. McCreery
Not Reported in F.Supp.2d, 2006 WL 1133254 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2009 WL 3246818 (N.D.N.Y.)
(Cite as: 2009 WL 3246818 (N.D.N.Y.))

**C**  Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
David **ROBINSON**, Plaintiff,
v.
**NEW YORK** STATE DEPARTMENT OF CORRECTION
SERVICES, et al., Defendants.
No. 9:08-CV-0911.

Sept. 30, 2009.

David Robinson, pro se.

KRista A. Rock, Assistant Attorney General, for Defendants.

**DECISION & ORDER**

THOMAS J. McAVOY, Senior District Judge.

**\*1** This *pro se* civil rights action pursuant to 42 U.S.C. § 1983 was referred to the Hon. Gustave J. Di Bianco, United States Magistrate Judge, for a Report-Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

The Report-Recommendation dated September 8, 2009 recommended that the Defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12 be granted. Plaintiff filed objections to the Report-Recommendation arguing only that he did not consent to have his complaint adjudicated by a Magistrate Judge, the Magistrate Judge misconstrued the facts in litigation and the law governing its conduct, and it was the fault of the United States Marshal's service that service was not properly effectuated.

When objections to a magistrate judge's Report-Recommendation are lodged, the Court makes a *"de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See* 28 U.S.C. § 636(b)(1). After such a review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

Having reviewed the record *de novo* and having considered the issues raised in the Plaintiff's objections, this Court has determined to accept and adopt the recommendation of the Magistrate Judge for the reasons stated in the Report-Recommendation.

It is therefore **ORDERED** that Defendants' motion to dismiss is **GRANTED** and the Complaint is **DISMISSED IN ITS ENTIRETY.**

**IT IS SO ORDERED.**

**REPORT-RECOMMENDATION**

GUSTAVE J. DiBIANCO, United States Magistrate Judge.

This matter has been referred to the undersigned for Report and Recommendation by the Honorable Thomas J. McAvoy, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

In this civil rights complaint, plaintiff, a former inmate, alleges that defendants delayed plaintiff's access to the United States Mail; assigned him to be double-bunked; subjected him to excessive searches; limited his use of a "warming stove"; harassed him; and refused to address plaintiff's grievances. (Dkt. No. 1 ("Compl.")). Plaintiff claims that defendants' actions violated the First, Fifth, Sixth, Eighth, Ninth, Tenth, and Fourteenth Amendments. Plaintiff cites 42 U.S.C. §§ 1983, 1985, 1986, 1987, and 1988. Plaintiff also claims that defendants have violated 18 U.S.C. §§ 241, 242.[FN1] Plaintiff seeks injunctive [FN2] as well as substantial monetary relief.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3246818 (N.D.N.Y.)
(Cite as: 2009 WL 3246818 (N.D.N.Y.))

FN1. These statutes are criminal in nature, and there is no private right of action to enforce federal criminal laws. *See* *Dugar v. Coughlin* 613 F.Supp. 849, 852 n. 1 (S.D.N.Y.1985).

FN2. Because plaintiff is no longer incarcerated, any claims for injunctive relief may be dismissed as moot. *See* *Pugh v. Goord,* 571 F.Supp.2d 477, 489-90 (S.D.N.Y.2008) (where an inmate has been released from prison, his claims for injunctive relief based on the conditions of his incarceration must be dismissed as moot).

Presently before the court is defendants' motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6). (Dkt. No. 41). Plaintiff has filed a response in opposition to the motion. (Dkt. No. 46). For the following reasons, this court recommends that defendants' motion to dismiss be **GRANTED** and the complaint be dismissed in its entirety.

**DISCUSSION**

**1. *Motion to Dismiss***

**\*2** To survive a motion to dismiss, the plaintiff must provide "the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *Camarillo v. Carrols Corp.,* 518 F.3d 153, 156 (2d Cir.2008) (quoting *inter alia* *ATSI Communications, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007)). *See* *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007). Plaintiff's factual allegations must be sufficient to give the defendant "fair notice of what the claim is and the grounds upon which it rests." *Id.* (citing *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.,* 507 F.3d 117, 121 (2d Cir.2007)). *See* *Ashcroft v. Iqbal,* --- U .S. ----, 129 S.Ct. 1937, 1949 (May 18, 2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."). When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus,* 551 U.S. 89, 93-94 (2007) (citations omitted).

The court must heed its particular obligation to treat *pro se*

pleadings with liberality. *Phillips v. Girdich,* 408 F.3d 124, 128 (2d Cir.2005); *Tapia-Ortiz v. Doe,* 171 F.3d 150, 152 (2d Cir.1999) (per curiam). In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference. *Rothman v. Gregor,* 220 F.3d 81, 88 (2d Cir.2000) (citing *Cosmas v. Hassett,* 886 F.2d 8, 13 (2d Cir.1989)).

**2. *Facts***

Plaintiff states that he has nine claims in this action. (Compl. at ¶¶ 112-29). The complaint is comprised of three parts. In the first part, plaintiff gives a generally chronological recounting of the events that are the bases of the alleged constitutional violations. (Compl. at ¶¶ 24-111). In the second part, plaintiff summarizes his nine causes of action. (Compl. at ¶¶ 112-29). The third part of the complaint consists of 52 pages that include copies of his "grievances," legal arguments, and supporting documents for some of his claims. (Dkt. No. 1, *Exhibits*[FN3]). The court will attempt to discuss the facts separately as to each claim.

FN3. When filing the complaint on the court's electronic filing system, the Clerk divided the Complaint into two parts. On the docket, the first part is entitled "Main Document" and includes the first two sections of plaintiff's Complaint as described above. These sections are consecutive numbered paragraphs 1-159. On the docket, the second part is entitled "Statement of Facts" and includes the third 52-page section of plaintiff's Complaint as described above. While the first page is titled "Statement of Facts," the document appears to be a grievance. Plaintiff also includes a variety of other documents. For ease, the court will refer to this as the Exhibits. The court has numbered the pages consecutively for citation purposes.

**A. *Interference with Mail***

Plaintiff's first two claims (Compl. at ¶¶ 112-13, 114-15) relate to the handling of his mail. Plaintiff asserts that the New York State Department of Correctional Services ("NYSDOCS"), the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3246818 (N.D.N.Y.)
(Cite as: 2009 WL 3246818 (N.D.N.Y.))

Central Office Review Committee ("CORC"), and individual defendants Rivera, Glover, and Jessen [FN4] violated plaintiff's rights under the First, Fifth and Fourteenth Amendments. (Compl. at ¶¶ 113, 115).

> FN4. George Jessen is listed in the caption of the Complaint, and is mentioned several times in the Complaint. However, it appears that Mr. Jessen was not listed on the docket in the list of defendants. Furthermore, no attempt was made to serve defendant Jessen.

Plaintiff discusses in detail three instances of problems with his mail, March 16, April 8, and June 5, 2008. (Compl. at ¶¶ 24, 26, 34). Plaintiff alleges that on March 16, 2008, he submitted two items to be mailed, one was legal correspondence, and the other personal correspondence. (Compl. at ¶ 24). Plaintiff alleges that the legal correspondence "was issued to the Postal Service by defendant Glover, the Senior Mail Clerk, on or about March 19, 2008," but that the personal correspondence was returned to plaintiff on March 28, 2008. *Id.* Plaintiff argues that defendant Glover, "unlawfully obstructed/delayed/tampered with plaintiff's correspondence." *Id.* Plaintiff alleges that this conduct interfered with his right to correspond and access to the court. *Id.* Plaintiff states that he submitted a written inquiry, and that defendant Glover responded in writing

> **\*3** admitting that she unlawfully obstructed/delayed/tampered with plaintiff's afore-stated correspondence. Attributing her actions upon DOCS policy of prohibiting prisoner's access to their accounts the day before and the day of prisoner's scheduled commissary date, the busy volume of mail due to the approaching holiday and unintended negligence on her part.

(Compl. at ¶ 25).

Plaintiff states that the second incident occurred on April 8, 2008. (Compl. at ¶ 26). Plaintiff states that he submitted legal correspondence, together with a disbursement form to pay the cost of postage. *Id.* Plaintiff states that this piece of mail was not given to the Postal Service for mailing until April 14, 2008. *Id.* Plaintiff alleges that defendant Glover was responsible for this delay. *Id.* The third occasion was on June 5, 2008. (Compl.

at ¶ 34). Plaintiff states that he submitted legal correspondence on June 5, 2008, and on June 6, 2008, the correspondence "was rejected by defendant Glover, per directions of defendant Jessen." *Id.* Plaintiff argues that this was an unlawful rejection of his correspondence. *Id.* at ¶ 35.

In addition to the three incidents detailed above, plaintiff also lists approximately eight other occasions where submission of his mail to the United States Postal Service was delayed [FN5]. (Compl. at ¶ 32).

> FN5. Plaintiff did not include information about what day of the week he submitted his mail to the Mail Clerk. The court was able to reconstruct that information based on a calendar.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3246818 (N.D.N.Y.)
(Cite as: 2009 WL 3246818 (N.D.N.Y.))

| Date Submitted by Plaintiff/Day | Type of Correspondence | Date Submitted to U.S.P.S./Day |
|---|---|---|
| April 28, 2008/Mon. | Legal | May 2, 2008/Fri. |
| May 29, 2008/Thurs. | Legal | June 2, 2008/Mon. |
| June 5, 2008/Thurs. | Legal | June 9, 2008/Mon. |
| June 8, 2008/Sun. | Legal | June 12, 2008/Thurs. |
| June 19, 2008/Thurs. | Legal | June 23, 2008/Mon. |
| July 3, 2008/Thurs. | Legal | July 7, 2008/Mon. |
| July 3, 2008/Thurs. | Legal | July 10, 2008/Thurs. |
| July 15, 2008/Tues. | Legal | July 18, 2008/Fri. |

*Id.* Plaintiff submits a number of completed forms titled "Disbursement or Refund Request," which appear to be the forms used by inmates to draw on their available funds to pay for postage. (Dkt. No. 1, *Exhibits* at 4, 6, 8, 11-15) (IAS-**2706** Forms). The forms are largely illegible, but generally seem to confirm that plaintiff submitted these forms with his correspondence to pay for the postage. *Id.*

Plaintiff basically alleges that defendant Glover violated NYSDOCS policy requiring all mail to be processed and delivered to the United States Postal Service "the next day." (Compl. at ¶ 33). Plaintiff claims that defendants were "practicing" a policy, requiring the approval of his disbursement form prior to issuing the inmate any required postage for mail. This policy prevented an inmate who was attempting to purchase postage from accessing his account for three days if he had purchased something from the commissary. (*Id.* at ¶ 30). Plaintiff claims that, as a result of this "practice," his mail was delayed until the IAS-**2708** advance form was approved.

**B. "Double-Bunking"**

**\*4** Plaintiff states that his third cause of action is against defendants State Commission on Corrections ("SCOC"), NYSDOCS, Rivera, and Neuwirth. (Compl. at ¶ 116). Plaintiff states that on March 26, 2008, he submitted a request to defendant Supt. Rivera to be moved to a "single" cell. (Compl. at ¶ 37). Plaintiff claims that his assignment to double-bunked cell was unlawful and discriminatory. *Id.*

Plaintiff states that on April 1, 2008, he met with defendant Neuwirth to discuss the double-bunking. (Compl. at ¶ 38).

During the conversation, defendant Neuwirth asked plaintiff "for specific statutes prohibiting double-bunking." *Id.* Plaintiff gave a general answer that it was the obligation of the employees of the correctional facility to understand the statutes that govern the policies at the facility. *Id.* Plaintiff states that defendant Neuwirth threatened to give plaintiff a ticket for refusing a direct order. *Id.* Plaintiff claims that he was not refusing a direct order, but needed time research the issue. *Id.* Plaintiff states that defendant Neuwirth then threatened to issue a Misbehavior Report. *Id.*

Plaintiff filed a grievance on May 16, 2008 to complain about defendant Neuwirth's conduct, and about plaintiff's housing situation. (Compl. at ¶ 42). Plaintiff states that his "grievance has not been disposed, unlawfully suppressed." *Id.* at ¶ 50. Plaintiff argues that

> SCOC issued a variance in accordance with the relevant statute of NYCRR, (Double occupancy housing units *originally designated for double occupancy* ), which unlawfully allowed Wallkill to convert 72 units to house two inmates. Wallkill;s [sic] units are not double occupancy units originally designated and constructed for double occupancy, rendering SCOC's variance, void and unlawful on its face.

*Id.* at ¶ 43 (emphasis in original). Plaintiff further argues that these conditions subject "all Wallkill prisoners" to standards that are "below the minimum standards governing other state prisoners." *Id.* at ¶ 48.

**C. Cell Searches**

Plaintiff's fourth cause of action is against defendants Rivera, Amado, Jessen, Calender [FN6], and Scott. (Compl. at ¶ 118).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3246818 (N.D.N.Y.)
(Cite as: 2009 WL 3246818 (N.D.N.Y.))

However, in plaintiff's statement of this claim, he includes allegations against defendant Neuwirth.

> **FN6.** Defendant Calender was not served with process. A summons in his name was issued in November 2008 (Dkt. No. 12), but was returned unexecuted in March 2009 (Dkt. No. 42). The docket indicates that service was not attempted a second time.

Plaintiff states that his "living quarters and property" were searched by defendant Scott on March 20 and March 26, 2008. (Compl. at ¶ 52). On March 26, 2008, he asked defendant Amado to provide plaintiff with "copies of the documents that authorized these searches." *Id.* Plaintiff states that on March 29, 2008, he met with defendant Calender, and plaintiff was informed that random searches were selected by computer program. *Id.* Plaintiff stated that he informed defendant Calender that the searches were too frequent, and the policy authorizing them was unlawful. *Id.*

Plaintiff states that his "living quarters and property" were searched again by defendant Scott on May 7, 2008, allegedly authorized by defendant Calender. (Compl. at ¶ 53). Plaintiff states that he filed a grievance, and that the grievance "has not been disposed, unlawfully suppressed." *Id.* Plaintiff states that he witnessed frequent searches of other inmates, and that this issue of "perpetual, harassing searches" was brought up at the Inmate Liaison Committee, which took the issue up with defendants Rivera, Amado, Jessen, and Neuwirth, during the May 29, 2008 meeting. *Id.* at ¶ 54. Plaintiff states that his quarters were also searched on May 20, June 18, June 22, July 24, August 6, August 7, and August 13, 2008. (Compl. at ¶ 55).

### D. Warming Stove Privileges

**\*5** Plaintiff's fifth and sixth claims are about three separate revocations of the privilege to use warming stoves. (Compl. at ¶¶ 120-23). The fifth cause of action names defendants Rivera, Amado, Scott, and Calender. *Id.* at 120-21. The sixth cause of action names only defendant Marrero.[FN7] *Id.* at 122-23. Plaintiff states that Wallkill Correctional Facility allows the use of warming stoves. He argues that "[r]evocation of this privilege, must be in accordance to a constitutionally sound policy, and never be arbitrary or caprious [sic], or administered

for the purpose of retaliation or revenge." (Compl. at ¶ 59). Plaintiff challenges the method by which the warming stove privileges were revoked, claiming that defendants' actions did not comply with due process.

> **FN7.** This defendant was also not served with process.

Plaintiff states that he first lost his warming stove privileges during January, when the facility revoked the warming stove privilege "of the entire AB Wing 1, 2, 3, arbitrarily depriving 300 prisoners of secured privileges .... " (Compl. at ¶ 65). Plaintiff argues that because defendant Amado "has the overall charge of the security of the facility," his approval of the revocation of privileges "was mandatory." *Id.* at ¶ 66.

Plaintiff states that on June 23, 2008, defendant Calender informed the population of "AB 1" that "use of the stoves would be restricted for at least a week, due to defendant Scott's report that someone put a substance on the supply room door knob ...." (Compl. at ¶ 60). Plaintiff states that he explained to defendant Calender that there was a long "list of suspects" who could have put the substance on the door knob. *Id.* at ¶ 61. Defendant Calender "replied that it is *his practice,* when he cannot identify the individual guilty of misconduct, he punishes the population, as to pressure the population to find and address the 'guilty' individual." [FN8] *Id.* at ¶ 61-62 (emphasis in original).

> **FN8.** Plaintiff also states that on June 25, 2008, he complained about the warming stove privileges to Lieutenant Baker, who is not named as a defendant in this action. (Compl. at ¶ 63). Plaintiff claims that Lieutenant Baker confirmed that it was also his practice to punish the entire population when the guilty individual could not be identified. *Id.* at ¶ 64.

Plaintiff states that on the same day that the substance was found on the door knob, an "AB 1 porter, admitted to defendant Scott that, he was the individual who inadvertently, put cleaning substance from his glove on the supply room door knob, when he entered the closet to get a mop head." (Compl. at ¶ 67). Plaintiff states that notwithstanding the porter's admission, the Wallkill staff, "with vindictiveness and no justification" still deprived plaintiff and 100 other prisoners of

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3246818 (N.D.N.Y.)
(Cite as: 2009 WL 3246818 (N.D.N.Y.))

their stove privilege for (7) days." *Id.*

Plaintiff states that he filed a grievance about the loss of warming stove privileges with defendant Supt. Rivera on June 25, 2008. (Compl. at ¶ 70). Plaintiff alleges that the grievance "was not disposed, unlawfully suppressed." *Id.*

Plaintiff states that the third occasion that he lost his privilege to use a warming stove was between July 29 and August 2, 2008. (Compl. at ¶ 71). Plaintiff alleges that defendant Marrero revoked the use of the stoves because they were not clean. *Id.* Plaintiff states that it is the duty of the "assigned porter" to clean the stoves, and that when the stoves are not cleaned, the policy is to issue a Misbehavior Report. *Id.* Plaintiff argues that instead of issuing a Misbehavior Report to the porter, defendant Marrero unlawfully revoked the privilege to use the stoves. *Id.*

***E. Harassment***

**\*6** Plaintiff's seventh cause of action alleges harassment of plaintiff, and names defendants Rivera, Roy, Amado, Holmes, Valuc [FN9], Marrero, Curfman, Galbally, Heal, Dunham, and Chenneham [FN10]. (Compl. at ¶ 124).

> **FN9.** This defendant was not served with process. The docket does not indicate when a summons was issued, but the docket shows that as to Mr. Valuc, the summons was returned unexecuted in December 2008 (Dkt. No. 18). The Clerk's Office wrote to plaintiff, and explained that there was no Lt. Valuc employed by Wallkill Correctional Facility. The clerk suggested another possible name of this particular defendant. (Dkt. No. 40). Plaintiff was also provided with an additional USM-285 form in order to effect service on the potential defendant. *Id.* Plaintiff did not respond to the court's letter.

> **FN10.** This defendant was not served with process. A summons was issued for this defendant in November 2008. (Dkt. No. 12). The summons was returned unexecuted in December 2008 (Dkt. No. 19). The Clerk's Office wrote to plaintiff, and explained that there was no employee with a last name of

"Chenneham" employed at Wallkill Correctional Facility. (Dkt. No. 40). The clerk asked plaintiff if he had any other identifying information about this defendant. *Id* . Plaintiff was also provided with an additional USM-285 form in order to effect service on the potential defendant. *Id.* Plaintiff did not respond to the court's letter.

Plaintiff alleges that on May 5, 2008, defendant Heal approached plaintiff and instructed him to step outside of the mess hall. (Compl. at ¶ 73). Plaintiff alleges that defendant Heal stated that he suspected plaintiff was carrying a weapon on the string of plaintiff's pants. *Id.* Plaintiff showed defendant Heal the string which held a key to plaintiff's room. *Id.* Plaintiff states that defendant Heal conducted a search of plaintiff "before the view of at least (20) prisoners waiting to enter the messhall and the messhall duty Sgt, Burns [sic]." *Id.* Plaintiff argues that once defendant Heal saw that the string on plaintiff's pants held only a key, defendant Heal had no reason to search plaintiff. *Id.* at ¶ 74. Plaintiff argues that the reason for the search was "to abuse [defendant Heal's] Official Capacity to quench his individual desire to harass/intimidate and retaliate against plaintiff for filing grievances/complaints against his co-workers." *Id.* Plaintiff states that he filed a grievance with defendant Supt. Rivera, but that the "grievance was never disposed, unlawfully suppressed." *Id.*

Plaintiff states that after he filed the grievance regarding the May 5, 2008 search, defendant Heal

> in retaliation conspired with other officers (who are soon to be charged), by lambasting him with a barrage of threatening, reckless eyeballing and hostile/profane language/jester. Previous documented complaints/grievances lodged by other prisoners against defendant Heal, in addition to the fact that Heal, reported to work for (3) weeks. With blackened eyes, which were the obvious result of an off duty fight. Clearly exhibits that defendant Heal, lacks a disposition which is conducive to the discharge of his duties of Correction Officer.

(Compl. at ¶ 75). Plaintiff states that he filed an additional grievance complaint on May 16, 2008 with defendants Amado and Roy as to defendant Heal's "conspiracy" with other officers "to harass/intimidate plaintiff in retaliation to grievance submitted by plaintiff." *Id.* at ¶ 78. Plaintiff argues that

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3246818 (N.D.N.Y.)
(Cite as: 2009 WL 3246818 (N.D.N.Y.))

defendants Amado and Roy "neglected to Prevent these and future acts of retaliation." *Id.* at ¶ 77.

Plaintiff states one instance of retaliation occurred on May 21, 2008 during the 9:30 p.m. count of the inmates. (Compl. at ¶ 79). Defendant Heal conducted the count, and "stopped in front of plaintiff's room, stood there for 30 seconds looking into the room, while writing on a clipboard. Then defendant Dunham, on her "swing" of the count, stopped and stood in front of plaintiff's room, looking in the room for 30 seconds while writing on a clipboard." *Id.* Plaintiff states that he attempted to ask defendant Heal if they could speak, but that defendant Heal "replied in a hostile/ profane manner, get the [expletive] out of here, stop harassing me, before I give you ticket." *Id.* at ¶ 80. Plaintiff then states that he approached defendant Dunham, and asked if there was a problem with his room during the count. *Id.* "Dunham replied are you harassing me. Plaintiff said no more and returned to his room." *Id.* Plaintiff states that he filed a grievance on this issue, but that it was "never disposed, unlawfully suppressed." *Id.* at ¶ 81.

**\*7** Plaintiff states that defendant Heal issued a Misbehavior Report on May 21, 2008 to retaliate against plaintiff for filing the grievance and the May 16, 2008 complaint to defendants Amado and Roy. (Compl. at ¶ 82). Plaintiff states that defendant Dunham signed the Misbehavior Report as a witness. *Id.* Plaintiff argues that defendants Dunham and Heal committed "perjury by falsely, fabricating charges in order to retaliate against plaintiff for filing grievances, and May 16, 2008 complaint." *Id.* Plaintiff alleges that defendant Holmes "approved" the retaliatory Misbehavior Report. *Id.*

Plaintiff states that he was called to defendant Galbally's office on May 23, 2008 to discuss the Misbehavior Report filed by defendant Heal. (Compl. at ¶ 84). Plaintiff stated that the Misbehavior Report should be dismissed as retaliatory. *Id.* Plaintiff argues that defendant Galbally neglected his official duty when he failed to dismiss the Misbehavior Report and commenced a hearing on the Report. *Id.* at ¶ 86 [FN11] Plaintiff states that he requested the opportunity to present witnesses, but that defendant Galbally stated that the rules for a Tier I hearing did not afford plaintiff the opportunity to present witnesses, or for the hearing to be recorded. *Id.*

[FN11.] There is no Paragraph 85.

Plaintiff alleges that defendants Heal and Dunham harassed plaintiff while conducting the inmate count, "then conspired to fabricate a fraudulent report to cover-up their improprieties and retaliate." *Id.* Plaintiff argues that defendant Galbally's "affirmation of the fraudulent report affirms his part of the conspiracy by officers." *Id.* at ¶ 87. Plaintiff further argues that since defendants Rivera and Amado were "properly appraised [sic] of the improprieties of their subordinates, [and they] neglected to curtail this unlawfulness affirms that they condone the conspiracy to retaliate." *Id.*

Plaintiff states that he filed a grievance with defendant Rivera on May 24, 2008 regarding the Tier I Disposition, but he received no relief. (Compl. at ¶ 88). Plaintiff argues that defendants Rivera, Amado, Holmes, Galbally, Heal, and Dunham "conspired to harass/intimidate, issue/affirm fraudulent retaliatory misbehavior report, defraud plaintiff's rights to substantive/procedural due process to grieve/ appeal, present evidence in his favor, equal protection, subjecting cruel [sic] and unusual punishment." *Id.*

Plaintiff alleges another instance of harassment that occurred on July 5, 2008, when defendants Heal and Curfman "directed Threatening stares/Gestures upon plaintiff." (Compl. at ¶ 89). Plaintiff states that as he was leaving the mess hall, defendant Curfman "accosted plaintiff, threateningly, screaming with hostility, pull your pants up." *Id.* Plaintiff states that six other Corrections Officers laughed at plaintiff, and that defendant Heal's laughter was the loudest. *Id.* Plaintiff argues that defendant Curfman's behavior on the morning of July 5, 2008 "confirms that he conspired" with defendant Heal. Plaintiff argues that defendants Roy and Amado violated plaintiff's civil rights "by their willful Neglect to Prevent, the perpetual campaign to threaten, harass, intimidate plaintiff in retaliation, as substantiated in numerous afore-mentioned grievances, by plaintiff all of which have been WHITE WASHED." *Id.* at ¶ 90.

**\*8** Plaintiff next alleges that defendant Curfman harassed plaintiff by implementing *"his own unlawful policy/custom* of arbitrarily prohibiting plaintiff/ Wallkill prisoners from taking rolls, buns, biscuits. i.e. bread [sic] from the messhall." (Compl. at ¶ 91) (emphasis in original). Plaintiff asserts that the Wallkill Facility Guide states that bread may be taken out of the mess hall at the noon and evening meals. *Id.* It is unclear when defendant Curfman allegedly engaged in the enforcement of his policy about the bread.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3246818 (N.D.N.Y.)
(Cite as: 2009 WL 3246818 (N.D.N.Y.))

In the next paragraph, plaintiff states that on July 10, 2008, plaintiff was summoned to defendant Marrero's office for a hearing regarding a grievance about the bread. (Compl. at ¶ 92). Much of this section of plaintiff's complaint references the Ku Klux Klan, and refers to some defendants as "Grand Wizard", "Regional Grand Wizard", or other combinations of defendants' title and Ku Klux Klan references. Plaintiff states, in essence, that the grievance was never resolved. *Id.*

Plaintiff also states that defendant Marrero conducted the grievance hearing, and that in Marrero's opinion, "the fact that no one made any racist remarks, shows that grievance is an unsubstantiated, anger fueled, written document that no court would believe." *Id.* Plaintiff states that another instance of harassment occurred on July 7, 2008 at around 8:00 a.m., while plaintiff walked toward the "P.C. window" in the basement. (Compl. at ¶ 94). Plaintiff states that defendant Chenneham "physically bumped" into plaintiff. *Id.*

Plaintiff states that the next instance of harassment occurred on July 12, 2008 around 12:30 p.m., when he was on the telephone. (Compl. at ¶ 94). Plaintiff states the defendant Valuc "fraudulently stat[ed]" to defendant Scott that plaintiff had his feet on the wall, and that plaintiff should have to paint the wall. *Id.* Plaintiff argues that defendant Valuc has become "the latest Nazi, to abuse his Official Capacity, by cracking the whip of Unlawful Slave Labor, in order to degrade, harasss, and intimidate plaintiff in retaliation." *Id.* Plaintiff argues that the defendants act with "impunity, which fuels their recklessness, to the inevitable point of assaulting plaintiff." *Id.* at ¶ 96. Plaintiff argues that his personal safety is threatened by "the escalating campaign of harassment, intimidation, threats, physical abuse, MUST BE CURTAILED." *Id.* at ¶ 97.

### F. Grievances

Plaintiff's eighth cause of action is against defendants CORC, Rivera, Henn, and Scott. This claim includes several allegations about how defendants handled plaintiff's grievances. Plaintiff alleges that defendant Rivera "willfully pervert[ed] state statute [sic] governing Inmate Grievance Program, by unlawfully suppressing all grievances submitted to him by plaintiff." (Compl. at ¶ 98).

Plaintiff states that on June 17, 2008, he submitted to CORC all of the grievances that plaintiff had submitted up until that date (May 5, May 8, May 16, May 16 (complaint), May 21, May 24 (grievance and complaint), and June 8, 2008). (Compl. at ¶ 98). Plaintiff states that defendant CORC rejected the group of documents and returned them to plaintiff. *Id.*

**\*9** Plaintiff states that his copies of correspondence from the CORC and his grievances were stolen by defendant Scott on May [FN12] 13, 2008. (Compl. at ¶ 100). Plaintiff states that this theft occurred "under the guise of a 'random search' ". *Id.* Plaintiff alleges that Defendants Rivera, Henn, CORC, conspired to willfully deprive plaintiff of his constitutional rights by unlawfully suppressing his grievances. *Id.* at ¶ 101.

> [FN12.] Plaintiff wrote "May," but this may have been a typographical error. Plaintiff alleges that the theft took place after August 10, 2008, when plaintiff submitted certain documents to Wallkill's business office that indicated that plaintiff had begun this civil action.

### G. NYSDOCS

Plaintiff's ninth cause of action names only NYSDOCS. (Compl. at ¶ 128). Plaintiff argues that the policy of electronic monitoring of prisoners' telephone conversations violates plaintiff's federal constitutional and state statutory rights. (Compl. at ¶ 103). Plaintiff also alleges that he was the subject of an investigation, involving electronic surveillance of his telephone conversations. *Id.* at ¶ 104. Plaintiff also makes some claims that there were undercover "agents" and inmate "agents" conspiring to fabricate charges against plaintiff. *Id.* Plaintiff states that, as a result, his spiritual, mental, and physical well-being were in "clear and present danger." *Id.* Plaintiff requested that the court initiate an investigation into the matter. [FN13] *Id.* at ¶ 105.

> [FN13.] As stated above, plaintiff has been released from custody, and therefore, any requests for injunctive relief may be dismissed as moot. *Pugh, 571 F.Supp.2d at 489-90.*

### 3. *Eleventh Amendment Immunity*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3246818 (N.D.N.Y.)
(Cite as: 2009 WL 3246818 (N.D.N.Y.))

It is well-settled that the state itself cannot be sued under section 1983. *Komlosi v. New York State OMRDD,* 64 F.3d 810, 815 (2d Cir.1995) (citing *Will v. Michigan Department of Police,* 491 U.S. 58, 71 (1989)). This is true whether the court is considering Eleventh Amendment immunity or a statutory interpretation of section 1983. *Id.* at 815 n. 3. This immunity also applies to suits against state agencies. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984) (holding that "in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."); *Burnette v. Carothers,* 193 F.3d 52, 57 (2d Cir.1999), *cert. denied,* 531 U.S. 1052 (2000).

However, a state official acting in his official capacity may be sued in a federal forum **to enjoin conduct** that violates the federal Constitution, notwithstanding the Eleventh Amendment bar. *Papasan v. Allain,* 478 U.S. 265, 276-77 (1986); *Pennhurst,* 465 U.S. at 102; *Hutto v. Finney,* 437 U.S. 678, 692 (1978). Under *Edelman v. Jordan,* "a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief ... and may not include a retroactive award which requires the payment of funds from the state treasury." *Edelman v. Jordan,* 415 U.S. 651, 677 (1974).

NYSDOCS and SCOC are both state agencies.[FN14] These agencies are entitled to Eleventh Amendment immunity, and thus, the claims against the New York State Department of Correctional Services and the State Commission of Corrections should be dismissed. Additionally, the claims against the remaining defendants in their "official" capacities, should be dismissed to the extent that plaintiff sues them for money damages.

> [FN14.] It appears that the court issued a summons for the DOCS Central Office Review Committee ("CORC"). (Dkt. No. 12). The CORC is a Committee within DOCS, it is neither an agency of the state, nor is it a "branch" of an agency. Thus, the CORC is not an entity that can be served. The court agrees with defendants that even if service on CORC had been somehow effected, plaintiff's claims against CORC would be barred by the Eleventh Amendment.

**\*10** This court recommends dismissal of plaintiff's ninth claim, and all other claims against NYSDOCS and SCOC, and the court also recommends dismissal of the claims against the remaining defendants in their official capacities, to the extent that plaintiff seeks money damages. Although the plaintiff's claims for injunctive relief would not necessarily have been barred by the Eleventh Amendment, plaintiff has been released from incarceration, thus, as stated above, any claims for injunctive relief must be dismissed as moot. *Pugh,* 571 F.Supp.2d at 489-90.

**4. *Service of Process***

The Federal Rules require that a defendant be served within 120 days of filing the complaint. FED. R. CIV. P. 4(m). The failure to serve a defendant within 120 days of filing the complaint may be a ground for dismissal of the complaint unless good cause is shown for an extension of that time. *Id.* A dismissal may be initiated by motion or *sua sponte* by the court after notice to plaintiff. *Id.* Generally, if the court chooses to dismiss the action against the unserved defendants, the dismissal must be without prejudice. *Id.*

In this case, defendants C.O. Chenneham; Sgt. Calender; Lt. Valuc; Lt. Marrero; and the CORC have not been served with process. As stated above, the CORC may not be named as a defendant in any event, thus, the court will recommend dismissal with prejudice as against the CORC. On December 22, 2008 and February 12, 2009, the Clerk wrote to plaintiff explaining that defendants Marerro, Valuc, and Chenneham had not been served and explaining potential reasons for the failure of service. (Dkt. Nos. 39-Def. Marerro, 40-Defs. Valuc & Chenneham). On March 6, 2009, the summons was returned "unexecuted" as to defendant Calender, and plaintiff was informed that he must notify the Marshal's Service if plaintiff wished any further attempt to serve this defendant. (Dkt. No. 42 at 2).

Plaintiff has taken no further steps to serve these defendants, notwithstanding the court's letters and the Marshal's notice. Thus, this court will recommend dismissal as to defendants Calender, Valuc, Marerro, and Chenneham for failure to serve.[FN15]

> [FN15.] Understandably, the moving defendants did

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3246818 (N.D.N.Y.)
(Cite as: 2009 WL 3246818 (N.D.N.Y.))

not include the unserved defendants in their motion. However, the arguments made by the moving defendants also justify dismissal as to the unserved defendants. Thus, although the court recommends dismissal against these defendants for failure to serve, the court also finds that it would have recommended dismissal as against these defendants in any event.

**5. *Interference with the Mail***

Plaintiff alleges that delays in processing his mail have violated his constitutional rights under the First, Fifth, and Fourteenth Amendments. Under the First Amendment, prisoners have a right "to the free flow of incoming and outgoing mail." *Johnson v. Goord,* 445 F.3d 532, 534 (2d Cir.2006) (citing *Davis v. Goord,* 320 F.3d 346, 351 (2d Cir.2003)). A prisoner's right to receive and send mail may, however, be regulated. *Davidson v. Mann,* 129 F.3d 700, 702 (2d Cir.1997). A regulation affecting an inmate's attempt to send or receive mail "is valid if it is reasonably related to legitimate penological interests." *Rodriguez v. James,* 823 F.2d 8, 12 (2d Cir.1987) (quoting *Turner v. Safley,* 482 U.S. 78, 89 (1987)).

**\*11** "In balancing the competing interests implicated in restrictions on prison mail, courts have consistently afforded greater protection to legal mail than to non-legal mail, as well as greater protection to outgoing mail than to incoming mail." [FN16] *Davis,* 320 F.3d at 351 (citing *Thornburgh v. Abbott,* 490 U.S. 401, 413 (1989); *Washington v. James,* 782 F.2d 1134, 1138-39 (2d Cir.1986); *Davidson v. Scully,* 694 F.2d 50, 53 (2d Cir.1982)). Interference with ***legal*** mail may implicate a prisoner's right to access to the courts as guaranteed by the First and Fourteenth Amendments. *Davis,* 320 F.3d at 351. A denial of access to courts, however, requires an additional finding of "actual injury." *Lewis v. Casey,* 518 U.S. 343 (1996). Plaintiff must show that a non-frivolous legal claim was frustrated or impeded due to the actions of prison officials. *Warburton v. Underwood,* 2 F.Supp.2d 306, 312 (W.D.N.Y.1998) (quoting *Lewis v. Casey,* 518 U.S. at 353).

FN16. Generally, when the issue involves only censorship or tampering with legal mail as opposed to an alleged denial of access to courts, the inmate alleges that the defendants either read his mail, censored his mail, or otherwise interfered with the mail. *Davis, supra.* Outgoing mail, whether legal or

personal is entitled to greater protection from review or censorship because of the lesser security concerns presented. *Id.* at 532 (citing *Thornburgh,* 490 U.S. at 413).

**A. Correspondence Regulations**

In this case, plaintiff alleges only that his mail was delayed pursuant to a practice whereby an inmate is denied "access to his account" for three days while a commissary purchase is processed. Although plaintiff alleges one delay regarding non-legal mail, most of his complaints involve a delay in processing his legal mail. Plaintiff claims that this "practice" violates the DOCS policy requiring all mail to be processed to the postal service "the next day."

The DOCS Directives governing both "general" and "privileged" correspondence outline the procedures required to obtain postage for outgoing mail. DOCS Directive Nos. 4421, § 721.3(a)(3) [FN17] (privileged), 4422(III)(D) [FN18] (general). If an inmate has sufficient funds in his inmate account, he may purchase postage for both personal and legal (privileged) correspondence through the sale of stamps in the commissary. DOCS Directive No. 4422(III)(D)(1) (c). In certain circumstances, an inmate may purchase stamps by attaching an IAS-2706 Form to a letter. *Id.* 4422(III)(D)(1) (d). The IAS-*2706* is a form that requests disbursement from an inmate's existing account ***if there are sufficient funds.***

FN17. Directive 4421 is a copy of the New York State Regulations governing correctional services. N.Y. CODE RULES & REGS. (N.Y.CRR), tit. 7 §§ 721.1-.3.

FN18. The information contained in Directive 4422 is also contained in 7 NYCRR §§ 720.2-720.8.

An inmate is entitled to a weekly free postage allowance for privileged correspondence. DOCS Directive No. 4421 § 721.3(a)(3) (ii). If an inmate does not have sufficient funds for the purchase of postage, [FN19] he is entitled to obtain an advance from the facility for a certain amount of postage for ***privileged*** correspondence, including legal mail by submitting an IAS-*2708* Form with his request. DOCS Directive No. 4421 §

Slip Copy, 2009 WL 3246818 (N.D.N.Y.)
(Cite as: 2009 WL 3246818 (N.D.N.Y.))

721.3(a)(3)(iv)(a)-(c). Another Directive governs the procedure for obtaining funds when the inmate is in need of photocopying services. DOCS Directive No. 4483(III)(I). This Directive provides that photocopying requests must be accompanied by either an IAS-2706 Form (for disbursements) or an IAS-2708 Form (for advances) .[FN20] *Id.* The Directive warns that the inmate must receive the requested photocopies within five business days, however "[t]wo day commissary holds, where applicable, might increase the delivery deadline to seven days." *Id.*

> FN19. The court would note that in order to utilize the IAS-2708 Form to obtain an advance of funds, the inmate must meet additional conditions that are specified in the Directive. DOCS Directive No. 4421 § 721.3(a)(3)(iv)(a)-(c).

> FN20. Directive No. 2788 provides the procedure for collection and repayment of money due from inmates as the result of advances or other obligations. Directive No. 2788(III). This Directive has specific sections that relate to postage. *Id.* Directive No. 2788(III)(A)(1)-(3).

**\*12** It appears that, as plaintiff claims, an inmate's request for funds for postage or other disbursements may be delayed when there has been a commissary purchase. Plaintiff submits a completed form dated March 26, 2008 titled "Inmate Accounts," stating that his money was "held for Commissary for 2 days." (Dkt. No. 1, *Exhibits* at 5). The form also states that as soon as plaintiff's money was "released," his postage and disbursement requests were processed immediately. *Id.* Another of plaintiff's exhibits is a letter from defendant Glover, dated March 25, 2008, stating that when she received plaintiff's mailings, he had insufficient funds to cover the postage, and that she was unable to contact plaintiff for him to complete the "advance form for [his] Legal mailing". (Dkt. No. 1, *Exhibits* at 7). The court notes that defendant Glover's letter states that she sent out plaintiff's legal mail in any event, but that there was an error regarding a personal mailing. *Id.* In response to plaintiff's grievance, the Superintendent stated that "[t]he state accounting system that is currently in place prevents an inmate from overspending his account before a commissary buy." (*Id. Exhibits* at 9).

To the extent that plaintiff challenges the Directives regulating

how the facility processes mail and the policy of holding an inmate's request for disbursement until his account can be cleared, these regulations are not unreasonable. Holding an inmate's request for funds for a short period of time to make sure that he has sufficient funds to cover the disbursement is reasonably related to legitimate penological interests and the administration of the inmate account system.[FN21] The delays cited by plaintiff are not excessive, and in themselves do not rise to the level of First Amendment violations.

> FN21. The court would simply point out that non-prisoners must often wait for accounts to clear prior to banks disbursing funds.

Plaintiff also alleges that his account was *improperly* labeled as having insufficient funds for postage, when, in fact, he did possess sufficient funds. (Dkt. No. 1, *Memo.* at 2). Plaintiff claims that Defendant Glover "willful[ly] violat[ed]" his rights. However, during the investigation of plaintiff's grievance, defendant Rivera found that "[a]ny delay in the grievant's personal outgoing mail being processed is attributed to human error and no malice by staff can be substantiated." (Dkt. No. 1, *Memo.* at 9). Similarly, the CORC stated that any delay was "inadvertent." *Id.* at 10. An inadvertent or negligent delay in processing plaintiff's mail would not rise to the level of a constitutional violation.[FN22] *See Daniels v. Williams,* 474 U.S. 327, 332 (1986) (negligence not actionable under Section 1983).

> FN22. Plaintiff alleges that DOCS had a policy whereby all mail was to be processed by "the next day," however, he cites no statutory or regulatory basis for this requirement. Even if DOCS had a policy that encouraged the immediate processing of an inmate's mail, the violation of a DOCS policy would not necessarily violate plaintiff's constitutional rights. *See Salahuddin v. Coughlin,* 781 F.2d 24, 27 n. 4 (2d Cir.1986) ( "[e]very violation of state law is not necessarily a denial of constitutional right").

**B. Access to Courts**

Because plaintiff claims that his legal mail was delayed, he also alleges that defendants violated his right to access the courts. (Compl. at ¶¶ 24, 26, 32, 34). Though plaintiff alleges

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3246818 (N.D.N.Y.)
(Cite as: 2009 WL 3246818 (N.D.N.Y.))

delays,[FN23] and perhaps inconvenience, he has not alleged **any actual harm** to any legal action, resulting from the alleged delays. Plaintiff has not argued that defendants' conduct resulted in the dismissal of an otherwise meritorious legal claim. Without an actual injury, plaintiff has not stated a claim that can survive this motion to dismiss. *Lewis v. Casey, supra.* Mere "delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation." *Jermosen v. Coughlin,* 877 F.Supp. 864, 871 (S.D.N.Y.1995) (citing *Jones v. Smith,* 784 F.2d 149, 151-52 (2d Cir.1986)).

> **FN23.** The longest delay alleged by plaintiff was seven days. Compl. ¶ 32. Most of the delays were four days, one was three days, and one was six days. *Id.*

**\*13** Plaintiff does claim that one piece of legal mail "was rejected by defendant Glover", and that the mail was returned to plaintiff. (Compl. at ¶ 35). However, plaintiff does not state that he was ultimately unable to mail that one piece of legal correspondence, and he does **not** allege any harm to a pending action as the result of this alleged "rejection."

Based upon the complaint and the documents attached, plaintiff fails to state a constitutional violation associated with either his right to send and receive mail or his access to courts. Thus, plaintiff's claims relating to the processing of his mail should be dismissed.

### 6. *Double-Bunking*

Plaintiff claims that his assignment to "double-bunked quarters is unlawful/ discriminatory." (Compl. at ¶ 37). Plaintiff is challenging a "variance"[FN24] issued to Wallkill, allowing the facility to convert single occupancy cells to double occupancy. Plaintiff claims that this variance was unconstitutional, subjecting "all Wallkill prisoners" to standards "below the minimum standards governing other state prisoners." *Id.* at ¶ 48.

> **FN24.** It is unclear what plaintiff means when he states that Wallkill was issued a "variance," however, because this is a motion to dismiss, the court assumes

the truth of plaintiff's statement for purposes of this report.

The Supreme Court has held that "double celling"[FN25] is generally permissible under the Eighth and Fourteenth Amendments. *Rhodes v. Chapman,* 452 U.S. 337, 352 (1981). There is no "one man, one cell" principle embodied in the Constitution. *Bell v. Wolfish,* 441 U.S. 520, 542 (1979). However, combined with other adverse conditions, double-celling may amount to an Eighth Amendment violation. *Bolton v. Goord,* 992 F.Supp. 604, 626 (S.D.N.Y.1998). In order to violate the constitutional prohibition against cruel and unusual punishment, the conditions of confinement must result in an "unquestioned and serious deprivation of basic human needs," and the defendants must have imposed those conditions with "deliberate indifference." *Jolly v. Coughlin,* 76 F.3d 468, 480 (2d Cir.1996) (citing *Wilson v. Seiter,* 475 U.S. 312, 319-20 (1986); *Anderson v. Coughlin,* 757 F.2d 33, 35 (2d Cir.1985)).

> **FN25.** Double-celling involves housing two inmates in a cell that was originally designed for one person. *Jones v. Goord,* 435 F.Supp.2d 221, 227 (S.D.N.Y.2006).

In *Jones v. Goord,* the court analyzed the double-celling issue at length. *Jones v. Goord,* 435 F.Supp.2d 221 (S.D.N.Y.2006). *Jones* was a class action case in which plaintiffs challenged a double-celling program that was instituted in New York State due to a large increase in prison population. *Jones,* 435 F.Supp.2d at 228. Plaintiffs argued that the practice deprived inmates of the "minimal civilized measure of life's necessities." *Id.* Plaintiffs claimed that New York's double-celling policy violated the Eighth Amendment because of "the general conditions of confinement in double cells, the risk of inmate against inmate violence, injury and disease, and secondhand smoke." *Id.* at 236. The court found that none of the conditions alleged by plaintiffs resulted in constitutional violations, and dismissed the claims. *Id.* at 236-53.

Under DOCS regulations, inmates must consent to being housed in a double cell for more than sixty days, and there exists a screening process, which prevents certain kinds of inmates from being housed together in a double cell. *Jones,* 435 F.Supp.2d at 230-31, 247-49. In this case, plaintiff appears

Slip Copy, 2009 WL 3246818 (N.D.N.Y.)
(Cite as: 2009 WL 3246818 (N.D.N.Y.))

to challenge the policy as a whole, rather than alleging that *he* suffered some hardship or adverse condition. He merely alleges that this "variance" [FN26] subjected all Wallkill inmates to constitutionally inadequate conditions and cites numbers of bathrooms, toilets, urinals, and showers. (Compl.¶ 48). This conclusory allegation, without any specific claim that plaintiff suffered any deprivation, does not rise to the level of an Eighth Amendment violation. Any claim that defendants violated state law or regulations, without more, does not state a constitutional claim. *Salahuddin v. Coughlin,* 781 F.2d 24, 27 n. 4 (2d Cir.1986). Plaintiff's claim about "double-bunking" does not rise to the level of a constitutional violation and may be dismissed.

> FN26. The court must also note that plaintiff cites the incorrect section of the NYCRR. Plaintiff cites the text of a section governing double occupancy housing units originally designated for "double occupancy" and argues that by converting single occupancy cells to double occupancy, Wallkill violated this regulation. *See* 9 NYCRR § 7621.6-b. The regulations do, however, also provide for "Double occupancy housing units originally designed for *individual occupancy."* *Id.* § 7621.6-a. The regulations contain a formula for maximum facility capacity and provide for an application to the SCOC if a change in maximum facility capacity becomes necessary. 9 NYCRR §§ 7621.10, 7621.11. Thus, the conversion of which plaintiff complains is authorized by the regulations, and the variance is not "void" on its face.

### 7. *Cell Searches and Privacy*

*14 Plaintiff claims that his "quarters and property" were subject to an excessive number of searches. Plaintiff claims that defendant Scott searched plaintiff's cell on March 20, March 26, and May 7, 2008. (Compl. at ¶¶ 52-53). Plaintiff alleges that some of these searches were authorized by defendant Calender. *Id.* at ¶ 53. Plaintiff alleges that his cell was searched an additional seven times: May 20, June 18, June 22, July 24, August 6, 7, and 13, 2008. *Id.* at ¶ 55. Plaintiff states that other inmates were similarly searched, and that defendants Rivera, Amado, Jessen, and Neuwirth were advised of the issue at the May 29, 2008 meeting of the Inmate Liaison Committee. *Id.* at ¶ 54. As proof of the excessive nature of these searches, plaintiff argues that while incarcerated at

Franklin Correctional Facility for three years, he was subjected to only one random search. *Id.* at ¶ 55.

It is well-settled that the prohibition against unreasonable searches and seizures does not apply to a prison cell. *Hudson v. Palmer,* 468 U.S. 517, 526 (1984. Inmates have no reasonable expectation of privacy in their cells. *Willis v. Artuz,* 301 F.2d 65, 67-69 (2d Cir.2002); *Rodriguez v. McClenning,* 399 F.Supp.2d 228, 239 (S.D.N.Y.2005). In *Rodriguez,* the court held that an inmate has no right to be free from searches of any kind, including those alleged to be "retaliatory." *Id.* (citing cases).

Plaintiff cites all the occasions when his cell was searched and mentions that other inmates suffered from excessive searches. (Compl.¶¶ 53-55). He then states that his claim is substantiated "res ipse loquitur" because he was subjected only to one "random" search in the three years that he was incarcerated at Franklin Correctional Facility. *Id.* ¶ 55. The fact that Wallkill officials choose to search inmates' cells more frequently, even if true, does not change this court's finding. There is no protection from searches of one's prison cell. Thus, any cell search claims must be dismissed.

### 8. *Warming Stove and Other Privileges*

Plaintiff's fifth and sixth causes of action are related to three separate occasions when plaintiff's *housing block* lost the privilege to use "warming stoves" in their cells. (Compl. at ¶¶ 59-72). Plaintiff also complains about his loss of the privilege to remove bread products from the mess hall. *Id.* at ¶ 91. Plaintiff argues that the defendants' policy of punishing the entire housing block when defendants are unable to identify who committed some particular misbehavior is unconstitutional. Plaintiff argues that the deprivation of these privileges must be in accordance with a "constitutionally sound policy," and must not be "arbitrary and capricious" or retaliatory. Plaintiff is clearly attempting to make a due process argument regarding the denial of these privileges.

Plaintiff cannot make claims on behalf of his "housing block." *See* *Singleton v. Wulff,* 428 U.S. 106, 114 (1976) (plaintiff cannot assert claims on behalf of other individuals). However, to the extent that plaintiff is making his own due process claim, the claim must also fail. In *Sandin v. Conner,* the Supreme

Slip Copy, 2009 WL 3246818 (N.D.N.Y.)
(Cite as: 2009 WL 3246818 (N.D.N.Y.))

Court held that although states may still create liberty interests protected by due process, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force ..., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 483-84 (1995).

**\*15** In this case, plaintiff is complaining *only* about the loss of privileges. Plaintiff has *not* alleged that any atypical and significant hardship was imposed on him. *Sandin,* 515 U.S. at 483-84. Plaintiff does *not* claim that the loss of the warming stove privilege or that the inability to take bread out of the mess hall was harmful to his health.[FN27] There is simply nothing "atypical" or "significant" that would create the right to any particular process prior to losing these privileges.

> FN27. Plaintiff also does not state a separate Eighth Amendment claim with respect to this denial of privileges. He does not claim that the conditions of confinement due to the deprivation of these privileges resulted in an "unquestioned and serious deprivation of basic human needs." *See Jolly v. Coughlin,* 76 F.3d at 480. Plaintiff does claim that by punishing the entire block, defendants were "endangering the security of the facility." (Compl.¶¶ 64-65). Plaintiff appears to claim that defendants were endangering the security of the facility because defendants' actions would pressure the inmates to determine who was the guilty party, fostering unrest among the inmates. *Id.* ¶ 61. However, plaintiff is speculating about this claimed result of defendants' actions. Nowhere does he claim that there was ever an incident of inmate unrest due to defendants' actions.

To the extent that plaintiff uses the word "retaliation," he does not state a constitutional claim. In order to state a constitutional claim, a plaintiff must allege that the defendants retaliated against him for the exercise of a constitutional right. In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for adverse action taken against him by defendants. *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir.2003) (citing *Gayle v. Gonyea,* 313 F.3d 677 (2d Cir.2002); *Hendricks v. Coughlin,* 114 F.3d 390 (2d

Cir.1997)). The court must keep in mind that claims of retaliation are "easily fabricated" and thus, plaintiff must set forth non-conclusory allegations. *Id.* (citing *Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001), *overruled on other grounds, Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506 (2002)).

In this case, plaintiff claims that the privileges were initially revoked "in retaliation" for someone leaving a substance on the doorknob. (Compl.¶ 60). Defendants' alleged "retaliation" had nothing to do with plaintiff exercising a constitutional right. Thus, plaintiff's claim of denial of privileges must be dismissed.

**9. *Harassment***

Plaintiff alleges that he has been subject to several different kinds of harassment by a number of corrections officers, and that some of the defendants have engaged in a conspiracy to harass plaintiff. These behaviors include the following allegations:

1. Defendant Neuwirth told plaintiff that he was "going to have a hard time [at Wallkill]," and wrote a false misbehavior report against plaintiff in conjunction with plaintiff's complaint about being assigned to a double cell. (Compl. at ¶¶ 40-41).

2. Defendant Heal illegally escorted plaintiff from the mess hall, and searched plaintiff in front of at least twenty other prisoners, in retaliation for plaintiff's filing of grievances against defendant Heal's co-workers. (Compl. at ¶¶ 73-74).

3. On May 21, 2008, while performing the "evening count," Defendants Heal and Dunham, "stopped in front of plaintiff's room, stood there for 30 seconds looking into the room, while writing on a clipboard." (Compl. at ¶ 79). Defendant Dunham then accused plaintiff of harassment, and defendant Heal wrote an allegedly false misbehavior report regarding the incident that was "affirmed" after a disciplinary hearing conducted by defendant Galbally. (*Id* . at ¶¶ 82, 86-87).

**\*16** 4. Defendant Curfman told plaintiff to pull his pants up, causing defendant Heal and other officers to laugh at

Slip Copy, 2009 WL 3246818 (N.D.N.Y.)
(Cite as: 2009 WL 3246818 (N.D.N.Y.))

plaintiff. (Compl. at ¶ 89).

5. Defendants Roy and Amado failed to prevent the harassment. (Compl. at ¶ 90).

6. Defendant Curfman instituted a policy prohibiting inmates from taking bread out of the mess hall. (Compl. at ¶ 91).

7. Defendant Chenneham bumped into plaintiff. (Compl. at ¶ 94).

8. Defendant Valuc told defendant Scott that plaintiff had his feet on the wall during a telephone conversation, and suggested that defendant Scott should have plaintiff paint the wall as punishment. (Compl. at ¶ 95).

### A. Verbal Harassment

To the extent that plaintiff alleges that defendants verbally harassed him, whether by threatening to file a Misbehavior Report or suggesting that plaintiff should paint the walls, the claims should be dismissed. Verbal harassment and name-calling, absent "appreciable injury," simply are not constitutional violations cognizable under Section 1983. *Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986); *Vega v. Artus,* 610 F.Supp.2d 185, 209 (N.D.N.Y., Mar. 26, 2009).

In his response to defendants' motion to dismiss, plaintiff claims that defendants violated various New York State statutes; regulations; and the DOCS Employee Manual. (Dkt. No. 46). Even if defendants had violated New York law or the DOCS Employee Manual prohibiting verbal harassment, the violation of state law, absent a constitutional violation, is not actionable under section 1983.[FN28] *Salahuddin v. Coughlin,* 781 F.2d 24, 27 n. 4 (2d Cir.1986).

> FN28. The court also notes that where the plaintiff lacks a valid federal claim, a district court has the discretion to decline to exercise supplemental jurisdiction over any pendent state law claims. *Matican v. City of New York,* 524 F.3d 151, 154-55 (2d Cir.1008).

### B. Retaliation

Plaintiff alleges throughout his complaint that defendants retaliated against him for filing grievances. As stated above, in order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for adverse action taken against him by defendants. *Bennett v. Goord,* 343 F.3d at 137.

The court in *Dawes* stated that in order to survive summary dismissal, the plaintiff's "non-conclusory" allegations must establish

> (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action.

239 F.3d at 492 (citations omitted). Subsequent Second Circuit cases have held that, in a prison context, all that is required is that the adverse conduct by defendant would have deterred a similarly situated individual of ordinary firmness from exercising his First Amendment rights. *See Gill v. Pidlypchak,* 389 F.3d 379, 381 (2d Cir.2004). In *Gill,* the court held that this objective test applied, even where a particular plaintiff was *not subjectively deterred* and continued to file grievances and lawsuits. *Id.*

**\*17** The filing of grievances is constitutionally protected conduct. *Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996). Thus, the court will assume that plaintiff engaged in "constitutionally protected conduct." As to the second element of retaliation, plaintiff has not alleged a single instance of the kind of "adverse action" that would deter a similarly situated inmate from exercising his constitutional rights. Most of the "retaliation" that plaintiff alleges is verbal harassment. Plaintiff described the harassment as being "lambast[ed] ... with a barrage of threatening, reckless eyeballing and hostile/profane language/jester [sic]." Plaintiff generally alleges that defendants were "mean" to him, that they "eyeball[ed]" him, and even that these conducts constituted "terrorizing conduct."

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3246818 (N.D.N.Y.)
(Cite as: 2009 WL 3246818 (N.D.N.Y.))

These are not the kinds of unconstitutional "adverse actions" that would make up a retaliation claim.

Contrary to plaintiff's claim that the allegedly "false" misbehavior report written by defendants Heal and Dunham was "affirmed" by defendant Galbally, it is clear from plaintiff's own exhibits that defendant Galbally found plaintiff "not guilty" of two of the charges and only sentenced plaintiff to a seven day work detail. (Compl. *Exhibits* at 42-43). This is not the type of "adverse action" that would deter a similarly situated individual from asserting his rights. Plaintiff makes passing reference to one instance where defendant Chenneham "physically bumped into" plaintiff. (Compl. at ¶ 94). Plaintiff alleges no injury or any adverse consequences whatsoever from the incident. It is unclear how plaintiff claims that this "bump" would have deterred him from asserting his rights. Thus, plaintiff's "retaliation" claims may be dismissed.

**10.** *Grievances*

Plaintiff's eighth claim is that defendants, defendant Superintendent Rivera in particular, "willfully pervert[ed] state statute [sic] governing Inmate Grievance Program, by unlawfully suppressing all grievances submitted to him by plaintiff." (Compl. at ¶ 98). Plaintiff alleges that defendants Rivera, Henn, and CORC were engaged in a conspiracy to deprive him of his right to grieve his complaints. *Id.* at ¶ 101.

The law is clear that plaintiff has no constitutional right to have his grievances processed at all, or if processed, to have the procedure done properly. *Torres v. Mazzuca,* 246 F.Supp.2d 334, 342 (S.D.N.Y.2003). A violation of the inmate grievance procedures does **not** give rise to a claim under section 1983. *Cancel v. Goord,* No. 00-Civ.2042, 2001 U.S. Dist. LEXIS 3440 (S.D.N.Y. Mar. 29, 2001). A claim that defendants improperly or inadequately investigated plaintiff's grievance is not actionable. *See Davis v. Buffardi,* No. 0:01-CV-0285, 2005 U.S. Dist. LEXIS 45487, 2005 WL 1174088, at *3 (N.D.N.Y. May 4, 2005) (Magnuson, J.) ("[p]articipation in an inmate grievance process is not a constitutionally protected right") (citations omitted); *Shell v. Brzezniak,* 365 F.Supp.2d 362, 369-70 (W.D.N.Y.2005) ( "[i]nmate grievance programs created by state law are not required by the Constitution") (citations omitted); *Cancel v. Goord,* No. 00. CIV.2042, 2001 U.S. Dist. LEXIS 3440, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) ("inmate grievance procedures are not required

by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983") (citations omitted).

**\*18** Because there is no constitutional right to the Inmate Grievance Program, there can be no constitutional violation for officials' alleged failure to abide by the proper procedures. Plaintiff alleges that because of defendants' alleged "suppression" of his grievances, he submitted all of his "grievances" to the CORC. (Compl.¶ 98). Plaintiff then complains that the CORC rejected these grievances and returning them to plaintiff and to defendants Rivera and Henn. *Id.* Rejection of plaintiff's attempt at sending all of his grievances directly to the CORC is perfectly reasonable. The CORC is the final appeal for grievances that have been denied at the Superintendent's level. N.Y. COMP.CODES R. & REGS., tit. 7 § 701.5(d).

The court also notes that a review of plaintiff's exhibits shows that plaintiff's letters and "grievances" were not all "suppressed." Plaintiff received a response to his mail claims and his double bunking claims. (*Exhibits* at 7, 9-10 (mail), 20-25 (double bunking)). Of the letters that plaintiff labels "GRIEVANCE," many appear to have been sent directly to defendant Rivera or Deputy Superintendent Amado. (*Exhibits* at 20-25; 32-33; 34; 35-37; 40; 44-46; 48-49). The grievance regulations in New York require that "grievances" be submitted first to the Inmate Grievance Resolution Committee (IGRC). N.Y. COMP.CODES R. & REGS., tit. 7 §§ 701.5(a)(1) and (b). An adverse decision of the IGRC is then appealed to the Superintendent. *Id.* § 701.5(c).

By submitting claims directly to the Superintendent, the Deputy Superintendent or the CORC, plaintiff was not using the grievance procedure properly and appears to have been attempting to bypass the required steps. Thus, plaintiff cannot claim that defendants were "suppressing" his grievances. Thus, his claims that his grievances were somehow "suppressed," or that defendants engaged in a conspiracy [FN29] to prevent plaintiff from availing himself of the Inmate Grievance Program should be dismissed.

FN29. Plaintiff sprinkles the entire complaint with allegations of "conspiracy." He alleges conspiracy under both section 1983 and 1985. The relevant part of section 1985 provides a narrower protection that

Slip Copy, 2009 WL 3246818 (N.D.N.Y.)
(Cite as: 2009 WL 3246818 (N.D.N.Y.))

section 1983. Section 1985(3) prohibits conspiracies to deprive persons of equal protection of the law. *Davila v. Secure Pharm. Plus,* 329 F.Supp.2d 311, 316 (D.Conn.2004) (citing 28 U.S.C. § 1985(3). Section 1986 provides that every person who is aware of a conspiracy under section 1985, but does not prevent or aid in preventing the injury, while having the power to do so will be liable in damages. 28 U.S.C. § 1986. A claim under section 1986 is contingent to a valid claim under section 1985 and must be commenced within one year after the cause of action accrued. *Id.*

The protection afforded by section 1985 is "narrower" than that afforded by section 1983 because section 1985 requires the conspiracy to be motivated by a racial or other class-based animus. *Davila,* 329 F.Supp.2d at 317. In order to state a claim under section 1985(3), Plaintiff must allege a conspiracy for the purpose of depriving him of equal protection; an overt act in furtherance of that conspiracy; and an injury to plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States. *Id.* (citing *Thomas v. Roach,* 165 F.3d 137, 146 (2d Cir.1999)). Mere conclusory allegations of conspiracy are also insufficient to state a claim under either section 1983 or 1985. *Id. See also Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987) ( section 1983). Plaintiff's claims of conspiracy in this case are completely conclusory and cannot survive the motion to dismiss.

**WHEREFORE** it is hereby

**RECOMMENDED,** that defendant's motion to dismiss (Dkt. No. 41) be **GRANTED,** and the complaint dismissed in its entirety.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human*

*Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

N.D.N.Y.,2009.
Robinson v. New York State Dept. of Correction Services
Slip Copy, 2009 WL 3246818 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp., 1993 WL 190272 (S.D.N.Y.)
(Cite as: 1993 WL 190272 (S.D.N.Y.))

**H** Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
Gregory SCHOOLFIELD, Plaintiff,
v.
DEPARTMENT OF CORRECTION in its Municipality
Form, et al., Defendants.
**No. 91 Civ. 1691 (MJL).**

May 28, 1993.

MEMORANDUM ORDER

BARBARA A. LEE, United States Magistrate Judge.

*1 This **prisoner** civil rights case was referred for all purposes including report and recommendation on substantive motions by the Honorable Mary Johnson Lowe, U.S.D.J., by Order of Reference entered June 4, 1992. Presently pending are four motions by plaintiff seeking: (1) leave to amend the complaint; (2) *in forma pauperis* status and appointment of counsel; (3) an order compelling defendants to depose plaintiff; (4) an order compelling defendants to stipulate to settlement of the action; and (5) an order prospectively denying any motion by defendants to dismiss the action. Defendants have not responded to any of these motions. For the reasons discussed below, defendants may serve any papers opposing plaintiff's motion to amend by June 30, 1993; plaintiff's other four motions are denied.

*Motion for Leave to Amend.*

The complaint, filed March 11, 1991, is virtually illegible but appears to allege that the plaintiff's hand was injured due to the defendant's negligence and that he was denied adequate medical care.

Plaintiff filed a document styled "Notice of Complaint Under the Consolidation to the Word of Municipal to Deprive the Plaintiff to Access to the Legal Law Library to Pick -up Legal Copy's After a Order of Decess was Order by the Southern District Court of New York for Plaintiff Respond" filed March 30, 1993 ("March 30 Notice"). Treating the March 30 Notice as a motion seeking leave to amend the complaint to allege a denial of access to a law library, I set a May 10, 1993 deadline for defendants to oppose the motion. (Order entered April 6, 1993). No opposing papers were filed and, pursuant to the same order, the complaint is deemed amended and defendants' time to answer or move expires June 10.

Meanwhile, plaintiff moved to further amend the complaint to name an additional defendant and to allege that plaintiff was confined to a shower stall. I set a May 14, 1993 deadline for defendants to oppose the motion. (Order entered April 13, 1993). Again, no opposing papers were filed; the complaint is deemed amended and, pursuant to the April 13 order, defendants have until June 14, 1993 to answer or move.

On May 12, 1993, plaintiff filed a "Notice of Compliacner [sic] to the Decree to File a Complaint Under Letter of Affirmation to the Deputy Clerk" ("May 12 Notice"). Affording plaintiff the **deference** entitled to *pro se* litigants pursuant to *Haines v. Kerner,* 404 U.S. 519 (1972), it appears he seeks leave to **amend** his **complaint** yet a **third** time. This time, plaintiff seeks to add a claim that prison authorities have threatened to "handcuff" him and take his "legal work, and papers and throw them in a place that you never see them again" and "trying to deprive the party of a nature benifit [sic] under medical care, and service's for the support of the party's leg's (a can[e] ) ..." (May 12 Notice at 2).

Defendants shall serve and file any papers in opposition to plaintiff's motion to amend the complaint by June 30, 1993. If no opposing papers are filed, the complaint will be deemed amended and defendants' time to answer or move will expire July 30, 1993. This deadline superseded the deadlines set by the April 6 and April 13 orders; defendant shall file a single answer or motion addressed to the complaint as amended in all respects.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1993 WL 190272 (S.D.N.Y.)
(Cite as: 1993 WL 190272 (S.D.N.Y.))

**\*2** Plaintiff is warned that, while leave to amend is to be freely given, piecemeal pleading cannot go on indefinitely. Any further amendments must be accompanied by an affidavit stating specifically why the new allegations could not have been included in prior applications.

*Motion to Proceed In Forma Pauperis and for Appointment of Counsel.*

On March 4, 1993, plaintiff filed a "Notice of Motion and Affidavit to Proceed Under Discovery for Jury Trial Under Forma Pauperis, and Assignment of Counsel" ("March 4 Notice"). The relief sought by plaintiff is: (1) a declaration that he may proceed *in forma pauperis;* and (2) the appointment of counsel in his case.

A review of the Clerk's docket indicates that on March 11, 1991, the Honorable Charles. L. Brieant, U.S.D.J., granted an earlier request by plaintiff to proceed *in forma pauperis.* Plaintiff has therefore already received part of the relief sought in his March 4 Notice.

This is plaintiff's second motion for appointment of counsel. I recommended that his earlier motion be denied in a Report and Recommendation forwarded to Judge Lowe on November 13, 1992. Judge Lowe adopted this Report and Recommendation on April 20, 1993. Under *Cooper v. A. Sargenti Co.,* 877 F.2d 170 (2d Cir.1989), a complaint must meet a threshold requirement of merit in order for counsel to be appointed. Plaintiff did not meet that standard before. He has failed to allege now any new reason why his second motion should be granted. Accordingly, the motion is denied.

*Motion to Be Deposed.*

On April 30, 1993, plaintiff filed a "Notice of Motion to Proceed Under a Final offer to Settlement hearing, with Stipulation upon the defendants as a matter of Law" ("April 30 Notice"). In the April 30 Notice, plaintiff seeks "[t]o hold a disposition hearing under the fact of the complaint.... [t]o produce the **Pro-se** plaintiff Mr. Gregory

Schoolfield ... with all legal Property, and material that obtain to this case, and all personal property ..."

In an unrelated case filed by this plaintiff before Judge Leisure and referred to me for all purposes, *Schoolfield v. Dep't of Correction,* 91 Civ. 2472 (PKL), plaintiff confused a deposition with a "settlement hearing," possibly because settlement was discussed at that deposition. The April 30 Notice refers to the "settlement hearing" in the action before Judge Leisure. It would therefore appear that what plaintiff seeks in the April 30 Notice is a chance to discuss his case and explore settlement with defendants in deposition format. Defendants are not require to take any discovery, or to use any particular method for the discovery they do seek.

Accordingly, this motion is denied.

*Motion for Settlement.*

Also on April 30, 1993, plaintiff filed a "Notice of Motion and Affidavit to Proceed in Final offer to a settlement agreement [sic] with cost and fee's and expense s and stipulation against the defendants" ("April 30 Settlement Notice"). Plaintiff apparently seeks a stipulation that defendants pay him $666,000 to settle his claim against them or a court order compelling them to do so.

**\*3** A court cannot compel a party to settle a case. Plaintiff's April 30 Settlement Notice states no reasons why defendants should be directed to pay him the amount demanded prior to dispositive motions and/or a trial on the merits. The motion is therefore denied. If the parties are interested in settling this case, they should communicate directly with one another.

*Motion to Prevent Dismissal.*

On May 13, 1993, plaintiff filed a "Notice of motion opposing dismissal under a short and Plain statment [sic] by Rule 12-b-6, and 37 in support of a amend complaint and summary judgment" ("May 13 Notice"). In the May 13 Notice, plaintiff describes his case in a series of

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1993 WL 190272 (S.D.N.Y.)
(Cite as: 1993 WL 190272 (S.D.N.Y.))

numbered paragraphs, and seeks an order "pursuant to Rule 37 and Rule 12-b-6 of the Federal Rules of Civil Procedure, under opposition, and opposing to any dismissal upon the complaint on the ground of a short and plain statement." It appears that the May 13 Notice is not a motion, but is plaintiff's response to any motion to dismiss filed by defendants.

Defendants have not filed any motion to dismiss the action for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), Fed.R.Civ.P. Accordingly, the May 13 Notice is premature. In the event that defendants do move to dismiss, it will be treated as opposition papers to such a motion. To the extent that it seeks an order prospectively denying any future motion to dismiss, such relief is denied.

It is so ordered.

S.D.N.Y.,1993.
Schoolfield v. Department of Correction
Not Reported in F.Supp., 1993 WL 190272 (S.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Page 1

Not Reported in F.Supp.2d, 2007 WL 842008 (D.Conn.)
(Cite as: 2007 WL 842008 (D.Conn.))

C   Only the Westlaw citation is currently available.

United States District Court,
D. Connecticut.
David SIMMONS, Plaintiff,
v.
Theresa LANTZ, et al., Defendants.
**No. 3:04-CV-2180 (RNC).**

March 12, 2007.

David Simmons, Brooklyn, CT, pro se.

Robert F. Vacchelli, Attorney General's Office, Hartford,
CT, for Defendants.

*RULING AND ORDER*

ROBERT N. CHATIGNY, United States District Judge.

**\*1** Plaintiff, a Connecticut inmate proceeding *pro se* and
in *forma pauperis,* brings this action pursuant to 42 U.S.C.
§ 1983 against employees of the Department of Correction
alleging violations of his federal rights. Defendants have
filed a motion to dismiss and plaintiff has filed a motion
for leave to file a third amended complaint. For the
reasons that follow, the motion for leave to amend is
granted and the motion to dismiss is granted in part and
denied in part.

I. *Motion for Leave to Amend [Doc. # 28]*

The plaintiff seeks leave to file a third amended complaint
to identify defendant "Nurse Scott" as Nurse L. Sklarz.
Leave to amend a complaint is "freely given when justice
so requires." Fed.R.Civ.P. 15(a). Under this rule, leave is
freely given in the absence of undue delay or undue

prejudice to the opposing party. *See* Foman v. Davis, 371
U.S. 178, 182 (1962).

The proposed amendment does not add or modify any
factual allegations in the complaint. Instead, it seeks to
clarify the identity of one of the defendants, "Nurse Scott."
The proposed amendment will not delay the litigation or
prejudice the defendants, and there is no evidence that it
is made in bad faith. The motion is therefore granted.

II. *Motion to Dismiss [Doc. # 20]*

The following allegations in the second amended
complaint are assumed to be true for present purposes.[FN1]
In November 2004, and again in February 2005, Dr. Pilli
and Nurse Sklarz placed the plaintiff in an observation
room because he refused to take a shot of Insulin. This
was done despite plaintiff's repeated statements that he
suffered strong adverse effects from Insulin. In each
instance, he was held in the observation room against his
will for seven to ten days, and deprived of food for three
days.

> FN1. Because plaintiff's motion for leave to
> amend has been granted, the second amended
> complaint's allegations regarding Nurse Scott are
> construed as referring to Nurse Sklarz.

On April 10, 2005, Lieutenant Atkins placed the plaintiff
in segregation after he complained about Nurse Sklarz.
Later that day, Correctional Officer Chevalier confiscated
some items of plaintiff's personal property. Commissioner
Lantz and Warden Strange ignored plaintiff's requests for
the return of his property, and Officer Chevalier
subsequently gave the plaintiff a false disciplinary report.
Plaintiff was then transferred to another facility, ostensibly
on the basis of Chevalier's disciplinary report, which Lantz
and Strange knew to be false.

On being transferred, plaintiff was placed in a cell with
another inmate. Between May 16 and June 8, 2005, he
complained to Captain Frey on three occasions that he felt

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 842008 (D.Conn.)
(Cite as: 2007 WL 842008 (D.Conn.))

unsafe with his cellmate. On June 8, plaintiff's cellmate assaulted him, causing injuries to plaintiff's face, left thumb, left ankle and torso.

Based on these allegations, plaintiff claims that the defendants are liable to him for: (1) deprivation of property under the Fourteenth Amendment; (2) unlawful seizure under the Fourth Amendment; (3) violation of his right to refuse medical treatment under the Fourteenth Amendment; (4) retaliation under the First and Fourteenth Amendment; and (5) failure to protect under the Eighth Amendment.[FN2]

> FN2. Generously construed to state all claims that they suggest, plaintiff's allegations also appear to be sufficient to state a claim for deprivation of food under the Eighth Amendment. See *Phelps v. Kapnolas,* 308 F.3d 180, 185-86 (2d Cir.2002).

**\*2** The defendants move to dismiss on the following grounds: (1) the Eleventh Amendment bars claims for money damages against the defendants in their official capacities; (2) the plaintiff has failed to state a claim upon which relief may be granted; (3) the plaintiff has failed to allege personal involvement on the part of defendants of Antico, Lantz and Strange; and (4) the defendants are shielded from liability by qualified immunity.

A. *Eleventh Amendment*

The Eleventh Amendment prohibits suits for money damages against states or state actors in their official capacities. See *Kentucky v. Graham,* 473 U.S. 159, 169 (1985). Section 1983 does not override a state's Eleventh Amendment immunity, see *Quern v. Jordan,* 440 U.S. 332, 345 (1979), and Connecticut has not otherwise waived its immunity to this suit. Accordingly, the motion to dismiss is granted as to the claims for money damages against the defendants in their official capacities.

B. *Legal Sufficiency*

1. *Deprivation of Property*

The motion to dismiss is granted as to the property claim. "[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer,* 468 U.S. 517, 533 (1984). Connecticut provides an adequate remedy for the kind of deprivation the plaintiff describes, *see* Conn. Gen.Stat. § 4-141 *et seq.* (2007), and plaintiff does not claim that this remedy is unavailable to him.

2. *Unlawful Seizure and Unwanted Medical Treatment*

The motion to dismiss the claims relating to plaintiff's placement in observation after he refused to take Insulin are denied. The Fourth Amendment protects an individual from involuntary transfer to and confinement in a medical facility unless he is dangerous to himself or others. *See Green v. City of New York,* 465 F.3d 65, 83 (2d Cir.2006); *Glass v. Mayas,* 984 F.2d 55, 58 (2d Cir.1993). And a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment, which survives incarceration. *See Washington v. Harper,* 494 U.S. 210, 221-22 (1990); *Pabon v. Wright,* 459 F.3d 241, 249 (2d Cir.2006). Defendants contend that dismissal is proper because plaintiff's refusal to take Insulin endangered himself, and his claim is based on nothing more than disagreement with his health care providers concerning the proper treatment for his condition. At this stage of the case, however, it is not clear beyond doubt that plaintiff can prove no set of facts consistent with his allegations that would entitle him to relief.

3. *Retaliation*

The motion to dismiss the retaliation claims is denied. To state a claim for retaliation, plaintiff must make non-conclusory allegations showing that he was subjected to adverse action because he engaged in protected speech or conduct. *See Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir.2004). Complaints are protected conduct, *cf. Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996), as is the exercise of the right to refuse medical treatment, *cf.*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 842008 (D.Conn.)
(Cite as: 2007 WL 842008 (D.Conn.))

*Pabon,* 459 F.3d at 246. Retaliatory conduct is adverse if it "would deter a similarly situated individual of ordinary firmness" from the exercise of his constitutional rights. *Pidlypchak,* 389 F.3d at 381(internal quotations omitted). Plaintiff's retaliatory transfer to and confinement in a medical facility while being deprived of meals sufficiently states an adverse action. *See Morales v. Mackalm,* 278 F.3d 126, 131-32 (2d Cir.2002)(finding transfer to psychiatric facility sufficient on motion to dismiss to constitute adverse action under a retaliation analysis), *abrogated on other grounds by Porter v. Nussle,* 534 U.S. 516 (2002). And the filing of a false disciplinary report resulting in institutional transfer may constitute adverse action. *See Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir.2003).

### 4. *Failure to Protect*

*3 The motion to dismiss the failure to protect claim is denied. To establish a constitutional violation, plaintiff must show that he was "incarcerated under conditions posing a substantial risk of serious harm," and that prison officials showed "deliberate indifference" to his safety. *See Farmer v. Brennan,* 511 U.S. 825, 834 (1994). A prison official possesses culpable intent to support a claim of deliberate indifference if he "has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." *Hayes v. New York City Dep't Of Corrections,* 84 F.3d 614, 620 (2d Cir.1996). Plaintiff alleges that he informed Captain Frey on three occasions before June 8, 2005, that he felt threatened by his cellmate, but Captain Frey refused to move him to another cell. This is sufficient to withstand the motion to dismiss.

### C. *Personal Involvement*

### 1. *Defendant Antico*

The motion to dismiss the action against defendant Antico is granted. Plaintiff has failed to allege any acts or omissions on the part of this defendant and thus has failed to adequately allege his personal involvement in any of the alleged wrongs. *See Farrell v. Burke,* 449 F.3d 470, 484 (2d Cir.2006).

### 2. *Defendants Lantz and Strange*

The motion to dismiss the action as to defendants Lantz and Strange is granted in part. Plaintiff alleges that he asked these defendants to arrange for return of his personal property, which he claimed had been stolen by defendant Chevalier. According to the plaintiff, they ignored his requests, then transferred him to another facility based on a disciplinary report issued by Chevalier, which they knew to be false. As discussed earlier, these allegations are sufficient to state a claim for retaliation. However, plaintiff's allegations do not support a claim against these defendants with regard to any of the other alleged wrongs. With regard to those matters, there is no allegation that either of these defendants was grossly negligent or deliberately indifferent, nor any allegation of an "affirmative causal link between [their] inaction and [his] injury" as required to support a theory of supervisory liability. *Poe v. Leonard,* 282 F.3d 123, 140 (2d Cir.2002).

### D. *Qualified Immunity*

The motion to dismiss based on qualified immunity is denied. "[A] qualified immunity defense can be presented in a Rule 12(b)(6) motion, but ... the defense faces a formidable hurdle when advanced on such a motion and is usually not successful." *Field Day, LLC v. County of Suffolk,* 463 F.3d 167, 191-92 (2d Cir.2006)(internal quotations omitted). This case is no exception. Defendants have not shown that, accepting plaintiff's allegations as true, their conduct must be deemed objectively reasonable.

### III. *Conclusion*

Accordingly, the motion for leave to amended [doc. # 28] is hereby granted, and the motion to dismiss [doc. # 20] is granted in part and denied in part.

D.Conn.,2007.
Simmons v. Lantz
Not Reported in F.Supp.2d, 2007 WL 842008 (D.Conn.)

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 842008 (D.Conn.)
(Cite as: 2007 WL 842008 (D.Conn.))

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp., 1998 WL 146409 (N.D.N.Y.)
(Cite as: 1998 WL 146409 (N.D.N.Y.))

**C** Only the Westlaw citation is currently available.

United States District Court, N.D. New York.
Craig James SIMS, Plaintiff,
v.
R. Bowen, Correctional Officer at Great Meadow
Correctional Facility, Defendant.
**No. 96-CV-656 RSP/DRH.**

March 23, 1998.

Craig James Smith, Clinton Correctional Facility, Dannemora, for Plaintiff Pro Se.

Hon. Dennis C. Vacco, Attorney General for the State of New York, Attorney for Defendant, Albany, Jeffrey P. Mans, Esq., Assistant Attorney General, of Counsel.

MEMORANDUM-DECISION AND ORDER

POOLER, D.J.

*1 Defendant R. Bowen, a correctional officer at Great Meadow Correctional Facility ("Great Meadow"), objects to Magistrate Judge David R. Homer's recommendation that I deny Bowen's motion for summary judgment dismissing plaintiff Craig James Sims' claim that Bowen violated his Eighth Amendment right to be free from cruel and unusual punishment.

BACKGROUND

Sims alleges that on November 16, 1995, Bowen told him that he would have to move from protective custody unit D-1 to protective custody unit D-2, which also housed A. Brown. Pl.'s Dep., Dkt. No. 32 Ex. A., at 5, 11. Sims told Bowen that Brown was a known enemy and supplied a

letter dated October 20, 1995, from Great Meadow's Superintendent, James Stinson, to Assistant Attorney General David B. Roberts. *Id.* at 5; Dkt. No. 35 Item 1. In Stinson's letter-which was apparently written concerning an earlier request by Sims for protective custody-he said:

Sims has been denied protection because he has one known enemy that he has named at this facility-INMATE BROWN # 84-B-2381. All other names that he has given are either not at the facility or non-existent. The one enemy that he does name is presently in our protection unit. Therefore, he cannot be moved to that location if, in fact, that inmate is indeed his enemy.

Dkt. No. 35 Item 1 at 1. Sims alleges that he also showed Bowen a copy of a protective custody recommendation. Pl.'s Dep. at 7. Bowen looked at Sims' documentation and briefly left the area. *Id.* at 13-14. However, Bowen told Sims that he would still have to move him to the other protective custody unit because there had been "an incident up there with another two inmates." *Id.* at 5-6.

At some point after Bowen placed Sims in a locked cell in the D-2 unit, Brown-who was on his way the shower-approached the cell and said, "You all, I want to talk to you." *Id.* at 17-18. Sims went up to the bars, and Brown punched him in the face. *Id.* at 20, 21. The blow did not break Sims' skin or knock him to the floor. *Id.* at 21. Brown then continued toward the shower, and Sims overheard Brown tell another inmate to throw feces at Sims. *Id.* at 22. The other inmate followed Brown's instructions, causing the feces to go into Sims' mouth. *Id.* at 27.

According to Sims, at shower time, the only correctional officer on duty in the D-2 unit stays in a bubble-like structure near the shower area, and an inmate actually lets protective custody inmates out to take their showers. *Id.* at 17. Because Sims was way in the back of the unit, he could not promptly notify the officer of the attacks. *Id.* at 23. However, he did tell a correctional officer who passed by his cell in the middle of the night about the feces throwing incident. *Id.* at 23. That officer simply told the other inmates to leave Sims alone and stop throwing things

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1998 WL 146409 (N.D.N.Y.)
(Cite as: 1998 WL 146409 (N.D.N.Y.))

at him. *Id.* Sims then decided that the only way to get off the unit and away from his enemies was by cutting his arm with a razor, which he did. *Id.* at 24. Corrections officials then took Sims to the hospital where medical staff disinfected his wounds and-because the inmate who threw the feces had "some kind of sickness, hepatitis or something"-gave him a blood test. *Id.* at 25. Neither that blood test or subsequent blood tests revealed any problem. *Id.* 27-28. The next morning Sims was moved out of the unit. *Id.* at 27.

**\*2** Plaintiff filed his complaint on April 25, 1996. He requested damages and an order directing defendants to place him in protective custody for the rest of his stay in state prison. Compl. § 3. Stinson was subsequently transferred to Clinton Correctional Facility. On July 30, 1997, Bowen moved for summary judgment. Dkt. No. 29. Sims opposed defendant's motion. *See* Dkt. Nos. 33-36.

On February 11, 1998, Magistrate Judge Homer issued a report-recommendation and order in which he recommended that I deny defendant's motion. Dkt. No. 41. The magistrate judge found that plaintiff created issues of fact under the applicable standard for judging an alleged Eighth Amendment violation. More specifically, the magistrate judge found that (1) Sims offered competent evidence that defendant knew that the D-2 unit contained a purported known enemy of Sims; (2) Stinson's letter stating that Sims could not be placed in protective custody if his known enemy was also in protective custody evidenced the substantial risk of harm from placing Sims in Brown's unit; and (3) Bowen's description of a prior incident involving two protective custody inmates demonstrates that he knew that inmates could still harm each other even though they are usually locked in their cells. Report-Recommendation at 6. Although Bowen argued that Sims cannot establish deliberate indifference because Bowen left Sims for a period of time after Sims informed him that his known enemy was housed in the D-2 unit, the magistrate judge found that Bowen offered no competent evidence that he ever considered Sims' concerns. *Id.* Finally, the magistrate judge rejected Bowen's argument that Sims could not sustain this action because he suffered no compensable injury. *Id.* at 7. The magistrate judge found that if Sims established an Eighth Amendment violation, he could recover nominal damages even in the absence of actual injury. *Id.* at 8.

Bowen filed his objections on February 19, 1996. Dkt. No. 42. Bowen argues that (1) the first assault on Sims occurred only because Sims voluntarily went to the front of his cell; (2) Sims suffered no injury as a result of either of the assaults; (3) Sims was locked in his cell at the time of both assaults and this situation does not present a substantial risk of serious harm; (4) Bowen was not responsible for security on D-2 block when Sims was injured, and his sole involvement was moving Sims from D-1 Block to D-2 Block; and (5) the magistrate erred when he read Sims' testimony as alleging that Bowen had told him of a physical altercation between two inmates on D-2 Unit. *Id.*

## DISCUSSION

### I. Standard for Review

Because Bowen filed objections, I review the report-recommendation *de novo.* 28 U.S.C. § 636(b)(1)(C).

### II. Summary Judgment Standard

Summary judgment shall enter if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The materiality of facts must be determined with reference to the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party has the initial responsibility of demonstrating that there is no genuine issue of material fact to be decided. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). As to any issue on which the moving party does not have the burden of proof, the moving party may satisfy its burden by "pointing out to the district court ... that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

**\*3** Once the moving party satisfies this initial burden, "the burden shifts to the nonmovant to proffer evidence demonstrating that a trial is required because a disputed issue of material fact exists." *Weg v. Macchiarola,* 995

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1998 WL 146409 (N.D.N.Y.)
(Cite as: 1998 WL 146409 (N.D.N.Y.))

F.2d 15, 18 (2d Cir.1993). In satisfying this burden, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." ' Fed. R. Civ. P 56(e). The opponent of summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).* "[M]erely colorable" evidence will not suffice as a basis for opposing summary judgment. *Anderson, 477 U.S. at 249-50.*

In weighing a motion for summary judgment, the court must accept as true the non-moving party's evidence and make "all justifiable inferences" in the non-moving party's favor. *Anderson, 477 U.S. at 255.* The evidentiary standard governing proof at trial determines how the court must assess the evidence in deciding whether the summary judgment standard has been met. *Id. at 254-55.* In an ordinary civil case, such as this one, where plaintiffs must prove their case by a preponderance of the evidence, the determinative standard is "whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." *Id. at 252.*

III. The Substantive Law

To hold Bowen liable for an Eighth Amendment violation, Sims must show that Bowen was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed] .. and that he [drew] that inference." *Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994).* Sims need not show, however, that he actually incurred serious physical harm. *Gibeau v.. Nellis, 18 F.3d 107, 110-11 (2d Cir.1994); Heisler v. Kralik, 981 F.Supp. 830, 837 (S.D.N.Y.1997).*

The magistrate judge found that a fact finder could infer that Bowen knew that he was exposing Sims to a substantial risk of serious harm because (1) Sims showed Bowen the Stinson letter and (2) Bowen acknowledged that there had been an incident on the D-2 unit that day. Bowen argues correctly that the finder of fact could not infer without speculating that the incident he described involved physical violence. *See* Pl.'s Dep. at 5.

Nevertheless, a fact finder could infer based on Sims' description of the D-2 unit's layout, his testimony that an inmate and not a correctional officer let inmates out for their showers, and his testimony that inmates in the back of the unit could not be seen or heard by the correctional officer on duty during shower time that there could be an opportunity for one inmate to harm another even while the victim was inside a cell. Sims has not offered competent evidence, however, from which the fact finder could infer that Bowen knew Sims was likely to be attacked on D-2 unit. The only evidence in the record relevant to this claim is Sims' statements to both Stinson and Bowen that Brown was his "known enemy." Sims did not claim that he told Stinson or Bowen that Brown had either assaulted or threatened him. The weakness of Sims' contentions contrasts sharply with cases in which the courts have found that there were issues of fact as to whether a defendant knew that he was exposing an inmate to a substantial risk of serious harm. *See Villante v. Department of Corrections of the City of New York, 786 F.2d 516, 522 (2d Cir.1986)* (allegation that plaintiff "was the victim of a pattern of sexual threats and abuse virtually from the time he arrived at the [facility] and that appellees' actions in response to the problem exacerbated it rather than cured it."); *Ayers v. Coughlin, 780 F.2d 205, 206 (2d Cir.1985)* (plaintiff claimed that defendant had specific knowledge of death threats); *cf. Morales v. New York State Dep't of Corrections, 842 F.2d 27, 29 (2d Cir.1988)* (holding on a Rule 12(b)(6) motion that plaintiff stated a claim by alleging that one defendant did not try to stop an attack on him and others knew of a previous fight between him and his assailant and/or a previous attempt on his life by the assailant and/or that the assailant was generally involved in assaults on and extortion from inmates). Correctional officials must respond to a wide variety of institutional needs including the safety of inmates when they decide on a particular inmate's placement. I conclude that an inmate must inform a correctional official of the basis for his belief that another inmate represents a substantial threat to his safety before the correctional official can be charged with deliberate indifference. Therefore, Sims did not produce competent evidence from which a fact-finder could find in his favor.

CONCLUSION

*4 For the reasons I have discussed, it is

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1998 WL 146409 (N.D.N.Y.)
(Cite as: 1998 WL 146409 (N.D.N.Y.))

ORDERED that the report-recommendation is not approved; and it is further

ORDERED that defendant's summary judgment motion is granted and the complaint dismissed; and it is further

ORDERED that the Clerk of the Court serve a copy of this order on the parties by ordinary mail.
HOMER, Magistrate J.

REPORT-RECOMMENDATION AND ORDER [FN1]

FN1. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

The plaintiff, an inmate in the New York State Department of Correctional Services ("DOCS"), brought this pro se action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that defendant violated his rights under the Eighth and Fourteenth Amendments while he was an inmate at the Great Meadow Correctional Facility ("Great Meadow"). Specifically, he alleges that defendant's actions in moving plaintiff to a cell block where a known enemy of plaintiff's was being held violated the Eighth Amendment's prohibition on cruel and unusual punishment. Plaintiff seeks monetary damages and an order directing that he be placed in protective custody.

Presently pending is defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56. Docket No. 29. Also pending are motions by plaintiff for the appointment of counsel. Docket Nos. 37, 38 & 40. For the reasons which follow, it is recommended that defendant's motion for summary judgment be denied, and it is ordered that plaintiff's motions for appointment of counsel are denied.

I. Background

On November 16, 1995, while incarcerated at Great Meadow,[FN2] plaintiff was moved from his cell in a protective custody unit (D-1 Block) to a cell in a separate

protective custody unit (D-2 Block) by defendant. Def's. Rule 7.1(f) Statement (Docket No. 30) ¶ 1. Plaintiff objected to the move and told defendant that a known enemy of plaintiff's was housed in the unit to which plaintiff was being moved. Plaintiff presented defendant with a letter making reference to plaintiff's alleged known enemy. Id. at ¶ 5. Upon seeing the letter, defendant left plaintiff for a period of time, but returned and transferred him to the other unit. Pl's. Dep. (Docket No. 32, Ex. A) p. 13-14.

FN2. Plaintiff is now incarcerated at the Clinton Correctional Facility.

While locked in his cell in D-2 Block, plaintiff's known enemy, inmate A. Brown, confronted plaintiff and called him to the front of his cell. Plaintiff and Brown exchanged words and then Brown punched plaintiff in the face through the bars of his cell. Def's. Rule 7.1(f) Statement at ¶ 6. Later that day, another inmate, allegedly at Brown's request, threw feces on plaintiff from outside plaintiff's cell. Id. at ¶ 9. Although plaintiff claims to have heard Brown direct the inmate to attack plaintiff, plaintiff did not attempt to notify guards of the threat. Plaintiff received medical attention following the incidents (Docket No. 35, Item 3) and no medical problem associated with either incident has developed.

II. Summary Judgment Standard

Under Fed.R.Civ.P. 56(c), if there is "no genuine issue as to any material fact ... the moving party is entitled to judgment as a matter of law, ... where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The moving party bears the burden of demonstrating that no genuine issue of material fact exists. Federal Deposit Ins. Corp. v. Giammettei, 34 F.3d 51, 54 (2d Cir.1994); see also Heyman v. Commerce and Industry Ins. Co., 524 F.2d 1317, 1320 (2d Cir.1975). Once the movant has come forward with sufficient evidence in support of the motion for summary judgment, the opposing party must "set forth specific facts showing that there is a genuine issue for trial" and cannot rest on "mere allegations or denials" of the facts asserted by the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1998 WL 146409 (N.D.N.Y.)
(Cite as: 1998 WL 146409 (N.D.N.Y.))

movant. Fed.R.Civ.P. 56(e); *accord Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525-26 (2d Cir.1994).

**\*5** The trial court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *American Cas. Co. of Reading, Pa. v. Nordic Leasing, Inc.,* 42 F.3d 725, 728 (2d Cir.1994); *see also Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985), *cert. denied,* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). "Furthermore, the non-movant 'will have his allegations taken as true, and will receive the benefit of the doubt when his assertions conflict with those of the movant.' " *Samuels v. Mockry,* 77 F.3d 34, 36 (2d Cir.1996) (citations omitted).

When summary judgment is sought against a pro se litigant, a court must afford the non-movant special solicitude. *Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### III. Discussion

### A. Defendant's Motion for Summary Judgment

The Eighth Amendment places a burden on prison officials to "take reasonable measures to guarantee the safety of [] inmates ." *Hudson v. Palmer,* 468 U.S. 517, 526-27, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). That burden includes an obligation to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan,* 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Hendricks v. Coughlin,* 942 F.2d 109, 113 (2d Cir.1991). Not every injury suffered by one inmate at the hands of another imposes constitutional liability, however. *Farmer,* 511 U.S. at 834. A prisoner asserting an Eighth Amendment claim must establish two things. First, the deprivation alleged is sufficiently serious. Second, the defendant acted with a sufficiently culpable state of mind. *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

In the context of a failure to protect claim, the deprivation is sufficiently serious if the inmate is incarcerated under conditions imposing a substantial risk of serious harm. *Farmer,* 511 U.S. at 834. In prison condition cases, the state of mind requirement is one of deliberate indifference to the inmate's health and safety. *Wilson,* 501 U.S. at 302-03. Deliberate indifference requires that a prison official "be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference" before Eighth Amendment liability may be imposed. *Farmer,* 511 U.S. at 837.

Defendant contends that plaintiff cannot establish that he was placed in a situation where a substantial risk of serious harm existed because he simply was moved from one protective custody unit to another. The record, however, establishes that the protective custody unit to which plaintiff was moved also housed a person purported to be a known enemy of plaintiff. That such a situation may create a substantial risk of harm is evidenced by a letter from James Stinson, Superintendent at Great Meadow, stating that plaintiff could not be placed in its protective custody unit if a known enemy was also housed there.[FN3] Docket No. 35, Item 1. Moreover, plaintiff alleges that defendant told him he was being moved to make room for an inmate from D-2 Block who had been involved in an "incident" with another inmate on that block. Credited as fact for purposes of this motion, that statement indicates knowledge by defendant that, although locked in their cells, inmates in D-2 Block still may cause harm to each other. A fact-finder could infer from these facts that defendant's transfer of plaintiff to the same unit as Brown deliberately placed plaintiff in a situation which created a substantial risk of serious harm.

> FN3. The same letter questions whether Brown was in fact defendant's enemy, but defendant offers no evidence to show that plaintiff's claim that Brown was his known enemy was unsubstantiated.

**\*6** Defendant contends that to establish deliberate indifference, defendant must not have even considered

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1998 WL 146409 (N.D.N.Y.)
(Cite as: 1998 WL 146409 (N.D.N.Y.))

plaintiff's concerns. Defendant further contends that no deliberate indifference can be shown here because, after plaintiff informed defendant that a known enemy was housed on the D-2 Block, defendant left for a period of time before transferring plaintiff. Defendant's claim should be rejected because he offers no evidence to suggest that he ever considered plaintiff's concerns. The mere fact that defendant departed and returned later is no more proof that defendant considered plaintiff's concerns than that he deliberately ignored them. In any event defendant offers no proof of where defendant went or what he did during that interval.

Recovery of compensatory damages under section 1983 requires a showing of actual injury. *Miner v. City of Glens Falls*, 999 F.2d 655, 660 (2d Cir.1993). However, even absent proof of compensable injury, a section 1983 plaintiff is entitled to nominal damages upon establishing a violation of a substantive constitutional right. *Gibeau v. Mellis*, 18 F.3d 107, 110 (2d Cir.1994). Therefore, since plaintiff can recover damages if he establishes an Eighth Amendment violation, defendant's claim that plaintiff did not suffer an "actual injury" within the meaning of the Eighth Amendment should be rejected.

B. Appointment of Counsel

Plaintiff's previous request for the appointment of counsel was denied because he had failed to demonstrate his inability to retain counsel from either the private sector or a public interest firm. Docket No. 27. In support of his renewed application, plaintiff has provided this Court with letters that he has apparently received from the public and private sector that substantiate his claimed inability to secure counsel on his own. Docket Nos. 37, 38 & 40. Thus, this Court may properly consider plaintiff's renewed request for appointment of counsel.

Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir.1997). Instead, a number of factors must be carefully considered by a court in ruling upon such a motion. As a threshold matter, a court should ascertain whether the indigent's claims seem likely to be of substance. If so, the court should then consider:

The indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir.1994) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir.1986)). That is not to say that all, or indeed any, of these factors are controlling in a particular case. Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe*, 899 F.Supp. 972, 974 (N.D.N.Y.1995) (citing *Hodge*, 802 F.2d at 61). With the foregoing standards in mind, the Court will consider plaintiff's renewed application for appointment of counsel.

*7 A review of the file in this matter reveals that the issues in dispute herein-whether plaintiff's Eighth Amendment rights were violated-are not overly complex. Further, it appears that to date, plaintiff has been able to litigate this action effectively. While it is possible that there will be conflicting evidence implicating the need for cross-examination at the time of trial, as is the case in many pro se actions brought under section 1983, "this factor alone is not determinative of a motion for appointment of counsel." *Velasquez*, 899 F.Supp. at 974. Finally, this Court is unaware of any special reason why appointment of counsel at this time would be more likely to lead to a just determination of this litigation. The Court, therefore, finds that, based upon the existing record in this case, appointment of counsel is unwarranted.

IV. Conclusion

WHEREFORE, for the reasons stated above it is

RECOMMENDED that defendant's motion for summary judgment be DENIED; and it is

ORDERED that plaintiff's motions for the appointment of

Not Reported in F.Supp., 1998 WL 146409 (N.D.N.Y.)
(Cite as: 1998 WL 146409 (N.D.N.Y.))


counsel are DENIED; and


IT IS FURTHER ORDERED that the Clerk of the Court
serve a copy of this Report-Recommendation and Order,
by regular mail, upon parties to this action.


Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge
written objections to the foregoing report. Such objections
shall be filed with the Clerk of the Court. FAILURE TO
OBJECT TO THIS REPORT WITHIN TEN DAYS
WILL PRECLUDE APPELLATE REVIEW. *Roldan v.
Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Secretary
of Health and Human Services* 892 F.2d 15 (2d Cir.1989);
28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).


N.D.N.Y.,1998.
Sims v. Bowen
Not Reported in F.Supp., 1998 WL 146409 (N.D.N.Y.)


END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2010 WL 145292 (N.D.N.Y.)
(Cite as: 2010 WL 145292 (N.D.N.Y.))

**H** Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Victor SMITH, Plaintiff,
v.
Brian FISCHER, Commissioner, NYS Docs; S. Connell,
Superintendent, J. Badger, DSA, and K. Adamik,
Captain, Each of Oneida Correctional Facility; I.
Lombardo, Acting Superintendent, A. Labroia, DSS,
Each of Orleans Correctional Facility; and Mr.
Naughton, Oneida Correctional Facility, DSS,
Defendants.
**No. 9:07-CV-1264.**

Jan. 11, 2010.

Victor D. Smith, Sodus, NY, pro se.

Hon. <u>Andrew M. Cuomo</u>, Attorney General of the State of
New York, Roger W. Kinsey, Esq., Shoshanah V. Bewlay,
Esq., Asst. Attorney General, of Counsel, Albany, NY, for
Defendants.

### DECISION and ORDER

<u>DAVID N. HURD</u>, District Judge.

**\*1** Plaintiff, Victor Smith commenced this civil rights
action in December 2007, pursuant to <u>42 U.S.C. § 1983</u>.
By Report-Recommendation dated November 24, 2009,
the Honorable George H. Lowe, United States Magistrate
Judge, recommended that defendants' motion for to
dismiss for failure to state a claim (Docket No. 38) be
granted without leave to amend. No objections to the
Report-Recommendation have been filed.

Based upon a careful review of the entire file and the

recommendations of Magistrate Judge Lowe, the
Report-Recommendation is accepted and adopted in all
respects. See <u>28 U.S.C. 636(b)</u> (1).

Accordingly, it is

ORDERED that

1. The defendants' motion to dismiss for failure to state a
claim is GRANTED;

2. Plaintiffs' complaint is DISMISSED; and

4. The Clerk is directed to enter judgment accordingly and
close the file.

IT IS SO ORDERED.

### REPORT-RECOMMENDATION

<u>GEORGE H. LOWE</u>, United States Magistrate Judge.

This *pro se* prisoner civil rights action, commenced
pursuant to <u>42 U.S.C. § 1983</u>, has been referred to me for
Report and Recommendation by the Honorable David N.
Hurd, United States District Judge, pursuant to <u>28 U.S.C.
§ 636(b)</u> and Local Rule 72.3(c). Plaintiff Victor Smith
alleges that seven employees [FN1] of the New York State
Department of Correctional Services ("DOCS") who
wrongfully subjected him to disciplinary confinement and
prevented him from attending his mother's wake. Currently
pending before the Court is Defendants' motion to dismiss
the second amended complaint [FN2] (Dkt. No. 31) for
failure to state a claim upon which relief may be granted
pursuant to <u>Federal Rule of Civil Procedure 12(b)(6)</u>.
(Dkt. No. 38.) For the reasons that follow, I recommend
that Defendants' motion be granted.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 145292 (N.D.N.Y.)
(Cite as: 2010 WL 145292 (N.D.N.Y.))

FN1. Brian Fischer (Commissioner of DOCS), Susan Connell (Superintendent of Oneida Correctional Facility), John Badger, Karl Adamik, Ivy Lombardo (Acting Superintendent of Orleans Correctional Facility), Anthony Labriola, and Peter Naughton.

FN2. Defendants refer to the operative complaint as the "third amended complaint." The operative complaint is the second amended complaint. The original complaint was filed on December 5, 2007. (Dkt. No. 1.) Plaintiff was ordered to file an amended complaint. (Dkt. No. 8.) He did so on April 23, 2008, but the document was stricken from the docket due to defects in Plaintiff's identification of defendants. (Dkt. Nos. 13 and 14.) Plaintiff filed the first amended complaint on June 3, 2008. (Dkt. No. 15.) Plaintiff filed the current complaint (Dkt. No. 31) after I recommended that the first amended complaint be dismissed.

## I. BACKGROUND

The pending complaint (Dkt. No. 31) is, as previously noted, the second amended complaint in this case. The first amended complaint alleged that Defendant Captain Karl Adamik issued a misbehavior report charging Plaintiff with various offenses. (Dkt. No. 15 ¶ 6(1).) As a result, Plaintiff was held in the Special Housing Unit ("SHU") pending a hearing. *Id.* Defendant John Badger conducted the hearing and found Plaintiff guilty of all charges. He sentenced Plaintiff to 90 days in the S-Block, with no credit for the time Plaintiff had served in the SHU. *Id.* at ¶ 6(2). While Plaintiff was being held in the S-Block, Defendants Susan Connell, Anthony Labriola, Ivy Lombardo, and Peter Naughton denied his appeals of his disciplinary sentence. *Id.* at ¶ 6(3). The disciplinary charges were ultimately administratively reversed because Defendant Adamik's misbehavior report did not provide enough facts to support the charges. *Id.* at Ex. B. Despite the reversal of the charges, Defendants Labriola and Lombardo denied Plaintiff's request to be released into the general population and continued to hold him in the S-Block. *Id.* at ¶ 6(4). As a result of these events, Plaintiff was confined in the SHU and the S-Block for a total of 98 days, 15 days of which were prior to completion of his

disciplinary hearing and 24 days of which were after the charges were reversed. *Id.* ¶ 7.

**\*2** Plaintiff's first amended complaint also alleged that DOCS officials wrongfully denied him permission to attend his mother's wake. *Id.* at ¶ 5(b). Plaintiff filed an action in the New York State Court of Claims regarding the wake visit denial while he was serving his S-Block sentence. *Id.*

Defendants moved to dismiss Plaintiff's first amended complaint. (Dkt. No. 28.) I recommended that the motion be granted with leave to amend. (Dkt. No. 30.) Specifically, I found that (1) the complaint did not state a procedural due process claim based on Plaintiff's disciplinary confinement because Plaintiff did not allege that he was subject to conditions harsher than normal SHU conditions; (2) the complaint did not state a retaliation claim because the alleged adverse action (filing charges against Plaintiff and confining him) occurred *before* the alleged protected conduct (filing suit in the Court of Claims regarding the denied wake visit); (3) the complaint did not state a procedural due process claim based on the denial of the wake visit because the granting of wake visits is entirely discretionary; (4) the complaint did not state a substantive due process claim because Plaintiff did not allege any facts plausibly suggesting that Defendants' conduct was arbitrary, conscience-shocking, or oppressive in the constitutional sense; (5) the complaint did not state an equal protection claim because Plaintiff did not allege that he was treated differently from other similarly situated individuals; and (6) the complaint did not state an Eighth Amendment claim.

Before the District Court issued a final order on the motion to dismiss, Plaintiff filed a document that was later classified as the second amended complaint. (Dkt. No. 31.) In a cover letter accompanying the document, Plaintiff referred to it as an "amendment to the FACTS portion of [the] previously submitted, and received, Inmate Civil Rights Complaint." (Dkt. No. 31, emphasis in original.) In relevant part, the new document alleges that (1) Plaintiff offered to give Defendant Naughton information about the mental state of an inmate who died in the SHU "in exchange for special consideration" of Plaintiff's wake visit request; (2) Defendant Naughton assigned Defendant Adamik to meet with Plaintiff

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 145292 (N.D.N.Y.)
(Cite as: 2010 WL 145292 (N.D.N.Y.))

regarding the information; (3) After the meeting, Defendant Adamik charged Plaintiff with extortion, false statements, and action detrimental to the order of the facility because "Plaintiff attempted to extort with the ... information for the purposes of securing the ... deathbed visit"; (4) Defendant Adamik planted "a forged document and fictitious file" in Plaintiff's cell sometime prior to August 16, 2007; (5) at the disciplinary hearing on the extortion charge, Defendant Badger engaged in "the preservation of procedural safeguards/defects" and found Plaintiff guilty "despite clearly erroneous information in the misbehavior report"; (6) Defendant Badger did not credit Plaintiff for the 14 days he served prior to the completion of the hearing; and (7) during his confinement in the S-block, Plaintiff was denied medication for gout for approximately 20 days, moved to a top bunk after being assigned a bottom bunk, and assaulted by another inmate. (Dkt. No. 31 at 2-3.)

**\*3** On March 9, 2009, Judge Hurd issued an order adopting my Report-Recommendation in its entirety and granting Defendants' motion to dismiss the first amended complaint. (Dkt. No. 32.) On April 24, 2009, Judge Hurd ordered Defendants to "answer, or otherwise move, in regard to [P]laintiff's second amended complaint (Docket No. 31)." (Dkt. No. 34.)

Defendants now move to dismiss the second amended complaint. (Dkt. No. 38.) Defendants argue that (1) the complaint does not comply with the Federal Rules of Civil Procedure or Local Rule 7.1; (2) Plaintiff's claims are barred by the doctrine of collateral estoppel; (3) Plaintiff's procedural due process claim is without merit; (4) Plaintiff's Eighth Amendment claims are without merit; (5) Plaintiff fails to state an equal protection claim; (6) the complaint does not allege personal involvement by Defendants Fischer, Connell, Naughton, Lombardo, and Labriola; (7) the emotional distress claim must be dismissed; and (8) Defendants are entitled to qualified immunity. *Id.*

Plaintiff has opposed the motion. (Dkt. No. 41.)

## II. LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the grounds that the complaint fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' " *Ashcroft v. Iqbal,* --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)) (emphasis added). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense ... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not shown-that the pleader is entitled to relief." *Id.* at 1950 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Fed.R.Civ.P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills,* 22 A.D. 379, 572 F.3d 66, 72 (2d Cir.2009). However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949.

**\*4** Where a *pro se* complaint fails to state a cause of action, the court *generally* "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (internal quotation and citation omitted). Of course, an opportunity to amend is not required where the plaintiff has already amended the complaint. *See Advanced Marine Tech. v. Burnham Sec., Inc.,* 16 F.Supp.2d 375, 384 (S.D.N.Y.1998) (denying leave to amend where plaintiff had already amended

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 145292 (N.D.N.Y.)
(Cite as: 2010 WL 145292 (N.D.N.Y.))

complaint once).

## III. ANALYSIS

### A. The Second Amended Complaint Does Not Comply With the Federal Rules of Civil Procedure or the Local Rules of this Court.

Defendants argue that the second amended complaint must be dismissed because it does not comply with the Federal Rules of Civil Procedure or Local Rule 7.1(a). (Defs.' Mem. of Law at 4-5.) Defendants are technically correct. Federal Rule of Civil Procedure 8 requires that a complaint contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought. Here, Plaintiff's second amended complaint does not contain a statement of the grounds for the court's jurisdiction or a demand for relief. Moreover, Plaintiff's attempt to amend only the "facts" section of his first amended complaint is prohibited by Local Rule 7.1(a)(4), which states that "[n]o portion of [a] prior pleading shall be incorporated into the proposed amended pleading by reference."

However, the procedural posture of this case weighs against dismissing the second amended complaint on these grounds. The District Court had the second amended complaint before it when it granted Defendants' motion to dismiss the first amended complaint. The District Court, rather than dismissing the document *sua sponte,* directed Defendants to answer or move to dismiss the second amended complaint. (Dkt. No. 34.) Therefore, I will address the merits of the second amended complaint rather than recommending that the Court dismiss it simply for its technical defects.

### B. The Second Amended Complaint Is Not Barred by the Doctrine of Collateral Estoppel.

Defendants argue that Plaintiff's claims are barred by the doctrine of collateral estoppel. (Defs.' Mem. of Law at

5-6.) Defendants' argument is without merit.

Collateral estoppel is a doctrine that "may bar a party from litigating certain claims or issues *in a subsequent proceeding." Flaherty v. Lang,* 199 F.3d 607, 612 (2d Cir.1999) (emphasis added). Under collateral estoppel, "when an issue of ultimate fact has once been determined by a *valid and final judgment,* that issue cannot again be litigated by the same parties *in a future lawsuit." Id.* at 613 (quoting *Schiro v. Farley,* 510 U.S. 222, 232, 114 S.Ct. 783, 127 L.Ed.2d 47 (1994)) (emphasis added). "Collateral estoppel applies when (1) the issues in *both proceedings* are identical, (2) the issue in the *prior proceeding* was actually litigated and actually decided, (3) there was [a] full and fair opportunity to litigate in the *prior proceeding,* and (4) the issue previously litigated was necessary to support a *valid and final judgment* on merits." *Id.* (emphasis added). Here, there was no prior proceeding and there has been no final judgment. Rather, the Court granted Defendants' motion to dismiss the previous version of Plaintiff's complaint *with leave to amend.* Plaintiff has simply filed an amended complaint as authorized by the Court. Therefore, the doctrine of collateral estoppel does not bar Plaintiff's claims.

### C. The Second Amended Complaint Does Not State a Procedural Due Process Claim.

**\*5** Defendants argue that Plaintiff has failed to state a procedural due process claim. (Defs.' Mem. of Law at 7-9.) Defendants are correct, but not for the reasons asserted in their motion to dismiss.

#### 1. Disciplinary Confinement

Plaintiff alleges that the disciplinary confinement imposed by Defendant Badger as a result of Defendant Adamik's misbehavior report violated his right to due process. (Dkt. No. 31 at 3.) In order to state a claim for violation of his procedural due process rights, a plaintiff must allege facts plausibly suggesting that he was deprived of a liberty interest without due process of law. *Tellier v. Fields,* 280 F.3d 69, 79-80 (2d Cir.2000). Disciplinary confinement deprives a prisoner of a liberty interest if it imposes "an atypical and significant hardship on the inmate in relation

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 145292 (N.D.N.Y.)
(Cite as: 2010 WL 145292 (N.D.N.Y.))

to the ordinary incidents of prison life." *Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); Tellier, 280 F.3d at 80; Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir.1996).* Where a prisoner has served less than 101 days in disciplinary segregation, the confinement constitutes an "atypical and significant hardship" only if "the conditions were more severe than the normal SHU conditions [FN3] ... or a more fully developed record show[s] that even relatively brief confinements under normal SHU conditions [are], in fact, atypical." *Palmer v. Richards, 364 F.3d 60, 65 (2d Cir.2004).*

> FN3. "Normal" SHU conditions include being kept in solitary confinement for 23 hours per day, provided one hour of exercise in the prison yard per day, and permitted two showers per week. *Ortiz v. McBride, 380 F.3d 649, 655 (2d Cir.2004).*

If a plaintiff has sufficiently pleaded the deprivation of a liberty interest, the court then must determine whether the complaint pleads facts plausibly suggesting that the plaintiff received less process than was due. Due process is satisfied if an inmate facing disciplinary charges receives (1) advanced written notice of the charges against him; (2) a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; (3) a fair and impartial hearing officer; and (4) a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken. *Wolff v. McDonnell, 418 U.S. 539, 563-67, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); Luna v. Pico, 356 F.3d 481, 487 (2d Cir.2004).* In some circumstances, such as where the inmate is illiterate or where the complexity of an issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, an inmate may also be entitled to assistance from another inmate or from prison staff in preparing his defense. *Wolff, 418 U.S. at 570.*

If a prisoner has received all process due before being deprived of a liberty interest, he may still state a procedural due process claim if the decision of a prison disciplinary board is not based on "some evidence." *Freeman v. Rideout, 808 F.2d 949, 954 (2d Cir.1986).*

a. *Liberty Interest*

Plaintiff's first amended complaint failed to state a due process claim because Plaintiff did not allege that he was subjected to any conditions "more severe" than "normal" SHU conditions while serving his disciplinary confinement. Plaintiff was granted leave to amend to allege such conditions. (Dkt. No. 30 at 19; Dkt. No. 32.)

**\*6** Plaintiff's second amended complaint alleges that he was deprived of a liberty interest during his disciplinary confinement because he was denied gout medication for a period of approximately 20 days, moved to a top bunk after being assigned a bottom bunk, and assaulted by another inmate. (Dkt. No. 31 at 2.)

Defendants' motion to dismiss does not address Plaintiff's new allegations, even in a cursory fashion. Rather, Defendants simply repeat verbatim the arguments they asserted in their motion to dismiss the first amended complaint. (Defs.' Mem. of Law at 7-9.) The case on which Defendants primarily rely- *Tookes v. Artuz,* No. 00 Civ. 4969 RCC HBP, 2002 U.S. Dist. LEXIS 12540, 2002 WL 1484391 (S.D.N.Y. July 11, 2002)-is distinguishable in light of Plaintiff's new allegations. In *Tookes,* the district court found that the prisoner had not alleged any atypical and significant hardship, and thus had not alleged the loss of a liberty interest, because "the only detail that can be discerned from the complaint is that [the prisoner's] confinement lasted 96 days." Here, Plaintiff has now alleged more details than the mere length of his disciplinary confinement.

After Defendants filed the pending motion, the Second Circuit issued a decision discussing procedural due process claims arising from disciplinary confinement. *Davis v. Barrett, 576 F.3d 129 (2d Cir.2009).* This decision illustrates that the Second Circuit strongly discourages district courts from finding as a matter of law that a prisoner was not subjected to atypical and significant hardships without the benefit of a fully developed record. In *Davis,* a correctional officer recommended that a prisoner be administratively segregated. The DOCS hearing officer who presided over the ensuing administrative hearing did not call the correctional officer or his confidential informants to testify

Slip Copy, 2010 WL 145292 (N.D.N.Y.)
(Cite as: 2010 WL 145292 (N.D.N.Y.))

and, relying entirely on the officer's written recommendation, sentenced the prisoner to administrative segregation in the SHU. The prisoner served approximately 55 days in the SHU. The hearing officer's decision was ultimately administratively reversed because the hearing officer did not hear testimony from the correctional officer or assess the reliability of the informants on whose reports the correctional officer's recommendation was based. *Davis,* 576 F.3d at 130-31.

The prisoner sued the hearing officer, claiming that the officer violated his procedural due process rights. The hearing officer moved for summary judgment. The hearing officer presented affidavits from officers who worked in the SHU while the prisoner was confined there, stating that the prisoner had been confined pursuant to normal SHU standards. These affidavits were disputed by the prisoner, who stated that he was denied privileges, that his cell had no furniture, that his mattress was infected with bodily waste, and that his cell was subject to daily flooding including feces and urine thrown by other inmates. After examining this evidence, the district court granted the hearing officer's motion for summary judgment, finding "that a 55-day period was insufficient to establish a liberty interest in the absence of conditions more onerous than normal for SHU." *Davis,* 576 F.3d at 131, 134.

**\*7** The prisoner appealed. The Second Circuit summarized its prior precedents as holding that:

A prisoner's liberty interest is implicated by prison discipline, such as SHU confinement, only if the discipline imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. Factors relevant to determining whether the plaintiff endured an atypical and significant hardship include the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and the duration of the disciplinary segregation compared to discretionary confinement ... [R]estrictive confinements of less than 101 days do not generally raise a liberty interest warranting due process protection, and thus require proof of conditions more onerous than usual ... SHU confinements of fewer than 101 days could constitute atypical and significant hardships if the conditions were more severe than

normal SHU conditions or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical.

*Davis,* 576 F.3d at 133.

The Second Circuit stated that in light of this precedent, the district court "was required to examine the conditions of confinement 'in comparison to the hardships endured by prisoners in the general population, as well as prisoners in administrative and protective confinement.' " *Davis,* 576 F.3d at 134 (quoting *Welch v. Bartlett,* 196 F.3d 389, 392-93 (2d Cir.1999)). The court noted that under its precedents a "detailed factual record" is required unless "the period of time spent in SHU was exceedingly short-less than 30 days-and there is no indication that the plaintiff endured unusual SHU conditions." *Id.* at 135 (citing *Palmer,* 364 F.3d at 65-66). The Second Circuit found that the district court had failed to conduct this examination properly because "the record lacks any evidence of the conditions for other inmates in administrative confinement, or in the general prison population." *Id.* Because the conditions of the prisoner's confinement were in dispute and because the factual record was not fully developed, the Second Circuit declined to reach the ultimate issue of whether the prisoner had demonstrated a liberty interest or whether the administrative hearing violated his due process rights. *Id.* Rather, the Second Circuit vacated the district court's judgment and remanded the matter for further fact-finding. *Id.* at 130.

Here, the time Plaintiff spent in disciplinary confinement was not "exceedingly short" and the second amended complaint, read liberally, plausibly suggests that Plaintiff endured unusual SHU conditions because Plaintiff has alleged that he was deprived of medication, moved to a top bunk, and assaulted. Thus, under *Davis* and the Second Circuit's other precedents, a detailed factual record is required to determine whether Plaintiff was deprived of a liberty interest. Therefore, I cannot find on the basis of the current record that Plaintiff was not deprived of a liberty interest.

b. *All Process Due*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 145292 (N.D.N.Y.)
(Cite as: 2010 WL 145292 (N.D.N.Y.))

**\*8** Defendants focus entirely on the issue of whether Plaintiff has adequately alleged that he was deprived of a liberty interest. Defendants do not address, even cursorily, the second prong of the procedural due process analysis: whether Plaintiff has adequately alleged that he was deprived of due process before being deprived of that interest. I will address this issue *sua sponte.*

As discussed above, due process is satisfied if an inmate facing disciplinary charges receives (1) advanced written notice of the charges against him; (2) a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; (3) a fair and impartial hearing officer; and (4) a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken. *Wolff v. McDonnell,* 418 U.S. 539, 563-67, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Luna v. Pico,* 356 F.3d 481, 487 (2d Cir.2004). In some circumstances, such as where the inmate is illiterate or where the complexity of an issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, an inmate may also be entitled to assistance from another inmate or from prison staff in preparing his defense. *Id.* at 570.

Here, Plaintiff alleges that Defendant Badger breached unspecified "protocols" set out in DOCS' "Policies and Procedures," that the misbehavior report on which Defendant Badger relied contained "clearly erroneous" information, that Defendant Badger did not give him credit for the 14 days he served in the SHU pending his hearing, and that Defendant Badger's finding was ultimately reversed "as unsubstantiated by the misbehavior report." (Dkt. No. 15 ¶ 6(2-3); Dkt. No. 31 at 2; Dkt. No. 41.) Plaintiff does *not,* however, allege that Defendant Badger deprived him of any of the processes outlined in *Wolff.* This is fatal to Plaintiff's claim that he was denied due process because "[t]he *only* process due an inmate is that minimal process guaranteed by the Constitution, as outlined in *Wolff." Shakur v. Selsky,* 391 F.3d 106, 119 (2d Cir.2004) (emphasis in original). Thus, Plaintiff has not alleged facts plausibly suggesting that he was denied the process constitutionally required. The second amended complaint, therefore, will only state a procedural due process claim if it contains facts plausibly suggesting that Defendant Badger's decision was not based on "some evidence."

c. *Some Evidence*

"Once a court has decided that the procedural due process requirements have been met, its function is to determine whether there is some evidence which supports the decision of the prison disciplinary board." *Freeman v. Rideout,* 808 F.2d 949, 954 (2d Cir.1986). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record [before the disciplinary board] that could support the conclusion reached by the disciplinary board." *Superintendent v. Hill,* 472 U.S. 445, 455-56, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985).

**\*9** Plaintiff implicitly alleges that Defendant Badger's decision was not based on "some evidence" because it was administratively reversed. However, this fact is insufficient to plausibly suggest that Defendant Badger's decision was not supported by "some evidence." "New York law requires prison disciplinary rulings to be supported by sufficiently relevant and probative information to constitute *substantial evidence.* This requirement is sterner than the 'some evidence' standard necessary to afford due process." *Sira v. Morton,* 380 F.3d 57, 76 n. 9 (2d Cir.2004) (emphasis added). Plaintiff admits that he offered information to Defendants in exchange for special consideration of his wake visit request. Although DOCS may have found that this evidence was not "substantial," it is sufficient to satisfy the lower due process standard of "some evidence" to support Defendant Badger's decision to find Plaintiff guilty of extortion. Therefore, I recommend that Plaintiff's procedural due process claim be dismissed.

2. *Wake Visit*

As I discussed in my previous Report-Recommendation, Plaintiff's first amended complaint failed to state a procedural due process claim based on the denial of the wake visit because prisoners do not have a constitutionally protected interest in attending the funeral of a relative and no such right has been created in New York by statute or

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 145292 (N.D.N.Y.)
(Cite as: 2010 WL 145292 (N.D.N.Y.))

regulation. (Dkt. No. 30 at 21-22.) Plaintiff's second amended complaint does not cure the defect in his previous pleading. Therefore, I recommend that Plaintiff's procedural due process claim regarding the denial of the wake visit be dismissed without leave to amend.

**D. The Second Amended Complaint Does Not State a Retaliation Claim.**

In my previous Report-Recommendation, I found that Plaintiff had failed to state a cause of action for retaliation because the alleged adverse action (filing charges against Plaintiff and confining him) occurred *before* the alleged protected conduct (filing suit in the Court of Claims regarding the denied wake visit). (Dkt. No. 30 at 19-20.)

The amended complaint contains new assertions about allegedly protected conduct that preceded the misbehavior report that led to Plaintiff's SHU and S-Block confinement. Specifically, Plaintiff now alleges that he offered information about the mental state of an inmate who died in the SHU to Defendant Naughton "in exchange for special consideration" regarding the wake visit for which he had applied. (Dkt. No. 31 at 2.) In response to his offer, Defendant Naughton set up a meeting between Plaintiff and Defendant Adamik. *Id.* "As a result of this meeting," Plaintiff was charged with, *inter alia,* extortion and confined to the SHU. *Id.* Defendants have not addressed these new allegations.

"An allegation that a prison official filed false disciplinary charges in retaliation for the exercise of a constitutionally protected right ... states a claim under § 1983. A plaintiff alleging retaliatory punishment bears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials' decision to discipline the plaintiff. The burden then shifts to the defendant to show that the plaintiff would have received the same punishment even absent the retaliatory motivation. The defendant can meet this burden by demonstrating that there is no dispute that the plaintiff committed the most serious, if not all, of the prohibited conduct charged in the misbehavior report." *Gayle v. Gonyea,* 313 F.3d 677, 681 (2d Cir.2002) (citations omitted).

*10 Here, Plaintiff's new allegations do not state a retaliation cause of action. Plaintiff has not alleged that he was engaged in any constitutionally protected conduct. Although "[p]risoners ... have a constitutional right of access to the courts and to petition the government for the redress of grievances," *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995), Plaintiff does not allege that his offer to provide information about a deceased inmate's mental state to Defendant Naughton was an attempt to petition the government for the redress of a grievance. Rather, he alleges that he offered the information "in exchange for special consideration" of his request for a wake visit. Further, even if Plaintiff's offer of information to Defendant Naughton constituted constitutionally protected conduct, Plaintiff's admission in his second amended complaint that he offered the information "in exchange for special consideration" shows that he committed extortion, which was the most serious misconduct described in the misbehavior report. I therefore recommend that the Court dismiss this claim *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2).

**E. The Second Amended Complaint Does Not State a Substantive Due Process Claim.**

In my previous Report-Recommendation, I found that Plaintiff failed to state a substantive due process cause of action because he did not allege "facts plausibly suggesting that Defendants' actions were arbitrary, conscience-shocking, or oppressive in the constitutional sense." (Dkt. No. 30 at 22-23.) Plaintiff's second amended complaint does not cure this defect. Therefore, I recommend that Plaintiff's substantive due process claim be dismissed without leave to amend.

**F. The Second Amended Complaint Does Not State an Equal Protection Claim.**

In my previous Report-Recommendation, I found that Plaintiff had failed to state an equal protection claim. (Dkt. No. 30 at 23-25.) Defendants argue that Plaintiff's second amended complaint fails to state an equal protection claim. (Defs.' Mem. of Law at 14.) Defendants are correct. Plaintiff's second amended complaint does not allege facts

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 145292 (N.D.N.Y.)
(Cite as: 2010 WL 145292 (N.D.N.Y.))

plausibly suggesting that he was treated differently from any similarly situated individuals. Therefore, I recommend that the Court dismiss this claim without leave to amend.

**G. The Second Amended Complaint Does Not State an Eighth Amendment Claim.**

In my previous Report-Recommendation, I found that Plaintiff had failed to state an Eighth Amendment cause of action. (Dkt. No. 30 at 25-27.) Defendants argue that Plaintiff's second amended complaint fails to state an Eighth Amendment cause of action. (Defs.' Mem. of Law at 9-11.) Defendants are correct. Plaintiff's second amended complaint does not add any new facts plausibly suggesting that Defendants violated his Eighth Amendment rights. Therefore, I recommend that the Court dismiss this claim without leave to amend.

**H. The Second Amended Complaint Does Not Sufficiently Allege Personal Involvement by Defendants Fischer, Connell, and Naughton and Does Not State a Claim Against Defendants Labriola and Lombardo.**

**\*11** Defendants argue that Plaintiff has failed to allege that Defendants Fischer, Connell, Naughton, Labriola, and Lombardo were personally involved in any alleged constitutional violation. (Defs.' Mem. of Law at 15-19.) Defendants are correct as to Defendants Fischer, Connell, and Naughton. Further, as discussed below, although the second amended complaint alleges that Defendants Labriola and Lombardo were personally involved in what Plaintiff alleges was a constitutional violation, it fails to allege facts plausibly suggesting that a constitutional violation actually occurred.

" '[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991)). In order to prevail on a cause of action under 42 U.S.C. § 1983 against an individual, a plaintiff must show some tangible connection between the alleged unlawful conduct and the defendant. *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986). If the

defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of *respondeat superior* ) is insufficient to show his or her personal involvement in that unlawful conduct. *Polk County v. Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright,* 21 F.3d at 501; *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985). In other words, supervisory officials may not be held liable merely because they held a position of authority. *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996). Rather, supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (adding fifth prong); *Wright,* 21 F.3d at 501 (adding fifth prong); *Williams v. Smith,* 781 F.2d 319, 323-324 (2d Cir.1986) (setting forth four prongs).

The second amended complaint's sole allegation regarding Defendant Fischer is that he is "liable for any willful neglect of duty by [his] subordinates." (Dkt. No. 31 at 3.) Similarly, Plaintiff alleges that Defendant Connell "designated" Defendant Badger to conduct the disciplinary hearing and that Defendant Badger "was acting on [her] behalf." (Dkt. No. 31 at 2.) These allegations are insufficient to plausibly suggest that Defendants Fischer or Connell were personally involved in any constitutional violation. Therefore, I recommend that these claims be dismissed without leave to amend.

**\*12** The second amended complaint alleges that Defendants Connell, Naughton, Lombardo, and Labriola, denied Plaintiff's requests for review of Defendant Badger's decision. (Dkt. No. 31 at 3.) The affirming of a disciplinary conviction does not constitute personal involvement. *Joyner v. Greiner,* 195 F.Supp.2d 500, 506 (S.D.N.Y.2002). Therefore, I recommend that these claims be dismissed without leave to amend.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 145292 (N.D.N.Y.)
(Cite as: 2010 WL 145292 (N.D.N.Y.))

The second amended complaint alleges that Defendants Lombardo and Labriola held Plaintiff in the SHU for 24 days after the administrative reversal of Defendant Badger's decision. (Dkt. No. 31 at 3.) Defendants acknowledge this allegation in the section of their brief discussing personal involvement (Defs.' Mem. of Law at 16) but have not advanced any arguments specifically addressing this allegation. The second amended complaint sufficiently alleges that Defendants Lombardo and Labriola were personally involved in what Plaintiff *contends* is a constitutional violation. However, the second amended complaint does not allege facts plausibly suggesting that a constitutional violation occurred. As discussed above, when a prisoner alleges that his procedural due process rights were violated by an "exceedingly short-less than 30 days" stint in disciplinary or administrative confinement, the claim is subject to dismissal unless the prisoner also alleges that he "endured unusual SHU conditions." *Davis,* 576 F.3d at 132 (citing *Palmer,* 364 F.3d at 65-66). Here, Plaintiff does not allege any unusual SHU conditions during the 24-day confinement that he attributes to Defendants Lombardo and Labriola. The events that he alleges were "unusual"-the denial of medication, the move to a top bunk, and the assault by another inmate-all occurred prior to the dismissal of the disciplinary charges. Therefore, Plaintiff has not alleged facts plausibly suggesting that Defendants Lombardo and Labriola deprived him of a liberty interest and the claim should be dismissed.

Therefore, I recommend that the Court dismiss the claims against Defendants Fischer, Connell, Naughton, Labriola, and Lombardo.

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 38) be **GRANTED** without leave to amend.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette,* 984 F.2d 85

(2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,2010.
Smith v. Fischer
Slip Copy, 2010 WL 145292 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

**C** Only the Westlaw citation is currently available.

United States District Court, N.D. New York.
Jerome WALDO, Plaintiff,
v.
Glenn S. GOORD, Acting Commissioner of New York
State Department of Correctional Services; Peter J.
Lacy, Superintendent at Bare Hill Corr. Facility;
Wendell Babbie, Acting Superintendent at Altona Corr.
Facility; and John Doe, Corrections Officer at Bare Hill
Corr. Facility, Defendants.
**No. 97-CV-1385 LEK DRH.**

Oct. 1, 1998.

Jerome Waldo, Plaintiff, pro se, Mohawk Correctional
Facility, Rome, for Plaintiff.

Hon. Dennis C. Vacco, Attorney General of the State of
New York, Albany, Eric D. Handelman, Esq., Asst.
Attorney General, for Defendants.

DECISION AND ORDER

KAHN, District J.

**\*1** This matter comes before the Court following a
Report-Recommendation filed on August 21, 1998 by the
Honorable David R. Homer, Magistrate Judge, pursuant to
28 U.S.C. § 636(b) and L.R. 72.3(c) of the Northern
District of New York.

No objections to the Report-Recommendation have been
raised. Furthermore, after examining the record, the Court
has determined that the Report-Recommendation is not
clearly erroneous. *See* Fed.R.Civ.P. 72(b), Advisory
Committee Notes. Accordingly, the Court adopts the
Report-Recommendation for the reasons stated therein.

Accordingly, it is

ORDERED that the Report-Recommendation is
APPROVED and ADOPTED; and it is further

ORDERED that the motion to dismiss by defendants is
GRANTED; and it is further

ORDERED that the complaint is dismissed without
prejudice as to the unserved John Doe defendant pursuant
to Fed.R.Civ.P. 4(m), and the action is therefore dismissed
in its entirety; and it is further

ORDERED that the Clerk serve a copy of this order on all
parties by regular mail.

IT IS SO ORDERED.
HOMER, Magistrate J.

REPORT-RECOMMENDATION AND ORDER FN1

> FN1. This matter was referred to the undersigned
> pursuant to 28 U.S.C. § 636(b) and
> N.D.N.Y.L.R. 72.3(c).

The plaintiff, an inmate in the New York Department of
Correctional Services ("DOCS"), brought this pro se
action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that
while incarcerated in Bare Hill Correctional Facility
("Bare Hill") and Altona Correctional Facility ("Altona"),
defendants violated his rights under the Eighth and
Fourteenth Amendments.FN2 In particular, plaintiff alleges
that prison officials maintained overcrowded facilities
resulting in physical and emotional injury to the plaintiff
and failed to provide adequate medical treatment for his
injuries and drug problem. Plaintiff seeks declaratory
relief and monetary damages. Presently pending is
defendants' motion to dismiss pursuant to Fed.R.Civ.P.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

12(b). Docket No. 18. For the reasons which follow, it is recommended that the motion be granted in its entirety.

> FN2. The allegations as to Bare Hill are made against defendants Goord, Lacy, and Doe. Allegations as to Altona are made against Goord and Babbie.

## I. Background

Plaintiff alleges that on August 21, 1997 at Bare Hill, while he and two other inmates were playing cards, an argument ensued, and one of the two assaulted him. Compl., ¶ 17. Plaintiff received medical treatment for facial injuries at the prison infirmary and at Malone County Hospital. *Id.* at ¶¶ 18-19. On September 11, 1997, plaintiff was transferred to Altona and went to Plattsburgh Hospital for x-rays several days later. *Id.* at ¶ 21.

Plaintiff's complaint asserts that the overcrowded conditions at Bare Hill created a tense environment which increased the likelihood of violence and caused the physical assault on him by another inmate. *Id.* at ¶¶ 10-11. Additionally, plaintiff contends that similar conditions at Altona caused him mental distress and that he received constitutionally deficient medical treatment for his injuries. *Id.* at ¶¶ 21-22. The complaint alleges that Altona's lack of a drug treatment program and a dentist or specialist to treat his facial injuries constitutes cruel and unusual punishment under the Eighth and Fourteenth Amendments. *Id.* at ¶¶ 22, 27-28.

## II. Motion to Dismiss

**\*2** When considering a Rule 12(b) motion, a court must assume the truth of all factual allegations in the complaint and draw all reasonable inferences from those facts in favor of the plaintiff. *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996). The complaint may be dismissed only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Staron v. McDonald's Corp.,* 51 F.3d 353, 355 (2d Cir.1995) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "The issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleading that a recovery is very remote and unlikely, but that is not the test." *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995) (citations omitted). This standard receives especially careful application in cases such as this where a pro se plaintiff claims violations of his civil rights. *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.), *cert. denied,* 513 U.S. 836, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994).

## III. Discussion

### A. Conditions of Confinement

Defendants assert that plaintiff fails to state a claim regarding the conditions of confinement at Bare Hill and Altona. For conditions of confinement to amount to cruel and unusual punishment, a two-prong test must be met. First, plaintiff must show a sufficiently serious deprivation. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (citing *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)); *Rhodes v. Chapman,* 452 U.S. 347, 348 (1981)(denial of the "minimal civilized measure of life's necessities"). Second, plaintiff must show that the prison official involved was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and that the official drew the inference. *Farmer,* 511 U.S. at 837.

### 1. Bare Hill

In his Bare Hill claim, plaintiff alleges that the overcrowded and understaffed conditions in the dormitory-style housing "resulted in an increase in tension, mental anguish and frustration among prisoners, and dangerously increased the potential for violence." Compl., ¶ 11. Plaintiff asserts that these conditions violated his constitutional right to be free from cruel and unusual punishment and led to the attack on him by another prisoner. The Supreme Court has held that double-celling to manage prison overcrowding is not a per se violation of the Eighth Amendment. *Rhodes,* 452 U.S. at 347-48. The

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

Third Circuit has recognized, though, that double-celling paired with other adverse circumstances can create a totality of conditions amounting to cruel and unusual punishment. *Nami v. Fauver,* 82 F.3d 63, 67 (3d Cir.1996). While plaintiff here does not specify double-celling as the source of his complaint, the concerns he raises are similar. Plaintiff alleges that overcrowding led to an increase in tension and danger which violated his rights. Plaintiff does not claim, however, that he was deprived of any basic needs such as food or clothing, nor does he assert any injury beyond the fear and tension allegedly engendered by the overcrowding. Further, a previous lawsuit by this plaintiff raised a similar complaint, that double-celling and fear of assault amounted to cruel and unusual punishment, which was rejected as insufficient by the court. *Bolton v. Goord,* 992 F.Supp. 604, 627 (S.D.N.Y.1998). The court there found that the fear created by the double-celling was not "an objectively serious enough injury to support a claim for damages." *Id.* (citing *Doe v. Welborn,* 110 F.3d 520, 524 (7th Cir.1997)).

*3 As in his prior complaint, plaintiff's limited allegations of overcrowding and fear, without more, are insufficient. *Compare* *Ingalls v. Florio,* 968 F.Supp. 193, 198 (D.N.J.1997) (Eighth Amendment overcrowding claim stated when five or six inmates are held in cell designed for one, inmates are required to sleep on floor, food is infested, and there is insufficient toilet paper) *and* *Zolnowski v. County of Erie,* 944 F.Supp. 1096, 1113 (W.D.N.Y.1996) (Eighth Amendment claim stated when overcrowding caused inmates to sleep on mattresses on floor, eat meals while sitting on floor, and endure vomit on the floor and toilets) *with* *Harris v. Murray,* 761 F.Supp. 409, 415 (E.D.Va.1990) (No Eighth Amendment claim when plaintiff makes only a generalized claim of overcrowding unaccompanied by any specific claim concerning the adverse effects of overcrowding). Thus, although overcrowding could create conditions which might state a violation of the Eighth Amendment, plaintiff has not alleged sufficient facts to support such a finding here. Plaintiff's conditions of confinement claim as to Bare Hill should be dismissed.

2. Altona

Plaintiff also asserts a similar conditions of confinement claim regarding Altona. For the reasons discussed above, plaintiff's claim that he suffered anxiety and fear of other inmates in the overcrowded facility (Compl., ¶¶ 21-22) is insufficient to establish a serious injury or harm.

Plaintiff's second claim regarding Altona relates to the alleged inadequacies of the medical treatment he received. The government has an "obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The two-pronged *Farmer* standard applies in medical treatment cases as well. *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998). Therefore, plaintiff must allege facts which would support a finding that he suffered a sufficiently serious deprivation of his rights and that the prison officials acted with deliberate indifference to his medical needs. *Farmer,* 511 U.S. at 834.

Plaintiff alleges that the medical treatment available at Altona was insufficient to address the injuries sustained in the altercation at Bare Hill. Specifically, plaintiff cites the lack of a dentist or specialist to treat his facial injuries as an unconstitutional deprivation. Plaintiff claims that the injuries continue to cause extreme pain, nosebleeds, and swelling. Compl., ¶¶ 22 & 26. For the purposes of the Rule 12(b) motion, plaintiff's allegations of extreme pain suffice for a sufficiently serious deprivation. *See* *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996).

Plaintiff does not, however, allege facts sufficient to support a claim of deliberate indifference by the named defendants. To satisfy this element, plaintiff must demonstrate that prison officials had knowledge of facts from which an inference could be drawn that a "substantial risk of serious harm" to the plaintiff existed and that the officials actually drew the inference. *Farmer,* 511 U.S. at 837. Plaintiff's complaint does not support, even when liberally construed, any such conclusion. Plaintiff offers no evidence that the Altona Superintendent or DOCS Commissioner had any actual knowledge of his medical condition or that he made any attempts to notify them of his special needs. Where the plaintiff has not even alleged knowledge of his medical needs by the defendants, no reasonable jury could conclude that the defendants were deliberately indifferent to those needs. *See* *Amos v. Maryland Dep't of Public Safety and Corr. Services,* 126

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

F.3d 589, 610-11 (4th Cir.1997), *vacated on other grounds,* 524 U.S. 935, 118 S.Ct. 2339, 141 L.Ed.2d 710 (1998).

**\*4** Plaintiff's second complaint about Altona is that it offers "no type of state drug treatment program for the plaintiff." Compl., ¶ 22. Constitutionally required medical treatment encompasses drug addiction therapy. *Fiallo v. de Batista,* 666 F.2d 729, 731 (1st Cir.1981); *Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 760-61 (3d Cir.1979). As in the *Fiallo* case, however, plaintiff falls short of stating an Eighth Amendment claim as he "clearly does not allege deprivation of essential treatment or indifference to serious need, only that he has not received the type of treatment which he desires." *Id.* at 731. Further, plaintiff alleges no harm or injury attributable to the charged deprivation. Plaintiff has not articulated his reasons for desiring drug treatment or how he was harmed by the alleged deprivation of this service. *See Guidry v. Jefferson County Detention Ctr.,* 868 F.Supp. 189, 192 (E.D.Tex.1994) (to state a section 1983 claim, plaintiff must allege that some injury has been suffered).

For these reasons, plaintiff's Altona claims should be dismissed.

### B. Failure to Protect

Defendants further assert that plaintiff has not established that any of the named defendants failed to protect the plaintiff from the attack by the other inmate at Bare Hill. Prison officials have a duty "to act reasonably to ensure a safe environment for a prisoner *when they are aware* that there is a significant risk of serious injury to that prisoner." *Heisler v. Kralik,* 981 F.Supp. 830, 837 (S.D.N.Y.1997) (emphasis added); *see also Villante v. Dep't of Corr. of City of N.Y.,* 786 F.2d 516, 519 (2d Cir.1986). This duty is not absolute, however, as "not ... every injury suffered by one prisoner at the hands of another ... translates into constitutional liability." *Farmer,* 511 U.S. at 834. To establish this liability, *Farmer's* familiar two-prong standard must be satisfied.

As in the medical indifference claim discussed above, plaintiff's allegations of broken bones and severe pain

from the complained of assault suffice to establish a "sufficiently serious" deprivation. *Id.* Plaintiff's claim fails, however, to raise the possibility that he will be able to prove deliberate indifference to any threat of harm to him by the Bare Hill Superintendent or the DOCS Commissioner. Again, plaintiff must allege facts which establish that these officials were aware of circumstances from which the inference could be drawn that the plaintiff was at risk of serious harm and that they actually inferred this. *Farmer,* 511 U.S. at 838.

To advance his claim, plaintiff alleges an increase in "unusual incidents, prisoner misbehaviors, and violence" (Compl., ¶ 12) and concludes that defendants' continued policy of overcrowding created the conditions which led to his injuries. Compl., ¶ 10. The thrust of plaintiff's claim seems to suggest that the defendants' awareness of the problems of overcrowding led to knowledge of a generalized risk to the prison population, thus establishing a legally culpable state of mind as to plaintiff's injuries. Plaintiff has not offered any evidence, however, to support the existence of any personal risk to himself about which the defendants could have known. According to his own complaint, plaintiff first encountered his assailant only minutes before the altercation occurred. Compl., ¶ 17. It is clear that the named defendants could not have known of a substantial risk to the plaintiff's safety if the plaintiff himself had no reason to believe he was in danger. *See Sims v. Bowen,* No. 96-CV-656, 1998 WL 146409, at \*3 (N.D.N.Y. Mar.23, 1998)(Pooler, J.)("I conclude that an inmate must inform a correctional official of the basis for his belief that another inmate represents a substantial threat to his safety before the correctional official can be charged with deliberate indifference"); *Strano v. City of New York,* No. 97-CIV-0387, 1998 WL 338097, at \*3-4 (S.D.N.Y. June 24, 1998) (when plaintiff acknowledged attack was "out of the blue" and no prior incidents had occurred to put defendants on notice of threat or danger, defendants could not be held aware of any substantial risk of harm to the plaintiff). Defendants' motion on this ground should, therefore, be granted.

### IV. Failure to Complete Service

**\*5** The complaint names four defendants, including one "John Doe" Correctional Officer at Bare Hill. Defendants acknowledge that service has been completed as to the

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

three named defendants. Docket Nos. 12 & 13. The "John
Doe" defendant has not been served with process or
otherwise identified and it is unlikely that service on him
will be completed in the near future. *See* Docket No. 6
(United States Marshal unable to complete service on
"John Doe"). Since over nine months have passed since
the complaint was filed (Docket No. 1) and summonses
were last issued (Docket entry Oct. 21, 1997), the
complaint as to the unserved defendant should be
dismissed without prejudice pursuant to Fed.R.Civ.P. 4(m)
and N.D .N.Y.L.R. 4.1(b).

                    V. Conclusion

WHEREFORE, for the reasons stated above, it is

RECOMMENDED that defendants' motion to dismiss be
GRANTED in all respects; and

IT IS FURTHER RECOMMENDED that the complaint
be dismissed without prejudice as to the unserved John
Doe defendant pursuant to Fed.R.Civ.P. 4(m) and
N.D.N.Y.L.R. 4.1(b); and it is

ORDERED that the Clerk of the Court serve a copy of this
Report-Recommendation and Order, by regular mail, upon
parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge
written objections to the foregoing report. Such objections
shall be filed with the Clerk of the Court. FAILURE TO
OBJECT TO THIS REPORT WITHIN TEN DAYS
WILL PRECLUDE APPELLATE REVIEW. *Roldan v.
Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Secretary
of Health and Human Services,* 892 F.2d 15 (2d
Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a),
6(e).

N.D.N.Y.,1998.
Waldo v. Goord
Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.